or conspiracy with others named and unnamed, operated to deprive Plaintiff of her rights

under the Constitution and the Laws of the United States:

> (a) Not to be arrested, indicted, prosecuted, detained, convicted, or
> imprisoned based upon false, fabricated, manufactured, misleading, or
> inherently unreliable "evidence," including the statements and
> testimony of witnesses who have been improperly influenced, coerced,
> or manipulated to provide such statements and testimony, in violation
> of the Due Process and Fair Trial Clauses of the Fifth, Sixth and
> Fourteenth Amendments to the United States Constitution;
>
> (b) Not to be deprived of her liberty absent probable cause to believe
> she has committed a crime, in violation of her rights under the Fourth
> and Fourteenth Amendments to the United States Constitution; and
>
> (c) To timely disclosure of all material evidence favorable to the
> defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v.
> United States,_ 405 U.S. 150 (1972), and their progeny, and the Due
> Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth
> Amendments to the United States Constitution.

The foregoing violations of Plaintiffs federal constitutional rights by the Defendants and their co-

conspirators and accomplices, known and unknown, directly, substantially, proximately, and

foreseeably caused the initiation and continuation of Plaintiffs criminal prosecution, her loss of

liberty and detention, her wrongful conviction for disorderly conduct, her subsequent

imprisonment, her restriction of movement and freedoms as specified in the order of protection

the court ordered against her in the name of her batterer, Raheem Powell, her to be placed on a

NYPD 'no services' list and her other injuries and damages.  The foregoing violations of

Plaintiffs rights amounted to Constitutional torts and were affected by actions taken under color

of State law, and within the scope of the Defendants' employment and authority. Defendants

committed the foregoing violations of Plaintiffs rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to Plaintiffs constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights. 413. By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.

120.   **SEVENTH CAUSE OF ACTION (42 U.S.C. §1983; Denial Of Due Process Under the Fifth, Sixth and Fourteenth Amendments; Malicious Prosecution, Abuse of Process, and Deprivation of Liberty Under the Fourth, Fifth, Sixth, and Fourteenth Amendments; Defendants:** Plaintiff repeats and realleges each and every allegation contained in **contained in ¶1 through ¶121 of this complaint** as if fully set forth herein Knowing that any colorable cause to continue the prosecution had evaporated, Wells, in the capacity of an investigator or "witness," acted in concert and conspired with Strohbehn, Wells, Moore, and others, named and unnamed, to use any means, no matter how unlawful or coercive, to intimidate them into falsely accusing Plaintiff of the charged crimes. These illegal and unconstitutional means included, but were not limited to,

(a) Abusing judicial process by misusing the court's subpoena power to compel witnesses to appear at Court and the Das office;

(b) Abusing judicial process by deceiving the court into issuing "orders of protection" restricting Plaintiff's libeties and freedom by: Personally attesting to "facts" which they knew were untrue in order to deceive the court into issue orders authorizing them to take custody of such plaintiff;

These lawless actions foreseeably caused the aforementioned witnesses to manufacture false evidence which Strohbehn and Simmons then used to continue Plaintiffs malicious prosecution, without probable cause, and for Wells to bring about her false conviction at trial.

The foregoing violations of Plaintiffs federal constitutional rights by the Defendants, together with their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the continuation of Plaintiffs malicious prosecution without probable cause, her wrongful imprisonment, and her other injuries and damages.  The foregoing violations of Plaintiffs rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants' employment and authority. Defendants committed the foregoing violations of Plaintiffs rights knowingly, intentionally, willfully, recklessly, negligently, and/or with deliberate indifference to Plaintiffs constitutional rights or to the effect of such misconduct upon Plaintiffs constitutional rights. By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.

121.   **EIGHTH CAUSE OF ACTION (Monell/42 U.S.C. § 1983: Claim Against Defendant City of New York For The Actions Of The NYPD)** Plaintiff repeats and re-alleges each and every allegation contained in **contained in ¶1 through ¶121** as if fully set forth herein. The foregoing violations of Plaintiffs federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities. Prior to Plaintiffs arrest, policymaking officials at the NYPD, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

(a)  The use of excessive promises of rewards with witnesses, including

drug dealers and and/or individuals fearing prosecution and imprisonment for their own criminal behavior;

(b) The determination of probable cause to make an arrest; and

(c) The continuing duty of police investigators to preserve and to make timely disclosure to the District Attorney, during criminal investigations and prosecutions, of all material evidence or information (**"Brady** material") favorable to a person suspected, accused or convicted of criminal conduct, including, but not limited to, evidence of innocence, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts, and evidence that a prosecution witnesses has a motive, bias or interest affecting his credibility or has been pressured or coerced, so that the District Attorney could comply with his constitutional obligation to disclose such information to the defense under Brady.

With respect to "a" and "c" in the preceding paragraph, prior to Plaintiffs arrest and the initiation of her prosecution the NYPD or the MDAO provided no training at all in regards to how a DV complaintant should be evaluated or the efficacy of their complaints as victims should they be suspected of fabricating their injuries.  What further review other than the cursory nods by individuals who had not investigated the facts is needed to brandish such a title on a crime victim/complaintant?  What review exists to ensure an investigation is in fact undertaken? What checks and balances are in place to ensure innocent victims are not falsely branded "fabricators" enabling their abusers to use the criminal justice system against them to control their lives and alter the freedoms and liberties most citizens enjoy?  To imprison them and cause them public shame, emotional distress, loss of income and loss of private and professional standing? The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs

(including the failure to properly instruct, train, supervise and/or disciplineemployees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant City of New York, including but not limited to, the New York City Police Commissioner, who knew (or should have known):

a) to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

b) that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

c) that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

The aforementioned policymaking officials had the knowledge and the notice alleged in the preceding paragraph based upon, among other circumstances: Plaintiff has obtained amicus briefs and affidavit testimony from present and former Domestic Violence advocacy groups, establishing, prior to and during the time period of Plaintiffs arrest and prosecution, the NYPD and MDAO provided no training concerning appropriate interrogation of Domestic Violence complaintents suspected of being fabricators. formal

reports of the N.Y.C. Comptroller's Office and the Bar Association of the City of New York criticizing the NYPD and the N.Y.C. Law Department for failing to follow up substantial civil settlements for police misconduct with disciplinary or other remedial action; and the inherent obviousness of the need to train, supervise and discipline police officers in such obligations to counteract the pressure on officers and the powerful incentives they have to close cases and to obtain arrests and convictions. Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner (or his authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing the interrogation of witnesses, the initiation of criminal prosecutions, and the disclosure of Brady material. The Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to compliance by NYPD employees with the above-mentioned constitutional requirements.

122.   During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public. The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City and the NYPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the Individual Police Defendants of Plaintiffs rights under the Constitution and laws of the United States. By virtue of the foregoing, Defendant City of New York is liable for having substantially caused the

foregoing violations of Plaintiffs constitutional rights and her constitutional injuries.

123. **NINTH CAUSE OF ACTION (Monell/42 U.S.C. § 1983 Claim Against Defendant City Of New York For Actions Of The MDAO)** Plaintiff repeats and realleges each and every allegation contained in **contained in ¶1 through ¶121 of this complaint** as if fully set forth herein. At the time of Plaintiffs original prosecution, and continuing, District Attorney Cyrus Vance Jr, as the manager and chief administrator ofthe MDAO, a City agency, maintained a policy, custom and/or practice of deliberate indifference to violations by his employees of the constitutional rights of individuals who made complaints as victims of domestic violence whose batterers held information critical to other investigations and criminally prosecuted in New York County, including, but not limited to, abuse of process, manufacturing of false evidence and testimony through improper coercion of witnesses, Brady violations, reliance on false or misleading evidence and argument at trial ("the policy"), and covering up the same.  The policy permits, encourages, or acquiesces in the commission of, constitutional violations of the rights of suspects and defendants by prosecutors, detective-investigators, and NYPD detectives working with the D.A. 's Office, particularly in high profile or serious cases where arrest and conviction is most desired by the Office. The policy led directly to the violations of Plaintiffs constitutional rights, and the subsequent cover-up of police and prosecutors' wrongdoing, which greatly prolonged Plaintiffs wrongful imprisonment, seizure and other damages. Vance had no employee handbook, manual, or other document setting forth any process for evaluating "fabricators". Defendent CITY is liable for having substantially caused the foregoing violations of Plaintiffs constitutional rights and his resultant injuries.

124. **TENTH CAUSE OF ACTION (Negligent Hiring, Training and Supervision Under**

**State Law; Defendant City of New York)** Plaintiff repeats and realleges each and every allegation contained **contained in ¶1 through ¶121** of this Complaint. By virtue of the foregoing, defendant City of New York is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the MDAO and or the NYPD with regard to their aforementioned duties.

125.    **11ᵗʰ Cause of Action: 42 U.S.C. §1983; Denial Of Due Process Under the Fifth, Sixth and Fourteenth Amendments; Abuse of Process, and Deprivation of Liberty Under the Fourth, Fifth, Sixth, and Fourteenth Amendments; Defendants:** the NYPD and the MDAO, as a matter of policy, stripped Miss Plaintiff of her First Amendment Rights to to petition the Government for redress of grievances:

126.    **12ᵗʰ Cause of Action: 42 U.S.C. §1983; Unreasonable Search & Seizure Under the XXX and X Amendments; *Abuse of Process, and Deprivation of Liberty Under the Fourth, Fifth, Sixth, and Fourteenth Amendments*; Defendants:** knowingly kept her under unreasonable seizure for an elongated period of time during her false arrest and drawn-out prosecution lasting approximately two years (during which the seizure continued) denying her of her Fourth Amendment right against unreasonable searches and seizures.

127.    **13ᵗʰ Cause of Action: 42 U.S.C. §1983; Excessive & Unusual Punishment  Under the Eighth Amendment; *Abuse of Process, and Deprivation of Liberty Under the XXX and XX Amendments*; Defendants:** eschewed Plaintiff her Eighth Amendment rights by denying her police services asserting excessive and unusual punishment

128.   **14th Cause of Action: 42 U.S.C. §1983; Right to a Speedy Trial Under the XXX Amendment; *Abuse of Process, and Deprivation of Liberty Under the XXX and XX Amendments*; Defendants: deprived Plaintiff** her Sixth Amendment rights to enjoy the right to a speedy trial,

129.   **15th Cause of Action: 42 U.S.C. §1983;** Deprivations of life, liberty or property without due process of the law; **Under the 14th Amedment *Abuse of Process, and Deprivation of Liberty Under the XXX and XX Amendments*; Defendants: Denied Plaintiff** her Fourteenth Amendment rights to not be deprived of life, liberty or property without due process of the law:

130.   **16th Cause of Action: 42 U.S.C. §1983; Right to Equal Protection Under the Law Under the 16th Amendment; *Abuse of Process, and Deprivation of Liberty Under the XXX and XX Amendments*; Defendants:** as well as her Sixteenth Amendment right to equal protection under the law.

