UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

KELLY PRICE

                              Index No. CV-15-05871
                              JURY TRIAL DEMANDED

                    PLAINTIFF

        -against-

DETECTIVE LINDA SIMMONS Individually,
and as an employee of the New York City Police
Department, ADA MARIA STROHBEHN and
ADA KENYA WELLS Individually,
and as employees of the New York County
District Attorney's Office, THE CITY OF NEW YORK,
Deputy DA Audrey Moore, ADA Larry Newman, ADA
Laura Higgins nee Richendorfer, ADA Christina
Maloney, ADA Patricia Bailey, ADA Susan Roque and
DA Cyrus Vance Jr., as employees of the New York
County District Attorney's Office, Inspector Obe of
the New York City Police Department, in her capacity
as an employee of the New York City Police Department,
Rose Pierre-Louis in her capacity as the Commissioner
of Domestic Violence of the City of New York,

                    DEFENDANTS,

-------------------------------------------------------------x

**AMENDED COMPLAINT**

Kelly Price
Pro Se
534 w 187th st. apt #7
New York, NY 10033

RECEIVED
AUG 13 2015
PRO SE OFFICE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/13/15

1

2    1.    Plaintiff Kelly Price, Pro Se, alleges for the following:

3    2.    Plaintiff Kelly Price "PRICE" is an individual and resident of New York, and resides at 534 w 187th st

4    #7, New York, New York 646 676 1940: graciegracie212@gmail.com on behalf of herself and of

5    classes of similarly situated women (together, "Plaintiffs"), based on personal knowledge and upon

6    information and belief, allege as and for the Complaint as follows:

7    NATURE OF ACTION:

8    3.    Confidential informants and complainants on major cases exploit the authority of their position to

9    abuse, traffic and torture the women in their reach.  This abuse is only possible because the City of

10    New York has enabled a culture of complacency to perpetuate within the criminal justice system

11    allowing the Police and District Attorney's to turn a blind eye towards the trafficking of, physical,

12    mental, and economic abuses of women involved in intimate partner relationships with confidential

13    informants or complainants on major cases.  These confidential informants and complainants are

14    integral to Police and DA's successful prosecutions on other, unrelated, cases to the abuse because

15    they allow Police and Prosecutors to maintain their quotas, conviction rates, arrest-rates and to build

16    their careers and move onto higher political office or higher-paid positions of employ.

17    4.    Plaintiff Price was savagely trafficked, beaten and abused by Raheem Andre Powell, an informant and

18    major-case complainant working for the NYPD and MDAO, who threatened to, and did, punish her if

19    she resisted or reported his abuse. Now, Plaintiffs bring this civil rights action pursuant to 42 U.S.C. §

20    1983 against the City of New York (the "City" and, collectively, "Defendants") to obtain declaratory

21    judgment, injunctive relief, and compensatory and punitive damages for deprivation of their

22    constitutional rights. As Plaintiff Price will demonstrate, other women in NYC have been denied

23    Police and DA protections because of the status their abusers have held as Confidential Informants and

24    witnesses.

25    5.    Plaintiff Price was denied the ability to file police reports against Powell for his abuse from August of

26    2009 through January of 2011.

27    6.    Plaintiff Price was denied intake and services at the Family Justice Center.

28    7.    Plaintiff Price was denied her First Amendment Rights to Free Speech similarly to others charged with

29    the unconstitutional statute (NYS CPLR 240.30) that was stricken down as illegal, unlawful,

2        unconstitutional and misleadingly written in broad-strokes in May of 2014 in a decision written by the

3        Hon. New York State Courts Chief Administrative Judge Jonathan Lippman.

4    8.    Plaintiff Price was Denied Police Services and put on a Blacklist and is similarly situated with a class

5        of other victims illegally and unlawfully denied their rights to due process, equal protection under the

6        law et al.

7    9.    The New York City Police Department and the City Itself by extension has recognized the coercive

8        power that uniformed and ununiformed officers wield over complainants of Domestic Violence who

9        come forward in an attempt to make complaints of violence against officers by meting-out separate

10       procedures in the NYPD for the investigation of violence against ordinary citizens and of unformed

11       and ununiformed Police Officers.  The City  is aware that a significant risk of coercion of women who

12       come forward to make complaints against officers exists but it nonetheless permits a culture of

13       systemic trafficking and other abuse of women by Confidential Informants and complainants on major

14       cases  to exist in NYC.

