UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY PRICE,

                              Plaintiff,

          -against-

DETECTIVE LINDA SIMMONS; ADA
MARIA STROHBEHN; ADA KENYA
WELLS; THE CITY OF NEW YORK;
DEPUTY DA AUDREY MOORE; ADA
LARRY NEWMAN; ADA LAURA HIGGINS
NEE RICHENDORFER; CYRUS VANCE;
JR.; INSPECTOR OBE; ROSE PIERRE-
LOUIS; PO MATTHEW WINTERS,

                              Defendants.

15-CV-5871 (LAP)

ORDER TO AMEND

LORETTA A. PRESKA, United States District Judge:

      Plaintiff Kelly Price, appearing *pro se*, brings this action under 42 U.S.C. § 1983. By

order dated September 22, 2015, the Court granted Plaintiff's request to proceed without

prepayment of fees, that is, *in forma pauperis*. On October 19, 2015, the Court granted Plaintiff

leave to file a second amended complaint, which Plaintiff filed on May 11, 2016. For the reasons

set forth below, the Court dismisses all claims in the second amended complaint with prejudice

except for Plaintiff's § 1983 claims for false arrest, malicious prosecution, and First Amendment

retaliation.

## STANDARD OF REVIEW

      The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is

frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see*

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). While the law

mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings

liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

Plaintiff Kelly Price's second amended complaint contains 60 pages of allegations plus approximately 350 pages of exhibits. Plaintiff alleges that her boyfriend, Raheem Powell, was a drug dealer and police informant. In 2009, Powell allegedly began to abuse Plaintiff physically, and she repeatedly called the police. Plaintiff and Powell each sought restraining orders against each other. Police officers from the 28th Precinct of the New York City Police Department ("NYPD") eventually refused to accept police reports from Plaintiff, allegedly because the police believed she was falsifying her injuries to frame Powell.

On March 24, 2011, Defendant Detective Linda Simmons testified before Judge Sattler in Family Court that she had investigated Plaintiff's allegations of abuse and found them to be untrue. Plaintiff alleges that Simmons's testimony was false. After the court proceedings, four police detectives from the 28th Precinct arrested Plaintiff outside the Family Court. She was charged with 324 counts of aggravated harassment, presumably against Powell.

On May 8, 2011, nonparty Detective Fontanez arrested Plaintiff on contempt charges related to allegedly violating an order of protection. During a proffer session on June 24, 2011, Plaintiff provided police with cell phones containing messages from Powell; Plaintiff alleges that the cell phones have not been returned to her despite her repeated requests.

In May or June 2011, residents of a women's shelter on 120th Street in Manhattan allegedly assaulted Plaintiff, but police declined to accept her report. Plaintiff made police reports on August 2, 11, and 16, 2011, regarding alleged harassment by neighbors with loyalty to Powell.

2

On September 24, 2011, an unidentified person assaulted Plaintiff in a bar in Manhattan. She called the police, and unidentified police officers arrived; they later arrested her for allegedly screaming at them. On October 17, 2012, Plaintiff was convicted of disorderly conduct arising from this incident. On February 26, 2016, however, New York's Appellate Term reversed the conviction due to the insufficiency of the evidence. *See People v. Price*, 31 N.Y.S. 3d 923 (App. Term 2016).

On October 25, 2011, Plaintiff attempted to file a report that Powell violated an order of protection, but officers refused to accept her report. On January 20, 2012, Plaintiff attempted to make a report that a woman named Ina attacked her, but nonparty Detective Fontanez declined to make an arrest based on the information that Plaintiff provided. Unidentified individuals attacked Plaintiff on April 17, 2012, and July 14, 2012, but police officers refused to investigate her complaints.

The state court dismissed the criminal contempt charge and 324 aggravated harassment charges against Plaintiff on July 25, 2012.

An unnamed man attacked Plaintiff in or near a bar in Manhattan on July 28, 2012. Nonparty Detective Galan allegedly failed to investigate Plaintiff's complaint adequately, and Plaintiff's assailant allegedly later assaulted other women. Plaintiff complains that nonparty Detective Galan did not timely investigate the assault but concedes that the attacker was prosecuted, albeit unsuccessfully, for assaulting her.

