UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
KELLY PRICE

                                                    Index No.: 15-CV-05871

                              PLAINTIFF            JURY TRIAL DEMANDED

             -against-

DETECTIVE LINDA SIMMONS Individually,
and as an employee of the New York City Police
Department, ADA MARIA STROHBEHN and
ADA KENYA WELLS Individually,
and as employees of the New York County
District Attorney's Office, THE CITY OF NEW YORK,
Deputy DA Audrey Moore, ADA Larry Newman, ADA
Laura Higgins nee Richendorfer, DA Cyrus Vance Jr.,
as employees of the New York County District
Attorney's Office, Inspector Obe of the New York City
Police Department, in her capacity as an employee
of the New York City Police Department,
Rose Pierre-Louis in her capacity as the Former
Commissioner of Domestic Violence of the
 City of New York,  PO Matthew Winters, individually
And in his capacity as an employee of the New York City
Police Department, Manhattan District Attorney's Employee

                         DEFENDANTS,

                  _____

                  **Motion Request for Reconsideration**

                  _____

                         Kelly Price
                         Pro Se
                         534 w 187th st. apt #7
                         New York, NY 10033

August 25, 2016

Dear Hon. Preska:

        By order dated July 26, 2016, and post-marked to me on July 27, 2016 you requested

1

that I amend my complaint for the above-noted docket.  I am submitting  a motion for

reconsideration as I would like to include in my complaint actions undertaken by the NYPD and

MDAO *before* my false arrest(s) that commenced on March 24, 2011 and was (were)

resolved/dismissed on or about July 24, 2012.  I beg and beseech the court for reconsideration as

I had no reason to know of the injury(ies) that is/are the basis for those pre-arraignment claims in

2011 when I was suffering from severe Complex Post-Traumatic Stress Disorder (Exhibit #1

Mental Health Diagnosis of C-PTSD and Exhibit #2  Notes from CONNECT NYC detailing

confusing and traumatic time in my life in 2011) and consistently triggered by attacks by my

pimp and batterer's associates with no protection from the NYPD.

My focus was on my survival:   I had no way of filtering the constitutional violations being

levied against me by the very-sophisticated players who also called themselves assistant district

attorneys at that time.  As section 1983 claims generally accrue when a plaintiff knows or has

reason to know of the injury that is the basis of the claim (*Hogan v Fischer*, 783 F.3d 509, 518

(2$^d$ Cir. 2013))  I am filing to formerly ask the court to reconsider its decision as ordered on July

26, 2016 to limit my claims to July 24, 2012, the date of dismissal of charges against me.  I

would like to be able to file for all actions by the NYPD and MDAO against me from the date of

my first arrest on or about in October, 2010 for allegedly filing a false police report (dismissed

and sealed also on 7/24/2012.)  I hope very much that the court will give me the opportunity to

include in my complaint constitutional harms to me that occurred before my spring 2011 arrests

and arraignments.

Quite possibly all absolute immunity defenses members of the MDAO usually have available to

them may be stricken as their actions towards me in their role as court advocate were INTER-

TWINED with NON-ADVOCATE functions (intervening in the NYPD's investigative process

as Lt. LaRocca's affidavit suggests (Exhibit #3 Affidavit from Lt. Larocca)) as established in

*Doe v. Phillips* (citing *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996) (See Exhibit #4 Prosecutorial

Immunity in the 2nd Circuit). Many of these constitutional harms occurred within six months

before my arrests for alleged acts of aggravated harassment and contempt of court in the Spring

of 2011. I am only asking the court to extend six months: from March of 2011 to October of

2010 when I was arrested for allegedly filing a false police report. As charges for the March and

May 2011 arrests were dismissed at the same time on July 24, 2012 I made the statute of

limitations to the day. I was also arrested on or about October of 2010 for allegedly filing a false

police report (that case was also dismissed and sealed on 7/24/2012) and I am asking the court to

allow me to include in my complaint all conduct and actions taken against me by the NYPD and

MDAO for that period of time that I was being beaten, stalked, pimped, trafficked and

traumatized on a daily basis at that time and not able to perform normal tasks of living yet alone

recognize constitutional harms.

For the above-stated reasons I am beseeching you Hon. Preska to allow me leave to amend my

complaint to include all interactions between myself and the MDAO and NYPD after the first

arrest in October of 2011 which was also roughly around the date I attained restraining order

from Hon. Judge Sattler guaranteeing me protection from the City (which was blatantly

eschewed) of New York in October of 2010. A restraining order is one form of a "special

relationship" between me and the city of New York that mandates that the city respond to and act

on my complaints as is outlined in the case law of McLean and Riddick. As a general rule, a

municipality may not be held liable for injuries resulting from a failure to provide police

protection (Cuffy v. City of New York, 69 NY2d 255 [1987]). A municipality's provision of

police protection to its citizenry has long been regarded as a resource-allocating function that is

better left to the discretion of policy makers (id.). There is, however, a narrow exception to this general rule based upon a "special relationship" between the municipality and the claimant (id.). The elements of this "special relationship" are: an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; knowledge on the part of the municipality's agents that inaction could lead to harm; some form of direct contact between the municipality's agents and [*3]the injured party; and that party's justifiable reliance on the municipality's affirmative undertaking (id.). A duly issued order of protection constitutes an assumption of an affirmative duty of protection coupled with an awareness that inaction could lead to harm and thereby satisfies the first two elements of a special relationship (Mastroianni v. County of Suffolk, 91 NY2d 198 [1997]).

Hon. Judge Preska: Thank you for your entertaining this request.  It is not often that a plaintiff has the opportunity to hold district attorneys accountable for deliberate wrong-doings because of the tenets of prosecutorial immunity.  Cases where prosecutors really go wrong and are not covered by immunity NEVER come around Hon. Preska.   Please allow me to file actions dating back to October of 2010.  The MDAO has been using the aggravated harassment statute to met-out misery to personal enemies of that office for decades (see Exhibit #5 Shmueli v. City of New York) and has never been held accountable.  Even though this statute of the NY State Penal code has been amended others are surely already being used for the same evil end-game.  Please help me to send a loud and strong message to the MDAO will stand for this no longer.

Kelly Price                              Sworn to me this 25th Day of August, 2016

August 25, 2016

Dorchen A. Leidholdt, Notary Public
Registration No. 02LE6267827
Expires 8/27/16

# EXHIBIT #1



COMMUNITY
COUNSELING
& MEDIATION

115 West 31st Street   5th Floor   New York, NY  10001
212 564 6006   Fax  212 564 3440

January 25, 2016

To Whom It May Concern,

Ms. Kelly Price is a client here at the Manhattan clinic of Community Counseling and Mediation.  She is seen for weekly psychotherapy and has been diagnosed with:  F43.10 Posttraumatic Stress Disorder.  She began treatment on December 29, 2015 and her most recent appointment was Friday, January 15th.

Please inform if there is any additional information you may need.

Sincerely,

Alyssa Rodriguez, MHC Intern

Lauren L. Rigney, MS, LMHC, NCC
Clinic Director

BOARD OF DIRECTORS

LaWanda A. Jackson, Esq.

Russel Shuler

Jean Goossen

Cassandra Underdue

Joyce Tyson

ADVISORY BOARD

Margaret Crawford

Jenny Morgenthau

Emory X. Brooks

# EXHIBIT #2

| | Services | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| 9/7/2011 | SD met with CL at CVTC. | CVTC |
| 9/7/2011 | SD did a lot of CC with CL during our meeting. | Crisis. Counseling |
| 9/7/2011 | SD s/w CL about the likelihood that the charges against her will be dropped. | Info-Legal |
| 9/7/2011 | SD s/w CL about the history of DV b/w them and described the common tactics used by abusers to get what they want. | Info-Other |
| 9/7/2011 | SD advised CL that the court calendar governs when certain things happen, so if the ADA is planning on dropping the charges, he/she can do so at that court date. | Info-Legal |
| 9/7/2011 | SD suggested that CL look into the CCRB as a possible mechanism for holding the 28th precinct cops accountable for what they've done to her. | Info-Legal |
| 9/7/2011 | SD advised CL that the only real oversight with NYPD comes from IAB (which she's already involved with) and the CCRB. | Info-Legal |
| 9/7/2011 | SD advised CL that in cross-complaint cases, credibility is key and the pending criminal case against her puts her at a disadvantage as far as that's concerned. | Info-Legal |
| 9/7/2011 | SD informed CL that the first focus should be getting the charges dropped and once that's resolved, then see if it's possible to re-open the assault case against RESP. | Info-Legal |
| 9/7/2011 | SD gave CL my card with the LAP HL # on it in case she needs to contact me. | Info-Legal |
| 9/14/2011 | SD s/w CL who called in for me at CVTC. | Follow Up |
| 9/14/2011 | SD, with Lisa H. @ CVTC, attempted to contact Lisa Callahan @ the Mn DA's office. No answer. Left vm with my direct line and extension to call me back. | CJA-DA |
| 9/14/2011 | SD advised CL that b/c of the bureaucratic nature of the system, correcting mistakes like this take an extensive amount of time. | Info-Legal |
| 9/14/2011 | CL expressed fear at being incarcerated "for the rest of her life," and SD reminded her that these are all MISD charges and carry a maximum of 1 year. | Info-Legal |
| 9/14/2011 | SD advised CL that we tried to call Lisa Callahan at the DA's office, but there was no answer so we left a message asking her to call me back at the office on my extension. | Info-Legal |
| 9/14/2011 | SD advised CL that we have a working relationship with the DA's office and will try to utilize that to help her. | Info-Legal |
| 10/14/2011 | SD called Lisa @ CVTC to s/w her on CL's behalf about Belinda escorting CL to her appt with a City Council member to discuss her treatment by NYPD and the DA's office. No answer. Left vm. | PA-Legal |
| 10/28/2011 | SD s/w CL who called for me on the HL. | Follow Up |
| 10/28/2011 | SD offered CL emotional support given her treatment by the police and the DA's office. | Crisis Counseling |