131.   **17th Cause of Action: 42 U.S.C. §1983; Right to Not be Wrongfully Confined Under the XXth Amendment; *Abuse of Process, and Deprivation of Liberty Under the XXX and XX Amendments*; Defendants:** Wrongful Confinement: Plaintiff was held for between eight to ten days at Rikers Island and in the tombs at 100 Centre street.

132.   **18th Cause of Action: Abuse of Process:** Defendants used the court system to further Plaintiff's misery in an attempt to force her to take a plea to cover-up their wrong-doing and to win a bogus conviction on a disorderly conduct charge brought falsely, ill-investigated, maliciously, and with intent to shield evidence from the court.

133.   **19th Cause of Action. Defamation/Injurious Falsehood**: Defendants continued to make

false statements about Plaintiff on the court record and off as well as concerning other court

matters and when speaking with Domestic Violence advocates representing Plaintiff.

134.   DAMAGES

WHEREFORE, Plaintiff seeks compensatory damages in the amount of $30,000,000 together

with attorney fees and court costs for defamation, loss of work, emotional pain and suffering.

Plaintiff also seeks POLICY CHANGE for the way that Domestic Violence Survivors are treated

within the criminal justice system when they come forward for help in extracting themselves from

life-threatening intimate partner situations. A methodology and better training needs to be

implemented for identifying true victims that is not subject to the whimsy of one lone

prosecutor's bias(es). When a victim is thought to be a 'fabricator' a review of his/her case need

to be examined by Domestic Violence advocates, therapists, social workers, and psychiatrists

before they are denied protections, police services, social welfare services, a normal quality of

life free from harm, and their ability to petition the government for redress of grievances.

Recently, the Manhattan District Attorney Cyrus Vance has stated that his offices reviews 5,000

case of Domestic Violence a year. How many of these cases are labeled 'fabrications' by

prosecutors with other motives or whom are too burdened by their case-loads and lack the

acumen or incentive to make the right call? Plaintiff seeks transparency and public dialogue in

order to ensure other victims don't slip through the cracks allowing their batterers to be

emboldened to harm others and the victim to slip into emotional, psychological, social, physical

and economic dire straights.

135.   Plaintiff used to operate at very high-level as one of the most respected young

photojournalism editors running war correspondents in and out of conflict zones (Exhibit

#16). She is a graduate of Mount Holyoke College and attended the University of Colorado

where she worked on her Master's degree: she won many academic awards and scholarships

and endeavored to have a bright future ahead of her. Plaintiff ran the world's top

photojournalists in and out of war zones and covered top stories on all fronts for over the

past decade. (Exhibit # 16 list of some of Price's journalistic accomplishments.) She had

achieved a high level of respect and admiration based on trust and love and solid, steady,

cool-headed work. Now her life is literally in tatters. Credibility is key to the journalistic

community and the pallor of criminality still follows her as a result of the malicious arrests

and prosecutions. The emotional pain and suffering from these events has debilitating effects

on Plaintiff who has literally lost everything she worked for: her personal identity, her

career, her familial and social support networks, her unborn child, her apartment, her

belongings, had her car repossessed, lost a pet because she did not have funds for vet bills,

been ostracized from every thing and everyone that meant anything to her. She was at one

time trusted and loved until her world fell apart because of these prosecutions by the people

she turned to for help at her darkest, most helpless hour. Plaintiff more than anything wants

her name back and wishes to continue to do the good work she was producing. She struggled

to build a beautiful life for herself. Now she is trying to put the pieces of her life together but

her troubles seem to compound as time slips by.

136.   Plaintiff has been diagnosed with Complex Post-Traumatic-Stress-Disorder by

Psychiatrists and therapists at the St. Luke's Roosevelt Hospital's Crime Victims Center

where she has been in intensive Domestic Violence therapies and programs since 2011 and

by the Psychiatric staff at Bellevue Hospital's 9/11 Survivors' Health Care Program. She

suffers severe depression, bouts of racing thoughts, nausea, temperature swings,

disassociation, mood-swings, sleeplessness, despair, weight fluctuations, digestive disorders

and headaches.

137.   DAMAGES DEMAND WHEREFORE, Plaintiff demands judgment against the

Defendants as follows:


a.   For compensatory damages of not less than $30 million;

b.   For punitive damages against the individual Defendants of $10 million;

c.   For reasonable attorneys' fees, together with costs and disbursements,

d.   pursuant to 42 U.S.C. §1988 and to the inherent powers of this Court;

For pre-judgment interest as allowed by law; and For such other and further relief as

this Court may deem just and proper.


138.   The Manhattan District Attorney, Mr. Cyrus Vance, Jr., quoted Berger v S, 295 U.S. 78,

88 (1935) in his Recommendation for Dismissal of charges against DSK:"Along with the

substantial power conferred upon prosecutors come unique responsibilities. Rather than

serving only as a zealous advocate on behalf of a client, prosecutors have a broader set of

obligations to the community, the victim, and the defendant:


"The [prosecutor] is the representative not of an ordinary party to a controversy, but of a

sovereignty whose obligation to govern impartially is a complaint as its obligation to

govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall

win a case, but that justice shall be done. As such, he is in a peculiar and very definite

sense the servant of the law, the twofold aim of which is that guilt shall not escape or

innocence suffer."


How much longer must Ms. Price suffer?

Kelly Price                          Sworn to me  24th day of July, 2015

Sworn to me on

July 24, 2015

JOSEPH R DANIELS
Notary Public, State of New York
No. 02DA6213768
Qualified in Kings County
Commission Expires January 04, 2018



Exhibit 2 page 5

Fri, 22 Apr 11   1450

Chart Review Print

Metropolitan Hospital Center

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|---|---|---|---|---|---|
| DIS-Hd6 | Price,Cathleen | 1674607 | 1674607-4 | 40Y | F |

Attending Physician
Meletiche,Carlos M, MD

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ED Chest Pai:
Diagnosis   :

Resulted by    : Mccoy,Nakita, RN  (ESOF)
Ordering MD    :  (ESOF)

Exhibit 2 page 6

Fri, 22 Apr 11   1450

Chart Review Print

Metropolitan Hospital Center

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|---|---|---|---|---|---|
| OIS-Hd6 | Price,Cathleen | 1674607 | 1674607-4 | 40Y | F |

Attending Physician
Meletiche,Carlos M, MD

----------------------------------------------------------------------

MDDispNote DellaFavaA
vent Time: Thu, 11 Nov 10  0652                    Status: complete

hu, 11 Nov 10  0700    Documented by Albert David Della Fava, MD

                        : 97.8 F (36.6 C)
                        : 76 bpm
P                       : 127/77
                        : 17
ain                     : 4
isit Provider           : Albert David Della Fava, MD
ttending                : Carlos M Meletiche, MD
isposition              : treated & released
ommunication            : Direct Communication in Patients's Primary Requested
                          Language
inal Primary Dx         : Assault by other specified means
linic Referral          : Surgery - 780
eturn to Clinic         : 10 days for suture removal
lote                    : 39 yo with no PMHx presents after being assaulted.
                          She states she was thrown through a large fish tank in
                          her apartment where she was held down and choked.  She
                          complaints of laceration to her buttocks.  No other
                          complaints.  No sob, no chest pain, no difficulty
                          breathing or swallowing, no drooling.  VS are WNL,
                          patient is crying at first but is comfortable by the
                          end of exam.  She has a left infraorbital abrasion and
                          bruising, no boney tenderness, eomi, her throat has
                          some erythema laterally on both left and right, no
                          wheezing noted, no drooling, no muffled or change in
                          voice; there is a 5 cm superficial laceration to the
                          left buttock and 3 1.5cm deeper, irregular edged
                          lacerations to the right hip which necessitated
                          sutures.  No neurovascular compromise.  Patient was
                          given T#3 for pain, keflex for wound infection
                          prophylaxis, and a general surg consult.  She was
                          advised to see surg or return to ER for suture removal
                          in 10 days.  She was advised to return to ER sooner

*Exhibit 2 page 2*

Chart Review Print

Metropolitan Hospital Center

Location            Patient Name          Patient Number   Visit Number   Age   Sex
DIS-Hd6             Price,Cathleen        1674607          1674607-4      40Y   F

                                         Attending Physician
                                         Meletiche,Carlos M, MD

--------------------------------------------------------------------------------

ED Adult RN Initial Note -- cont'd
Braden Scale : Score: 22 Scale: <u>no risk</u> Sensory Perception: responds to
                     verbal commands,has no sensory deficits Moisture: skin
                     is usually dry Activity: walks frequently during
                     waking hours Mobility: makes position changes without
                     assistance Nutrition: <u>eats over half most meals or on</u>
                     <u>tube feeding or TPN regimen which probably meets most</u>
                     <u>of nutritional needs</u> Friction/Shear: moves in bed and
                     in chair independently.