15   10.   The pervasive culture of trafficking, sexual slavery and abuse of women is common knowledge within

16       and without the NYPD and various District Attorney's Offices.  DAs and NYPD officers, brass and

17       minions know not only that women are regularly abused by their Informants and complainants but also

18       engage in a pattern of cover-up, victim-blaming, false-arrest, malicious prosecution, denial of rights,

19       obfuscation and  "GAS-Lighting" of victims in order to curry favor with their informants and to sink

20       the true victim's credibility and esteem to the point of no return.  This especially egregious as the

21       NYPD and District Attorney's offices are fully aware of the psychological repercussions and aftermath

22       of abuse and are cognizant of how to play off of the mental disorders, depression, and physical frailties

23       that domestic violence and traffic victims suffer during and after abuse.

24   11.   Supervisory officers and  managerial District Attorneys facilitate this abuse by allowing the normal

25       mandates (legislated by McKinney's Crime Victims' Laws) of investigations into allegations of

26       trafficking and abuse to fall by the wayside and by turning the other cheek to the victims' ultimate

27       secondary abuse by the criminal justice system when victims are charged and/or threatened  with

28       fraudulently false counter-complaints in order to control them, shut them up, and appease their abusers.

12.     The City facilitates this physical, economic and mental abuse and sexual slavery and other violations of rights by permitting supervisory officers and DAs to operate in the manner alleged herein, by failing to monitor (through oversight or otherwise): failing to train ADAs and NYPD on the mandates of McKinney's NYS Crime Victims' Statutes: by failing to distribute literature or to post signs in its precincts, Family Justice Centers and Crime Victims Centers alerting victims of their rights as a crime victim: by failing to ensure that when a victim of DV or trafficking is denied services bc she is deemed a "fabricator" that proper DUE PROCESS is in place to ensure that the opinion of one prosecutor or officer is not heavily weighted by their motivation to bring-in convictions and make cases already in the works.

13.     The City fails to protect from retaliation women who make complaints against Confidential Informants or Complainants on major cases by placing them on "Do NOT SERVE" lists effectively barring them from receiving Police services and protections in the future giving other perpetrators and abusers, skilled at sousing-out and targeting weak and fragile victims in a depressed and helpless state an actual and perceived free hand to victimize these women. This retaliation in Plaintiff Price's case was well known in her neighborhood of Southwest Harlem and Plaintiff Price was often attacked by Powell's acquaintances, family members and other predators in the area BECAUSE THEY WERE AWARE OF PRICE'S STATUS AS A NAMED MEMBER OF THE "DO NOT SERVE LIST" THAT THE 28TH PRECINCT WOULD NOT ASSIST. The City's customs, policies, practices, acts, and omissions allowed Raheem Powell to abuse Plaintiff Price and for other women to be abused and allowed other predators, Powell, Powell's circle, the MDAO and the NYPD to retaliate against Price

14.     The City remained indifferent to the widespread abuse and denial of protections and victims' services to Plaintiff Price and others. Rather than taking prompt steps to investigate and punish Powell, the City instead both continued to use Powell as a informant and complainant despite the credibility issues he had as his record already included a Domestic Violence Felony. The City treated Price as an adversary, refusing all requests to accept and investigate her 61 reports of his felony assaults and battery and refusing information about its investigation of her allegations, first on the ground that the investigation found no wrongdoing, and later on the mutually exclusive ground that the investigation that purportedly had "found" no wrongdoing was nevertheless still ongoing. The City has also

4

2    withheld records of the abuse and blackmail and campaign of terror that Powell enacted against Price

3    —text messages on Price's phone proving the battery, coercion trafficking and violence and refused to

4    return the personal property/phones to Price that she provided the City to assist its purported

5    investigation.

6    JURISDICTION AND VENUE

7    15.    This court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

8    16.    Venue is proper in the United States District Court for the Southern District of New York pursuant to

9    28 U.S.C. § 1391(b).

10

11    PARTIES

12    17.    Plaintiff Price is a former detainee at RMSC on Rikers Island who currently resides in New York City.

13    18.    At all times referred to herein, Linda Simmons was a New York City Police Detective Officer

14    employed by NYPD and assigned to work the 28th precinct. Plaintiff Price sues Simmons in her

15    professional and individual capacities Upon information and belief, Simmons is a resident of the State

16    of New York.