On October 18, 2012, an alleged heroin dealer assaulted Plaintiff as she walked past a stoop at 125th Street and St. Nicholas Avenue in Harlem. Unnamed police officers told Plaintiff that they had been instructed not to take her reports.

A cab driver refused to let Plaintiff out of the cab on June 2, 2013, and instead locked the doors and sped up. The cab stopped at a red light. Plaintiff called out to police officers, but one officer allegedly told his partner that Plaintiff was not to be given police services. Plaintiff called 911, but the police did not assist her.

In July 2013, unnamed police officers issued Plaintiff a jaywalking ticket even though she was not jaywalking. The charge was dismissed in court.

In March 2014, nonparty Hannah Pennington, Director of the Family Justice Center ("FJC"), denied Plaintiff access to services for domestic violence victims.

In June 2014, Assistant District Attorney ("ADA") Maloney addressed Plaintiff's request for records under New York's Freedom of Information Law ("FOIL"). Plaintiff alleges that ADA Maloney has a conflict of interest because she was also representing individuals "in a lawsuit."[1] Plaintiff presumably argues in this complaint that ADA Maloney deprived her of an impartial determination of her FOIL request.

In late 2014, Plaintiff was blocked from posting comments on the Twitter accounts for the NYPD's 28th Precinct and the Mayor's Office to Combat Domestic Violence, allegedly in violation of her First Amendment rights. Plaintiff does not identify the individual(s) allegedly responsible for blocking her comments or provide facts about the content of her comments that were blocked.

---

[1] According to public records, Plaintiff filed suit in Supreme Court, New York County, against the City of New York, Police Detective Linda Simmons, and Assistant District Attorneys Audrey Moore, Maria Strohbehn, and Kenya Wells – that is, she filed suit against many of the same Defendants named in this action. *See Price v. City of N.Y.*, No. 101414/2013. The resolution of that matter is unclear, and the Court therefore lacks sufficient information to determine whether preclusion principles apply.

Plaintiff alleges that on July 2, 2015, she was again assaulted. Officers from NYPD's Midtown North Precinct rejected Plaintiff's attempt to file a complaint, and she was taken to the psychiatric ward of Bellevue Hospital in Manhattan for evaluation. Plaintiff already had ongoing treatment with Bellevue's 9/11 survivor's clinic, and she was released promptly from the psychiatric ward. Plaintiff does not identify any person responsible for taking her to the hospital, and it is unclear whether she went voluntarily.

Plaintiff brings this action against the City of New York, District Attorney Cyrus Vance, and five Assistant District Attorneys (Maria Strohbehn, Kenya Wells, Larry Newman, Laura Higgins Nee Richendorfer, and Audrey Moore). She also sues Police Detective Linda Simmons, Inspector Obe, Rose Pierre Louis, and Police Officer Matthew Winters. Plaintiff seeks $30,000,000.00 in damages.

## DISCUSSION

### A.     Statute of Limitations

As set forth in the Court's October 19, 2015 order, many of Plaintiff's § 1983 claims are time-barred. The statute of limitations for § 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions," *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading.

*See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds).

Plaintiff filed the complaint on July 24, 2015, and filed a first amended complaint as of right on August 13, 2015. On October 9, 2015, the Court granted Plaintiff leave to file a second amended complaint and directed her, among other things, to demonstrate whether she was entitled to equitable tolling for the apparently time-barred claims. In her second amended complaint, however, Plaintiff does not provide any facts suggesting that the statute of limitations should be equitably tolled in this case; she simply repeats the same facts that appeared in her first two pleadings. Because Plaintiff, after receiving notice and an opportunity to include facts related to equitable tolling, fails to show any basis for tolling the limitations period, her § 1983 claims that accrued before July 24, 2012, are therefore dismissed as time-barred.[2]

In light of the dismissal of these claims, the Court addresses below only Plaintiff's allegations that are not plainly time-barred. Plaintiff claims that: (1) she was maliciously