1

| Services | | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| 10/28/2011 | SD advised CL that I can call the precinct to speak with the DVPO who took her rep't on RESP's latest attack (a PO Simmons) and find out what happened w/ the DIR. | Info-Legal |
| 10/28/2011 | SD advised CL that both Lisa @ CVTC and I have been trying to get through to the DA's office about getting the charges dropped but we're not getting anywhere on that front. | Info-Legal |
| 10/28/2011 | SD advised CL to send me her copy of the DIR and then I can call the 28th precinct to speak with DVPO Simmons about how it was "lost" according to Lt. LaRocca. Gave CL our fax #. | Info-Legal |
| 11/1/2011 | SD called the 28th precinct to speak w/ DVPO Simmons about this DIR. She was very resistant and wasn't able to provide any info except that the report got "lost in the system". Her stance was that CL must return to the precinct to file another one. | CJA-Police |
| 11/8/2011 | SD s/w CL about Belinda accompanying her to the precinct to make a report as well as to her meeting with Christine Quinn's office to report her treatment by the police. | Info-Legal |
| 11/8/2011 | SD offered CL emotional support and validated her feelings about the 28th precinct's handling of her case. | Crisis Counseling |
| 11/8/2011 | SD gave CL a run-down of the very unproductive phone call I had with the DVPO last week, and advised her that the issue is definitely not her fault. | Info-Legal |
| 11/8/2011 | CL called on the HL and SD s/w her about what happened when I called the 28th precinct last week. | Follow Up |
| 11/8/2011 | SD emailed KT & Anindita about having Belinda accompany CL to the 28th precinct to re-file the DIR that they "lost" in their system. | PA-Legal |
| 11/9/2011 | SD s/w CL briefly at CVTC about Belinda accompanying her to the 28th precinct. CL was just getting out of group at CVTC. | Follow Up |
| 11/9/2011 | SD s/w CL briefly at CVTC about Belinda accompanying her to the 28th precinct. CL was just getting out of group at CVTC. | Info-Legal |
| 11/9/2011 | SD provided CL w/ emotional support about her treatment by the 28th and confirmed that I was also stonewalled by the DVPO there. | Crisis Counseling |
| 11/9/2011 | SD advised CL that I would meet with Belinda on Friday to go over CL's case with her, so she should be able to accompany her next week. | Info-Legal |
| 11/15/2011 | SD called CL to set up a time for Belinda to accompany her to the precinct in order to make a report. No answer. Her voice mail box was full so I couldn't leave a message. | Follow Up |
| 11/15/2011 | SD called Lisa @ CVTC to s/w her about CL. No answer. Left vm asking for a call back. | PA-Legal |
| 11/15/2011 | SD s/w Lisa @ CVTC who returned my phone call. Discussed the accompaniment to the 28th precinct as well as CL possibly testifying at City Council. | PA-Legal |
| 11/16/2011 | SD met with CL at CVTC and briefly discussed Belinda escorting her | Info-Other |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | to the 28th precinct to file her DIR as well as possibly testifying at City Council early next yr. | |
| 11/16/2011 | SD met with CL at CVTC and briefly discussed Belinda escorting her to the 28th precinct to file her DIR as well as possibly testifying at City Council early next yr. | Follow Up |
| 11/16/2011 | SD met with CL at CVTC and briefly discussed Belinda escorting her to the 28th precinct to file her DIR as well as possibly testifying at City Council early next yr. | Info-Legal |
| 11/22/2011 | SD called CVTC to s/w Lisa to let her know that Kelly and Belinda will be meeting at CVTC on Thursday (12/1) to head up to the 28th precinct. | PA-Legal |
| 11/22/2011 | BD s/w CL and arranged a date/time to meet @ CVTC and then to go up to the 28th precinct. | Info-Legal |
| 11/22/2011 | SD s/w CL who called in on the HL. Let her know that I hadn't been able to get a hold of her and had her s/w Belinda to schedule a time to go to the precinct. | Follow Up |
| 11/22/2011 | SD s/w CL who called in on the HL. Let her know that I hadn't been able to get a hold of her and had her s/w Belinda to schedule a time to go to the precinct. | Info-Legal |
| 11/30/2011 | SD advised CL that now that her OP was downgraded, it's critical that she obtain the DIR to prove the OP violation to the IDV judge. | Info-Legal |
| 11/30/2011 | SD called CL to s/w her about meeting tomorrow w/ BD to head to the 28th precinct. | Follow Up |
| 11/30/2011 | SD provided CL emotional support b/c of what occurred in IDV w/ her OP (hers was downgraded to a limited OP and he still has a stay away against her). | Crisis Counseling |
| 11/30/2011 | SD s/w CL about what happened in IDV court yesterday w/ her OP. | Info-Legal |
| 11/30/2011 | SD s/w CL about the possibility of a City Council hearing and let her know that it's still in the initial stages. I haven't heard anything more about it. | Info-Other |
| 11/30/2011 | SD confirmed the time/date for CL to meet with BD and head to the precinct. | Info-Legal |
| 12/1/2011 | SD called Lisa @ CVTC to give her an update on what took place today at the 28. No answer. Left vm. Also informed her about my conversation w/ KT and the potential to speak directly to Audrey but we need to be confident that there's nothing that can be used against CL. | PA-Legal |
| 12/1/2011 | BD met with CL at CVTC to accompany her to the 28th precinct. BD assisted CL with filing a DIR for the OP violation and emailed SD to inform her of what took place. CL was very happy with the effect of the accompaniment and articulated her desire for BD to accompany her in other respects. | CJA-DA |
| 12/1/2011 | SD s/w Lisa who called me back. Discussed CL's case and | PA- |

| | Services | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| | possibility of a meeting to try and hash out the probability of going to DA's office with a solid case for dropping the charges. Will speak to KT about this. | Counseling |
| 12/1/2011 | SD s/w Lisa who called me back. Discussed CL's case and possibility of a meeting to try and hash out the probability of going to DA's office with a solid case for dropping the charges. Will speak to KT about this. | PA-Legal |
| 12/1/2011 | BD met with CL at CVTC to accompany her to the 28th precinct. BD assisted CL with filing a DIR for the OP violation and emailed SD to inform her of what took place. CL was very happy with the effect of the accompaniment and articulated her desire for BD to accompany her in other respects. | CJA-Police |
| 12/1/2011 | BD met with CL at CVTC to accompany her to the 28th precinct. BD assisted CL with filing a DIR for the OP violation and emailed SD to inform her of what took place. CL was very happy with the effect of the accompaniment and articulated her desire for BD to accompany her in other respects. | Info-Legal |
| 12/1/2011 | BD met with CL at CVTC to accompany her to the 28th precinct. BD assisted CL with filing a DIR for the OP violation and emailed SD to inform her of what took place. CL was very happy with the effect of the accompaniment and articulated her desire for BD to accompany her in other respects. | Follow Up |
| 12/1/2011 | BD met with CL at CVTC to accompany her to the 28th precinct. BD assisted CL with filing a DIR for the OP violation and emailed SD to inform her of what took place. CL was very happy with the effect of the accompaniment and articulated her desire for BD to accompany her in other respects. | Crisis Counseling |
| 12/2/2011 | SD emailed Lisa to arrange a time for us to meet w/ KT to discuss CL's case and develop a strategy for advocating with the DA's office. | PA-Legal |
| 12/5/2011 | SD s/w CL who called in very upset b/c she ran into RESP at the bodega and had to turn around and walk out while they (him and his friend) laughed at her. | Follow Up |
| 12/5/2011 | SD s/w CL to try and de-escalate her a bit, and then reminded her that the best thing she can do for now is protect herself from the OP even though it's infuriating. | Crisis Counseling |
| 12/5/2011 | SD s/w CL to try and de-escalate her a bit, and then reminded her that the best thing she can do for now is protect herself from the OP even though it's infuriating. | Safety Planning |
| 12/5/2011 | SD advised CL that KT and I need to review her papers from court so that we can see what exactly happened there before we can do any kind of advocacy on her behalf. CL will fax them today. | Info-Legal |
| 12/6/2011 | SD called CL unblocked to f/u on her vm from yesterday about her fax. It was not in the fax machine. No answer. Left vm. | Follow Up |
| 12/6/2011 | SD s/w CL who called in returning my vm. Confirmed for her that I | Info-Legal |

4

| | Services | |
|---|---|---|
| Service Date | Service Notes | Type of Service |
| | did not receive the fax (checked again), so she is going to drop it by the office today. I gave her the address. | |
| 12/6/2011 | SD called CL unblocked to f/u on her vm from yesterday about her fax. It was not in the fax machine. No answer. Left vm. | Info-Legal |
| 12/6/2011 | SD s/w CL who called in returning my vm. Confirmed for her that I did not receive the fax (checked again), so she is going to drop it by the office today. I gave her the address. | Follow Up |
| 12/7/2011 | SD and Lisa s/w CL about how her actions, w/o the context of the history of DV against her, could have been seen as a batterer's actions. | Info-Legal |
| 12/7/2011 | SD met with CL at CVTC. | CVTC |
| 12/7/2011 | SD and Lisa s/w CL about the common tactics batterers use to intimidate their victims, and how some of her actions and statements could be misrepresented to look like those tactics. | Info-Legal |
| 12/7/2011 | SD s/w CL about the 28th precinct and their handling of the case. | Info-Legal |
| 12/7/2011 | SD provided CL w/ emotional support given the handling of her case to date. | Crisis Counseling |
| 12/7/2011 | SD s/w Lisa about CL's case and tried to set up a time for her to meet with KT and I to go over the court doc's in CL's possession and work out a coherent story to possibly present to the DA's office on CL's behalf. | PA-Legal |
| 12/7/2011 | SD s/w CL about the DA's office's handling of her case. | Info-Legal |
| 12/8/2011 | SD s/w Lisa and KT about setting up a meeting sometime next week. | PA-Legal |
| 12/13/2011 | SD tried calling Lisa @ CVTC again to set up a time to meet w/ KT re. CL's legal case. Trying for tomorrow afternoon near the end of the day. | PA-Legal |
| 12/13/2011 | SD s/w Lisa who called me back, and we set up the time of 3pm tomorrow to meet w/ KT to review CL's legal case. | PA-Legal |
| 12/20/2011 | SD called Lisa returning her message about setting up a time to meet w/ KT re. CL's legal case. No answer. Left vm. | PA-Other |
| 12/20/2011 | SD called Lisa returning her message about setting up a time to meet w/ KT re. CL's legal case. No answer. Left vm. | PA-Legal |
| 12/20/2011 | SD s/w Lisa @ CVTC and (tentatively) set up a meeting for next week on Wed @ 11 am. | PA-Legal |
| 12/28/2011 | SD met w/ Lisa & KT re. CL's case; Family Court OP, Crim Court charges, and proving she's a survivor of DV. | PA-Legal |
| 12/28/2011 | KT met w/ Lisa & SD re. CL's case: Family Court OP, Crim Court charges, and proving she's a surivor of DV. | PA-Counseling |
| 12/28/2011 | KT met w/ Lisa & SD re. CL's case: Family Court OP, Crim Court charges, and proving she's a surivor of DV. | PA-Legal |
| 12/28/2011 | SD met w/ Lisa & KT re. CL's case; Family Court OP, Crim Court | PA-Family |