Skin Lesions?: yes
Lesion Detail: Lesions: laceration, hematoma Location: right posterior
                     thigh, facial
               Lesions: laceration Location: right thigh, left buttocks,
                     face
Photo          : not applicable
--------------------------------------------------------------------------------

    Problem List:
    Diagnosis   :
    Working Diag:

    Resulted by     : Lopez,Michelle, RN  (ESOF)
    Ordering MD     :  (ESOF)

*Exhibit 2*
*page 1*

**SKIN**
__ intact
__ warm, dry

**BACK**
__ no CVA __ tenderness
__ no vertebral tenderness

**EXTREMITIES**
__ atraumatic
__ pelvis stable
__ dps non-tender
__ no pedal edema
__ nml ROM
__ nml color / temp

__ see diagram
__ ecchymosis / laceration
__ crepitus / diaphoresis
__ decubitus
__ see diagram
__ vertebral point-tenderness
__ CVA tenderness
__ muscle spasm / limited ROM

__ see diagram
__ bony point-tenderness
__ painful / unable to bear weight
__ pulse deficit

Joint Exam:
__ limited ROM / ligaments laxity
__ joint effusion

| Last Name: _Ance_ | First Name: _Carreen_ |
|---|---|
| MRN: _167 4107_ | _White_ |

**EKG & XRAYS**

EKG  __ NML  ☐ interp. by me  ☐ Reviewed by me  Rate___
__ NSR  __ nml internals  __ nml axis  __ nml QRS  __ nml ST/T

XRAYS ☐ interp. by me  ☐ Reviewed by me  ☐ Disc'd w/ radiologist
C-spine  T-spine  LS-spine  pelvis
__ nml / NAD  __ no fracture  __ nml alignment  __ soft tissues nml

CXR
__ nml / NAD  __ no pneumothorax  __ nml heart size  __ nml mediastinum

CT Scan                                    ☐ Disc'd w/ radiologist
head  C-spine  chest  abdomen / pelvis
__ nml / NAD___

Ultrasound / FAST Exam
__ nml / NAD___

Other _____

**PROGRESS**
Time_____  unchanged  improved  re-examined

Referred / Discussed with PCP Dr._____ Time___
will see patient in: office / ED / hospital
pt interviewed / examined by ED attending
✓ pt discussed with ED attending _PETCHT1CN1_
Counseled patient / family regarding:     Additional history from:
lab / rad. results  diagnosis  need for follow-up  family caretaker paramedics
Rx given
CRIT CARE TIME (excluding separately billable procedures)_____ min

**CLINICAL IMPRESSION**
Abrasion
Concussion with LOC  w/o LOC
Contusion
Laceration
Fracture
Sprain / Strain  cervical  thoracic  lumbosacral

DISPOSITION-  ☑ home  ☐ transferred_____
Time_____  ☐ admitted  PDA  decubitus / UTI (failing)_____
CONDITION-  ☐ unchanged  ☐ improved  ☐ stable
_____ Prior Anser Open Fine  (MD/DO/PA)
_____ intern, Resident or PA
_____ Attending  MD/DO (11/10)
☐ Template Complete  ☐ See Addendum (Dictated / Template #_____)

**PROCEDURES**

Wound Description / Repair:                    Time:___
length  1.5 × 5 cm  location  Lower lip
linear  stellate  (irregular)  (flap)  into: subcut / muscle
(clean)  contaminated moderately / heavily
distal NVT: neuro/vasc intact    no tendon injury
anesthesia: local  topical  1% (lidocaine)/ buptvacaine  epi / bicarb
                            digital block
prep:  Shur-Clens  Betadine
irrigated with saline                      (debrided) mod. / extensive
wound explored                             wound margins revised
  to base / in bloodless field             multiple flaps aligned
(no foreign body identified)
foreign material removed
repair:  Wound closed with:  wound adhesive / Dermabond / steri-strips
    SKIN-    #__17__   5  .0 (nylon)/ prolene / staples /
                                  silk / edrilon
    SUBCUT-  #_____  .0  vicryl / chromic
    OTHER-   #_____  .0

**LABS**

| CBC | Chemistries | UA | ETOH |
|---|---|---|---|
| normal except | normal except | normal except | TOX___ |
| WBC | Na | | |
| Hgb___ | K___ | | |
| Hct___ | CO2___ | HCG | PT/PTT___ |
| Platelets___ | Gluc___ | serum / urine | INR___ |
| | BUN___ | POS  NEG | |
| | Creat | | |

Multiple Trauma - 18                                   Page 2 of 2

Exhibit 2 page 3

Chart Review Print

Metropolitan Hospital Center

Location          Patient Name          Patient Number    Visit Number    Age    Sex
DIS-Hd6           Price,Cathleen        1674607           1674607-4       40Y    F

                                        Attending Physician
                                        Meletiche,Carlos M, MD

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MDInitNote DellaFavaA
Event Time: Thu, 11 Nov 10  0336                    Status: complete

Thu, 11 Nov 10  0606    Documented by Carlos M Meletiche, MD

T                 : 97.9 F (36.6 C)
P                 : 84 bpm
BP                : 127/77
R                 : 18
Pain              : yes
Pt Walked Out?    : no
Time Pt Seen      : 11Nov2010 0326
Visit Provider    : Albert David Della Fava, MD
Attending         : Carlos M Meletiche, MD
Communication     : Direct Communication in Patients's Primary Requested
                    Language
Chief Complaints  : Assault Sustain 3 laceration to Rt posterolat thigh and
                    facial hematoma
TB/Pneumonia      : Fever: no Cough: no Night Sweats: no Weight Loss: no
                    Shortness of Breath: no
Assessment        : vs wnl, mild distress however patient calmed during exam,
                    no respiratory distress or SOB, abrasion/bruise to right
                    infraorbit, no orbital tenderness EOMI, erythema to
                    lateral neck and throat, 5 cm laceration to left buttock,
                    3 1.5 cm lacerations to right hip, no boney deformates or
                    joint complaints
Plan              : clinical work up as ordered
Diagnosis         : Assault by other specified means
E&M Level         : non critical visit
Non-Critical Vst  : 99283 expanded problem focused hx, exam and mod complex MDM
Attend'g Addendum: Gen Supv
DAWN?             : no
Comment           : See paper chart
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Diagnosis       : E968.8    Assault by other specified means
Principal Pr: E968.8    Assault by other specified means

Fri, 22 Apr 11  1450

Chart Review Print

Metropolitan Hospital Center

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|---|---|---|---|---|---|
| DIS-Hd6 | Price,Cathleen | 1674607 | 1674607-4 | 40Y | F |

Attending Physician
Meletiche,Carlos M, MD

PHM/PSHx/Fam:
Diagnosis    :
Working Diag:

Resulted by      : Meletiche,Carlos M, MD (ESOF)
Ordering MD      : (ESOF)

ED RN Disposition Assessment
Event Time: Thu, 11 Nov 10  0554                    Status: complete

Thu, 11 Nov 10  0558   Documented by Nakita Mccoy, RN

Discharge Disposition: treated & released
Home Care Discharge  : no
Diagnosis            : Assault by other specified means
Vital Signs          : SBP:: 121  mmHg DBP:: 64  mmHg P: 76  bpm R: 17 T:
                       97.8 F (36.6 C) Temp Route: oral O2
                       Saturation: 99  % Comments: ROOM AIR

Barriers to Learning : none
DC Plan              : MEDICATION AS PRESCRIBED. FOLLOW UP IN CLINIC AS
                       DIRECTED. RETURN TO ER FOR ANY NEW OR WORSENING
                       CONCERNS. NAD NOTED.
Valuables/Clothing   : patient kept at own risk
Comment              : PT OUT WITH STEADY GAIT. RESP EVEN/UNLABORED. NO
                       DISTRESS NOTED. PT VERBALIZED UNDERSTANDING OF INSTR
                       PROVIDED BY DELLFAVA, MD
Medication Order(s)   : Adacel (Tdap 11-64y)(Tetanus Toxoid, Reduced
                       Diphtheria Toxoid & Acellular Pertussis Vaccine
                       Adsorbed)
Medication Effect(s)  : no adverse effects for all new medications

Diagnosis    :
Working Diag: E968.8   Assault by other specified means

Exhibit 2 page 7

Metropolitan Hospital Center
Department of Emergency Medicine
1901 First Avenue
New York, NY 10029
212-423-6466

*[handwritten patient info]*
STR CARNEGIE PRICE
Patient Name

farrington plate

Discharge Instructions for: ___Abscess___
(condition)

The emergency examination and treatment you received today is not intended to provide you with a complete medical workup. You should follow-up with a physician for further evaluation and treatment. If you have any questions or concerns regarding your emergency department treatment, please return to the Emergency Department. Notify your own physician for any new or remaining problems. If you are concerned about those problems, please return to this or any other Emergency Department. Otherwise, follow these instructions below.

The results of x-rays, ultrasounds, blood tests and EKGs are preliminary at this time. They will be reviewed by a specialist, usually within 24 hours. Should it be necessary, you will be contacted. Notify your primary care physician if you had such tests done during your emergency visit.

Please make sure that you have notified the physicians and nurses of all of your past medical and surgical history as well as any medications (including over-the-counter and herbal preparations) that you are currently taking.

Return to the Emergency Department, or any other emergency department, for any current or new problem that you think may be a serious threat to your health. These problems vary depending on your underlying condition, but include such problems as high fever, severe pain, shortness of breath, persistent vomiting, excessive diarrhea, heavy bleeding, black stools, seizure/convulsion or change in behavior. Ask your nurse or doctor to inform you of any problems that may be more specific to your visit today.

Continue taking any previously prescribed medications, in addition to any new ones from today, unless otherwise informed. Please make sure that you have informed us today of all of your medications and allergies to medications/ foods, including any recently changed by any other doctor.

Medications: ___Tylenol #3   2 tabs   by   mouth   Every   4   hours   with   Pain___
___Keflex   500 mg   by   mouth   Every   6   hours   for   7   days___

Please pick up or ask for any printed educational materials that we may have specific to your probable condition.

Make an appointment to:
☐ follow up with your primary care provider within ___ days. If you don't have a primary care provider, you can call our clinic appointment center at 212-423-7000 for an appointment to the ___ clinic. Inform them that you need to be seen within this number of days.
☑ follow up in _Surgery_ clinic within _10_ days at 212-423-7000.
☑ follow up in _ER_ clinic within _10_ days at 212-423-7000.

Additional Instructions: ___Please Return to ER for fever, chills, wound discharge or pain.___
___Please Be Seen here or by Surgery in 10 days for suture removal___

These instructions have been explained to me and I fully understand. I also certify that my address and or phone number / emergency contact information provided is accurate.

_____     _____     _____     _____     _Mollo_   _5:31 pm_
Patient Signature     Phone #     PA / MD Signature     RN/PT Signature     Date     Time

White copy: Chart          Yellow copy: Patient                              MHC:052-5/06

Exhibit 2
page 8

CAD #

74776827

**Narrative History:** Key words - (Onset, Provokes, Quality, Radiates, Severity, Position, Changes En Route, Medications)

PMHx: ☐ Asthma ☐ Chronic Renal Failure ☐ Cardiac ☐ Diabetes ☐ Frail/Debilitated ☐ Hypertension ☐ IV Drug Use ☐ Seizure Disorder ☐ Tracheostomy
☐ Amputee ☐ Cancer ☐ COPD ☐ CVA/Stroke ☐ Dialysis ☐ HIV/AIDS ☐ Incontinent ☐ Psychiatric Hx ☐ Substance Abuse ☐ Tuberculosis

Special Conditions: ☐ Bed Confined ☐ Non Ambulatory ☐ Required Stretcher ☐ Valid DNR

Allergies: ☒ No known allergies

Medications: ☐ Unknown

Chief Complaint:

Presumptive Diagnosis:

**(1) PATIENT INFORMATION DISCLOSURE AND ASSIGNMENT OF CLAIM:** ...

**(2) OUT OF AREA TRANSPORT / DIVERSION:** ...

**(3) RELEASE/REFUSAL OF MEDICAL ASSISTANCE (RMA):** ...

SH9001 (7 of 2), Rev 3G, 0510 © 2010 Sansio (Page 2)

10/08/2013

Adam Gargani

To Whom It May Concern:

This reviews a phone conversation I had with the New York City's District Attorney's Office.