17    19.    Defendant the City of New York is a municipal entity created and authorized under the laws of the

18    State of New York. It is authorized by law to maintain a Police department, Office for the prevention

19    of Domestic Violence headed by an appointed Commissioner of Domestic Violence and also

20    authorized to maintain District Attorney's office which act as its agent in the area of protection, justice,

21    penalties for crimes and security of the citizenry of New York City and for which it is ultimately

22    responsible. The City maintains NYPD and the MDAO, which are municipal entities, created and

23    authorized under the laws of the State of New York. The NYPD is authorized by law to carry out all

24    protection and security functions for the City and assumes responsibility for the care, custody, and

25    control of persons who turn to the City looking for help in extracting themselves from violent intimate

26    partner relationships and trafficking subjections.

27    20.    At all times referred to herein, defendant Maria Strohbehn was a New York City Assistant District

28    Attorney employed by the Manhattan District Attorney's Office and assigned to work the 28th precinct

29    and other Northern Manhattan precincts as part of operation "Crew Cut". Plaintiff Price sues

2    Strohbehnin her professional and individual capacities Upon information and belief, Strohobehn is a

3    resident of the State of New York.

4    21.    At all times referred to herein, defendant Cyrus Vance was the New York City  District Attorney

5    employed by the Manhattan District Attorney's Office". Plaintiff Price sues Vance in his professional

6    and capacities. Upon information and belief, Vance is a resident of the State of New York.

7    22.    At all times referred to herein, defendant Audrey Moore was a New York City Assistant District

8    Attorney employed by the Manhattan District Attorney's Office.  Plaintiff Price sues Moore in her

9    professional and individual capacities Upon information and belief, Moore is a resident of the State of

10    New York.

11    23.    At all times referred to herein, defendant Larry Newman was a New York City Assistant District

12    Attorney employed by the Manhattan District Attorney's Office.  Plaintiff Price sues Newman in his

13    professional capacity.  Upon information and belief, Newman is a resident of the State of New York.

14    24.    At all times referred to herein, defendant Christina Maloney was a New York City Assistant District

15    Attorney employed by the Manhattan District Attorney's Office.  Plaintiff Price sues Maloney in her

16    professional and individual capacities. Upon information and belief, Maloney is a resident of the State

17    of New York.

18    25.    At all times referred to herein, defendant Laura Higgins nee Richendorfer was a New York City

19    Assistant District Attorney employed by the Manhattan District Attorney's Office.  Plaintiff Price sues

20    Higgins in her professional and individual capacities Upon information and belief, Higgins is a

21    resident of the State of New York.

22    26.     At all times referred to herein, defendant Patricia Bailey was a New York City Assistant District

23    Attorney employed by the Manhattan District Attorney's Office.  Plaintiff Price sues Bailey in her

24    professional and individual capacities Upon information and belief,  Bailey is a resident of the State of

25    New York.

26    27.    At all times referred to herein, defendant Inspector Obe was a New York City Inspector and

27    Commanding Officer of the 28th Precinct employed by the New York City Police Department.

28    Plaintiff Price sues Obe in her professional and individual capacities. Upon information and belief,

29    Obe is a resident of the State of New York.

28. At all times referred to herein, defendant Rose Pierre-Louis was a the Commissioner of Domestic Violence of the City of New York appointed by the NYC Mayor's office and employed by the City of New York. Plaintiff Price sues Pierre-Louis in her professional capacities Upon information and belief, Pierre-Louis is a resident of the State of New York.

29. PRELIMINARY STATEMENT/Introduction: Plaintiff Price has been unable to receive a satisfactory response to her previous demands that she be restored to the status she enjoyed before her false arrest, unlawful imprisonment and defaming by defendants and that training, policies and procedures be set in place to evaluate domestic violence and trafficking victims' complaints and veracity on a comprehensive level especially when the abuser is a confidential informant or complainant working with the NYPD or DA's office(s) on other, unrelated cases. Currently there are special procedures in place in the NYPD Patrol Handbook for handling DV complaints allegedly committed by an uniformed or ununiformed NYPD member. These special procedures are indicative that the NYPD recognizes that people with access to law enforcement channels hold great sway over investigations and victims. Why isn't there a separate process denoted for those who work tacitly as informants or complainants on major cases who receive special handling from precincts and district attorney's offices?