---

[2] The Court additionally notes that many of Plaintiff's time-barred claims also suffer from other defects. For example, many of the Defendants may be immune from suit for the conduct alleged. *See, e.g., Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (holding that prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial"); *Daloia v. Rose*, 849 F.2d 74, 75 (2d Cir. 1988) ("[W]e hold that police officers who testify at adversarial pretrial proceedings are entitled to absolute immunity from liability based on that testimony."). Plaintiff also attempts to bring a procedural due process claim arising from lost or stolen property, but she has not described how state law remedies were inadequate to address this deprivation, as required to state a claim. *Cf. Fredricks v. City of N.Y.*, No. 12-CV-3734 (AT), 2014 WL 3875181, at *8-9 (S.D.N.Y. July 23, 2014).

prosecuted for 324 charges of aggravated harassment and one charge of criminal contempt, and that these charges were dismissed by the criminal court on July 25, 2012; (2) nonparty Detective Galan failed to timely investigate Plaintiff's allegations that on July 25, 2012, an unidentified man assaulted her; (3) nonparty Hannah Pennington, Executive Director of the Family Justice Center in March 2014, denied Plaintiff access to services for domestic violence victims; (4) in June 2014. ADA Maloney addressed Plaintiff's FOIL request despite Maloney's alleged conflict of interest stemming from Maloney's involvement in an unspecified lawsuit; (5) on July 2, 2015, unnamed officers from the Midtown North Precinct rejected Plaintiff's attempt to report that she had been assaulted and that she was taken by unidentified individuals to the Bellevue psychiatric ward, where she was evaluated and released; and (6) she was maliciously prosecuted for disorderly conduct, with New York's Appellate Term reversing her conviction on February 26, 2016.

## B.    Due-Process Claims

The Court construes Plaintiff's allegations that (1) ADA Maloney mishandled Plaintiff's FOIL requests due to Maloney's alleged bias, (2) the FJC denied her services, and (3) unnamed police officers refused to accept her report of an assault, as raising claims under the Fourteenth Amendment's Due Process clause.

In a suit brought to enforce procedural due process rights, a court must determine whether a property interest is implicated, and if it is, what process is due before the plaintiff may be deprived of that interest. *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011).

### 1.    Mishandling of FOIL Requests

Under New York law, if a government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue a specific "procedural path." *Tinker St. Cinema v. State Dep't of Transp.*, 678 N.Y.S.2d 124, 125 (2nd Dep't 1998). First, "a person

denied access to requested information under [FOIL] must appeal the denial in writing to the head of the appropriate [state entity] within 30 days" of the denial. *Id.* at 125; N.Y. Pub. Off. Law § 89(4)(a). Next, if such an appeal is unsuccessful, the individual must institute an Article 78 proceeding in New York State court prior to challenging the denial of a FOIL request in a judicial forum. N.Y. Pub. Off. Law § 89(4)(b); *see Papay v. Haselhuhn*, No. 07-CV-3858 (LAP), 2010 WL 4140430, at *9-10 (S.D.N.Y. Oct. 21, 2010) (availability of Article 78 proceeding defeats claim that denial of FOIL request violates due process). Plaintiff thus has a state process available in which she can raise any irregularity with the handling of her FOIL request.

Moreover, Plaintiff cannot state a claim that any Defendant violated her federal due process rights in connection with the handling of her FOIL request. "[D]ue process claims require the establishment of a property interest, and because [plaintiff] could not, as a matter of law, have a property interest in the mere expectation of receiving FOIL documents, [defendants'] failure to provide [plaintiff] with all of the documents . . . requested does not amount to a constitutional violation." *Simpson v. Town of Southampton*, No. 06-CV-6743 (JFB), 2007 WL 1755749, at *4 (E.D.N.Y. June 15, 2007); *see also Webb v. Ashburn*, No. 96-CV-325 (SAS), 1997 WL 118355, at *6 (S.D.N.Y. Mar. 17, 1997) ("Plaintiff's failure to commence an Article 78 proceeding and obtain a court order with regard to his … FOIL request precludes a finding of a property interest in the requested documents."). Because Plaintiff does not have a property interest in receiving documents under FOIL, and because adequate process existed in New York State courts, these allegations involving Defendant Maloney fail to state a § 1983 procedural due process claim.