| | Services | |
|---|---|---|
| Service Date | Service Notes | Type of Service |
| | charges, and proving she's a survivor of DV. | Court |
| 12/28/2011 | SD met w/ Lisa & KT re. CL's case; Family Court OP, Crim Court charges, and proving she's a survivor of DV. | PA-Counseling |
| 12/28/2011 | KT met w/ Lisa & SD re. CL's case: Family Court OP, Crim Court charges, and proving she's a surivor of DV. | PA-Family Court |
| 1/5/2012 | KT met with Lisa, SD, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Family Court |
| 1/5/2012 | KT met with Lisa, SD, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Legal |
| 1/5/2012 | SD met w/ Lisa, KT, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | Safety Planning |
| 1/5/2012 | KT met with Lisa, SD, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | Safety Planning |
| 1/5/2012 | KT met with Lisa, SD, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | Crisis Counseling |
| 1/5/2012 | SD met w/ Lisa, KT, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | Crisis Counseling |
| 1/5/2012 | SD met w/ Lisa, KT, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Legal |
| 1/5/2012 | SD met w/ Lisa, KT, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Family Court |
| 1/5/2012 | SD met w/ Lisa, KT, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Counseling |
| 1/5/2012 | KT met with Lisa, SD, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Counseling |
| 1/11/2012 | SD explained what our strategy will be in advocating with the DA's office and reminded her that while we believe her story, we have to know exactly what took place (whether it was incriminating or not) so that we can lay out the entire context of DV and its impact on her actions. | Info-Legal |
| 1/11/2012 | SD s/w CL about the different sub-sections of the aggravated harassment charge that she's facing and what they mean. | Info-Legal |
| 1/11/2012 | SD met w/ CL at CVTC to discuss the charges in-depth and to get a | Follow Up |

| ServiceDate | Services | |
| --- | --- | --- |
| | Service Notes | Type of Service |
| | full account of her version of events. | |
| 1/11/2012 | SD did some emotional, physical, and legal SP w/ CL because he is still calling her and she is talking to him b/c she misses him. | Safety Planning |
| 1/11/2012 | SD provided CL w/ emotional support throughout this process. | Crisis Counseling |
| 1/11/2012 | SD s/w CL in-depth about her version of events (# of phone calls and texts, what was said, the nature of the interactions w/ him, and her intent during these interactions). Recorded CL's version of events in a timeline format. | PA-Legal |
| 1/12/2012 | KT s/w Audrey Moore, CHief of DV Bureau @ NYCo DA's office, to inquire about case and raise issues of victim treated as perp. AM requested email with identifying email; I will follow up with her. | CJA-DA |
| 1/13/2012 | SD s/w CL who called in on the HL. | Follow Up |
| 1/13/2012 | SD offered CL emotional support b/c of how traumatized she was yesterday over her attorney's conduct. | Crisis Counseling |
| 1/13/2012 | SD s/w CL about her decision to fire Kartegener and the possibility of tapping into her resources at the Legal Aid office since she had a good feeling about them. | Info-Legal |
| 1/13/2012 | SD s/w CL about what the plea offer could mean for her and that it illustrates a possible problem with the state's case. | Info-Legal |
| 1/13/2012 | SD did some SP w/ CL b/c she mentioned just waking up (3:15pm) after taking sleeping pills the night before. She clarified that she didn't try to overdose; she took them just to knock her out. | Safety Planning |
| 1/13/2012 | SD called Lisa @ CVTC to update her on the case. No answer. Left vm requesting a call back. | PA-Legal |
| 1/17/2012 | SD called for Lisa @ CVTC again returning her vm. No answer. Left vm letting her know what happened w/ ADA since she's meeting with CL at 2pm today and asked her to call me. | PA-Legal |
| 1/19/2012 | SD s/w CL who called in on the HL but she hung up when I tried to talk to her about leaving a vm on our phone rather than calling over and over again. I informed her that we can't have someone call incessantly and that I was planning on returning her message when CL got frustrated and hung up the phone. | Follow Up |
| 1/19/2012 | KT emailed Audrey Moore and Lisa Haileselassie re: case status and advocating for dismissal. | CJA-DA |
| 1/19/2012 | SD s/w Lisa who called in returning my vm. S/w her about CL's case and the upcoming disorderly conduct hearing. | PA-Counseling |
| 1/19/2012 | SD sent KT the info for CL's case and the info for RESP who then forwarded that info to Audrey Moore at the DA's office. | CJA-DA |
| 1/19/2012 | SD s/w Lisa who called in returning my vm. S/w her about CL's case and the upcoming disorderly conduct hearing. | PA-Legal |
| 1/19/2012 | SD s/w CL who called in on the HL but she hung up when I tried to talk to her about leaving a vm on our phone rather than calling over | Info-Legal |

| Services | | |
|---|---|---|
| Service Date | Service Notes | Type of Service |
| | and over again. I informed her that we can't have someone call incessantly and that I was planning on returning her message when CL got frustrated and hung up the phone. | |
| 1/19/2012 | SD called Lisa @ CVTC back returning her vm from earlier today. No answer. Left a detailed vm about CL as well as about the other HL case they were helping us with. | PA-Legal |
| 1/20/2012 | SD s/w CL who called in on the HL about yesterday's conversation. | Follow Up |
| 1/20/2012 | SD gave CL emotional support in response to her anxiety over the criminal charges against her. | Crisis Counseling |
| 1/20/2012 | SD s/w CL about the criminal charges pending against her and the upcoming hearing on the disorderly conduct case. | Info-Legal |
| 1/24/2012 | SD s/w CL who called in on the HL w/ an update on the disorderly conduct case. ADA Wells offered an ACD, but she did not accept. | Info-Legal |
| 1/24/2012 | SD s/w CL who called in on the HL w/ an update on the disorderly conduct case. ADA Wells offered an ACD, but she did not accept. | Follow Up |
| 1/31/2012 | SD informed CL that we gave her info and the info of the case to the SVB chief (Audrey Moore) in the DA's office a couple weeks ago and we're still waiting on the outcome of that. | Info-Legal |
| 1/31/2012 | SD informed CL that even one missed court date can result in a dismissal of her FC case against RESP, which is what happened. However, she didn't show b/c Kartegener told her the wrong date and they've given her until Mon to come back w/ a new attorney. | Info-Legal |
| 1/31/2012 | SD informed CL that if ADA Wells knew she wasn't going to take the deal, then he didn't have to formally offer it to her (it sounds like he did not). | Info-Legal |
| 1/31/2012 | SD s/w CL who called in on the HL very upset and threatening to "go to the Bk Bridge" right now (basically providing an underlying implication of suicidality). | Crisis Counseling |
| 1/31/2012 | SD s/w CL who called in on the HL very upset and threatening to "go to the Bk Bridge" right now (basically providing an underlying implication of suicidality). | Follow Up |
| 2/3/2012 | SD s/w CL who called in on the HL about the pending crim charges. Wanted to know what we "sent" to the DA's office and I informed her that we only provided her name and the docket # of the case b/c that's all they wanted. | Follow Up |
| 2/3/2012 | SD s/w CL who called in on the HL about the pending crim charges. Wanted to know what we "sent" to the DA's office and I informed her that we only provided her name and the docket # of the case b/c that's all they wanted. | Info-Legal |
| 2/3/2012 | SD confirmed w/ CL that it would still be okay to present what she gave us to the DA's office if they ask for it. She said that was fine. | Info-Legal |
| 2/6/2012 | SD called Lisa @ CVTC back returning her call re. status of CL's case and advocacy with DA's office. | PA-Legal |

| Services | | |
|---|---|---|
| Service Date | Service Notes | Type of Service |
| 2/6/2012 | SD s/w CL who called in to update me on the case. | Follow Up |
| 2/6/2012 | SD s/w CL about the pending crim case and her new Legal Aid attorney. | Info-Legal |
| 2/6/2012 | SD s/w CL about meeting w/ her Legal Aid attorney. Will discuss w/ KT and see if there is an appropriate meeting time this week (may not be possible this week). | Info-Legal |
| 2/7/2012 | SD responded to CL's email w/ corrected count info, docket #'s, and an explanation of what an ACD is for her formal complaint about the DA's office. | Info-Legal |
| 2/7/2012 | SD s/w Lisa who called re. the pending criminal charges and case developments. Lisa will be seeing CL later today for a counseling session. | PA-Counseling |
| 2/7/2012 | SD responded to CL's email w/ corrected count info, docket #'s, and an explanation of what an ACD is for her formal complaint about the DA's office. | Info-Legal |
| 2/7/2012 | SD responded to CL's email w/ corrected count info, docket #'s, and an explanation of what an ACD is for her formal complaint about the DA's office. | Info-Legal |
| 2/7/2012 | SD responded to CL's email w/ corrected count info, docket #'s, and an explanation of what an ACD is for her formal complaint about the DA's office. | Follow Up |
| 2/7/2012 | SD s/w Lisa who called re. the pending criminal charges and case developments. Lisa will be seeing CL later today for a counseling session. | PA-Legal |
| 2/7/2012 | SD informed CL that Lisa @ CVTC called me re. updates on the case and that she's prob concerned about that. | Info-Counseling |
| 2/7/2012 | SD provided CL my email address b/c she would like me to look over the formal complaint she's going to write about the DA's office's handling of her case. I agreed to look at it. | Info-Legal |
| 2/7/2012 | SD informed CL that her theory as to overall office responsibility may not be true; it's highly unlikely the entire DA's office is involved (as opposed to ADA Stroben and/or Wells). | Info-Legal |
| 2/7/2012 | SD s/w CL who called in on the HL w/ an update on the case. Her neighbor is on the community board with an inspector at the 28th, and the neighbor asked him what was going on w/ CL's case. The inspector allegedly stated that it was all the DA's office. | Follow Up |
| 2/7/2012 | SD provided CL w/ emotional support re. the new info she's rec'd about the DA's office's conduct in her case (according to an inspector at the 28th precinct that is). | Crisis Counseling |
| 2/8/2012 | KT emailed Lisa Haileselassie and SD re: conversation with defense attorney and gathering evidence, developing plan for crisis management, reporting on performance in court, etc. | PA-Counseling |
| 2/8/2012 | KT emailed Tajuana Johnson w/ same info | PA-Legal |