On February 2 of 2011 I received a voicemail message from Maria Strohbhen stating she was from the District Attorney's Office and was calling as part of a matter she was handling with one of my tenants, and requested a return call, which I did.

The matter involved Kelly Price who was my tenant at that time at 237 West 120th Street, #1 New York, NY 10027 from July of 2007 to August of 2013.

Miss Strohbhen had several questions to ask me concerning events that had taken place at the building.  Specifically these involved incidents where the police had been called and other events that involved altercations between Ms. Price and a man.

Miss Strohbhen asked me about my knowledge of these events.  In both the structure of the questions and the inflection with which these were asked, it was apparent that the purpose was to question whether these events happened, and as it was directly communicated, to question whether Ms. Price had been telling the truth, which she posed was not the case.

I informed Miss Strohbhen  that I was aware of issues taking place by reports from my other tenants as well as conversations with Ms. Price.   I told Miss Strohbhen  that although I did not have any direct knowledge of what took place since I did not live at the building, and was not present when they occurred, I also had no reason to question the veracity of either the reports from my other tenants or Ms. Price.

I would characterize the reaction of Miss Strohbhen  to my responses as frustrated or annoyed.

She indicated that she was dealing with Ms. Price and was looking to assemble information that refuted claims that Ms. Price had made.  She suggested that Ms. Price had been making false statements.  I told Miss Strohbhen  that although I

could not comment on any specific event on the basis of other than what I had been told, that in my dealings with Ms. Price as a tenant in general I had no reason to presume that her claims, or the reports of my other tenants, were less than the truth.

The names of other tenants or neighbors were not requested.

Miss Strohbhen gave me the impression she was less than satisfied with the outcome of her call and ended it abruptly.


Sincerely,




Adam Gargani
Landlord and Owner of 237 West 120th Street, NY NY 10027


EVergreen 9- Corporation
267 Carleton Avenue
Suite 202
Central Islip, NY 11722

347 237 0100




8 October 2013

*Exhibit 4 Page 1* (handwritten)

# CRIMINAL COURT OF THE CITY OF NEW YORK
## COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br>-against-<br><br>1. Kelly Price (F 40)     ECAB #<br>                                    1208401<br><br>                                    Defendant. | FAMILY OFFENSE<br>DEFENDANT/VICTIM<br>RELATIONSHIP:<br>INTIMATE/ACCESS<br><br>MISDEMEANOR<br>ADA WELLS<br>212-335-4032 |

Raheem Powell, of an address known to the District Attorney's Office, states as follows:

At the times and places described below in the County and State of New York, the defendant committed the offenses of:

| | | |
|---|---|---|
| 1. | PL240.30(2) | Aggravated Harassment in the Second Degree<br>(109 counts) |
| 2. | PL240.30(1)(a) | Aggravated Harassment in the Second Degree<br>(109 counts) |
| 3. | PL240.30(1)(b) | Aggravated Harassment in the Second Degree<br>(109 counts) |
| 4. | PL240.26(3) | Harassment in the Second Degree<br>(1 count) |

the defendant, with intent to harass, annoy, threaten and alarm another person, made a telephone call with no purpose of legitimate communication; the defendant, with intent to harass, annoy, threaten and alarm another person, communicated with a person, anonymously and otherwise, by telephone, by telegraph, and by mail, and by transmitting and delivering any other form of written communication, in a manner likely to cause annoyance and alarm; the defendant, with intent to harass, annoy, threaten and alarm another person, caused a communication to be initiated by mechanical and electronic means and otherwise with a person, anonymously and otherwise, by telephone, by telegraph, and by mail, and by transmitting and delivering any other form of written communication, in a manner likely to cause annoyance and alarm; and the defendant, with intent to harass, annoy and alarm another, engaged in a course of conduct which alarmed and seriously annoyed another person and which served no legitimate purpose.

The offenses were committed under the following circumstances:

Exhibit 4 page 2

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

Page 2 of 4

THE PEOPLE OF THE STATE OF NEW YORK
-against-

1. Kelly Price (F 40)

ECAB #
1208401

Defendant.

FAMILY OFFENSE
DEFENDANT/VICTIM
RELATIONSHIP:
INTIMATE/ACCESS

MISDEMEANOR
ADA WELLS
212-335-4032

Deponent states that on January 27, 2011, from about 23:36 hours until about 23:54 hours, at 315 West 116 Street, deponent received three (3) text messages from defendant, and deponent recognized the phone number of said text messages to be the defendant's phone number.

Deponent further states that on January 28, 2011, at about 00:49 hours, at 315 West 116 Street, deponent received a text message from defendant which stated in substance: I JUST TOOK ALL THE VICADIN AND IBUPROFIN PILLS WANDA GAVE ME AT ONCE. I HOPE I NEVER WAKE UP FROM THIS NIGHTMARE, and deponent recognized the phone number which the text message came from to be the defendant's phone number.

Deponent further states that on January 28, 2011, at about 2:39 hours, at 315 West 116 Street, deponent received a text message from defendant which stated in substance: I AM GOING TO ENACT A REVENGE ON YOU LIKE HELL HAS YET TO EVER SEE. YOU WILL TREMBLE AT MY FURY YOU WORTHLESS MAN-CUNT, and deponent recognized the phone number which the text message came from to be the defendant's phone number.

Deponent further states that on January 28, 2011 at about 10:44, at 315 West 116 Street, deponent received a text message from defendant which stated in substance: SADIE JUST SEALED YOUR FATE. WHAT YOU DONT KNOW IS MY NEW MAN IS VERY POWERFUL RAHEEM. GOT COPS ON A STRING. YOU WILL BE VERY SORRY FOR THIS, and deponent recognized the phone number which the text message came from to be the defendant's phone number.

Exhibit 4 page 4

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

Page 4 of 4

THE PEOPLE OF THE STATE OF NEW YORK
-against-

1. Kelly Price (F 40)

ECAB #
1208401

Defendant.

FAMILY OFFENSE
DEFENDANT/VICTIM
RELATIONSHIP:
INTIMATE/ACCESS

MISDEMEANOR
ADA WELLS
212-335-4032

Deponent further states that on from about 7:30 hours until about 21:30 hours on February 21, 2011, at 315 West 116 Street, deponent received forty-one (41) phone calls from the defendant, and some of said calls were within one minute apart from one another, and deponent answered some of said phone calls and deponent heard and recognized defendant's voice when deponent answered said phone calls, and when deponent answered said phone calls deponent stated in substance to defendant, STOP CALLING MY PHONE.

Deponent further states that on from about 8:32 hours until about 15:02 hours on February 22, 2011, at 315 West 116 Street, deponent received twenty-one (21) phone calls from the defendant, and some of said calls were within one minute apart from one another, and deponent answered some of said phone calls and deponent heard and recognized defendant's voice when deponent answered said phone calls, and when deponent answered said phone calls deponent stated in substance to defendant, STOP CALLING MY PHONE.

Deponent is further states that defendant's above-described actions caused informant to become alarmed and annoyed and feel harassed and afraid for deponent's well-being.

False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.

_____        3/25/11   5:21 PM
Deponent                       Date and Time

ACT 5 Version 4.3.5 Created on 03/25/11 5:18 PM

Exhibit 4 page 3

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

Page 3 of 4

THE PEOPLE OF THE STATE OF NEW YORK
-against-

1. Kelly Price (F 40)                    ECAB #
                                         1208401

                              Defendant.

FAMILY OFFENSE
DEFENDANT/VICTIM
RELATIONSHIP:
INTIMATE/ACCESS

MISDEMEANOR
ADA WELLS
212-335-4032

Deponent further states that on January 28, 2011, from about 00:14 hours until about 11:55 hours, at 315 West 116 Street, deponent received five (5) additional text messages from defendant, and deponent recognized the phone number of said text messages to be the defendant's phone number.

Deponent states that on February 20, 2011, from about 8:57 hours until about 16:05 hours, at 315 West 116 Street, deponent received twenty-two (22) phone calls from the defendant, and some of said calls were within one minute apart from one another, and deponent answered some of said phone calls and deponent heard and recognized defendant's voice, and when deponent answered said phone calls deponent stated in substance to defendant, STOP CALLING MY PHONE and one of the times when deponent answered the phone deponent heard defendant state in substance: I HAVE YOUR LIFE IN MY HANDS AND I WILL GET YOU ARRESTED.

Deponent further states that on February 20, 2011, from about 17:22 hours until about 17:44 hours, at 2271 Frederick Douglas Boulevard, deponent received seven (7) phone calls from the defendant, and all of said phone calls were made within the time span of twenty-two (22) minutes.

Deponent further states that on February 20, 2011, from about 19:10 hours until about 21:56 hours, at 315 West 116 Street, deponent received seven (7) phone calls from the defendant, and some of said calls were within one minute apart from one another, and deponent answered some of said phone calls and deponent heard and recognized defendant's voice when deponent answered said phone calls, and when deponent answered said phone calls deponent stated in substance to defendant, STOP CALLING MY PHONE.

*Exhibit J Page I*

## CRIMINAL COURT OF THE CITY OF NEW YORK
## COUNTY OF NEW YORK

Page 1 of 1

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br>-against-<br><br>**1. Kelly Price (F 40)**     ECAB #<br>                                          1222673<br><br>                                          Defendant. | FAMILY OFFENSE<br>DEFENDANT/VICTIM<br>RELATIONSHIP:<br>INTIMATE/ACCESS<br><br>MISDEMEANOR<br>ADA MARQUEZ<br>212-335-9522 |

Detective Samuel Fontanez, shield 00311 of the 028 Detective Squad, states as follows:

On April 30, 2011, at about 00:01 hours inside of 315 West 116th Street in the County and State of New York, the Defendant committed the offenses of:

1.    PL215.50(3)     Criminal Contempt in the Second Degree
                                  (1 count)

the defendant engaged in intentional disobedience to the lawful mandate of a court in other than a labor dispute.

The offenses were committed under the following circumstances:

Deponent states that deponent is informed by Raheem Powell, of an address known to the District Attorney's Office, that defendant called informant on the telephone and stated in substance: ARE YOU RECORDING ME? I WANT TO TALK TO YOU SO WE CAN WORK THINGS OUT. Deponent is further informed that informant has known defendant for more than two years and informant recognized defendant's voice.