30. McKinney's Executive Law; Article 23, Fair Treatment Standards for Crime Victims is explicit in its mandate of procedures that must be followed when a victim reports trafficking or certain felony assaults. As Plaintiff will demonstrate, NOT ONE of these procedures were followed when Plaintiff turned to the NYPD and the MDAO for assistance (Exhibit # 45). Further training and re-iteration of these laws needs to be implemented within the NYPD and District Attorney's offices such as the MDAO as Plaintiff is not the only trafficking victim in NYC to have been refused to be recognized (Exhibit # 46 ) by the NYPD and Criminal Justice Authorities as a trafficking victim. According to the NY Penal Law 135.35 the crime of "Labor Trafficking" is committed: "if a person compels or induces another person to engage in labor, or recruits, entices, harbors, or transports such other person by… Using force or engaging in any scheme, plan or pattern to compel or induce such person to engage in or continue to engage in labor activity by means of instilling a fear in such person…" the protections

2      outlined (Exhibit #s 46 & 47) ) by the various statutes of McKinney's such as receiving emergency

3      social and medical services, to be notified of the availability of crime victim compensation, support

4      programs, prompt return of property held for evidentiary purposes, to be protected from intimidation,

5      to have one's case reported by the MDAO to the Director of the Office of Victims' Services, the right

6      to be pre-certified and/or certified as a victim of human trafficking, and finally confirmation as a

7      victim of human trafficking (McKinney's Social Services Law (483-aa-483 cc) (Exhibit # 45).

8    31.   Plaintiff also seeks POLICY CHANGE for the way that Domestic Violence and Trafficking Survivors

9      are treated within the criminal justice system when they come forward for help in extracting

10      themselves from life-threatening intimate partner situations. A methodology and better training needs

11      to be implemented for identifying true victims that is not subject to the whimsy of one lone

12      prosecutor's bias(es). When a victim is thought to be a 'fabricator' a review of his/her case needs to be

13      examined by Domestic Violence advocates, therapists, social workers, and psychiatrists before they are

14      denied restraining orders, protections, police services, social welfare services, a normal quality of life

15      free from harm, and their ability to petition the government for a redress of grievances.

16    32.   This Lawsuit seeks to hold the defendants, CITY OF NEW YORK et al, liable for, but is not limited to

17      misconduct under the federal civil rights statute, 42 U.S.C. 1983. The unlawful actions of police and

18      prosecutors documented in this lawsuit resulted from affirmative or de facto municipal policies,

19      practices and customs to violate the constitutional rights of trafficking and domestic violence

20      survivors, suspects, and defendants, or from deliberate indifference by policymaking officials, acting

21      on behalf of the City of New York, to such violations. As Plaintiff will demonstrate.

22

23      STATEMENT OF FACTS

24    33.   The basis for this lawsuit and State and Federal jurisdictions are violations of the USC §1983  et. seq.,

25      & Title United States Code §  ("The CIVIL RIGHTS Act") of Price's CONSTITUTIONAL RIGHTS

26      and various State Law against malicious prosecution, This is a civil action, pursuant to 42 U.S.C 1983,

27      and state law, seeking monetary damages for Plaintiff, Kelly Price, due to her wrongful arrest,

28      malicious prosecution, and denial of police services caused by the pervasive misconduct of the

29      Manhattan District Attorney's Office ["MDAO"] and the New York City Police Department and

2       POLICY CHAGE for the way victims of Domestic Violence and Trafficking Victims are evaluated by

3       the NYPD and MDAO when they approach the "authorities" in the darkest, most desperate days of

4       their lives.