2.   Affirmative Government Assistance

The Due Process Clause "confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). The Second Circuit has recognized two exceptions to the general rule that the State has no duty to investigate or protect individuals: First, "the state or its agents may owe a constitutional obligation to the victim of private violence if the state had a 'special relationship' with the victim." *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 533 (2d Cir. 1993) (citing *DeShaney*, 489 U.S. at 198). Under federal law, a "special relationship" is formed when the government takes custody of the plaintiff. *See Matican v. City of N.Y.*, 524 F.3d 151, 156 (2d Cir. 2008) (noting that "involuntary custody" is "the linchpin of any special relationship exception") (collecting cases).[3] Second, the government may assume some obligation when it affirmatively creates or increases the danger to the plaintiff. *See Dwares v. City of N.Y.*, 985 F.2d 94, 98-99 (2d Cir. 1993).

(i)   Failure to Provide Services

Plaintiff alleges that the FJC, which provides co-located, multi-disciplinary services for victims of family violence and their children, deemed her ineligible for services. Plaintiff has named the City of New York as a Defendant in this action. Even assuming that the FJC is an

---

[3] Plaintiff cites several New York state-court cases for the proposition that a special relationship existed between the NYPD and herself by virtue of the order of protection she obtained against Powell. (*See* Sec. Am. Comp. at ¶ 24.) Those cases, however, deal exclusively with negligence and wrongful death actions against municipalities, not § 1983 claims. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 769 n.15 (2005).

agency of the City of New York,[4] Plaintiff's allegations fail to state a claim on which relief can be granted.

Plaintiff does not allege she was in custody, and she did not therefore have a special relationship with the government such that it was required to provide her with services for victims of domestic violence. *See Matican*, 524 F.3d at 156. Nor did FJC create or increase the danger to Plaintiff. *See DeShaney*, 489 U.S. at 201 ("While the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."); *cf. Dwares*, 985 F.2d at 98-99.

Plaintiff's allegations that the FJC denied her services do not state a federal constitutional claim. For this reason, Plaintiff's Due Process claim related to the denial of services is dismissed.[5]

> (ii) Failure to Investigate

Plaintiff also fails to state a Due Process claim based on her allegations that on July 2, 2015, officers from the Midtown North police Precinct rejected her attempt to report that she had been assaulted.

The government generally has no affirmative duty under the Fourteenth Amendment to protect an individual against harm from other private citizens. *See DeShaney*, 489 U.S. at 195-97 ("A State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *see also Malloy v. City of N.Y.*, No. 93-CV-8919 (SS),

---

[4] In support of this claim, Plaintiff attaches as an exhibit a printout of FJC's website indicating FJC is part of the Mayor's Office to Combat Domestic Violence. (*See* Sec. Am. Compl., Exh. GG.)

[5] In the October 19, 2015 order, the Court granted leave for Plaintiff to detail this claim, but she has failed to do so. Leave to further amend is therefore denied as futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011).

1996 WL 648927, at *2 (S.D.N.Y. Nov. 7, 1996) (Sotomayor, D.J.) (collecting cases). "[A]n allegation simply that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process Clause…" *Dwares*, 985 F.2d at 99.

Plaintiff has not named any individuals as Defendants who were personally involved in this incident. Moreover, she has not alleged that the government caused her harm by failing to investigate the July 2, 2015, assault. *See DeShaney*, 489 U.S. at 201. Unlike the situation in *Dwares*, where the police were alleged to have affirmatively colluded with the plaintiffs' eventual assailants, Plaintiff has not alleged how the officers' failure to accept her report of the July 2, 2015, assault increased the danger posed to her. Nor has she adequately alleged that she has a special relationship with the police such that they had a constitutional obligation to protect her from private violence. *See Matican*, 524 F.3d at 156.

Plaintiff's allegations that in July 2015, police officers declined to take her report, without more, thus fails to state a claim on which relief can be granted.