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| 2/8/2012 | KT emailed Lisa Haileselassie and SD re: conversation with defense attorney and gathering evidence, developing plan for crisis management, reporting on performance in court, etc. | PA-Legal |
| 2/8/2012 | KT called Tajuana Johnson, CL's new defense attorney at Legal Aid, and left message advising of who I am and my role in case. | PA-Legal |
| 2/8/2012 | KT emailed Tajuana Johnson w/ same info | CJA-Other |
| 2/8/2012 | KT called Tajuana Johnson, CL's new defense attorney, and discussed situaton briefly. Discussed our role and the ways we can support. She is interested in our working with Kelly to prepare documents re: her victimization. I will reach out to SD and LH re: preparing this evidence. | CJA-Other |
| 2/8/2012 | KT called Tajuana Johnson, CL's new defense attorney at Legal Aid, and left message advising of who I am and my role in case. | CJA-Other |
| 2/15/2012 | SD met w/ CL briefly at CVTC re. doc's to bring to Friday's meeting w/ Tajuana (e.g. records from glass companies, medical records from incidents identified on her timeline, etc.). CL stated that she's scared about the trial and I validated her feelings about that. | Follow Up |
| 2/15/2012 | SD met w/ CL briefly at CVTC re. doc's to bring to Friday's meeting w/ Tajuana (e.g. records from glass companies, medical records from incidents identified on her timeline, etc.). CL stated that she's scared about the trial and I validated her feelings about that. | Info-Legal |
| 2/15/2012 | SD met w/ CL briefly at CVTC re. doc's to bring to Friday's meeting w/ Tajuana (e.g. records from glass companies, medical records from incidents identified on her timeline, etc.). CL stated that she's scared about the trial and I validated her feelings about that. | Crisis Counseling |
| 2/16/2012 | SD called CL to remind her to bring the doctor's reports and receipts from the glass companies tomorrow. No answer. Left vm and also emailed CL w/ the same request. | Follow Up |
| 2/16/2012 | SD called CL to remind her to bring the doctor's reports and receipts from the glass companies tomorrow. No answer. Left vm and also emailed CL w/ the same request. | Info-Legal |
| 2/17/2012 | KT met w/ Lisa Haileselassie, Tajuana Johnson and CL to discuss criminal case. Discussed strategy, prospects, useful ways to prepare. | Follow Up |
| 2/17/2012 | KT met w/ Lisa Haileselassie, Tajuana Johnson and CL to discuss criminal case. Discussed strategy, prospects, ACD v. dismissal, useful ways to prepare. | Safety Planning |
| 2/17/2012 | KT met w/ Lisa Haileselassie, Tajuana Johnson and CL to discuss criminal case. Discussed strategy, prospects, useful ways to prepare. | PA-Legal |
| 2/17/2012 | KT met w/ Lisa Haileselassie and Tajuana Johnson to discuss case. Discussed outlook, position of prosecutor, attorney's impression of defense issues. Discussed ways we can assist, victimization, etc. | PA-Legal |
| 2/17/2012 | KT met w/ Lisa Haileselassie and Tajuana Johnson to discuss case. | Safety |

| Services | | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| | Discussed outlook, position of prosecutor, attorney's impression of defense issues. Discussed ways we can assist, victimization, bottom lines for CL re: safety and autonomy. | Planning |
| 2/17/2012 | KT met w/ Lisa Haileselassie and Tajuana Johnson to discuss case. Discussed outlook, position of prosecutor, attorney's impression of defense issues. Discussed ways we can assist, victimization, etc. | CJA-Other |
| 2/17/2012 | KT met w/ Lisa Haileselassie, Tajuana Johnson and CL to discuss criminal case. Discussed strategy, prospects, useful ways to prepare. | CJA-Other |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. | Crisis Counseling |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. Discussed safety issues while she remains living next door to perp w/o an active order, which was dismissed 1/31/12. | Safety Planning |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. | Follow Up |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a | CJA-Other |

11

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. | |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. | PA-Legal |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. | Info-Legal |
| 2/24/2012 | Discussed right to file for another OP if necessary. | Info-Family Court |
| 2/27/2012 | SD informed CL that I don't know how this is all going to play out, but that the ADA has to prove that she had the intent to commit the crimes she's charged with. | Info-Legal |
| 2/27/2012 | SD advised CL to take her cues from Tajuana and to let her handle the case. | Info-Legal |
| 2/27/2012 | SD s/w CL briefly but I had not spoken to KT yet about the meeting they all had on Friday (I was out of town). Provided her w/ some emotional support and also discussed the statements the ADA apparently made to Tajuana. | Info-Legal |
| 2/27/2012 | SD s/w CL briefly but I had not spoken to KT yet about the meeting they all had on Friday (I was out of town). Provided her w/ some emotional support and also discussed the statements the ADA apparently made to Tajuana. | Follow Up |
| 2/27/2012 | SD s/w CL briefly but I had not spoken to KT yet about the meeting they all had on Friday (I was out of town). Provided her w/ some emotional support and also discussed the statements the ADA apparently made to Tajuana. | Crisis Counseling |
| 3/2/2012 | SD s/w CL who called in scared about the hearing on Tuesday. SD | Crisis |

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | offered emotional support. | Counseling |
| 3/2/2012 | SD s/w CL who called back to ask about the ACD and her ability to sue after the 1 yr time period is up. I confirmed what both KT and Tajuana told her about this on Friday. | Info-Legal |
| 3/2/2012 | SD s/w CL who called back to ask about the ACD and her ability to sue after the 1 yr time period is up. I confirmed what both KT and Tajuana told her about this on Friday. | Follow Up |
| 3/2/2012 | SD s/w Lisa @ CVTC about my conversation w/ CL earlier today. Let her know that CL was pretty upset, but I was able to talk her down. | PA-Counseling |
| 3/2/2012 | SD s/w Lisa @ CVTC who returned my call. Discussed the hearing on Tuesday and the fact that she might not be able to go. Also discussed the 30/30, which is a no go b/c Kartegener did ask for an adjournment. | PA-Legal |
| 3/2/2012 | SD informed CL that I have no idea who the "phone expert" the ADA mentioned to Tajuana would be, but that Raheem has to confirm to the court that the phone call came from CL on the alleged date after the OP was issued. | Info-Legal |
| 3/2/2012 | SD s/w CL about Raheem showing up at the hearing on Tuesday to vet the phone call for the contempt of court charge, and CL reiterated that he won't be there. | Info-Legal |
| 3/2/2012 | SD informed CL that the ADA has to prove 3 things: 1) that she committed the crime, 2) that she had the intent to commit the crime, and 3) these two things beyond a reasonable doubt. | Info-Legal |
| 3/2/2012 | SD s/w CL who called in scared about the hearing on Tuesday. SD offered emotional support. | Follow Up |
| 3/2/2012 | SD informed CL that if this goes to trial, the ADA has to provide his evidence to Tajuana who will have the opportunity to investigate all of it. | Info-Legal |
| 3/6/2012 | SD s/w CL after hearing and advised her that it's essential that she listen to and trust Tajuana's actions in court. Confirmed what Tajuana told her after court about how to act when in front of the judge, and to let her make the plays. | Crisis Counseling |
| 3/6/2012 | SD s/w CL after hearing and informed her that when Tajuana checked the calendar, she found that Kartegener had agreed to each adjournment, so today is the first day of the 30/30 clock. This is why she needs to let Tajuana control what's happening in court (she was trying to push the next hearing back into April to run down the clock). | Info-Legal |
| 3/6/2012 | SD went to IDV w/ Tajuana, Rammel (from CVTC), and CL for criminal trial hearing. People weren't ready. 30/30 time started. Adjourned until 3/15/12. | PA-Legal |
| 3/6/2012 | SD s/w CL after hearing and advised her that it's essential that she listen to and trust Tajuana's actions in court. Confirmed what | Info-Legal |

13

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | Tajuana told her after court about how to act in front of the judge, and to let her make the plays. | |
| 3/6/2012 | SD s/w CL after hearing about the trajectory of the case over the past year from 300+ charges to an ACD to now not being ready when Tajuana indicated she is ready. | Info-Legal |
| 3/6/2012 | SD went to IDV w/ Tajuana, Rammel (from CVTC), and CL for criminal trial hearing. People weren't ready. 30/30 time started. Adjourned until 3/15/12. | CJA-DA |
| 3/6/2012 | SD went to IDV w/ Tajuana, Rammel (from CVTC), and CL for criminal trial hearing. People weren't ready. 30/30 time started. Adjourned until 3/15/12. | PA-Counseling |
| 3/8/2012 | KT s/w Tajuana, CL's defense attorney. Discussed issues with the case, potential responses to assist with the criminal charges. | PA-Legal |
| 3/9/2012 | KT s/w CL and discussed what happened in court. Discussed straying from plan, CL's concerns with prosecution, etc. Did CC. | Follow Up |
| 3/9/2012 | KT s/w CL and discussed what happened in court. Discussed straying from plan, CL's concerns with prosecution, etc. Did CC. | Crisis Counseling |
| 3/9/2012 | KT s/w CL and discussed what happened in court. Discussed straying from plan, CL's concerns with prosecution, etc. Did CC. | Info-Legal |
| 3/13/2012 | KT s/w CL's social worker Lisa Haileselassie and discussed case. Discussed mental health issues and appropriate responses. Discussed ways to assist CL's attorney. | PA-Counseling |
| 3/13/2012 | KT s/w CL's social worker Lisa Haileselassie and discussed case. Discussed mental health issues and appropriate responses. Discussed ways to assist CL's attorney. | CVTC |
| 3/13/2012 | KT s/w CL's social worker Lisa Haileselassie and discussed case. Discussed mental health issues and appropriate responses. Discussed ways to assist CL's attorney. | PA-Legal |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as she was extemely distressed by the conversation. Discussed plan for upcoming court | Crisis Counseling |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as she was extemely distressed by the conversation. Discussed plan for upcoming court | Info-Legal |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as | PA-Legal |