Deponent states (i) that the above actions by defendant are in violation of an order of protection issued on March 24, 2011 by Judge Amaker, docket number 2011NY021627, and which remains in effect until May 10, 2011, (ii) that the order of protection directs the defendant to refrain from communication or any other contact by mail, telephone, e-mail, voicemail or other electronic means with Raheem Powell, and (iii) that defendant is aware of the order of protection in that defendant was present in court when the court order was issued and the order of protection is signed by the defendant.

**False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.**

| | |
|---|---|
| _Det ___ #341_<br>Deponent | _5/6/11_<br>Date and Time |

ACT 5 Version 4.3.5 Created on 05/06/11 5:10 PM

Exhibit 5 page 2

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART D

THE PEOPLE OF THE STATE OF NEW YORK

-against-

KELLY PRICE,

Defendant.

SUPPORTING DEPOSITION
C.P.L. § 100.20

Docket No. 2011NY032918

I, Raheem Powell, of an address known to the District Attorney's Office, County of New York County , State of New York, being duly sworn, depose and say:

that I have read the Accusatory Instrument filed in the above-entitled action and attached hereto and that the facts therein stated to be on information furnished by me are true upon my personal knowledge.

*False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.*

_____
Signature (Deponent)          Date

She called me around 11:45 PM
~~afte she said lets~~ meet up

Exhibit 7 Page 1

SUPREME COURT OF THE STATE OF NEW YORK    NO FEE
NEW YORK COUNTY
100 CENTRE STREET
NEW YORK, NY 10013

CERTIFICATE OF DISPOSITION DISMISSAL

DATE: 08/08/2012                    CERTIFICATE OF DISPOSITION NUMBER: 29363

PEOPLE OF THE STATE OF NEW YORK        CASE NUMBER:              20075-2011
                VS.                    LOWER COURT NUMBER(S): 2011NY021627
                                       DATE OF ARREST:           03/24/2011
                                       ARREST #:                 M11625738
PRICE,KELLY                            DATE OF BIRTH:            11/27/1970

_____
         DEFENDANT

I HEREBY CERTIFY THAT IT APPEARS FROM AN EXAMINATION OF THE RECORDS
ON FILE IN THIS OFFICE THAT ON 07/24/2012 THE ABOVE ACTION WAS
DISMISSED AND ALL PENDING CRIMINAL CHARGES RELATED TO
THIS ACTION WERE ALSO DISMISSED BY THE HONORABLE  DAWSON,T   THEN
A JUDGE OF THIS COURT.

THE DEFENDANT WAS DISCHARGED FROM THE JURISDICTION OF THE COURT.

THE ABOVE MENTIONED DISMISSAL IS A TERMINATION OF THE CRIMINAL
ACTION IN FAVOR OF THE ACCUSED AND PURSUANT TO SECTION 160.60 OF
THE CRIMINAL PROCEDURE LAW "THE ARREST AND PROSECUTION SHALL BE
DEEMED A NULLITY AND THE ACCUSED SHALL BE RESTORED, IN
CONTEMPLATION OF LAW, TO THE STATUS OCCUPIED BEFORE THE ARREST
AND PROSECUTION".

PURSUANT TO SECTION 160.50(1C) OF THE CRIMINAL PROCEDURE LAW, ALL
OFFICIAL RECORDS AND PAPERS RELATING TO THIS CASE ARE SEALED.

IN WITNESS WHEREOF,I HAVE HEREUNTO SET MY HAND AND AFFIXED MY
OFFICIAL SEAL ON THIS DATE 08/08/2012.

                        COURT CLERK

*Exhibit 7 page 2*

NO FEE

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
100 CENTRE STREET
NEW YORK, NY 10013

CERTIFICATE OF DISPOSITION DISMISSAL

DATE: 08/08/2012

CERTIFICATE OF DISPOSITION NUMBER: 29364

PEOPLE OF THE STATE OF NEW YORK
VS.

CASE NUMBER:                20111-2011
LOWER COURT NUMBER(S): 2011NY032918
DATE OF ARREST:             05/06/2011
ARREST #:                   M11639652
DATE OF BIRTH:              11/27/1970

PRICE,KELLY C

DEFENDANT

I HEREBY CERTIFY THAT IT APPEARS FROM AN EXAMINATION OF THE RECORDS
ON FILE IN THIS OFFICE THAT ON 07/24/2012 THE ABOVE ACTION WAS
DISMISSED AND ALL PENDING CRIMINAL CHARGES RELATED TO
THIS ACTION WERE ALSO DISMISSED BY THE HONORABLE  DAWSON,T    THEN
A JUDGE OF THIS COURT.

THE DEFENDANT WAS DISCHARGED FROM THE JURISDICTION OF THE COURT.

THE ABOVE MENTIONED DISMISSAL IS A TERMINATION OF THE CRIMINAL
ACTION IN FAVOR OF THE ACCUSED AND PURSUANT TO SECTION 160.60 OF
THE CRIMINAL PROCEDURE LAW "THE ARREST AND PROSECUTION SHALL BE
DEEMED A NULLITY AND THE ACCUSED SHALL BE RESTORED, IN
CONTEMPLATION OF LAW, TO THE STATUS OCCUPIED BEFORE THE ARREST
AND PROSECUTION".

PURSUANT TO SECTION 160.50(1C) OF THE CRIMINAL PROCEDURE LAW, ALL
OFFICIAL RECORDS AND PAPERS RELATING TO THIS CASE ARE SEALED.

IN WITNESS WHEREOF,I HAVE HEREUNTO SET MY HAND AND AFFIXED MY
OFFICIAL SEAL ON THIS DATE 08/08/2012.

COURT CLERK

**12/20/10**

9:32 PM
1/2  Chalupa u fucking with this dude: but you on my back about girls.  trying to get me locked up for no reason. When I  get locked up I'm showing and telling
2/2 everything.  And calling warren once I get locked up.

9:46 PM: I will turn your life upside down one I'm in Jail.

10:02 pm:  Yea if you say so Hoe:  Everybody is going to know

10:25 pm:  so they will love all the great things I got to show them

10:31 pm:  its your word against mine let's play I got pi and everything else.  Daddy and mommy and big bro will love my info.  And I saw your speed dial u got two guys on speed dial ur sad broke and a hoe.  ur a loser

10:33 pm:  warren rob warren rob warren rob they going to love me


**12/21/10**

6:37 am: lets have make up sex my dick is rock hard

(12/21 time unidentified sometime between 6:37 and 10:17 am)
[TEXT BENEATH NAKED PHOTO OF ME]
U see that window that's your house.  Just leave me alone please I don't want to be with someone that wants to get me locked up.  Plus Hoeing

(12/21 time unidentified sometime between 6:37 and 10:17 am)
[TEXT BENEATH NAKED PHOTOs OF ME]
Two taps I can see every word even your number and I got more.  Just leave me alone and stop lying to the cops.  I'm not going to fuck you intill I get lock up for no reason

10:17 am
I have Keys

10:19 am: U think I'm playing.  Play with the cops and u will never hoe or work again

10:21 a.m: Your is too

10:25 a.m. thanks more for the cops when you get me locked up

10:28 Not when they see what I got and the people who will come downtown to help me

10:32 that paper will

12/22:

9:02 a.m.:  Did you pay my car note

9:20 am: I was making a lot of money when I had my car.  How u think I saved your ass so many times.  When u had no money.  I would love it if u can pay my car note like you said u would but if not we can go 310 310 = 620 or I can pay it by myself just the the info.  please I need that car on the streets.  I don't have to get nj plate it koool.  I will wait intill the weeks are up. ate the gym I'm taking a cab to my lot and going to the dmv to take back my plates

*RESPONSE 9:30 am: You ignore every holiday you spend hem with someone else including my birthday I can't wait till your car is gone*

9:28 am: when they take my car I'm telling every thing that on niya

9:30 am: once that go u know what's going to happen

*9:30 am RESPONSE: I am not talking to you until I get my phones and i'm warning you stay away from the DMV u have no right to conduct my business*

10:07 am: So get my car took of u want.  Just know what's happens after.  no order can stop me from talking.

*RESPONSE: 10:10 am I hate you for ruining me but I will survive you been doing me filthy for too long*

10:16 am:  Hell no tell me how?  other way around.  Ruining you how?  Ur selfish an i u fuck me with the cops or my car u will not survive because I'm going to really ruining u like u keep trying to do to me.  But I'm going to OVER DOSE ON YOU.  So  give me the info or let's go half or pay the note.  but that car is not going no where.

10:22 am: I will never fuck you.  But u fuck me so many times.  So I'm not letting u get away no more.  You know right from wrong so u fuck me I'm going hard.  Please I love you so don't make me do this

Exhibit B pge 1

```
 1   FAMILY COURT OF THE STATE OF NEW YORK
     CITY OF NEW YORK:   COUNTY OF NEW YORK
 2   ------------------------------------x
     In the Matter of a Family Offense
 3   Proceeding                          :

 4   KELLY CATHLEEN PRICE,               :

 5                       Petitioner,     :        DOCKET NO.
                                                  O-10874/10
 6             -against-                 :

 7   RAHEEM POWELL,                      :

 8                       Respondent.     :
     ------------------------------------x
 9   Held:           60 Lafayette Street
                     New York, N.Y. 10013
10                   March 24, 2011 - Part 5

11
     Before:         HONORABLE LORI S. SATTLER, JUDGE
12

13   Appearances:
                     EDWARD GREENBERG , ESQ.
14                   Attorney for the Petitioner

15
                     WILLIAM O'HEARN, ESQ.
16                   Attorney for the Respondent

17

18
     Also Present:
19
                     Kelly Price
20                   Raheem Powell

21

22
                                    Kitty S. Irizarry
23                             Official Court Reporter

24

25
```

Exhibit B pg 2

2

Proceedings

1              COURT OFFICER:  Six and fourteen in the matter of
2    Price and Powell.
3              Counsel, your appearance.
4              MR. GREENBERG:  For the petitioner, Your Honor,
5    Edward C. Greenberg, 570 Lexington Avenue, New York, New
6    York.
7              Good morning.
8              COURT OFFICER:  Raise your right hand.
9              (Whereupon, the following parties were sworn in
10   by the court officer.)
11             MS. PRICE:  Kelly Catherine Price.
12             MR. POWELL:  Raheem Powell.
13             THE COURT:  Good morning, Your Honor.
14             You are entitled to have an attorney in this
15   proceeding.  If you don't have an attorney, I can assign one
16   to represent you.  You can also decide you would like to go
17   forward on our own without an attorney, or if you would
18   like, you can hire or consult with an attorney that you
19   would pick.
20             Do you want an attorney in this proceeding?
21             MR. POWELL:  Yes.
22             THE COURT:  What's your source of income at the
23   present time?  Are you working?
24             MR. POWELL:  Yes.
25             THE COURT:  How much are you earning?