5   34.     LEGAL ARGUMENT Defendant's would have the court believe that they followed all proper

6       protocols and procedures when handling her complaints and that PLAINTIFF was not a victim but a

7       FABRICATOR of her own injuries undeserving of services and justice and the City Law Department

8       Lawyers will laughably try to convince the court that the defendants are only guilty of "Negligent

9       Investigation" of which there is no Federal or State proscription against.   These base conclusions were

10      drawn by inexperienced and biased members of the MDAO and NYPD whom had much at stake in the

11      evaluation of Plaintiff's complaints of abuse and trafficking against her batterer as he, Raheem Andre

12      Powell, was acting as a complainant himself in an attempted murder case against a party unaffiliated

13      with PLAINTIFF and also provided information and acted as a confidential informant for the NYPD

14      and the MDAO who assisted in the arrests of countless alleged "gang" members operating in Harlem

15      where Plaintiff resided at the time of the infractions against her person and her rights.  PLAINTIFF

16      addresses, and endeavors in the space available to correct, these mischaracterizations of law and fact

17      below, and thereby to demonstrate that defendants' lack of training and willful disregard to Plaintiff's

18      rights as a victim should be recognized by the court and that procedures and policies be mandated for

19      the handling of trafficking and  intimate partner victims by the City of New York.

20   35.    Plaintiff Kelly Price brings forth the following causes of action and alleges the following: Beginning in

21      2010 and into early 2011, Plaintiff was in contact with various members of the Criminal Justice

22      community including Manhattan Family Court Judge Sattler, who issued an order of protection in

23      November of 2010 (Exhibit #25 ) against Plaintiff's abuser, Raheem Andre Powell.  Plaintiff Price was

24      at various times in touch with ADA Maria Strohbehn, ADA Kenya Wells, Deputy DA Audrey Moore

25      (indirectly through Strohbehn), Detective Linda Simmons and other members of the 28th precinct,

26      NYPD, for assistance in her attempts to extricate herself from her batterer, Raheem Andre Powell.

27      Powell had abused Plaintiff physically, mentally, and economically and engaged in a brutal campaign

28      of trafficking and controlling her against her will. Instead of investigating Plaintiff's claims and

29      assisting her Plaintiff was arrested and charged with hundreds of counts of aggravated harassment

2    towards her batterer and one count of contempt of court resulting in Plaintiff's false arrest, malicious

3    prosecution, unlawful Imprisonment, and defamation. Various abuses of process and Injurious

4    Falsehoods were levied against her in violation of her civil rights Constitutionally protected under the

5    1st, 4th, 5th, 6th, 8th, 14th, and 16th Amendments from unreasonable search and seizure et al and

6    violations of procedural due process and the New York Constitution.

7    36.    This lawsuit seeks to hold the defendant CITY OF NEW YORK liable for the above and below stated

8    misconduct under the federal civil rights statute, 42 U.S.C. § 1983, and Monell v. Dept. Of Social

9    Services, 436 U.S. 658 (1978) and under state law. The unlawful actions of police detectives and

10   prosecutors documented in this lawsuit resulted from affirmative or de facto municipal policies,

11   practices and customs to violate the constitutional rights of criminal suspects and defendants involved

12   in making Domestic Violence complaints, or from deliberate indifference by policy-making officials,

13   acting on behalf of the City of New York, to such violations. As Plaintiff will demonstrate, both the

14   NYPD and the MDAO, as a matter of policy, instructed and coerced witnesses to give false or

15   unreliable testimony through their misuse of their powers of arrest and interrogation, unlawfully

16   concealed exculpatory or impeachment evidence known as "Brady" material, and lied to or misled

17   courts, defense attorneys, and criminal defendants in order to cover up their unlawful behavior.

18   Further they placed Plaintiff on a "DO NOT SERVE" list making it impossible for her to attain police

19   services of protections in the wake of the MDAO and NYPD losing the protracted criminal

20   proceedings against her

21   37.    The principal individual defendant, acting pursuant to unlawful municipal policy, who caused

22   Plaintiffs unconstitutional arrest, prosecution, inflicted intentional emotional distress and orchestrated

23   the defaming and slander of plaintiff, is the very (ret.) NYPD detective formerly assigned to the 28th

24   precinct, Linda Simmons, who was tasked to investigate Plaintiff's complaints of abuse against her

25   batterer, Raheem Andre Powell. Simmons' illegal behavior in Plaintiff's case included the following:

26   a.    Testifying under oath by stating "YES" in Judge Sattler's Family Court Part in response to a

27   question from the Hon. Judge Sattler claiming she had investigate Plaintiff's allegations of

28   Domestic Violence perpetrated against her person and then exclaiming that she had found Plaintiff

29   Price to be "not credible" (EXHIBIT 13 # March 24th and Feb 1 Family court transcripts) when in

2    fact NO INVESTIGATION HAD TRANSPIRED. (Exhibit # NYPD Handbook Procedures)