## C.    False-Arrest Claims

"'A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.'" *Covington v. City of N.Y.*, 171 F.3d 117, 122 (2d Cir. 1999) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "Under New York state law, to prevail on a claim of false arrest a plaintiff must show that '(1) the defendant intended to confine [her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).

Plaintiff makes two allegations that could conceivably be liberally construed as raising false-arrest claims: In July 2013, police officers gave her a ticket for jaywalking (later dismissed), even though she was not jaywalking, and in July 2015, police officers transported her to Bellevue Hospital's psychiatric ward, where she was promptly released. (Sec. Am. Comp. at ¶¶ 115, 120.) Plaintiff does not allege that she was taken to Bellevue against her will.

In her more than 400-page second amended complaint, Plaintiff also does not name any defendant relating to either claim, despite having availed herself of two opportunities to amend her complaint. The Court therefore does not understand Plaintiff to be bringing false-arrest claims arising from such facts. In an abundance of caution, however, the Court grants Plaintiff leave to amend to include any additional facts that would support false-arrest claims.

**D.      Malicious-Prosecution Claims**

The Court construes Plaintiff's second amended complaint as asserting claims of malicious prosecution related to her prosecutions (1) for aggravated harassment and criminal contempt (*id.*, at ¶ 107); and (2) for disorderly conduct (*id.*, at ¶¶ 93-94). Plaintiff states these prosecutions terminated in her favor when the harassment and contempt charges were dismissed on July 25, 2012, and when the Appellate Term reversed her conviction on February 26, 2016.

The tort of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007). To state a claim for malicious prosecution, a plaintiff must allege facts showing: (1) that the defendant initiated or continued a prosecution against the plaintiff; (2) that the defendant lacked probable cause to commence the proceeding or believe the proceeding could succeed; (3) that the defendant acted with malice; and (4) that the prosecution was terminated in the plaintiff's favor. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Thus, because favorable termination is an element of a malicious prosecution claim, a plaintiff who has been

convicted and seeks to recover damages under § 1983 for malicious prosecution must show that her conviction terminated in her favor by alleging that the conviction or sentence has been reversed on direct appeal, expunged by executive order, invalidated by a state tribunal authorized to make such determinations, or otherwise called into question by a federal court's issuance of a writ of habeas corpus. *See Poventud v. City of N.Y.*, 750 F.3d 121, 129 (2d Cir. 2014) (en banc) (citing *Heck v. Humphrey*, 512 U.S. 477, 481-82 (1994)).

Even assuming that Plaintiff's allegations suffice to state a claim for malicious prosecution, she has not named as a Defendant the person or persons who "initiated or continued a prosecution against" her for aggravated harassment and criminal contempt. *See Fulton*, 289 F.3d at 195; *see also Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir. 1994) (defendants initiated criminal proceeding by formally charging plaintiff); *Phelps v. City of N.Y.*, No. 04-CV-8570 (DLC), 2006 WL 1749528, at *4 (S.D.N.Y. June 27, 2006) (officers who were responsible for arrest initiated prosecution, even though neither was the official "arresting officer"). Because the original complaint was filed exactly three years after dismissal of these charges against Plaintiff, any possible amendment must satisfy the requirements of Rule 15(c) of the Federal Rules of Civil Procedure, which governs when a new party or claim can be added after the limitations period has expired. Any amendment made by Plaintiff would be without prejudice to any defenses that the Defendants may wish to assert.

Plaintiff's second malicious prosecution claim also warrants additional examination. She alleges that on September 24, 2011, she was assaulted inside a bar and that unidentified police officers arrested her "based on false statements that she had screamed at officers…" She was convicted of disorderly conduct on October 18, 2012, but New York's Appellate Term vacated

the conviction and dismissed the complaint on the grounds the evidence was insufficient to support the charge. *See People v. Price*, 31 N.Y.S.3d 923 (App. Term 2016).

Plaintiff has not named the person or persons who initiated the disorderly conduct prosecution against her or who otherwise maliciously prosecuted her. The Court grants Plaintiff leave to amend the complaint to add this person or persons as defendants and add detail to this claim.