14

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | she was extemely distressed by the conversation. Discussed plan for upcoming court | |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as she was extemely distressed by the conversation. Discussed plan for upcoming court | Safety Planning |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as she was extemely distressed by the conversation. Discussed plan for upcoming court | Follow Up |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as she was extemely distressed by the conversation. Discussed plan for upcoming court | CJA-Other |
| 3/15/2012 | KT s/w CL who reported on court case. Raheem did not show up in court again. Prosecutor requested an adjournment on the case and advised he still needed more time. CL distressed by the extension of the case but understood the legal strategy. | Follow Up |
| 3/15/2012 | KT s/w CL who reported on court case. Raheem did not show up in court again. Prosecutor requested an adjournment on the case and advised he still needed more time. CL distressed by the extension of the case but understood the legal strategy. | Crisis Counseling |
| 3/15/2012 | KT s/w CL who reported on court case. Raheem did not show up in court again. Prosecutor requested an adjournment on the case and advised he still needed more time. CL distressed by the extension of the case but understood the legal strategy. | Info-Legal |
| 3/21/2012 | KT s/w CL and discussed upcoming court. She spoke with her defense attorney who wants her to begin collecting evidence. Atty said she does not want to flush out the case before seeing what the prosecutor has. CL and I discussed abuse issues and her efforts to try to keep the situation under wraps. Did safety planning and discussed strategy for getting protection once this is over. CL became very distressed during the conversation and I tried to calm her down a little bit. She is very worried about the ways her abuser will use this against her in the future. | Info-Legal |
| 3/21/2012 | KT s/w CL and discussed upcoming court. She spoke with her defense attorney who wants her to begin collecting evidence. Atty said she does not want to flush out the case before seeing what the prosecutor has. CL and I discussed abuse issues and her efforts to | Safety Planning |

15

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | try to keep the situation under wraps. Did safety planning and discussed strategy for getting protection once this is over. CL became very distressed during the conversation and I tried to calm her down a little bit. She is very worried about the ways her abuser will use this against her in the future. | |
| 3/21/2012 | KT s/w CL and discussed upcoming court. She spoke with her defense attorney who wants her to begin collecting evidence. Atty said she does not want to flush out the case before seeing what the prosecutor has. CL and I discussed abuse issues and her efforts to try to keep the situation under wraps. Did safety planning and discussed strategy for getting protection once this is over. CL became very distressed during the conversation and I tried to calm her down a little bit. She is very worried about the ways her abuser will use this against her in the future. | Follow Up |
| 3/21/2012 | KT s/w CL and discussed upcoming court. She spoke with her defense attorney who wants her to begin collecting evidence. Atty said she does not want to flush out the case before seeing what the prosecutor has. CL and I discussed abuse issues and her efforts to try to keep the situation under wraps. Did safety planning and discussed strategy for getting protection once this is over. CL became very distressed during the conversation and I tried to calm her down a little bit. She is very worried about the ways her abuser will use this against her in the future. | Crisis Counseling |
| 3/26/2012 | KT s/w CL and discussed that I could not attend Monday's meeting. CL understood. CL stated that she was receiving messages on her "Kelly Price" phone line from a blocked number and she believed it was Kenya Wells calling her. CL stated that the called said sexually explicit things and was harassing her. She has received repeated messages from this number. CL was very upset. Did a little CC. Discussed legal strategy and our potential role - will help to gather documents as her defense attorney sees fit. | Follow Up |
| 3/26/2012 | KT s/w CL and discussed that I could not attend Monday's meeting. CL understood. CL stated that she was receiving messages on her "Kelly Price" phone line from a blocked number and she believed it was Kenya Wells calling her. CL stated that the called said sexually explicit things and was harassing her. She has received repeated messages from this number. CL was very upset. Did a little CC. Discussed legal strategy and our potential role - will help to gather documents as her defense attorney sees fit. | Crisis Counseling |
| 3/26/2012 | KT s/w CL and discussed that I could not attend Monday's meeting. CL understood. CL stated that she was receiving messages on her "Kelly Price" phone line from a blocked number and she believed it was Kenya Wells calling her. CL stated that the called said sexually explicit things and was harassing her. She has received repeated messages from this number. CL was very upset. Did a little CC. Discussed legal strategy and our potential role - will help to gather | Info-Legal |

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | documents as her defense attorney sees fit. | |
| 4/3/2012 | SD s/w CL who called in with an update on court today. ADA announced he wasn't ready, and the case was adjourned until 5/23/12. Discussed with CL that WebCrims won't be reliable for counting days b/c it's dependent on the judge's calendar. CL requested call back from KT. | Follow Up |
| 4/3/2012 | SD s/w CL who called in with an update on court today. ADA announced he wasn't ready, and the case was adjourned until 5/23/12. Discussed with CL that WebCrims won't be reliable for counting days b/c it's dependent on the judge's calendar. CL requested call back from KT. | Crisis Counseling |
| 4/3/2012 | SD s/w CL who called in with an update on court today. ADA announced he wasn't ready, and the case was adjourned until 5/23/12. Discussed with CL that WebCrims won't be reliable for counting days b/c it's dependent on the judge's calendar. CL requested call back from KT. | Info-Legal |
| 4/3/2012 | KT called back CL | Follow Up |
| 4/3/2012 | KT rec'd message from CL | Follow Up |
| 4/4/2012 | SD consulted w/ Lisa at CVTC after s/w CL the day before re. charges pending against CL, CL working w/ her attorney instead of around her, and how CL is coping with everything. | PA-Legal |
| 4/4/2012 | SD consulted w/ Lisa at CVTC after s/w CL the day before re. charges pending against CL, CL working w/ her attorney instead of around her, and how CL is coping with everything. | PA-Counseling |
| 4/4/2012 | KT s/w CL and made plans for meeting with attorney - scheduled tentatively for next week. | Follow Up |
| 4/4/2012 | KT left message for CL | Follow Up |
| 4/4/2012 | KT s/w CL and made plans for meeting with attorney - scheduled tentatively for next week. | Info-Legal |
| 4/16/2012 | KT rec'd message from CL inquiring about date of appointment | Follow Up |
| 4/16/2012 | KT l/m for CL advising of appointment tomorrow at 4 | Follow Up |
| 4/16/2012 | KT l/m for CL advising of appointment tomorrow at 4 | Info-Legal |
| 4/16/2012 | KT emailed CL's attorney to confirm appointment time | CJA-Other |
| 4/16/2012 | KT rec'd response from CL's attorney advising she was out of town and would check upon return | CJA-Other |
| 4/17/2012 | KT rec'd message from CL confirming appt | Follow Up |
| 4/17/2012 | KT left message for CL confirming appt. | Follow Up |
| 4/17/2012 | KT rec'd email from CL's attorney advising she can still meet at 4 today if CL is available. | CJA-Other |
| 4/30/2012 | KT s/w CL and discussed housing court issues. Discussed eviction process and strategies to respond. CL stated she has retained records and we discussed requesting a summary of allegations and | Crisis Counseling |

| ServiceDate | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | responding in turn to each with the evidence she has. | |
| 4/30/2012 | KT s/w CL and discussed housing court issues. Discussed eviction process and strategies to respond. CL stated she has retained records and we discussed requesting a summary of allegations and responding in turn to each with the evidence she has. | Info-Housing |
| 4/30/2012 | Discussed pending criminal case and meeting – will meet tomorrow at 4 with attorney. | CJA-Other |
| 4/30/2012 | KT s/w CL and discussed housing court issues. Discussed eviction process and strategies to respond. CL stated she has retained records and we discussed requesting a summary of allegations and responding in turn to each with the evidence she has. | Follow Up |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct – failure to pursue witnesses, etc. | Crisis Counseling |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct – failure to pursue witnesses, etc. | PA-Legal |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct – failure to pursue witnesses, etc. | Safety Planning |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct – failure to pursue witnesses, etc. | Follow Up |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct – failure to pursue witnesses, etc. | CJA-Other |
| 5/4/2012 | KT left message for CL re: evidence collecting. | Follow Up |
| 5/4/2012 | MM left message for CL. To collect more info on issues on case. | Follow Up |
| 5/16/2012 | KT emailed CL's attorney re: criminal case and evidence collecting. | CJA-Other |
| 5/16/2012 | KT rec'd response from CL's attorney advising no progress had been made. | CJA-Other |
| 5/22/2012 | KT rec'd email from CL's attorney advising that the 30-30 deadline had run out according to her information. | CJA-Other |
| 5/22/2012 | KT replied to CL's attorney via email. | CJA-Other |
| 5/24/2012 | SD s/w CL again who called back to say that she was able to find the case on WebCrims. I tried again and found it too. Case continued to 6/6/12. Verified it to CL that I could find it, and suggested that I probably couldn't find it this morning b/c the site hadn't updated | Follow Up |

18

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | yet. | |
| 5/24/2012 | SD called Lisa @ CVTC to verify the charges were dropped. No answer. Left vm. | PA-Legal |
| 5/24/2012 | SD s/w CL again who called back to say that she was able to find the case on WebCrims. I tried again and found it too. Case continued to 6/6/12. Verified to CL that I could find it, and suggested that I probably couldn't find it this morning b/c the site hadn't updated yet. | Crisis Counseling |
| 5/24/2012 | SD s/w CL again who called back to say that she was able to find the case on WebCrims. I tried again and found it too. Case continued to 6/6/12. Verified to CL that I could find it, and suggested that I probably couldn't find it this morning b/c the site hadn't updated yet. | Info-Legal |
| 5/24/2012 | SD s/w CL who called in about what happened in the hearing yesterday. Informed her of what I told Lisa about the WebCrims info, but also that this doesn't mean the case was dismissed. It's possible the website hasn't been updated yet; however, it sounds like the case is about to be dismissed based on what happened in yesterday's hearing. | Follow Up |
| 5/24/2012 | SD s/w CL who called in about what happened in the hearing yesterday. Informed her of what I told Lisa about the WebCrims info, but also that this doesn't mean the case was dismissed. It's possible the website hasn't been updated yet; however, it sounds like the case is about to be dismissed based on what happened in yesterday's hearing. | Info-Legal |
| 5/24/2012 | SD s/w CL who called in about what happened in the hearing yesterday. Informed her of what I told Lisa about the WebCrims info, but also that this doesn't mean the case was dismissed. It's possible the website hasn't been updated yet; however, it sounds like the case is about to be dismissed based on what happened in yesterday's hearing. | Crisis Counseling |
| 5/29/2012 | KT s/w CL and discussed court case. She believes that her case will be dismissed based on speedy trial requirements. CL's attorney will file a motion to dismiss on that basis. Explained to CL that once the motion to dismiss is filed the prosecutor will have the opportunity to reply and the cas | |
| 5/30/2012 | SD s/w CL briefly at CVTC and discussed the CC case. CL believes the case will be dropped b/c her attorney assured she would file the motion to dismiss. Advised CL to be patient and follow her attorney's lead. | Crisis Counseling |
| 5/30/2012 | SD s/w CL briefly at CVTC and discussed the CC case. CL believes the case will be dropped b/c her attorney assured she would file the motion to dismiss. Advised CL to be patient and follow her attorney's lead. | Info-Legal |
| 5/30/2012 | SD s/w CL briefly at CVTC and discussed the CC case. CL believes | Follow Up |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | the case will be dropped b/c her attorney assured she would file the motion to dismiss. Advised CL to be patient and follow her attorney's lead. | |
| 5/31/2012 | SD informed CL that in regards to getting her bail back, she will need ID but she should also discuss that w/ Tajuana to get a better idea of how that will all work out. | Info-Legal |
| 5/31/2012 | SD s/w CL who called back returning my vm. She said that Tajuana filed the motion to dismiss today, and is trying to get a clerk to look at it today (she's unsure if she can pull that off). CL will keep us posted. | Follow Up |
| 5/31/2012 | SD called CL back returning her messages from this morning. No answer. Left vm. | Follow Up |
| 6/6/2012 | KT emailed CL's attorney in response. | CJA-Other |
| 6/6/2012 | KT called CL and left message advising atty was aware of situation. | Follow Up |
| 6/6/2012 | KT rec'd email from atty advising she had heard the case got called and re: CL's reaction. | CJA-Other |
| 6/6/2012 | KT emailed CL's attorney to see where she was. | CJA-Other |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Info-Other |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Info-Legal |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Crisis Counseling |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Follow Up |
| 6/6/2012 | KT called CL and left message advising atty was aware of situation. | Info-Legal |
| 6/13/2012 | SD explained that if her defense attorney had known about the cert. of readiness, then the mixup over what time the hearing was at | Info-Legal |