Exhibit B pg 3

3

Proceedings

1           MR. POWELL:  Like $250 a week.

2           THE COURT:  Are you a member of a union?

3           MR. POWELL:  (No response)

4           (Whereupon, the following party was sworn in by

5      the court officer.)

6           DETECTIVE SIMMONS:  Detective Linda Simmons,

7      shield number 2653 of the 28 Detective Squad.

8           THE COURT:  Sorry to drag you in, Detective

9      Simmons, but I have a couple of questions, since I was

10     informed that you are here to arrest the petitioner.

11          DETECTIVE SIMMONS:  We are here to pick her up

12     for another detective that will be arresting her.

13          THE COURT:  Anything related to my case here?

14          DETECTIVE SIMMONS:  It's between the two of them.

15     It's between the two of them and how she calls him and

16     threatens to have him arrested if he doesn't come see her.

17          (Whereupon, Mr. O'Hearn entered the courtroom.)

18          THE COURT:  Mr. O'Hearn is going to be

19     representing the respondent.

20          Do you want to note your appearance.

21          MR. O'HEARN:  William O'Hearn, 225 Broadway,

22     appearing for the respondent.

23          THE COURT:  Okay.  So he had a family offense

24     case at some point in time, but your Order of Protection was

25     vacated when you didn't show up on March 9th.

4

Proceedings

1          MR. POWELL:  I was on the wrong floor.

2          THE COURT:  Did you file again?

3          MR. POWELL:  No.

4          THE COURT:  So are you picking her up for

5     violating the order?

6          DETECTIVE SIMMONS:  She is going to be arrested

7     for aggravated harassment.

8          THE COURT:  Okay, got you.

9          MR. GREENBERG:  Your Honor, with respect to

10    Mr. Powell's claim that he was in the wrong room, I know

11    Your Honor is very busy and doesn't remember this case, but

12    this case --

13         THE COURT:  No.  I actually remember it.

14         MR. GREENBERG:  Good.  Then Your Honor will

15    remember that we delayed to call this case for quite some

16    time because Mr. Powell was not here, and Your Honor called

17    the case at 11:02.

18         THE COURT:  Your client wasn't here either on

19    that date, as I recall.

20         MR. GREENBERG:  That's correct, and I expressed

21    concern about the safety of my client.  So while the court

22    officer called the case at about 9:32, Your Honor didn't

23    hear it until about 11:00.  This was a 9:30 case, so I don't

24    know how Mr. Powell couldn't have found his case within an

25    hour and a half.

Proceedings

1          THE COURT:  His case was dismissed.  He paid the
2      consequence of not being here.
3          I think the bigger issue is your client is about
4      to get arrested.  And I am hearing that right now, and
5      perhaps that makes me concerned about whether I actually
6      need to continue an Order of Protection in this case,
7      because he is not getting arrested, she is getting arrested.
8          Detectives investigated the stories?
9          DETECTIVE SIMMONS:  Yes.
10         THE COURT:  And don't find her story to be
11     credible?
12         DETECTIVE SIMMONS:  No.
13         MR. GREENBERG:  We have a couple of competing
14     issues.  Issue number one, and perhaps not the most
15     important, but I think it should be before Your Honor before
16     the case is discussed before you, no request was made of my
17     office to surrender Ms. Price, notwithstanding the fact that
18     I had lengthy conversations with detectives at the 28
19     Precinct, including Detective Flowers, who is, presumably,
20     going to be the detective arresting Ms. Price today.
21         I had a conversation with Mr. Flowers for over
22     five minutes, and at no time did he ask me to bring
23     Ms. Price in, nor had any request been made to me or to
24     Ms. Price' other attorney to bring her in.  She would have
25     been brought in and this exercise, perhaps, would have been

Proceedings

1    avoided or at least postponed.  That's issue one, Your

2    Honor.

3            Number two, there was an Order of Protection

4    sought against Mr. Powell, whose acts of violence against

5    Ms. Price are well documented by hospital reports and so

6    forth.  The detectives have come in here, and I understand

7    their responsibilities, as they see them, but they come in

8    here without any adjudication at all based on, solely, the

9    word of Mr. Powell, whom Your Honor has already awarded

10   Orders of Protection against, presumably, because Your Honor

11   was satisfied.

12           THE COURT:  Excuse me.

13           An ex-parte Order of Protection -- Everyone comes

14   in here and does an ex-parte the first time, and I -- This

15   is the first time I have the parties in front of me.

16           MR. GREENBERG:  That's true.

17           Not all ex-partes.  Ms. Price had been here

18   before.

19           MR. O'HEARN:  The most recent one was ex-parte

20   because he didn't show up, but that's not the initial one.

21   There was evidence that satisfied Your Honor to issue an

22   Order of Protection, apparently, where Mr. Powell was here

23   on prior occasions.

24           MR. GREENBERG:  My recollection, Your Honor, is

25   when I was here three or four weeks ago, Your Honor stated

**NEW YORK STATE**
**DOMESTIC INCIDENT REPORT**

Agency: NYPD    Sprint # (NYC): _____    Incident #: _____

| | Month | Day | Year | Time (24 hrs) | Address of Occurrence | APT # | Precinct envcy CTV | Aided # (NYC) | Complaint # |
|---|---|---|---|---|---|---|---|---|---|
| **DATES** Occurred | 10 | 21 | 11 | 1630 | 816 237 4 120 st | | 428 | | |
| Report | 10 | 25 | 11 | 1845 | | | | | |

O Officer-Initiated   O Radio Run   O Walk-In

**VICTIM / PARTY1 (P1)**

Name (Last, First, M.I.) / (include aliases): King Kelly

DOB: Month ___ Day ___ Year 70 / Age 40 / O Male O Female

If non-English, language: O Spanish O Chinese O Other: _____

Injured? O No O Yes   Removed to Hospital? O No O Yes If yes, what hospital? _____   O White O Black O Asian O Native American O Other: _____   O Hispanic O Non-Hispanic O Unknown

Describe: _____

**SUSPECT / PARTY1 (P2)**

Name (Last, First, M.I.) / (include aliases): Powell / Amicus

Phone: 646-338819

DOB: Month 08 Day 31 Year 81 / Age 34 / O Male O Female

Street & City: 315 W 116 st   APT # 3B   Zip 10026

If non-English, language: O Spanish O Chinese O Other: _____

Injured? O No O Yes   Removed to Hospital? O No O Yes If yes, what hospital? _____   O White O Black O Asian O Native American O Other: _____   O Hispanic O Non-Hispanic O Unknown

Describe: _____

| | | |
|---|---|---|
| Prior DV History? | O Yes O No |
| Prior DV police report? | O Yes O No |
| Victim fearful? | O Yes O No |
| Access to weapons? | O Yes O No |
| Suspect: Drug/Alc History? | O Yes O No |
| Suspect: Hx suicide threat? | O Yes O No |
| Suspect: Probation/Parole? | O Yes O No |

**SUSPECT/P2 present?**
O Yes
O No

**LIVING SITUATION**
Do parties currently live together? O Yes O No
IF NO, have they lived together in the past? O Yes O No
Do the parties have a child-in-common? O Yes O No

**RELATIONSHIP: (SUSPECT/ P2 to VICTIM / P1)**
O Married
O Intimate Partner/Dating
O Child of victim/party 1
O Relative: _____
O Formerly Married
O Former Intimate/Dating
O Parent of victim/party 1
O Other: _____

**ASSOCIATED PERSONS**

**SUSPECT ACTIONS** *(Check all that apply)*

O Biting
O Destroyed Property (Estimated $ ___)
O Forced Entry
O Forcible Restraint
O Hair Pulling
O Homicide

O Impaired Alcohol/Drugs
O Injury to Child
O Injury to Other Persons
O Injury to Pet/Animal
O Interference with Phone
O Intimidation/Coercion
O Kicking
O Punching

O Pushing
O Sexual Assault
O Shooting
O Slapping
O Slamming Body
O Stabbing
O Strangulation/"Choking"
O Suicide or Attempt

O Threw Items
O Unwanted Contact
O Verbal Abuse
O Violated Visitation/Custody Conditions
O OTHER Suspect Actions: _____

O **Threats:** *(specify)*
O Injure/Kill Persons
O Injure/Kill Self
O Injure/Kill Pet/Animal
O Take Child
O Destroy/Take Property
O Other: _____

O **Threat with weapon**
O **Weapons used:** *(specify)*
O Blunt Object
O Gun
O Motor Vehicle
O Sharp Instrument
O Other: _____

**ARREST & OP / ARREST**

| Arrest Made? | Arrest # |
|---|---|
| O Yes O No | |

Reasons arrest not made on-scene: O No Offense Committed  O No Probable Cause  O Suspect Off-Scene
O Warrant/Criminal Summons to be requested  O Violation level: not in police presence (no citizen's arrest)  O Other: _____

**OFFENSES**

| | Offenses | Law (e.g. PL) | Section (Sub) | Charges Filed |
|---|---|---|---|---|
| 1. | Criminal Cont | PL | | O |
| 2. | | | | O |
| 3. | | | | O |

Offenses Involved: *(check all that apply)* O Felony
O Misdemeanor   O Violation   O Other *(Specify)*

| | | | |
|---|---|---|---|
| Registry Checked? | O Yes O No | OP Court Name: |
| Order of Protection? | O Yes O No | O Family O Criminal O Supreme |
| Stay Away Order? | O Yes O No | O Out of State O Tribal |
| Order Violated? | O Yes O No | Expiration Date: Month 05 Day 24 Year 12 |
| Any PRIOR orders? | O Yes O No | |

**STOP!** * * * * * * * * * * * * * * * * * **COMPLETE STATEMENT ON PAGE 2 NEXT** * * * * * * * * * * * * * * * * →

Photos Taken? O Yes O No   IF YES, photos taken of: O Victim Injuries O Suspect Injuries   O Scene O Damaged Property O Other: _____   Other evidence collected? O Yes O No   IF YES, describe: _____

**INVESTIGATION**

Results of investigation and basis of action taken. *(Were excited utterances, spontaneous admissions or spontaneous statements made?)* O Yes O No   *(Complete 710.30 or other form when applicable).*

AT APPRO P1 STATES P2 DID APPROACH HER YELLING HER NAME WHILE SHE EXITED HER BUILDING. P1 STATES SHE RETURNED TO WALK TO A CAB. P2 CONTINUED WHILE AND THREATENING ATTEMPTS TO APPROACH P1. P1 DOES HAVE ACTIVE OFP IF PRO. # O-10763-11

× No Guns in House.