3    b.    In violation of various criminal statutes, directing the preparation and filing, with the MDAO, the

4    NYPD, of official records she knew were false alleging that Plaintiff had fabricated her injuries

5    sustained at the hands of Mr. Powell, and that her "fabrications" were a threat to Mr. Powell

6    (Exhibit #s 4 &5 )

7    c.    Repeatedly making willfully false representations of "fact" in such statements under oath to create

8    a "factual" basis to obtain court orders of protection on behalf of Mr. Powell securing Plaintiff's

9    constriction of willful and free movement by the court, to gain illegal custody of plaintiff, and to

10    coerce plaintiff. (See Exhibit 26 #s Family court orders) after March 24th giving Powell the more

11    restrictive 100 yard protection and eliminating it from Plaintiff's OP therefore making it illegal for

12    Plaintiff to happen to be in any space in her neighborhood where Powell would enter after

13    including bodegas, parks where bbqs were held, dog runs, coffee shops, drugstores etc.  It felt to

14    Plaintiff in fact that often when she would be in a public place in her neighborhood that Powell

15    would appear shortly thereafter forcing her to leave and to call public attention to the situation,

16    causing her social injury and personal anguish, insult, shame and injury.  This happened numerous

17    times in the period of March 24, 2011 through July 24, 2012 when all charges were dismissed and

18    sealed against Plaintiff making the restraining order a nullity.)

19    d.    Lying to prosecutors in the MDAO who were investigating Plaintiffs allegations of abuse, by

20    flatly denying various allegations had ever taken place even though she herself had never

21    investigated the facts of the abuse.   Simmons never walked the 175 yards from the precinct to

22    Plaintiff's Brownstone to question neighbors about abuse:  she never viewed or reviewed

23    photographs of Plaintiff's injuries: never asked Plaintiff to sign HPPA forms for her various

24    emergency room admissions for injuries sustained at the hands of Powell: never examined text

25    messages Plaintiff had received from Powell detailing physical and other threats against her

26    person, name and reputations her would unveil if she reported his abuse against her:  never

27    reviewed the various receipts Plaintiff had been given by various window and door repairmen who

28    had been called to her home repeatedly to fix her front door and windows which had been broken

29    as Powell would try to gain illegal entry to Plaintiff's garden-level brownstone apartment when he

2          would fly into fits of rage etc.

3   38.   Equally importantly, Plaintiff seeks additional recovery against New York City for the actions of

4      Assistant District Attorneys Maria Strohbehn, Audrey Moore and Kenya Wells for initiating Plaintiff's

5      malicious prosecution based upon allegations in Criminal Court complaint they knew were neither true

6      nor false as they had not investigated the facts of Plaintiff's abuse they had no factual basis to believe

7      their allegations to be true.

8   39.   Additionally Plaintiff was placed on a "NO SERVICES LIST" which prohibited her from attaining

9      police services of any kind because of the actions of the MDAO against her 1st, 5th, 8th, and 14th

10      Amendment entitlements to Equal Protection under the Law, to Redress the Government for

11      Grievances, Due Process and from Unusual Punishment.  Many other New Yorkers have been placed

12      on this list and DENIED police services:  Plaintiff seeks the court to correct this practice by the Police

13      and Borough District Attorneys including the MDAO and NYPD of denying the citizenry of Gotham

14      the ability to make police reports, to receive equal protection under the law, due process, and to be

15      protected from unusual punishment.  In a December, 2014 New York Times Magazine interview DA

16      Vance states:

17          "By May 2010, Parker and Vance had roughed out the structure of the so-called Crime Strategies

18          Unit (C.S.U.). They divided Manhattan's 22 police precincts into five areas and assigned a senior

19          assistant D.A. and an analyst to map the crime in each area. C.S.U. staff members met with patrol

20          officers, detectives and Police Department field intelligence officers. They asked police

21          commanders to submit a list of each precinct's 25 worst offenders — so-called crime drivers,

22          whose "incapacitation by the criminal-justice system would have a positive impact on the

23          community's safety." Seeded with these initial cases, the C.S.U. built a searchable database that

24          now includes more than 9,000 chronic offenders, virtually all of whom have criminal records. A

25          large percentage are recidivists who have been repeatedly convicted of grand larceny, one of the

26          top index crimes in Manhattan, but the list also includes active gang members, people whom the

27          D.A. considers "uncooperative witnesses," and a fluctuating number of violent "priority targets,"

28          (Exhibit # 48).