### E.     First Amendment Claims

Plaintiff's alleges that she was blocked from commenting on the Twitter accounts for the NYPD's 28th Precinct and the New York City Mayor's Office to Combat Domestic Violence. (Sec. Am. Comp. at ¶¶ 117-118). The Court construes these allegations as raising a § 1983 claim for First Amendment retaliation.

Where a private citizen asserts a First Amendment claim against a public official, the plaintiff must demonstrate that (1) the plaintiff engaged in speech or conduct that the First Amendment protects; (2) the plaintiff's exercise of his First Amendment rights motivated the defendant's actions; and (3) the defendant's actions effectively chilled the plaintiff's exercise of those rights. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)); *Moran v. City of New Rochelle*, 346 F. Supp. 2d 507, 517 (S.D.N.Y. 2004).[6]

---

[6] In cases "involving criticism of public officials by private citizens," the Second Circuit has generally "impose[d] an actual chill requirement for First Amendment retaliation claims[,]" *i.e.*, a requirement that the plaintiff allege and ultimately prove an "actual chill" of her First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citing *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir.1992)); *see also Curley*, 268 F.3d at 73 (holding that the "plaintiff must show, with respect to the third element, that his First Amendment rights were 'actually chilled'").

As an initial matter, Plaintiff fails to describe the comments she made or include allegations showing that she engaged in activity protected by the First Amendment. *See, e.g., United States v. Turner*, 720 F.3d 411, 426-27 (2d Cir. 2013) ("true threats" not protected by the First Amendment).

Moreover, Plaintiff has not named any defendants who may have been responsible for blocking her from commenting on these government-run Twitter accounts, and the Court therefore assumes that she brings this claim against the City of New York. But when a plaintiff sues a municipality under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997); *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

Plaintiff has not identified any municipal policy, custom, or practice that caused her to be blocked from commenting on the two government-run Twitter accounts. She has therefore failed to state a claim against the City of New York or any individual person. Because it is not clear

from the allegations that leave to amend would be futile, the Court grants Plaintiff leave to amend the complaint.

## LEAVE TO AMEND

Plaintiff is granted leave to amend her complaint to detail her § 1983 claims of malicious prosecution, false arrest and First Amendment retaliation. First, Plaintiff must name as the defendant(s) in the caption[7] and in the statement of claim those individuals who were allegedly involved in her alleged malicious prosecutions, false arrest, and retaliation. If Plaintiff does not know the name of a defendant, she may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[8] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending her complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new party after the statute of limitations period has expired, she must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting the malicious prosecution claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a)   give the names and titles of all relevant persons;

---

[7] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list" on the first page of the Amended Complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

[8] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2010, at Sullivan Correctional Facility, during the 7-3 p.m. shift."

   b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

   c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

   d) give the location where each relevant event occurred;

   e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

   f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated her federally protected rights; what facts show that her federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's third amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the third amended complaint.

## CONCLUSION

The Clerk of Court is directed mail a copy of this order to Plaintiff and note service on the docket. Plaintiff is granted leave of 30 days to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within thirty days of the date of this order, caption the document as a "Third Amended Complaint," and label the document with docket number 15-CV-5871 (LAP). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   July 26, 2016
         New York, New York

_____
LORETTA A. PRESKA
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

          **-against-**

_____
_____
_____
_____
_____
_____
_____
_____

*(In the space above enter the full name(s) of the defendant(s).  If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Part I.  Addresses should not be included here.)*

**AMENDED COMPLAINT**

under the Civil Rights Act,
42 U.S.C. § 1983

Jury Trial:  ☐ Yes    ☐ No

(check one)

___ **Civ.** _____ ( )

**I.**    **Parties in this complaint:**

A.    List your name, identification number, and the name and address of your current place of confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff's    Name_____
          ID#_____
          Current Institution_____
          Address_____
          _____

B.    List all defendants' names, positions, places of employment, and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant  No. 1    Name _____ Shield #_____
              Where Currently Employed _____
              Address _____
              _____