# EXHIBIT #3

SILVIA LAROCCA

DECEMBER 18, 2015

My name is Mark Christopher LaRocca. I worked as a Lieutenant in the New York City Police Department from 1997 to 2013 assigned to the 028 Precinct in Manhattan. Circa 2010 and 2011, I had several conversations with Ms. Kelly Price in which she claimed to be a crime victim, specifically a victim of domestic violence.

During my interviews of Ms. Price, I found her allegations of abuse, to be credible and with merit. I felt there was sufficient evidence to prepare Complaint Reports to document these allegations which would then be further investigated by the Precinct Domestic Violence Officer and/or the Precinct Detective Squad.

After speaking with the Detectives regarding Ms. Price's allegations, I was informed that prior to a report being further investigated, a phone call to someone in the Manhattan District Attorney's Office who was familiar with Ms. Price's history of reporting crimes needed to be consulted.

Ms. Price informed me that she felt this hindered her ability to receive fair treatment regarding the investigation of her complaints. I informed her that as a victim, she should speak with the supervisor of the person at the Manhattan District Attorney's Office handling her complaints if she felt her complaints were being stonewalled and not acted upon in a fair manner.

MARK C. LaROCCA

Mark C. LaRocca

# EXHIBIT #4

### PROSECUTORIAL IMMUNITY IN THE SECOND CIRCUIT

**Prosecutorial immunity generally.**

Under the plain text 42 U.S.C. §1983, any state actor who causes a citizen to suffer a constitutional or federal rights violation can be sued.  But in *Tenney v. Brandhove*, 341 U.S. 367 (1951) (holding that legislatures acting in legislative capacity are absolutely immune from suit under Section 1983), Justice Frankfurter wrote: "We cannot believe that Congress ... would impinge on [traditional immunities] so well grounded in history and reason by covert inclusion in the general language" of Section 1983.  In *Monroe v. Pape*, 365 U.S. 167 (1961), the opinion which gave birth to modern civil rights litigation, Justice Douglas wrote for the Court that Section 1983 "should be read against the background of tort liability [ ]."  *Id.* at 188.

The "background of tort liability," *id.* at 188, the Court noted in *Pierson v. Ray*, 386 U.S. 547 (1967)  includes common law defenses.  *Id.* at 554-55 (holding that some immunities were so "well established" at common law that Congress "would have specifically so provided had it wished to abolish" them.)  Thus, if "'an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871 [he will be entitled to immunity unless Section] 1983's history or purposes nonetheless counsel against recognizing the same immunity in 1983 actions.'"  *Malley v. Briggs*, 475 U.S. 335, 339-40 (1986) (quoting *Tower v. Glover*, 467 U.S. 914, 920 (1984)).  In *Imbler v. Pachtman*, 424 U. S. 409 (1976), the Court held that prosecutors performing core prosecutorial functions are entitled to absolute immunity.

Prosecutorial immunity does not apply to all prosecutorial conduct.  Rather, the reviewing court looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U. S. 219, 229 (1988).  This is called the "functional test" to immunities.  When a prosecutor performs "advocative" conduct, that is, he "act[s] within the scope of his duties in initiating and pursuing a criminal prosecution," *Imbler v. Pachtman*, 424 U. S. 409, 410 (1976), he is absolutely immune from suit.

**The functional approach.**

It's a matter of first principle that a prosecutor is not entitled to absolute immunity unless he is performing an "advocative" function.  In *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976), the Court noted the significant difference between "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate [ ]."  Thus, in *Burns v. Reed*, 500 U.S. 478 (1991) the Court held that prosecutors were absolutely immune for conduct associated with presenting evidence before a grand jury, but not for rights violations flowing from legal advice they gave to police officers.  Giving legal advice to police officers (in this case, telling them that hypnotizing a witness was constitutional), was not advocative conduct.  *Id.* at 492-96.

Then, in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the Court held that a prosecutor was not absolutely immune for false statements made in a press conference, and for other pre-trial investigative conduct.  The *Fitzsimmons* court noted that "[t]he conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions."  *Id.* at 278.  Thus, even though "[s]tatements to the press may be

1

an integral part of a prosecutor's job," *id.* at 278 and "may serve a vital public function ... a prosecutor is in no different position than other executive officials who deal with the press, and, as noted above, qualified immunity is the norm for them." *Id.* (citations omitted).

Recently, in *Kalina v. Fletcher*, 522 U.S. 118 (1997), a unanimous Supreme Court held that a prosecutor who perjured herself when certifying certain facts necessary to obtain an arrest warrant was not absolutely immune from suit. Applying the functional approach to immunities, i.e., looking to "the nature of the function performed, not the identity of the actor who performed it," *Forrester v. White*, 484 U. S. 219, 229 (1988), the Court asked "whether the prosecutor was acting as a complaining witness rather than a lawyer when she executed the certification [ ]." *Id.* at 129. The Court rejected the prosecutor's argument "that the execution of the certificate was just one incident in a presentation that, viewed as a whole, was the work of an advocate and was integral to the initiation of the prosecution." *Id.* at 130. Because "[t]estifying about facts is the function of the witness, not of the lawyer," the prosecutor was not entitled to absolute immunity.

Supreme Court precedent thus clearly establishes that a prosecutor is not entitled to absolute immunity unless he is performing advocative conduct. The challenge is distinguishing between "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate[ ]." *Imbler v. Pachtman*, 424 U.S. at 430-31 (1976).

**The "advocative" function.**

"Advocative" conduct includes that which is "intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. at 430-31. In *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) a unanimous three-judge panel wrote that advocative conduct is that which "lie[s] at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process." These "core" functions include:

- filing criminal charges, *Imbler v. Pachtman*, 424 U. S. 409 (1976); *Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995), even when done in bad faith. *Shmueli v. New York*, No. 03-0287 (2d Cir. Sept. 15, 2005);
- presenting evidence before a grand jury, *Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995);
- advocacy at a preliminary hearing, *Burns v. Reed*, 500 U.S. 478 (1991);
- accepting a plea bargain, *Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir. 1981);
- retaining evidence pending a direct appeal, *Parkinson v. Cozzolino*, 238 F.3d 148 (2d Cir. 2001);
- advocating increased bail at a bail hearing, *Pinuad v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995).

**The "impermissibly intertwined" and lack of jurisdiction exceptions.**

Even if a prosecutor is performing an advocative function, he will nonetheless be denied absolute immunity if he intertwines the exercise of his advocation function with impermissible conduct; or if he acts in excess of his statutorily-conferred jurisdiction.

Thus, absolute immunity will not shield him if he "has intertwined his exercise of

2

prosecutorial discretion with other, unauthorized conduct." *Bernard v. County of Suffolk*, 356 F.3d 495, 504. A prosecutor also does not have absolute immunity "for acts that are manifestly or palpably beyond his authority" or are "performed in the clear absence of all jurisdiction." *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989). To determine whether a prosecutor has authority to take some act, "a court will begin by considering whether relevant statutes authorize prosecution for the charged conduct." *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (holding that prosecutor engaging in an allegedly politically-motivated prosecution was nonetheless entitled to absolute immunity, since the decision to file charges was a prosecutorial function).

"For example, where a prosecutor has linked his authorized discretion ... to an unauthorized demand for a bribe, sexual favors, or the defendant's performance of a religious act, absolute immunity will be denied." *Id.* at 504 (citing *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996). The most prominent (and perhaps one of the only published Second Circuit opinions applying the impermissibly intertwined doctrine) is *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996)

In *Doe*, a state prosecutor, Gerald D'Amelia filed felony charges against a mother for allegedly molesting her 14-year old son. *Id.* at 1206. After beginning to doubt the boy's accusations, the prosecutor agreed to dismiss the charges. But only on one condition. Doe, a Roman Catholic, was required to swear on the Bible that the son's accusations were false. *Id.* at 1207 ("D'Amelia testified that he told counsel that [unless Doe swore on the Bible] criminal charges would not be dismissed against her [ ].")

The panel held that even though accepting and demand a plea bargain is an advocative function, *Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir. 1981), the prosecutor was not absolutely immune since he lacked authority to demand that Doe swear on the Bible. Because he lacked authority to demand this "intertwined conduct," D'Amelia was not absolutely immune from suit. *Id.* at 1211. ("D'Amelia's conduct was not protected by absolute immunity because his demand that Doe swear to her innocence on a bible in church was manifestly beyond his authority.")

**Summary.**

Prosecutorial immunity, an atextual and judicially-created doctrine, shields advocative conduct from suit. Whether or not the prosecutor acted with bad faith or ill will matters not. The challenge, then, is differentiating between "advocative," "administrative," and "investigatory" functions. It is also worth noting that even if a prosecutor is denied absolute immunity, she might still be entitled to qualified immunity.