**OTHER AGENCIES** involved with the parties or incident (e.g. advocates, hospital, probation):

Is there reasonable cause to suspect a child may be the victim of abuse, neglect, maltreatment or endangerment? O Yes O No IF YES, officer must contact the NYS CHILD ABUSE HOTLINE REGISTRY # 1-800-635-1522

O Guns in House  O Guns Seized  O Has Permit  O Permit Seized  Issuing County: _____
Permit #(s): _____   Name on Permit(s): _____

CONTACTS INITIATED BY POLICE:  O Adult Protective Services  O Child Protective Services (or ACS)  O Domestic Violence Services  O Firearms Licensing
O Mental Health  O Parole  O Probation  O Rape Crisis  O Other Agency: _____  Date: _____  Who was notified? _____  Notified by (initial): _____

| Officer's Signature (& Rank) | (PRINT and SIGN) | I.D. 954418 | Month 10 | Day 25 | Year 11 | 1. Was DIR given to the victim at the scene? O Yes O No  2. Was Victim Rights Notice given to victim? O Yes O No  IF NO, give reason: _____ | Page 1 |
|---|---|---|---|---|---|---|---|
| Supervisor's Signature (& Rank) | (PRINT and SIGN) | | | | | | _____ |

**VICTIM / COMPLAINANT COPY**

NYS DOMESTIC VIOLENCE HOTLINE ENGLISH: 1-800-942-6906  SPANISH: 1-800-942-6908   3221-02/2010 DCJS Copyright © 2008 by NYS

| Sprint # (NYC) | Incident # | Precinct serv/CTV | Aided # (NYC) | Complaint # |
|---|---|---|---|---|

### Page 2 of the NYS Domestic Incident Report:
### STATEMENT OF ALLEGATIONS / SUPPORTING DEPOSITION

**Suspect Name (Last, First, M.I.)**

I, Kelly Price (victim/deponent name), state that on 10/21/11, (date) at 11:30 pm
Yo, (nombre de victima/deponente), declaro que en tal fecha __/__/__ en __

(location of incident), in the County/City/Town/Village of New York, of the state of New York, the following did occur:
(donde el incidente ocurrio), el condado/ciudad/aldea/pueblo de __, del estado de Nueva York, lo siguiente occurio:

I was approached on October 21, 2011 as I left my
brownstone apt in the basement of 237 W 120th #1
by my ex boyfriend, Kaheem Powell who attempted
to communicate with me as he approached my
building and he said my name 2x. I fled into
a waiting livery cab. The driver of the cab witnessed
Kaheem walk by and then was video tape from
a surveillance camera on 233 W. 120th. He made no
attempt to avoid contact with me or cross the street
when he saw me coming up the stairs out of my
brownstone apt. onto the side walk. He then made a
funny face @ me & crossed in front of the car
as we tried to pull away.

*(Use additional pages as needed)*

**False Statements made herein are punishable as a Class A Misdemeanor, pursuant to section 210.45 of the Penal Law.**
Declaraciones falsas hechas aqui son castigables como una clase de delito menor, de acuerdo con la seccion 210.45 de la ley penal.

**Victim/Deponent Signature** — Kelly C Price   Date: 6/11/11
Firma de victima/deponente   Fecha

**Interpreter**   Date

**Witness or Officer**   Date: 12/11/11

VICTIM / COMPLAINANT COPY    NYS DOMESTIC VIOLENCE HOTLINE ENGLISH 1-800-942-6906 SPANISH 1-800-942-6908   3221-05/2011 DCJS Copyright © 2011 by NYS DCJS

*Note: Whether or not this form is signed, this DIR form will be filed with law enforcement.*

*Nota: Si esta forma esta firmada, o no, esta DIR forma sera registrada con la policia.*

Marilyn Benetatos
231 West 120th Street
N.Y. N.Y. 10027
(212) 663-5372 (home)
(347) 203-2623 (cell)

To whom it may concern:

I was a neighbor of Kelly Price when she lived at 237 West 120th Street.  I am a manager in Con Edison where I have worked for over 26 years.  I have approximately 70 employees in my chain of command.  I lived on the street for over 12 years, walk my dog every day and know and get along with my neighbors.

In the spring and summer of 2011 and later in 2012, there were some problems on the street related to young teenagers from other blocks hanging out on 120th street vandalizing cars, the school yard, fighting in the streets and being somewhat threatening to others.  As a result, a group of us from the block attended monthly meetings at the police station to make our issues known there and to get further on-going support from the police and the community officer.  The police were very helpful, offered a lot of support and worked with us and the principal at the local school and facilitated the problem going away.

After the formal meeting, the head of the station, Captain Rodney Harrison, invited attendees to speak with him personally about issues of concern.  I went up to him after one of these meetings and asked him why more was not being done to help Kelly Price, who everyone knew was being battered.  I was concerned because the young teenagers seemed to be learning the wrong thing from the situation.  At that time, Captain Harrison told me that he had never seen anything like it, but he/the police were told to not respond to Kelly Price without the direct instruction of the District Attorney's office.  He said it was strange but indicated that, to some extent, his hands were tied.

I found his response really surprising, so it stood out in my mind.  I don't remember when or in what circumstances I came to be telling Kelly Price the

details of my interaction with Captain Harrison.

Please feel free to contact me, should I be able to assist you further.

Sincerely,



# Maria Strohbehn

Assistant District Attorney, Manhattan District Attorney's Office

New York, New York | Law Practice

| Current | Manhattan District Attorney's Office |
|---|---|
| Previous | U.S. Department of Justice, U.S. Attorney's Office, District of Maryland, State Attorney's Office, Anne Arundel County, National District Attorney's Association/ American Prosecutor's Research Institute |
| Education | The George Washington University Law School |

**Send Maria InMail** ▶

**119**
connections

🔗 www.linkedin.com/pub/maria-strohbehn/34/1b9/294

**Background**

## ▦ Summary

As a member of the Trial Division, I am responsible for investigating, indicting, and trying felonies. In Manhattan, we vertically prosecute: I take on cases from arrest and handle them through collateral appeal. As lead prosecutor, I have tried nine cases before juries in New York County and conducted dozens of hearings. I have presented at least fifty cases before the grand jury, including cold-hit DNA cases.

Currently, I am supervising two junior attorneys in a project targeted to reduce crime in Mid-town Manhattan. In the past, I served as a junior member of a project targeting a specific gang responsible for violence in Harlem. These projects highlight the investigative skills necessary for a big-city prosecutor.

**Ads You may be interested in**



**Corporate Headshots**
$25.00 off to LinkedIn Members! Over 240 Recommendations on LinkedIn!

**Find Your Dream Job Fast**
Get free tips on how to find your travel, tourism & hospitality dream job.

**Jump Start Q2 Sales**
Support your hybrid entrepreneurs, overcome the 3 Fatal Flaws in Selling

## People Also Viewed

**Amy Cohen**
Assistant District Attorney

**Daniel Boylan**
Assistant District Attorney, Crime Strategies Unit at New York County District Attorney's Office

**David R. Smith**
Trial Attorney at Adam Leitman Bailey, P.C.



**palmira garcia**

**Erin Tierney**
Assistant District Attorney at New York

**FAMILY COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                                              GF2 8/2002

In the Matter of a **Family Offense** Proceeding            File #:     132891
                                                            Docket #:   O-10874-10
**Kelly Cathleen Price**,

                              Petitioner,                        **SUMMONS**

          - against -

**Raheem Powell**,

                              Respondent.

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK:

          To:   Raheem Powell
                315 West 116th Street #3B
                New York, NY 10026

A petition under Article 8 of the Family Court Act having been filed with this Court, and annexed hereto

YOU ARE HEREBY SUMMONED to appear before this court on

|  |  |
|---|---|
| **Date/Time:** | January 24, 2011 at 9:15 AM |
| **Purpose:** | Return of Process |
| **Part:** | 5 |
| **Floor/Room:** | Floor 8 South/Room PT 5 |
| **Presiding:** | Hon. Lori S. Sattler |
| **Location:** | 60 Lafayette Street |
|  | New York, NY 10013 |

to answer the petition and to be dealt with in accordance with the Family Court Act.

   **On your failure to appear as herein directed, a warrant may be issued for your arrest.**

                                        *Evelyn Hasanoeddin*

**Dated:** November 22, 2010              Evelyn Hasanoeddin, Clerk of Court

**NOTICE:** Family Court §154(c) provides that petitions brought pursuant to Article 4, 5, 6, 8 and 10 of the
Family Court Act, in which an order of protection is sought or in which a violation of an order of protection
is alleged, may be served outside the State of New York upon a Respondent who is not a resident or
domiciliary of the State of New York.  If no other grounds for obtaining personal jurisdiction over the
Respondent exist aside from the application of this provision, the exercise of personal jurisdiction over the
respondent is limited to the issue of the request for, or alleged violation of, the order of protection. Where
the Respondent has been served with this summons and petition does not appear, the Family Court may
proceed to a hearing with respect to issuance or enforcement of the order of protection.

April 22, 2014
Elizabeth Walker

235 West 120th Street
Apt 2
New York, NY 10027
(917) 575 9600 (cell)

To Whom It May Concern:

I was one of Kelly Price's neighbors when she lived at 237 west 120th Street.  I have lived at 235 west 120th Street for five years. I am an attorney and have been a member of the New York State Bar for over seven years.

During the course of our relationship as neighbors Kelly shared with me the trouble she was having obtaining police assistance from members of the 28th Precinct on multiple occasions when she had been attacked by people in our neighborhood, including her ex intimate partner, Raheem Powell. I did not witness the events or attacks Price described to me, but she would cry on my shoulder whenever was assaulted, often by women whom Kelly believed were associated with her ex, his alleged drug dealing associates, or childhood cronies. Kelly was particularly dismayed that the police refused to take her reports, follow up on assaults against her person, or regard her as a member of society needing protection in general. She told me that officers in the precinct told her that the district attorney's office had instructed them not to assist her. Candidly, I did not entirely believe that the police would refuse Kelly, and I suspected that it was likely she was omitting some dispositive reason why the police were reluctant to intervene on her behalf against her various alleged attackers.