29   40.   How many "uncooperative witnesses" and crime victims have been unwittingly placed on this list and

2      denied services? Plaintiff seeks the court to explore this unconstitutional process vis a vis discovery

3      regarding exactly how and why one is put on such a list and to question if at all this is even a legal

4      practice employed by the MDAO and NYPD and to stave its practice and further implementation.

5   41.  The MDAO refused to investigate Plaintiff's claims of abuse.  Plaintiff received a phone call from DA

6      Strohbehn on February 2, 2011.   Strohbehn informed Plaintiff that she had "less than an hour" to get

7      downtown to her office regardless of the difficulty in travelling that day as the city had been blanketed

8      by a blizzard the previous evening. When Plaintiff arrived at her office she instructed her to wait in the

9      Safe Horizon office for over two hours.  When she greeted Price she withdrew her right hand as

10      Plaintiff outstretched hers to as is common in professional and official circumstances to do.  She  led

11      Plaintiff  brusquely down the hall of the 2nd floor where she and Det. Simmons and another Dt from the

12      28th pct pepper Plaintiff with questions about how Price came to own a car, how Price earned a living,

13      and accuse Price of answering her phone earlier in the day "with a fake accent.'  They proceeded to

14      call Plaintiff a liar and refuse to look at any material that proved Price was telling the truth.  ADA

15      Strohbehn informed Price she was declining to prosecute Raheem, and informed her that if I make

16      another report against RAHEEM that she will 'lock Price up and throw away the key."  She also

17      informed the 28th precinct that she will personally handle all of Price's "police service needs" and if

18      Price have "a bullet-hole in her head that they are to call the Das office first to clear police services

19      offered first before responding to any call from Price."  She informs Price that she has already assisted

20      Raheem in drawing up a Family Court petition to attain a counter restraining order against me in order

21      to press counter-claims of harassment against Price.  She further instructs Price that even though she

22      haven't been served that Price am to show up in family court the next morning to respond to Raheem's

23      charges.  She tells Plaintiff that she  will be charged with contempt of court if Price does not show up

24      "as she as an officer of the court (NOTE FAMILY COURT-NOT Criminal COURT where Stohbehn

25      has jurisdiction) was ordering Price to appear even though there was no time to serve Price with a

26      subpoena (sic)."  She tells Price her only concern is that "an innocent black man has been sitting in jail

27      for 24 hours…" Price asked to speak with her supervisor to show her  proof and have neighbors

28      interviewed etc. and Ms. Strohbehn informs Price that "she already checked with her supervisor

29      (Audrey Moore) and that she has been given carte blanche to deal with me with finality."  Price is

2         instead thrown out of her office.  Plaintiff's landlord and others try to speak with Ms. Strohbehn to

3         introduce investigatory evidence and she rebuffs them (please see attached letters from landlord, Adam

4         Gargani, My neighbors Marilyn Benetatos et al about Ms. Strohbehn's and ADA Kenya Wells' refusal

5         to investigate. Exhibit #a 3, 17 and 30 respectively.

6    42.    This lawsuit also seeks to hold the City of New York accountable for the actions of attorneys at the

7         Manhattan District Attorney's Office, Susan Roque, Patricia Bailey and Christina Maloney, for their

8         misconduct, in an administrative capacity as Freedom of Information Law ("FOIL") officers, in

9         covering up and withholding documents and information formally and continually requested by

10        Plaintiff that directly hold baring to these proceedings. The unlawful denial of Plaintiff's FOIA

11        requests by the SAME employee of the MDAO who REPRESENTED the individual DA defendants in

12        a previous complaint filed incorrectly in NY State Supreme Court prevented Plaintiff's receiving of

13        items in her File unlawfully and with intentional and willful fraud, unethically, maliciously, and

14        against the requirements of McKinney's that crime victims be able to request and receive a copy of

15        their crime victim report.

16    43.    Plaintiff, Kelly Price, is an intelligent and able individual who had built a career in photojournalism

17        and would have continued to earn a substantial salary as an editor, but for the defendants' misconduct

18        in causing her wrongful prosecution, and imprisonment. She seeks $30 million in actual damages, and

19        $10 million in punitive damages, for the egregious misconduct that deprived her of the joys of bearing

20        the child she miscarried, of family life, of her journalism career, emotional pain and suffering,

21        defamation and of living as a free person.