Defendant  No. 2          Name  _____ Shield #_____

Where Currently Employed _____

Address _____

_____


Defendant  No. 3          Name  _____ Shield #_____

Where Currently Employed _____

Address _____

_____


<div style="border:1px solid black; display:inline-block">Who did what?</div>

Defendant  No. 4          Name  _____ Shield #_____

Where Currently Employed _____

Address _____

_____


Defendant  No. 5          Name  _____ Shield #_____

Where Currently Employed _____

Address _____

_____


## II.      Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.


A.      In what institution did the events giving rise to your claim(s) occur?

_____

_____


B.      Where in the institution did the events giving rise to your claim(s) occur?

_____


C.      What date and approximate time did the events giving rise to your claim(s) occur?

_____

_____

_____


<div style="border:1px solid black; display:inline-block">What happened to you?</div>

D.      Facts:_____

_____

_____

_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

<table>
<tr><td>

**Was anyone else involved?**

</td></tr>
</table>

_____
_____
_____
_____
_____

<table>
<tr><td>

**Who else saw what happened?**

</td></tr>
</table>

## III.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____
_____
_____
_____
_____

## IV.    Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   Administrative remedies are also known as grievance procedures.

A.      Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

        Yes _____   No _____

*Rev. 01/2010*                                        3

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____
_____
_____

B.      Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

      Yes _____   No _____   Do Not Know _____

C.      Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

      Yes _____   No _____   Do Not Know _____

      If YES, which claim(s)?
      _____

D.      Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

      Yes _____   No _____

      If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

      Yes _____   No _____

E.      If you did file a grievance, about the events described in this complaint, where did you file the grievance?
      _____

      1.     Which claim(s) in this complaint did you grieve?
       _____

        _____

      2.     What was the result, if any?
       _____

        _____

      3.     What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.
      _____
      _____
      _____
      _____

F.      If you did not file a grievance:

      1.     If there are any reasons why you did not file a grievance, state them here:
       _____
       _____
       _____

_____
_____
_____

    2.    If you did not file a grievance but informed any officials of your claim, state who you informed, when and how, and their response, if any:

_____
_____
_____
_____
_____
_____

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

_____
_____
_____
_____
_____
_____
_____
_____

<u>Note</u>:    You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

**V.**    **Relief:**

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). _____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____
_____
_____
_____

**VI.     Previous lawsuits:**

<table>
<tr><td>

**On these claims**

</td><td>

A.     Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

     Yes _____   No _____

</td></tr>
</table>

B.     If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below.  (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

     1.     Parties to the previous lawsuit:

     Plaintiff _____
     Defendants _____

     2. Court (if federal court, name the district; if state court, name the county) _____
     _____

_____     3.     Docket or Index number _____

_____     4.     Name of Judge assigned to your case_____

          5.     Approximate date of filing lawsuit _____

          6.     Is the case still pending?  Yes _____   No _____

               If NO, give the approximate date of disposition_____

     7.     What was the result of the case? (For example:   Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____
          _____
          _____

<table>
<tr><td>

**On other claims**

</td><td>

C.     Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

     Yes _____     No _____

</td></tr>
</table>

D.     If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

     1.     Parties to the previous lawsuit:

     Plaintiff _____
     Defendants _____

     2.     Court (if federal court, name the district; if state court, name the county) _____
     _____

_____     3.     Docket or Index number _____

_____     4.     Name of Judge assigned to your case_____

          5.     Approximate date of filing lawsuit _____

_Rev. 01/2010_                                    6

6.       Is the case still pending?  Yes _____    No _____
         If NO, give the approximate date of disposition_____

7.       What was the result of the case? (For example:  Was the case dismissed?  Was there
         judgment in your favor?  Was the case appealed?)  _____
         _____
         _____


**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of _____, 20__.

                    Signature of Plaintiff    _____

                    Inmate Number           _____

                    Institution Address       _____

                                           _____

                                           _____

                                           _____


Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide
         their inmate numbers and addresses.

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering
this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for
the Southern District of New York.

                    Signature of Plaintiff:   _____