# EXHIBIT #5

Not a Legal Professional? Visit our consumer site
Register | Log-In

CASES & CODES    PRACTICE MANAGEMENT    JOBS & CAREERS    LEGAL NEWS    BLOGS    LAW TECHNOLOGY    Search FindLaw

Forms    Lawyer Marketing    Corporate Counsel    Law Students    JusticeMail    Newsletters

FindLaw   Caselaw   United States   US 2nd Cir   SHMUELI v. THE CITY OF NEW YORK 10

# SHMUELI v. THE CITY OF NEW YORK 10

Print    --    Font size: A A Reset

### United States Court of Appeals,Second Circuit.

**Sarit SHMUELI, Plaintiff-Appellee, v. THE CITY OF NEW YORK, New York City Police Department, Martin Lieberman, and John Does 1-10, the names being fictitious, Defendants, Linda Fairstein and Stacey Mitchell, Defendants-Appellants.**

### Docket No. 03-0287-PR.

### Decided: September 14, 2005

Before: KEARSE, JACOBS, and STRAUB, Circuit Judges. Sarit Shmueli, New York, New York, Plaintiff-Appellee pro se. Michael S. Morgan, Assistant District Attorney, New York, New York (Robert M. Morgenthau, District Attorney for New York County as Special Assistant Corporation Counsel, New York, New York, on the brief), for Defendants-Appellants.

Defendants Linda Fairstein and Stacey Mitchell, former Assistant District Attorneys for New York County (collectively the "ADAs"), appeal from so much of an order of the United States District Court for the Southern District of New York, Sidney H. Stein, Judge, as denied their motions pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss, on the ground of absolute prosecutorial immunity, the claims of plaintiff Sarit Shmueli against them for malicious prosecution.   To the extent pertinent to this appeal, the amended complaint alleges that appellants, while in office, prosecuted Shmueli on charges that she harassed her former domestic partner, defendant Martin Lieberman, despite the ADAs' knowledge that she was innocent of those charges, and that the prosecution was motivated by Fairstein's friendship with Lieberman.   The district court denied the ADAs' absolute-immunity-based motions, ruling that, if the allegations of Shmueli's amended complaint were true, the ADAs had acted without jurisdiction, which would make the defense of absolute immunity unavailable.   On appeal, the ADAs contend that the defense of absolute immunity spares an official from any scrutiny of his motives and that the district court thus erred in equating an allegedly improper prosecutorial state of mind with a lack of prosecutorial jurisdiction.   For the reasons that follow, we agree; and to the extent that the district court denied appellants' absolute-immunity-based motions to dismiss claims for damages, we reverse.

### I.  BACKGROUND

The New York State ("State") prosecution of Shmueli is a matter of public record, of which we take judicial notice.   In determining whether the ADAs are entitled to absolute immunity with respect to that prosecution, we accept the allegations of Shmueli's amended complaint as true.   See, e.g., Kalina v. Fletcher, 522 U.S. 118, 122, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997);  Buckley v. Fitzsimmons, 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

### A.  The 1998 Prosecution of Shmueli

In May 1998, the State filed a 93-count complaint (the "criminal complaint") against Shmueli in the Criminal Court of the City of New York, County of New York ("Criminal Court").   See People v. Shmueli, Crim. Compl.  No. 98N042120 (N.Y.Crim.Ct. May 6, 1998).   The criminal complaint was sworn to by a police detective based on information the detective had received from, inter alios, Lieberman, his friends, family members, and business associates, as well as friends and business associates of Lieberman's relatives, and officials at Lieberman's daughter's school.   The criminal complaint alleged that Shmueli had subjected Lieberman and his ex-wife, children, friends, and associates to numerous acts of harassment, including repeated letters to third persons disclosing private information about Lieberman or private information that Lieberman had shared with Shmueli about other persons while Lieberman and Shmueli were living together as domestic partners;  an act of vandalism on a car belonging to Lieberman's ex-wife and being used by his son;  the placement of shattered glass covered with a red substance at Lieberman's door;  and the posting, at Lieberman's minor daughter's school, of flyers making libelous and scandalous statements about the relationship between Lieberman and his daughter. The criminal complaint also alleged that Shmueli had made numerous harassing "hang up" telephone calls.   In support of that allegation, the detective stated that he had reviewed records for the telephone at Shmueli's Manhattan apartment for the period in question and had found approximately 59 calls from that telephone to Lieberman's home or work number, with each connection lasting less than one minute.   The criminal complaint charged Shmueli with one count of Harassment in the Second Degree, one count of Menacing in the Second Degree, and 91 counts of Aggravated Harassment in the Second Degree.

The case against Shmueli was never tried.   In March 2002, all charges were dismissed on statutory speedy trial grounds, without State opposition.

### B.  The Amended Complaint's Allegations Against the ADAs

Shmueli commenced the present action in February 2003;  represented by counsel, she filed an amended complaint in May 2003.   The amended complaint, asserting claims under 42 U.S.C. § 1983 and state law, alleges that Fairstein, Mitchell, Lieberman, the City of New York (the "City"), and others conspired to prosecute her for crimes of which they knew she was innocent, subjecting her to, inter alia, false arrest, false imprisonment, assault and battery, and malicious prosecution.   Shmueli alleges that the motivation for her arrest and prosecution was a personal relationship between Fairstein and Lieberman.   The allegations of the amended complaint include the following.

GET YOUR TUMMY VACATION READY
WITH NO VISIBLE SIGNS OF TREATMENT



UltraShape
No surgery. No downtime. Find a doc ›

### FindLaw Career Center

Attorney
Corporate Counsel
Academic
Judicial Clerk
Summer Associate
Intern
Law Librarian

Search Jobs | Post a Job | View More Jobs

View More

MORE SOCIAL, LESS MEDIA
get a car and get together.



zipcar    join for $7 a month

Funny Legal Updates
Subscribe to Legal Grounds
Free FindLaw Newsletters

FindLaw Newsletters
Get the latest in entertainment and celebrity legal news.

FindLaw Newsletters
Get the latest in small business legal news.

Shmueli and Lieberman had lived together in Shmueli's apartment for some two years until May 1997, when Shmueli asked Lieberman to move out.  (See Amended Complaint ¶¶ 14-15.)  The amended complaint alleges that after Lieberman moved, he threatened Shmueli that "he and his 'friend ADA Fairstein' " (id. ¶¶ 15, 16) would "make her life miserable if Plaintiff did not continue the relationship" (id. ¶ 15) and would " 'destroy her life' " if Shmueli did not reimburse Lieberman for contributions he had made towards rent while they lived together (id. ¶ 16).

The amended complaint alleges that in November 1997, Shmueli received numerous telephone calls from Fairstein and Mitchell, threatening to arrest Shmueli if she did not come to the District Attorney's office for a meeting (see id. ¶ 22); that in mid-November Shmueli, accompanied by counsel, attended a meeting with the ADAs, during which Shmueli was falsely accused of sending letters and making telephone calls to Lieberman (see id. ¶ 23); and that on or about May 5, 1998, on the instruction of the ADAs, City police officers falsely arrested and falsely imprisoned Shmueli (see id. ¶ 25).

The amended complaint alleges that Lieberman had bragged to Shmueli that Fairstein "had instructed him as to what types of harassment would fall under her personal jurisdiction as an assistant district attorney" (id. ¶ 24), and that "all of the defendants acted in conspiracy to maliciously prosecute Plaintiff SHMUELI for crimes that they knew she was innocent of" (id. ¶ 19):

In spite of knowing that the charges against Plaintiff SHMUELI were false, in consideration of her personal relationship with Defendant LIEBERMAN, Defendant FAIRSTEIN, along with Defendant MITCHELL, wrongfully, knowingly and maliciously prosecuted Plaintiff SHMUELI for various crimes, all of which they knew she was innocent of committing.

(Id. ¶ 31.)  The amended complaint alleges that, following Shmueli's arrest, Fairstein, Mitchell, and others contrived to prolong the period during which Shmueli would remain in custody without being able to post bail and to prolong the criminal proceedings with the intent of harassing Shmueli and increasing the cost of defending herself against the false criminal allegations.  (See id. ¶¶ 26, 32.)  The criminal charges against Shmueli were dismissed on March 22, 2002.

The amended complaint requested $100,000,000 in compensatory damages and $100,000,000 in punitive damages, as well as unspecified injunctive and declaratory relief.

C.  The Ruling of the District Court as to Absolute Immunity

The ADAs moved pursuant to Rule 12(b)(6) to dismiss the claims against them on various grounds, including failure to state a claim on which relief can be granted and absolute immunity.  In an Order of Partial Dismissal dated October 3, 2003, the court, inter alia, granted the ADAs' motions to dismiss (1) all claims against them in their official capacities, (2) all state-law claims except certain claims for malicious prosecution, and (3) all claims for malicious prosecution-whether under § 1983 or state law-that were based on events that occurred prior to Shmueli's arraignment.  In sum, the court denied the ADAs' motions only to the extent that they sought dismissal of the § 1983 and state-law claims against them in their individual capacities for malicious prosecution in connection with the events following Shmueli's arraignment (the "postarraignment malicious prosecution claims").

To the extent pertinent to the present appeal, the court rejected the ADAs' defense of absolute immunity on the postarraignment malicious prosecution claims, stating its reasons on the record as follows:

Absolute immunity does confer broad protection upon prosecutors from civil liability for their official duties.  Yet, "where the prosecutor acts without clear jurisdiction and without any colorable claim of authority the prosecutor loses the absolute immunity he would otherwise enjoy."  Rodrigue[s] v. City of New York, 193 A.D.2d 79, 86, 602 N.Y.S.2d 337 (1st Dept.1993).  Plaintiff specifically alleges that the ADAs knew the charges against her were false and knew that Shmueli was innocent of the alleged offenses, but the ADAs prosecuted it [sic] nonetheless.  Thus, plaintiff has sufficiently alleged acts by the ADA defendants that, if true, would be "in clear absence of all jurisdiction."  So, at least on a 12(b)(6) motion, there is enough here for me to say that absolute immunity does not bar this 1983 claim as of now-I repeat, as of now.

(Transcript, October 3, 2003 ("Tr.")), at 16-17 (emphasis added).

II.  DISCUSSION

On this appeal, the ADAs have challenged so much of the district court's order as ruled that they were not entitled to an immediate absolute-immunity-based dismissal of Shmueli's postarraignment malicious prosecution claims against them.  To the extent that those claims seek money damages, we find merit in the ADAs' appeal.

A.  Appellate Jurisdiction

Preliminarily, we note that, despite the absence of a final judgment, we have jurisdiction to entertain the present appeal, which seeks review only of so much of the district court's order as rejected the ADAs' Rule 12(b)(6) motions to dismiss on the ground of absolute immunity.  As the existence of absolute immunity protects an official not only from liability but also from suit, the validity of the defense should be determined at an early stage.  Hence, an interlocutory order rejecting the defense is immediately appealable under the collateral order doctrine to the extent that the rejection turned on an issue of law.  See generally Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); Bernard v. County of Suffolk, 356 F.3d 495, 501-02 (2d Cir.2004) ("Bernard"); Hill v. City of New York, 45 F.3d 653, 659-60 (2d Cir.1995) ("Hill"); cf. Munafo v. Metropolitan Transportation Authority, 285 F.3d 201, 210-11 (2d Cir.2002) (same with respect to a defense of qualified immunity).