On the evening of October 17, 2012, Kelly called me crying and asking for my help.  I observed her distraught and injured after being assaulted in broad daylight on the corner of our block, at 120th Street and St. Nicholas Avenue, while she was en route to her home from the 125th Street subway at approximately 5:30 p.m. I observed that she was disheveled, her stockings were torn, and her knees and hands were bruised and bloodied.  Kelly was nearly hysterical and I had to calm her down and give her medical assistance.  Kelly related that a purported heroin dealer named Willy who was known to many residents in the neighborhood (he operated his business from a visible stoop on Saint Nicholas Avenue) had "jumped" her and hit her in the face, spit at her and pushed her onto the sidewalk while screaming insults at her. I do not recall what Kelly had said to him before or after the attack, but I do recall that she did not provoke or retaliate against him physically. I took pictures of Kelly and her wounds, and encouraged her to call 911 for assistance in reporting the crime.  Kelly stated that she already had called the 28th Precinct and that a patrol car had been sent to the scene of the assault.  Kelly said that when the officers arrived they refused to take her report and called her crazy. Kelly also stated that she had then walked to the precinct a block or so away for help and been rebuffed by the desk sergeant who Kelly said ridiculed and mocked her. Notwithstanding her story that she had sought police intervention earlier that day, I insisted that she call 911 again and report the chain of events.  She complied.

Eventually another patrol car with Officers from the 28th precinct arrived in front of the brownstone we lived in.  Two police officers, whom Kelly has since reminded me were named PO Longo  (shield # 31565) and PO Walker, related to us that they were instructed by the station's Desk Sergeant not to take Kelly's reports.  PO Walker stated that the District Attorney's office had instructed the precinct not to respond to any of Kelly's calls.  I recall being genuinely shocked and outraged to hear this instruction, and further surprised that a young woman, like PO Walker, would be tasked by her superiors with being complicit in such a scheme that leaves domestic violence victims without recourse for protection.  At this juncture, I introduced myself as an officer of the court and member of the NY State Bar, and pressed the officers by reminding them of their legal and ethical responsibilities to provide complainants with police services. I recall that the officers responded more favorably to me than they did to Kelly, but I could not discern whether this was the case because I notified them that I am an attorney, or because I'm just someone other than Kelly Price.  PO Walker stated that she would take basic information about the incident, but she believed that once the precinct began to process the event that it most likely would be circular-filed in the trash bin.  PO Longo gave Kelly an incident ID slip and told her to follow up with the precinct in a few days, then both officers left.  I was then, and remain dumbfounded by what I witnessed transpire that evening.

As a single young woman living and working in NYC, it unsettled me that the police could be so cavalier about the safety of Kelly Price.  Kelly has since told me that the complaint number she was given months later when she inquired as to why no one had ever followed up with her about the incident was 2012-28-005194.  Kelly also informs me that the detective squad at the 28th Precinct closed her incident report without contacting her to identify the perpetrator of the attack or review the emergency room reports or follow-on orthopedic assessments describing Price's injuries resulting from the attack.

Please feel free to contact me with any questions.

Sincerely,

Elizabeth Walker

Exhibit 44d



**DISTRICT ATTORNEY**
OF THE
**COUNTY OF NEW YORK**
**ONE HOGAN PLACE**
New York, N. Y. 10013
(212) 335-9000

**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

July 16, 2014

Kelly Price
534 W. 187th Street #7
New York, New York 10033

**VIA ELECTRONIC AND REGULAR MAIL**

Re: <u>F.O.I.L. Appeal</u>

Dear Ms. Price:

The New York County District Attorney's Office received your Freedom of Information Law (F.O.I.L.) appeal. As the F.O.I.L. Appeals Officer, I have reviewed our file and am prepared to rule on this matter.

You appeal the determination made by Assistant District Attorney Christina Maloney, the Records Access Officer assigned to your request. The substance of the argument in your appeal is that documents from the case files are not exempt under to F.O.I.L. because there is no pending judicial proceeding. Although ADA Maloney was correct in her assessment that you have a pending matter related to the requested cases, it is civil in nature and its disposition will have no effect on the closed criminal cases you request access to.

As such, I am remanding your original request back to ADA Maloney so that she may make a de novo determination. The case files will need to be ordered before she can make a determination on your request, so allow until August 16, 2014 for her determination or update.

In accordance with the above discussion, your appeal is dismissed at this time.

Sincerely,

Susan C. Roque
Assistant District Attorney
Special Litigation Bureau

cc:   Committee on Open Government
Department of State
41 State Street
Albany, New York 12231

Exhibit # 49A

VIA Hand Delivery AND
Electronic MAIL

July 9, 2014

Patricia Bailey
FOIA Appeals Officer
Manhattan District Attorney's Office
City of New York
One Hogan Place
New York, NY 10013

    cc. ADA Christina Maloney, DA Cyrus Vance Jr.

**Ref: Appeal of FOIA Request Denial**

Dear Ms. Bailey

        On June 26, 2014, I filed a Freedom of Information Act (FOIA) request with the MDAO,
requesting all correspondence, memoranda, documents, reports, records, statements, audits, lists
of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs,
facsimile logs, telephone records, call sheets, tape/audio recordings, video/movie recordings,
notes, examinations, database entries, opinions, folders, files, books, manuals, pamphlets, forms,
drawings, charts, photographs, electronic mail, and other documents and things that refer of
relate to myself, Kelly Price, DOB 11/27/70 ssn 521 55 0356, any and all criminal investigations,
investigatory materials and surveillance logs as well as all audio and video materials in which
my name, voice or image is seen, heard or invoked involving any other persons or entities
within twenty (20) business days. In a response letter dated July 3, 2014, ADA Christina
Maloney denied my request citing that:

"You have filed a lawsuit in New York State Supreme Court (Kelly Price v. the City of New
York, et. Al. Index No. 101414/2013). Your request for documents regarding the underlying
criminal cases is denied, as disclosure would interfere with the pending judicial proceeding.
Public Officers Law § 87(2)(e)((I)."

        This letter respectfully appeals the determination of Ms. Maloney. The information
requested under FOIA must be disclosed because the "Judicial Proceeding" exemption of the
FOIA does not apply as the underlying criminal case(s) has/have been dismissed and/or resolved.
The FOIA exemption cited by Maloney [NY State Public Officers Law § 87(2)(e)((I)] provides
protections for information complied for law enforcement purposes and stems from FOIA 5
U.S.C. §552 (b)(7). The intention behind this exemption is to allow agencies to withhold law

enforcement documents in order ***to prevent interference with the enforcement process.***
According to FOIA 5 U.S.C. §552 (b)(7):


***Exemption 7 has six sub exemptions and Exemption 7A protects information because of a
'Judicial Proceeding' that could interfere with law enforcement proceedings, thus protecting
ACTIVE investigations. This exemption is applicable only if an investigation is pending or
planned and the release of the information will compromise the investigation.***


      In the matter of Castle House Dev. Inc. v. The City of New York Justice Schlesinger
states in regard to the NYPD's denial of petitioner's FOIA request by citing the ***same*** NY Public
Officer Law [§ 87(2) (e) ((I)] that: "As far as what was known then and now, there was no
continuing law enforcement proceeding extant and the only known Judicial Proceeding was the
aforementioned tort action in King's County." Justice Schlesinger goes on to explain how a civil
action is not the same as a criminal action in seeking to use its existence as a remedy against
disclosing information sought on a FOIA request by labeling the civil action as a criminal one;
"This exemption is not a viable one in circumstances such as this, a pending civil action." (Castle
House Development Inc. v City of New York Police Dept.  2009 NY Slip OP 51553 (U) [24
MISC 3d 1222 (A)] Justice A Schlesinger 7/10/2009.  SUPREME COURT NY COUNTY.


      In Maloney's Motion to Dismiss filed with NY Supreme Court on April 10, 2014 she
states that "The facts below are gleaned from the records of the DA's Office and recitations
made by plaintiff;   however, much of the plaintiff's record is sealed…" Maloney herself admits
in this statement that my record is sealed and thus NOT AN ACTIVE INVESTIGATION and
thus not subject to the "Judicial Proceedings" exemption as she has wrongly and unlawfully
asserted.  Additionally in order to successfully assert the "Judicial Proceedings" exemption for a
FOIA request that Agency or Actor asserting the denial must state how the release of the
information will compromise said investigation.  Maloney has made no attempt to show in what
way granting my FOIA request would interfere with the civil tort action I have brought vs.
individuals in the MDAO, the NYPD and the City of New York.

      Justice Schlesinger goes on to further review and discuss how Judge Kaye of the
Appellant court made it clear in the opening lines of her unanimous Appellant court finding that
in the case of  M. Farbman & Sons v. New York City Health and Hospitals Corp et al., 62 NY2d
78 (1984):  "Access to records of a government agency under the Freedom of Information
Law…is not affected by the fact that there is pending a litigation between the person making the
request and the agency."  Schlesinger further cites this Court of Appeals decision that:  "an
agency's public records remain as available to its litigation adversary as to any other person…In
the absence of indication from the Legislature, we refuse to read into FOIL the restriction that,
once litigation commences, a party forfeits the rights available to all other members of the
public."

Finally regarding the provisions of the FOIA statute and of particular note:

II.     If any responsive record or portion thereof is claimed to be exempt from production under FOIA, sufficient identifying information (with respect to each allegedly exempt record or portion thereof) must be provided to allow the assessment of the propriety of the claimed exemption. *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir 1973), *cert denied,* 415 U.S. 977 (1974). Additionally any reasonably segregable portion of a responsive record must be provided after redaction of any allegedly exempt material to me, as the law requires. 5 U.S.C. § 552(b).

II.     Ms. Maloney has issued an adverse FOIA records determination in response to my request and as such she was required to (1) notify the requester of the right to appeal; (2) identify the appeals officer and the officer's contact information; and (3) state the date when the appeal letter must be received by the officer and; (4) address my request for all fees to be waived.  As Maloney failed to satisfy the requirements of the first, third and fourth FOIA stipulations I have the right to initiate court action immediately.  Please do respond to this FOIA APPEAL in a timely fashion (within twenty days of receipt of this letter.)

III.    In order to help to determine my status for purposes of determining the applicability of any fees, you should know that I am willing to pay fees up to the amount of $250.00 USD which is a considerable hardship but an attainable one for me. If the fees will exceed this amount, please inform me before fees are incurred. I can be contacted via email or telephone if necessary to discuss any aspect of this request.

        In conclusion: it pains me greatly as a fourth-generation daughter of the City of New York to witness the widespread malpractice and disregard for the letter of the laws of our country that I have been confronted with at every turn in my interactions with the MDAO since approaching them for assistance in extracting myself from a life-threatening intimate-partner situation.  My family members have fought in wars, I myself have been on the frontlines of attacks on our nation, and have lost many friends and colleagues who have died in the name of these same laws that are disregarded, willfully misinterpreted and misappropriated to justify unlawful actions by the members of the MDAO.  Please Ms. Bailey: let this epidemic that has swept the masses of young, mewling ingénues stocking the brigades of the MDAO stop with you.

Sincerely,


Kelly Price
534 w 187 st # 7
New York NY 10033
Signed as per the 2000 Electronic Signature Act