22    44.    JURISDICTION, VENUE, and CONDITIONS PRECEDENT

23        a.   This action arises under 42 U.S.C. §§ 1983 and 1988, and under the common law of the State of

24           New York. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343, and by

25           principles of pendent jurisdiction.

26    45.    On or about October 22, 2013 Plaintiff served upon Defendant City of New York a timely notice of the

27        present claims pursuant to New York General Municipal Law § 50-e.

28    46.    This action has been commenced within three years of the accrual of Plaintiffs causes of action.

29    47.    Plaintiff has duly complied with all of the conditions precedent to the commencement of this action.

2        THE PARTIES

3    48.    Plaintiff, Kelly Price is a citizen and resident of the State of New York and of the United States, and

4        resides within the City of New York in the Southern District of New York.

5    49.    Defendant, CITY OF NEW YORK, of which the County of New York is a subdivision, is a municipal

6        corporation of the State of New York.

7    50.    Defendant, Linda Simmons, "Simmons" at all relevant times, was a Detective in the 28th precinct

8        which is in New York County, the City of New York, acted toward Plaintiff under color of statutes,

9        ordinances, customs, and usage of the State of New York and the City of New York, and acted within

10        the scope of her employment. She is sued in her individual and her official capacities.

11    51.    Defendant, Maria Strohbehn, "Strohbehn" at all relevant times, was an assistant district attorney in

12        New York County, was employed by the City of New York, acted toward Plaintiff under color of

13        statutes, ordinances, customs, and usage Of the State of New York and the City of New York, and

14        acted within the scope of her employment. She is sued in her official capacities.

15    52.    Defendant, Audrey Moore, "Moore" at all relevant times, was an assistant district attorney in New

16        York County, was employed by the City of New York, acted toward Plaintiff under color of statutes,

17        ordinances, customs, and usage Of the State of New York and the City of New York, and acted within

18        the scope of her employment. She is sued in her official capacities.

19    53.    Defendant, Kenya Wells, "Wells" at all relevant times, was an assistant district attorney in New York

20        County, was employed by the City of New York, acted toward Plaintiff under color of statutes,

21        ordinances, customs, and usage of the State of New York and the City of New York, and acted within

22        the scope of his employment. He is sued in his official capacities.

23    54.    The Manhattan District Attorney's Office "MDAO" is an agency of the CITY OF NEW YORK. The

24        District Attorney, and assistant district attorneys employed by the D.A.'s Office are agents and

25        employees of the City of New York, which is legally responsible for torts they commit within the

26        scope of their employment and/or under color of law.

27    55.    Similarly, the New York City Police Department "NYPD" is an agency of the CITY OF NEW YORK.

28        Detectives and police officers employed by the NYPD are agents and employees of the City of New

29        York, which is legally responsible for torts they commit within the scope of their employment and/or

2        under color of law.

3    56.    Defendant, Christina Maloney, "Maloney" at all relevant times, was an assistant district attorney in New York County, was employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his official capacities.

7    57.    Defendant, Cyrus Vance Jr.,, "Vance" at all relevant times, was the district attorney in New York County, was employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his official capacities.

11    58.    Defendant, Larry Newman, "Newman" at all relevant times, was an assistant district attorney in New York County, was employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his official capacities.

15    59.    Defendant, Laura Higgens, nee Richendorfer "Higgins" at all relevant times, was an assistant district attorney in New York County, was employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of her employment.  She is sued in her official capacities.

19    60.    Defendant, Police Inspector Obe, Commanding Officer of the 28th Precinct, "Obe" at all relevant times, was an Inspector at the 28th precinct which is in New York County, the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of her employment. She is sued in her official capacities.

24    61.    Defendants Patricia Bailey and Susan Roaue at all relevant times, were employees of the Manhattan District Attorney's Office which is in New York County, the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of their employment. They are sued in their official capacities.

28    62.    Defendant Rose Pierre-Louis, "Pierre-Louis" at all relevant times, was the Commissioner of Domestic Violence at the Mayor's Office for the Prevention of Domestic Violence, NYC which is in New York