Further, although absolute immunity is an affirmative defense whose availability depends on the nature of the function being performed by the defendant official who is alleged to have engaged in the challenged conduct, see, e.g., Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Bernard, 356 F.3d at 502-03; Hill, 45 F.3d at 660-61; Lee v. Willins, 617 F.2d 320, 321-22 (2d Cir.), cert. denied, 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980), the nature of that function is often clear from the face of the complaint.  In that circumstance, the absolute immunity defense may be resolved as a matter of law on a motion to dismiss the complaint pursuant to Rule 12(b)(6).  See, e.g., Imbler, 424 U.S. at 416-17, 96 S.Ct. 984; Bernard, 356 F.3d at 501-02; Hill, 45 F.3d at 657; Lee v. Willins, 617 F.2d at 321.

In the present case, the district court, in denying the ADAs' absolute-immunity-based motions to dismiss, indicated that the defense might be upheld at some later time.  (See Tr. 17 ("absolute immunity does not bar this 1983 claim as of now-I repeat as of now").)  However, its denial of the motions for an immediate dismissal pursuant to Rule 12(b)(6) constituted a ruling as to the legal sufficiency of the amended complaint's allegations to defeat the defense.  (See Tr. 16-17 (stating that the assertions "that the ADAs

knew the charges against [Shmueli] were false and knew that Shmueli was innocent of the alleged offenses, but the ADAs prosecuted it [sic] nonetheless . . sufficiently alleged acts by the ADA defendants that, if true, would" cause them to "lose[ ] the absolute immunity [t]he[y] would otherwise enjoy") (internal quotation marks omitted).)   This was a ruling of law that is immediately appealable.

B.  Absolute Immunity

It is by now well established that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution," Imbler, 424 U.S. at 410, 96 S.Ct. 984, "is immune from a civil suit for damages under § 1983," id. at 431, 96 S.Ct. 984.   See, e.g., Kalina v. Fletcher, 522 U.S. 118, 124, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (such a prosecutor "[i]s not amenable to suit [for damages] under § 1983"); Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) ("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity"); see also Imbler, 424 U.S. at 420, 96 S.Ct. 984 ("The Courts of Appeals . . are virtually unanimous that a prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties.").   The rationale for conferring absolute immunity in such circumstances is that "[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." Id. at 424-25, 96 S.Ct. 984.

Because the immunity attaches to the official prosecutorial function, see, e.g., Imbler, 424 U.S. at 430, 96 S.Ct. 984, and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions, see id., the prosecutor has absolute immunity for the initiation and conduct of a prosecution "unless [he] proceeds in the clear absence of all jurisdiction," Barr v. Abrams, 810 F.2d 358, 361 (2d Cir.1987) ("Barr").   A prosecutor engaging in "prosecutorial activities intimately associated with the judicial phase of the criminal process" loses "the absolute immunity he would otherwise enjoy" only if he "acts without any colorable claim of authority."  Id.

The scope of a prosecutor's jurisdiction is determined by law.   In considering whether a given prosecution was clearly beyond the scope of that jurisdiction, or whether instead there was at least a colorable claim of authority, see, e.g., id. ("at least a semblance of jurisdiction"), we inquire whether the pertinent statutes may have authorized prosecution for the charged conduct, see, e.g., id. at 361-62; Bernard, 356 F.3d at 504; Schloss v. Bouse, 876 F.2d 287, 291 (2d Cir.1989).

Once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive.   See, e.g., Bernard, 356 F.3d at 503; id. at 502 ("a defendant's motivation in performing such advocative functions [as deciding to prosecute] is irrelevant to the applicability of absolute immunity").

For example, a defense of absolute immunity from a claim for damages must be upheld against a § 1983 claim that the prosecutor commenced and continued a prosecution that was within his jurisdiction but did so for purposes of retaliation, see, e.g., Barr, 810 F.2d at 360-62, or for purely political reasons, see, e.g., Bernard, 356 F.3d at 504 ("the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity").   A prosecutor is also entitled to absolute immunity despite allegations of his "knowing use of perjured testimony" and the "deliberate withholding of exculpatory information."  Imbler, 424 U.S. at 431 n. 34, 96 S.Ct. 984. Although such conduct would be "reprehensible," it does not make the prosecutor amenable to a civil suit for damages.  Id.  In sum, the nature of absolute immunity is such that it "accords protection from . . any judicial scrutiny of the motive for and reasonableness of official action."  Robison v. Via, 821 F.2d 913, 918 (2d Cir.1987).  "[In] the realm of absolute immunity, . . evaluation of motive and reasonableness is forbidden . ." Id. at 920; see, e.g., Dory v. Ryan, 25 F.3d 81, 83 (2d Cir.1994) (the absolute character of absolute immunity is that it "protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate").   These principles are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy.  See, e.g., id.; Bernard, 356 F.3d at 503.

The above principles, dealing with claims brought under § 1983, also protect a prosecutor against malicious prosecution claims brought under state law.   See, e.g., Rudow v. City of New York, 822 F.2d 324, 329 (2d Cir.1987); Schanbarger v. Kellogg, 35 A.D.2d 902, 902, 315 N.Y.S.2d 1013, 1015-16 (1970), appeal dismissed, 29 N.Y.2d 649, 324 N.Y.S.2d 1033, 273 N.E.2d 321 (1971), cert. denied, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972).   See also Buckley, 509 U.S. at 274 n. 5, 113 S.Ct. 2606 (indicating that the Court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); Imbler, 424 U.S. at 424, 96 S.Ct. 984 (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

In the present case, the undismissed claims against the ADAs are claims under § 1983 and state law for malicious prosecution based solely on events following Shmueli's arraignment.   As set out in Part I.B. above, the amended complaint's only allegations of postarraignment malicious prosecution are that the ADAs "maliciously prosecuted [Shmueli] for various crimes, all of which they knew she was innocent of committing" and "intentionally . . delayed the criminal proceedings with the intent of harassing" her (Amended Complaint ¶¶ 31-32).   The allegations that the ADAs prosecuted Shmueli and continued with the prosecution describe only functions for which a prosecutor is normally accorded absolute immunity.

The district court ruled that the amended complaint's allegations that the ADAs prosecuted Shmueli despite knowing that the charges against her were false and that Shmueli was innocent were "sufficient[ ] alleg[ations]" that the ADAs acted "in clear absence of all jurisdiction."  (Tr. 17 (internal quotation marks omitted).)   But that ruling confused jurisdiction with state of mind.

The jurisdiction of the ADAs to prosecute Shmueli depended on the authority conferred by the New York statutes.   Looking to the versions of the pertinent statutes that were in effect when Shmueli was prosecuted in 1998, we note that the New York Penal Law prohibited aggravated harassment in the second degree, which was defined to include communications by telephone, mail, or other forms of writing, in a manner likely to cause annoyance or alarm, see N.Y. Penal Law § 240.30(1) (McKinney 1989, as amended in 1992), and the making of telephone calls, whether or not a conversation ensues, with no purpose of legitimate communication, see id. § 240.30(2) (McKinney 1989, as amended in 1992).   The Criminal Court in New York County had jurisdiction of an offense if any element of the crime was committed in the county, see N.Y.Crim. Proc. Law § 20.40 (McKinney 1992); Shmueli was alleged to have, inter alia, made several phone harassing telephone calls to Lieberman's office and his new home from her apartment in Manhattan, which is within New York County.   The District Attorney for New York County had the

duty to prosecute offenses within that County, see New York County Law §§ 700(1), 927 (McKinney 1991), and was authorized to appoint assistant district attorneys to assist him, see id. § 930 (McKinney 1991). These statutes plainly authorized the ADAs to prosecute Shmueli for the alleged harassment of Lieberman, his associates, and his family, described in Part I.A. above.

In sum, the postarraignment events alleged in the amended complaint consisted only of the prosecution of Shmueli in a court of competent jurisdiction on charges that were within the ADAs' authority to bring. Accordingly, the ADAs are entitled to absolute immunity against Shmueli's claims for damages for those events.   The amended complaint's allegations that Shmueli was innocent and that the charges were brought for improper purposes do not deprive the ADAs of that immunity.

"[A]n official's entitlement to absolute immunity from a claim for damages," however, "does not bar the granting of injunctive relief," Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir.1987); see, e.g., Pulliam v. Allen, 466 U.S. 522, 536-37, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), Hili v. Sciarrotta, 140 F.3d 210, 215 (2d Cir.1998); Heimbach v. Village of Lyons, 597 F.2d 344, 347 (2d Cir.1979), or of other equitable relief. Shmueli's amended complaint requested not only damages but also equitable relief (the nature of which was not specified).   Accordingly, we reverse the district court's denial of the ADAs' absolute-immunity-based motions only to the extent that they were directed to claims for damages.

CONCLUSION

We have considered all of Shmueli's arguments that are properly before us and have found them to be without merit.   For the reasons stated above, we conclude that the district court should have granted the absolute-immunity-based motions of Fairstein and Mitchell to dismiss the § 1983 and state-law postarraignment malicious prosecution claims against them for damages.   We reverse the district court's denial of those motions to that extent and remand the matter for such further proceedings as are appropriate and not inconsistent with this opinion.

KEARSE, Circuit Judge.

RESEARCH THE LAW       Cases & Codes / Opinion Summaries / Sample Business Contracts / Research An Attorney or Law Firm
MANAGE YOUR PRACTICE   Law Technology / Law Practice Management / Law Firm Marketing Services / Corporate Counsel Center
MANAGE YOUR CAREER     Legal Career Job Search / Online CLE / Law Student Resources
NEWS AND COMMENTARY    Legal News Headlines / Law Commentary / Featured Documents / Newsletters / Blogs / RSS Feeds
GET LEGAL FORMS        Legal Forms for Your Practice
ABOUT US               Company History / Media Relations / Contact Us / Privacy / Advertising / Jobs
FIND US ON             

Copyright © 2016 FindLaw, a Thomson Reuters business. All rights reserved

RECEIVED
SDNY PRO SE OFFICE
2016 AUG 25  AM 9: 46

Kelly Price
c/o WDW-NYC
150 W 28th St Suite 301
NY NY 1000)

Attn: Pro Se Office
(For Loretta S. Presks)
500 Pearl St.
NY NY 1000)

USM
SDNY
5W