who are not acting on behalf of the government that the government did not cause.   However, the Due

Process Clause does prohibit state officials from engaging in conduct that renders an individual more

vulnerable to such harms.   In this case, Plaintiff Price claims that Strohbehn rendered her more

vulnerable to harm by placing her on a "do not serve" list, informing the NYPD of such status, and not

ensuring that this messaging was kept confidential and did was not shared with Plaintiff's abuser or

other neighborhood rogues seeking to do harm to Price in retaliation for her difficulties with their close

associate: Mr. Powell Price's former pimp and abuser.   To establish this claim, Plaintiff Price must

prove all of the 15 following four things by a preponderance of the evidence: First: The harm to Plaintiff

Price of being constantly under siege in her neighborhood when her abuser and his associates discovered

her status was a foreseeable and fairly  direct result of Strohbehn's conduct. Second: Strohbehn acted

with conscious disregard of a great risk of serious harm and deliberate indifference.   Third: There was

some type of relationship between Strohbehn and Plaintiff Price that distinguished Plaintiff Price from

the public at large. Fourth: Strohbehn's action made Plaintiff Price more vulnerable to attacks as persons

knew they would not face penal repercussions for harms they unhanded to Price.   The first of these four

elements requires Plaintiff Price to show that the harm to Plaintiff Price, constant violent attacks in her

Harlem neighborhood was a foreseeable and fairly direct result of Strohbehn's conduct. This element

includes two related concepts: foreseeability and directness. Foreseeability concerns whether Strohbehn

should have foreseen the DIRECT and constant battery of assaults Plaintiff Price would encounter if her

enemies were informed of the DO NOT SERVE status assigned her unlawfully and unconstitutionally

by Strohbehn. Directness of Strohbehn's involvement in Price's constant battery and assault from

neighbors concerns whether it is possible to draw a direct enough connection between Strohbehn's

conduct can be said to be  a fairly direct cause of constant battery Plaintiff Price suffered on many

occasions.  Strohbehn acted with deliberate indifference.  Strohbehn knew that there was a strong

likelihood of harm to Plaintiff Price, and that Strohbehn disregarded that risk by failing to take

reasonable measures to address it even though she knew the harm was obvious,

142.    Strohbehn acted with conscious disregard of a great risk of serious harm. Strohbehn knew there was

a great risk of serious harm, and that Strohbehn consciously disregarded that risk. There was a

special relationship between Strohbehn and Plaintiff Price that distinguished Plaintiff Price from the

public at large. Strohbehn's conduct created a risk to the general public by allowing people who

battered, assaulted and abused Plaintiff Price free-reign to continue their assault to others. The six

other women harmed by Rami Baly, the man who attacked Plaintiff Price on July 28, 2012 outside of

Soldier McGee's Bar were put at risk and indeed suffered sexual assault and other forms of stalking

and harassment by Stohbehn's act of placing Plaintiff Price on a Do NOT Serve List and denying her

police services when she knew that Plaintiff Price was not a fabricator.  Strohbehn's conduct created

a foreseeable risk to Plaintiff Price and another a definable group of people including Plaintiff Price:

other women in NYC who would be attacked by predators given leniency because of Strohbehn's

personal vendetta against Plaintiff Price.

143.    **Count # 14: Defendant Police Officer Matthew Winters: Section 1983 –  Excessive Force
(Including Some Types of Deadly Force)  During a Stop, Arrest, or other "Seizure" Under the
Fourth Amendment: Under Color of State Law in his official capacity as an employee of the
NYPD a division of an official Agency of the City of New York, or in his own capacity:**

Plaintiff Price repeats and realleges each and every allegation contained in the above paragraphs.

claims that she was injured constitutionally by being excessively assaulted during an arrest by PO

Winters. The Fourth Amendment to the United States Constitution protects persons from being

subjected to excessive force while being arrested. In other words, a law  enforcement official may only

use the amount of force necessary under the circumstances to make the arrest.  Every person has the

constitutional right not to be subjected to excessive force while being arrested even if the arrest is

otherwise proper.  In this case, Plaintiff Price claims that Winters used excessive force when he arrested

Plaintiff Price. In order to establish that Winters used excessive force, Plaintiff Price must prove both of the following by a preponderance of the evidence: First: Winters intentionally committed certain acts. Second: Those acts violated Plaintiff Price's Fourth Amendment right not to be subjected to excessive force. In determining whether Winters' acts constituted excessive force, you must ask whether the amount of force Winters used was the amount which a reasonable officer would have used in making the arrest under similar circumstances. The court should consider all the relevant facts and circumstances (leading up to the time of the arrest that defendant reasonably believed to be true at the time of the arrest that are amplified in pleadings and in the Appellate Panel's summary of events attached as Exhibit outlined when charges against Plaintiff were overturned by appeal on or about February of 2016..  The court could consider those facts and circumstances in order to assess whether there was a need for the application of force, and the relationship between that need for force, if any, and the amount of force applied.  Price was accused of disorderly conduct, or making noise and expressing a profanity at police:  neither are severe crimes at issue.  Plaintiff Price did NOT pose an immediate threat to the safety of Winters or others.  Plaintiff Price was clearly not armed as she was wearing an eensey party dress.  There were NO other persons subject to the police action who were violent or dangerous.  Plaintiff Price never actively resisted arrest or attempted to evade arrest by flight. Certainly Plaintiff's injuries which have been plead and exhibits of severe injuries attached were the direct result· of Officer Winter's OVER USE of physical force that was applied to such an extent as to lead to unnecessary injury.  The reasonableness of Winter's acts must be judged from the perspective of a reasonable officer on the scene. The law permits the officer to use only that degree of force necessary to make the arrest.  The force Winters used was unreasonable:  you can make out his HANDPRINTS ON HER UPPER ARMS IN THE FORM OF BRUISES:  following it does not matter whether Winters had good motivations as clearly an Excessive Use of Force was used in Plaintiff's wrongful arrest.

144.   **Count #s 15 and 16 & 17: Officers Relf and Officer Maldonado: Liability in Connection with the Actions of Another – Failure to Intervene Police Officers Maldonado, Jane Doe and Officer Relf under color of State Law in his official capacity as an employee of the New York City Police Department a division of an official Agency of the City of New York,  or in his own capacity:**

Plaintiff Price repeats and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.  Plaintiff contends that NYPD Officers Relf, D and Maldonado and Officer Jane Doe violated Plaintiff's specific right to not be arrested with excessive Force by NYPD Officer Matthew Winters: and that NYPD Officers Relf , Maldonado and Doe should be liable for that violation because Relf failed to intervene to stop the violation on September 24, 2011. Relf , Maldonado and Doe are liable for that violation if plaintiff has proven all of the following four things by a preponderance of the evidence: First: P.O. Matthew Winters violated Plaintiff Price's right not to be excessively abused with excessive force while being detained or arrested.   Second: Relf , Maldonado and Doe had a duty to intervene. Police officers  have a duty to intervene to prevent the use of excessive force by a fellow officer. Third: Officers Relf , Maldonado and Doe Had a reasonable opportunity to intervene. Fourth: Relf failed to intervene.

145.   **Count # 18 Section 1983 – Liability in Connection with the Actions of Another – Municipalities – Choice by Policymaking Official, District Attorney Cyrus Vance Under color of State Law in his official  capacity as an employee of the Manhattan District Attorney's Office: a division of an official Agency of the City of New York,  or in his own capacity:**

Plaintiff Price repeats and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.  Plaintiff contends that The Manhattan District Attorney's Office ("MDAO")") of the City of New York is a policymaking entity whose actions represent a decision by the government itself (insert Walker case citation). The same is true of an official or body to whom the MDAO has given final policymaking authority: such as Operation Crew Cut Squads.  The actions of that official or body represent a decision by the government itself. Thus, when

the MDAO or Vance make a deliberate choice to follow a course of action, that choice represents an

official policy. Through such a policy, the MDAO or the DA Vance may cause a violation of a federal

right by: · directing that the violation occur,· authorizing the violation, or· agreeing to a subordinate's

decision to engage in the violation. The MDAO or Vance may also cause a violation through

inadequate training and/or inadequate supervision, failure to adopt a needed policy, but only if the City

of New York is deliberately indifferent to the fact that a violation of Due Process Rights to not be

Maliciously Prosecuted and to not be unlawfully Searched and Seized is a highly predictable

consequence of the [inadequate training, inadequate supervision, and the failure to adopt a needed

policy by Vance, the MDAO and the City of New York. I instruct you that Cyrus Vance Jr. and the

MDAO are policymakers whose deliberate choices represent official policy.

146.   **Count #s 19-23: Section 1983 – Unlawful Seizure: NYPD Officers: Detective Linda Simmons,
and Officer Matthew Winters: under color of State Law in his/her official capacity/ies as
employees of the New York City Police Department: a division of an official Agency of the City
of New York, or in his/her own capacity:**
      Plaintiff Price repeats and realleges each and every allegation contained in the above paragraphs

with the same force and effect as if fully set forth herein. Plaintiff contends that NYPD Officers Winters

and Simmons violated Plaintiff's specific right to not be arrested **under** The Fourth Amendment to the

United States Constitution which protects persons from being subjected to unreasonable seizures by the

police. A law enforcement official may only seize a person if there is appropriate justification to do 8

so. In this case, Plaintiff Price claims and has amply pled that defendants Winters and Simmons

subjected Plaintiff Price to an unreasonable arrest in violation of the Fourth Amendment. A

preponderance of the evidence pled amplifies these claims. First: Defendants Winters and Simmons

intentionally had no cause and acted with malice and or other motivation when arresting Price on four

occasions. Those acts subjected Plaintiff Price to (a) "seizures" and the "seizure" was unreasonable.

147.    **Count # 24: Section 1983 – Unlawful Seizure Under the Fourth Amendment– Terry Stop and Frisk:  John Doe and Jane Doe Police Officers of the Midtown North Precinct under color of State Law in his/her official capacities as employees of the NYPD: or in his/her own capacity/ies.**

Plaintiff Price repeats and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.  Plaintiff contends that NYPD Officers John and Jane Doe of the Midtown North Precinct violated Plaintiff's specific right to not be arrested on or about JULY 3, 2015 when Plaintiff was seized and transported to /Bellevue Hospital "Arrest" on or about July 3, 2015  as is amplified in the above pleadings.   A "seizure" occurs when a police officer restrains a person in some way, either by means  of physical force or by a show of authority that the person obeys.  In view of all the circumstances of pleadings expressed about Price's July 2015 seizure by the Midtown North Precinct and its unknown police officers, a reasonable person would have believed that Plaintiff Price  was not free to end the encounter as Police had placed handcuffs on Price and put her under armed guard in the back of an ambulance as they transported her against her will to Bellevue Hospital for Psychiatric evaluation. If a reasonable person, under the circumstances, would have believed that she was not free to end the encounter, then at that point the encounter has turned  into a "stop" that counts as a "seizure" for purposes of the Fourth Amendment. If the court finds that Plaintiff Price has proved by a preponderance of the evidence that such a stop  occurred, then the court must decide whether the stop was justified by "reasonable suspicion." The Fourth Amendment requires that any seizure must be reasonable. In order to "stop" a  person, the officer must have a "reasonable suspicion" that the person has committed, is  committing, or is about to commit a crime. These are not the facts pled:  Price was attempting to make a police report about an assault made against her person. These specific facts, taken together with the rational inferences from those facts DO NOT reasonably warrant the stop.

148.   **COUNT # 25:  DUE PROCESS CLAIM AGAINST THE CITY** Plaintiff Price  repeats and

reralleges each of the allegations contained in paragraphs 1 through 124 with the same force and

effect as if fully set forth herein. By its policies, practices, acts, and omissions, the City has caused

the plaintiff whose abuser was a Confidential Informants and/or witness/complainant on major cases

to be subjected to further abuse by the criminal justice system when she came forward for help, in

violation of her due process rights under the Fourteenth Amendment to the United States

Constitution.

149.   **COUNT #s 26 and 27:  (Malicious Prosecution Under Federal Law: Defendants ADA Maria**
**Strohbehn, Ada Kenya Wells, City of New York Under the color of State Law in their official**
**capacities as employees of the Manhattan District Attorney's Office:**
     Plaintiff repeats and realleges each and every allegation contained in this Complaint. By virtue of

the foregoing, the Individual Defendants, acting in concert with each other and with additional persons

for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of,

criminal proceedings against Plaintiff.  The criminal proceedings terminated in Plaintiff's favor. There

was no probable cause for the commencement or the continuation of the criminal proceedings. The

Defendants acted with actual malice. Defendant City of New York is liable under the principle of

respondent superior.

150.   **COUNT # 28 (42 U.S.C. §1983; Denial Of Due Process Under the Fifth, Sixth and Fourteenth**

**Amendments; Malicious Prosecution and Deprivation of Liberty Under the Fourth and**

**Fourteenth Amendments; (Defendants: Simmons, Strohbehn, Vance, Wells,)** Plaintiff repeats

and realleges each and every allegation contained of this complaint as if fully set forth herein.

Among other offenses, Defendants  Simmons knowingly and willfully manufactured, or caused the

manufacturing of, a false written statement, which they prepared and improperly compelled or

induced Plaintiff to sign under "oath," accusing Plaintiff of fabricating her own injuries or they told

her that her abuser would be arrested and he would tell everyone that she was working as a prostitute

under duress. They knew that the statement would, and caused the statement to, be relied upon by

the MDAO and the court as a basis to arrest Plaintiff, to formally initiate her prosecution, to hold her

for trial, and to compel Powell to submit affidavits, and to give testimony consistent with her

statement. Wells thereafter knowingly swore to a false Criminal Court complaint initiating the

criminal prosecution of Plaintiff, and causing Plaintiff to be held in Rikers Island and in the tombs at

100 Centre Street. Malicious Prosecution: Defendants filed hundreds of counts of aggravated

harassment against Plaintiff against the allotments stipulated by the statute for aggravated

harassment. Additionally, prior to trial, Simmons manufactured false "threat" evidence by filing a

false police complaint alleging that Plaintiff was responsible for numerous threats against Raheem

Powell: in fact Plaintiff's assertions that she would turn Powell into the NYPD for his physical

attacks on her were themselves seen through some perverted law-enforcement spectrum as threats by

Plaintiff to Powell by the NYPD and the MDAO:  they were used in the actual false filing as such

which caused injuries to Plaintiff, as set forth above. By virtue of the foregoing, Simmons and

Strohbehn and Wells, with actual malice, initiated and continued, or caused the initiation and

continuation of, criminal proceedings against Plaintiff for which they knew, or should have known,

there was no probable cause, and for which

a.  In fact there was no probable cause, and thereby caused Plaintiff to be deprived of her liberty.

Such proceedings ultimately were terminated in Plaintiff's favor. Additionally, Simmons and

Strohbehn knew, but withheld from the MDAO, either permanently or for a substantial period of

time, and therefore from the court and the defense, exculpatory or impeachment evidence that

tended to negate Plaintiff's guilt and which they knew or should have known the law required

them to timely disclose (such as Plaintiff's Batterers PREVIOUS FELONY CONVICTION FOR

DOMESTIC VIOLENCE by the MDAO). This evidence included, but was not limited to,

Hospital Emergency Room reports, statements from Plaintiff's neighbors and ER doctors;

Photographs of Plaintiff's injuries incurred at the hands of Powell; the fact that Powell was a

drug dealer who had acted in concert with the NYPD on more than one previous occasion; and

their unreasonable failure to investigate the information provided to them by Plaintiff and

Plaintiff's attorney and advocates from various Domestic violence advocacy groups. The

aforesaid conduct, which Defendants committed in concert with and in aid of each other, and/or

in concert or conspiracy with others named and unnamed, operated to deprive Plaintiff of her

rights under the Constitution and the Laws of the United States:

   i. Not to be arrested, indicted, prosecuted, detained, convicted, or imprisoned based upon

      false, fabricated, manufactured, misleading, or inherently unreliable "evidence,"

      including the statements and testimony of witnesses who have been improperly

      influenced, coerced, or manipulated to provide such statements and testimony, in

      violation of the Due Process and Fair Trial Clauses of the Fifth, Sixth and Fourteenth

      Amendments to the United States Constitution;

      1. (b) Not to be deprived of her liberty absent probable cause to believe she has

         committed a crime, in violation of her rights under the Fourth and Fourteenth

         Amendments to the United States Constitution; and

      2. (c) To timely disclosure of all material evidence favorable to the defense pursuant

         to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States,_ 405 U.S. 150

         (1972), and their progeny, and the Due Process and Fair Trial Clauses of the Fifth,

         Sixth, and Fourteenth Amendments to the United States Constitution.

151.    The foregoing violations of Plaintiffs federal constitutional rights by the Defendants and their

co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and

foreseeably caused the initiation and continuation of Plaintiff's criminal prosecution, her loss of

liberty and detention, her wrongful conviction for disorderly conduct, her subsequent imprisonment,

her restriction of movement and freedoms as specified in the order of protection the court ordered

against her in the name of her batterer, Raheem Powell, her to be placed on a NYPD 'no services'

list and her other injuries and damages.  The foregoing violations of Plaintiffs rights amounted to

Constitutional torts and were affected by actions taken under color of State law, and within the scope

of the Defendant's' employment and authority. Defendants committed the foregoing violations of

Plaintiffs rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to

Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional

rights. 413. By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42 U.S.C. §

1983, for compensatory and for punitive damages.


152.    **COUNT # 29:  (42 U.S.C. §1983; Denial Of Due Process Under the Fifth, Sixth and Fourteenth**

**Amendments; Malicious Prosecution, Abuse of Process, and Deprivation of Liberty Under the**

**Fourth, Fifth, Sixth, and Fourteenth Amendments; Defendants: Moore, Wells, Strohbehn,**

**Simmons, Vance acting under color of State law in their official capacities:**

Plaintiff repeats and realleges each and every allegation contained in contained in this complaint

as if fully set forth herein Knowing that any colorable cause to continue the prosecution had evaporated,

Wells, in the capacity of an investigator or "witness," acted in concert and conspired with Strohbehn,

Wells, Moore, and others, named and unnamed, to use any means, no matter how unlawful or coercive,

to intimidate them into falsely accusing Plaintiff of the charged crimes. These illegal and

unconstitutional means included, but were not limited to,

  i.   Abusing judicial process by misusing the court's subpoena power to compel witnesses to

       appear at Court and the Das office;

  ii.  Abusing judicial process by deceiving the court into issuing "orders of protection"

       restricting Plaintiff's liberties and freedom by: Personally attesting to "facts" which they

       knew were untrue in order to deceive the court into issue orders authorizing them to take

       custody of such plaintiff;

153.   These lawless actions foreseeably caused the aforementioned witnesses to manufacture false

       evidence which Strohbehn and Simmons then used to continue Plaintiffs malicious prosecution,

       without probable cause, and for Wells to bring about her false conviction at trial. The foregoing

       violations of Plaintiffs federal constitutional rights by the Defendants, together with their

       co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and

       foreseeably caused the continuation of Plaintiffs malicious prosecution without probable cause, her

       wrongful imprisonment, and her other injuries and damages.  The foregoing violations of Plaintiffs

       rights amounted to Constitutional torts and were affected by actions taken under color of State law,

       and within the scope of the Defendant's' employment and authority. Defendants committed the

       foregoing violations of Plaintiffs rights knowingly, intentionally, willfully, recklessly, negligently,

       and/or with deliberate indifference to Plaintiff's constitutional rights or to the effect of such

       misconduct upon Plaintiffs constitutional rights. By reason of the foregoing, the Defendants are

       liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.

154.   **CLAIM # 29:  (Monell/42 U.S.C. § 1983: Claim Against Defendant City of New York For The
       Actions Of The NYPD)**

Plaintiff repeats and re-alleges each and every allegation contained in contained in this complaint as if fully set forth herein.  The foregoing violations of Plaintiffs federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities. Prior to Plaintiff's arrest, policymaking officials at the NYPD, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

    i.   The use of excessive promises of rewards with witnesses, including drug dealers and and/or individuals fearing persecution and imprisonment for their own criminal behavior;

    ii.   ~~The determination of probable cause to make an arrest; and~~

    iii.   The continuing duty of police investigators to preserve and to make timely disclosure to the District Attorney, during criminal investigations and prosecutions, of all material evidence or information ("Brady material") favorable to a person suspected, accused or convicted of criminal conduct, including, but not limited to, evidence of innocence, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts, and evidence that a prosecution witnesses has a motive, bias or interest affecting his credibility or has been pressured or coerced, so that the District Attorney could comply with his constitutional obligation to disclose such information to the defense under Brady.

155.   With respect to "a" and "c" in the preceding paragraph, prior to Plaintiff's arrest and the initiation of her prosecution the NYPD or the MDAO provided no training at all in regards to how a DV or trafficking complainant should be evaluated or the efficacy of their complaints as victims should they be suspected of fabricating their injuries.  What further review other than the cursory nods by individuals who had not investigated the facts is needed to brandish such a title on a crime victim/complainant?  What review exists to ensure an investigation is in fact undertaken? What checks and balances are in place to ensure innocent victims are not falsely branded "fabricators" enabling their abusers to use the criminal justice system against them to control their lives and alter the freedoms and liberties most citizens enjoy?  To imprison them and cause them public shame, emotional distress, loss of income and loss of private and professional standing? The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant City of New York, including but not limited to, the New York City Police Commissioner, who knew (or should have known):

   a.   to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

   b.   that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

c.  that the wrong choice by such employees concerning such issues will

frequently cause the deprivation of the constitutional rights of criminal

suspects or defendants and cause them constitutional injury.

d.  The aforementioned policymaking officials had the knowledge and the

notice alleged in the preceding paragraph based upon, among other

circumstances: Plaintiff has obtained amicus briefs and affidavit testimony

from present and former Domestic Violence advocacy groups,

establishing, prior to and during the time period of Plaintiff's arrest and

prosecution, the NYPD and MDAO provided no training concerning

appropriate interrogation of Domestic Violence complainants suspected of

being fabricators. formal reports of the N.Y.C. Comptroller's Office and

the Bar Association of the City of New York criticizing the NYPD and the

N.Y.C. Law Department for failing to follow up substantial civil

settlements for police misconduct with disciplinary or other remedial

action; and the inherent obviousness of the need to train, supervise and

discipline police officers in such obligations to counteract the pressure on

officers and the powerful incentives they have to close cases and to obtain

arrests and convictions. Under the principles of municipal liability for

federal civil rights violations, the City's Police Commissioner (or his

authorized delegates), has final responsibility for training, instructing,

supervising, and disciplining police personnel with respect to the

investigation and prosecution of criminal matters, including constitutional

requirements governing the interrogation of witnesses, the initiation of

criminal prosecutions, and the disclosure of Brady material. The Police

Commissioner, personally and/or through his authorized delegates, at all

relevant times had final authority, and constitutes a City policy maker for

whom the City is liable, with respect to compliance by NYPD employees

with the above-mentioned constitutional requirements.

156.    During all times material to this Complaint, the Police Commissioner owed a duty to the public at

large and to Plaintiff, which he knowingly and intentionally breached, or to which he was

deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline

sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional

rights of criminal suspects or defendants and of other members of the public. The aforesaid policies,

procedures, regulations, practices and/or customs of Defendant City and the NYPD were collectively

and individually a substantial factor in bringing about the aforesaid violations by the Individual

Police Defendants of Plaintiffs rights under the Constitution and laws of the United States. By virtue

of the foregoing, Defendant City of New York is liable for having substantially caused the foregoing

violations of Plaintiffs constitutional rights and her constitutional injuries.

157.    **ClAIM #30: (Monell/42 U.S.C. § 1983 Claim Against Defendants: Vance, Moore,  City Of New
York For Actions Of The MDAO)**
                    Plaintiff repeats and realleges each and every allegation contained in contained in this

complaint as if fully set forth herein. At the time of Plaintiff's original prosecution, and continuing,

District Attorney Cyrus Vance Jr, as the manager and chief administrator of the MDAO, a City agency,

maintained a policy, custom and/or practice of deliberate indifference to violations by his employees of

the constitutional rights of individuals who made complaints as victims of domestic violence whose

batterers held information critical to other investigations and criminally prosecuted in New York County, including, but not limited to, abuse of process, manufacturing of false evidence and testimony through improper coercion of witnesses, Brady violations, reliance on false or misleading evidence and argument at trial ("the policy"), and covering up the same.  The policy permits, encourages, or acquiesces in the commission of, constitutional violations of the rights of suspects and defendants by prosecutors, detective-investigators, and NYPD detectives working with the D.A. 's Office, particularly in high profile or serious cases where arrest and conviction is most desired by the Office. The policy led directly to the violations of Plaintiffs constitutional rights, and the subsequent cover-up of police and prosecutors' wrongdoing, which greatly prolonged Plaintiffs wrongful imprisonment, seizure and other damages. Vance had no employee handbook, manual, or other document setting forth any process for evaluating "fabricators". Defendant CITY is liable for having substantially caused the foregoing violations of Plaintiffs constitutional rights and his resultant injuries.

158.   **CLAIM # 31: (Negligent Hiring, Training and Supervision Under State Law; Defendant City of New York, Vance, Moore acting under the color of state law in their official and individual capacities)**
Plaintiff repeats and realleges each and every allegation contained in this Complaint. By virtue of the foregoing, defendant City of New York is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the MDAO and or the NYPD with regard to their aforementioned duties.

159.   **CLAIM # 33: 42 U.S.C. §1983; Denial Of Due Process Under the Fifth, Sixth and Fourteenth Amendments; Abuse of Process, and Deprivation of Liberty Under the Fourth, Fifth, Sixth, and Fourteenth Amendments; Defendants Obe, Pierre-Louis, Strohbehn, Vance, Wells, Winters:** the NYPD and the MDAO, as a matter of policy, stripped Miss Plaintiff of her First Amendment Rights to petition the Government for redress of grievances:

160.   **12th Cause of Action: 42 U.S.C. §1983; Unreasonable Search & Seizure Under the Fourth Amendment's; *Abuse of Process, and Deprivation of Liberty Under the Fourth, Fifth, Sixth,**

and Fourteenth Amendments*; Defendants: Simmons, Strohbeh, Wells, Winters and Vance
Under Color of State Law:

Plaintiff's knowingly kept Plaintiff Price under unreasonable seizure for an elongated period of

time during her false arrest and drawn-out prosecution lasting approximately SIX years (during which

the seizure continued) denying her of her Fourth Amendment right against unreasonable searches and

seizures as some charges are still Pending as this complaint is filed.

161.   **CLAIM # 34: 42 U.S.C. §1983; Excessive and Unusual Punishment  Under the Eighth
       Amendment; *Abuse of Process, and Deprivation of Liberty Under the First, Fourth, Eighth,
       Fifth and sixteenth Amendments*; Defendants Simmons, Moore, Wells, Strohbehn, Vance
       Under the color of state law in their official capacities:**

Defendants eschewed Plaintiff her Eighth Amendment rights by denying her police services

asserting excessive and unusual punishment and commencing court proceedings not once but twice

against Plaintiff Price in order to achieve another goal:  to keep her batterer and abuser, Raheem Andre

Powell cooperating with their operation "Crew Cut" investigation(s).

## DAMAGES

1.     WHEREFORE, Plaintiff seeks compensatory damages in the amount of $30,000,000 (THIRTY MILLION

USD) together with attorney fees and court costs for defamation, loss of work, emotional pain and suffering.

Plaintiff also seeks POLICY CHANGE for the way that Domestic Violence Survivors are treated within the

criminal justice system when they come forward for help in extracting themselves from life-threatening

intimate partner situations. A methodology and better training needs to be implemented for identifying true

victims that is not subject to the whimsy of one lone prosecutor's bias(es). When a victim is thought to be a

'fabricator' a review of his/her case need to be examined by Domestic Violence advocates, therapists,

social workers, and psychiatrists before they are denied protections, police services, social welfare services,

a normal quality of life free from harm, and their ability to petition the government for redress of grievances.

Recently, the Manhattan District Attorney Cyrus Vance has stated that his office reviews 5,000 case of

Domestic Violence a year. How many of these cases are labeled 'fabrications' by prosecutors with other

motives or who are too burdened by their caseloads and lack the acumen or incentive to make the right call?

Plaintiff seeks transparency and public dialogue in order to ensure other victims don't slip through the cracks

allowing their batterers to be emboldened to harm others and the victim to slip into emotional, psychological, social, physical and economic dire straits.

a. Plaintiff Price is a talented, ardent, skilled ambitious (Exhibit # 17 recent letter of recommendation from Dorchen Leidholdt, Director of Battered Women's' Services at Sanctuary for Families, NY) used to operate at very high-level as one of the most respected young photojournalism editors running war correspondents in and out of conflict zones (Exhibit # ). She is a graduate of Mount Holyoke College and attended the University of Colorado where she worked on her Master's degree: she won many academic awards and scholarships and endeavored to have a bright future ahead of her. Plaintiff ran the world's top photojournalists in and out of war zones and covered top stories on all fronts for over the past decade. (Exhibit # II  list of some of Price's journalistic accomplishments.) She had achieved a high level of respect and admiration based on trust and love and solid, steady, cool-headed work. Now her life is literally in tatters. Credibility is key to the journalistic community and the pallor of criminality still follows her as a result of the malicious arrests and prosecutions. The emotional pain and suffering from these events has debilitating effects on Plaintiff who has literally lost everything she worked for: her personal identity, her career, her familial and social support networks, her unborn child, her apartment, her belongings, had her car repossessed, lost a pet because she did not have funds for vet bills, been ostracized from everything and everyone that meant anything to her. She was at one time trusted and loved until her world fell apart because of these prosecutions by the people she turned to for help at her darkest, most helpless hour. Plaintiff more than anything wants her name back and wishes to continue to do the good work she was producing. She struggled to build a beautiful life for herself. Now she is trying to put the pieces of her life together but her troubles seem to compound as time slips by.

125.  Plaintiff has been diagnosed with Complex Post-Traumatic-Stress-Disorder by Psychiatrists and therapists at the St. Luke's Roosevelt Hospital Crime Victims Center (Exhibit # JJ) where she has been in intensive Domestic Violence therapies and programs since 2011 and by the Psychiatric staff at Bellevue Hospital's 9/11 Survivors' Health Care Program. She suffers severe depression, bouts of racing thoughts, nausea,

temperature swings, disassociation, mood-swings, sleeplessness, despair, weight fluctuations, digestive

disorders and headaches.  She is currently in therapy at Sanctuary for Families, New York for the same

disorders.

126.    DAMAGES DEMAND WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

    a.    For POLICY CHANGE for the way victims of trafficking and battery abused by Confidential Informants

      and/or witnesses/complainants on major cases are handled by the Police and District Attorneys when

      they come forward for help and to report the abuse.

    b.    For compensatory damages of not less than $30 million;

    c.    For punitive damages against the individual Defendants of$10 million;

    d.    For reasonable attorneys' fees, together with costs and disbursements,

    e.    pursuant to 42 U.S.C. §1988 and to the inherent powers of this Court;

    f.    For pre-judgment interest as allowed by law; and For such other and further relief as   this Court may

      deem just and proper.

127.    The Manhattan District Attorney, Mr. Cyrus Vance, Jr., quoted Berger v S, 295 U.S. 78, 88 (1935) in his

Recommendation for Dismissal of charges against DSK: "Along with the substantial power conferred upon

prosecutors come unique responsibilities. Rather than serving only as a zealous advocate on behalf of a

client, prosecutors have a broader set of obligations to the community, the victim, and the defendant:

"The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose

obligation to govern impartially is a complaint as its obligation to govern at all; and whose interest, therefore,

in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a

peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape

or innocence suffer."

128.    How much longer must Ms. Price suffer?

Kelly Price

_____          _____

Kelly Price

Sworn to me this

2nd Day of September, 2016

NEIL MARTIN ZANG
Notary Public, State of New York
No. 43-4379580
Qualified in Richmond County
Term Expires April 30, 1989  2019

5

INDEX



    

Home    Moments    Notifications    Messages    from:gracieegorgeous @nypd28pct 🔍     

from:gracieegorgeous @nypd28pct

Top    Live    Accounts    Photos    Videos    More options ⌄

**Who to follow** · Refresh · View all

 **Max Blumenthal** ✓ @MaxB...   ×
➕ Follow

**Erik Jensen** @erikjjensen81   ×
➕ Follow

 **Mariska Mission** @Mariska...   ×
➕ Follow

Find friends

**Trends** · Change

**#PizzaHutHut** 🍕
Use #PizzaHutHut to bring football and pizza together.
📣 Promoted by Pizza Hut

**#NYCFC**
2,026 Tweets

**#SnatchGameAllStars**
2,056 Tweets

**#hurricanehermine**
18K Tweets

**#ElDebate**
11K Tweets

**Garrison Keillor**
9,092 Tweets

**Melania Trump**
13.7K Tweets

**#QueenSugar**
1,175 Tweets

**App State**
15.7K Tweets

**Blazing Saddles**

**#inners**
3,540 Tweets

© 2016 Twitter  About  Help  Terms
Privacy  Cookies  Ads info

 **K Grace Price** @GracieeGorgeous · Feb 5
**@nypd28pct** note how even #harriettubman turns on her heels & RUNS from pct! Shouldn't she be headed North?



↩    🔁    ılı    •••

**K Grace Price** @GracieeGorgeous · 1 Dec 2015
Thats **@NYPD28pct** hard at work!  OBE is 1st black, female inspector @ any precinct & this is how she runs her shop...

   **Fille De Sankofa** @Gem_FromWA
NYPD protects consumerism before it protects ur legal right 2 peaceful protest! 125th #NotOneDime unless u #buyblack

↩    🔁 1       2    ılı    •••

↩ In reply to NYPD PBMN

 **K Grace Price** @GracieeGorgeous · 16 Aug 2015
@NYPDPBMN @NYPD28Pct Chief O'Reilly: Remember you created hundreds of teen abusers in Harlem by allowing my batterer to walk free: nice job!

↩    🔁    ılı    •••

 **K Grace Price** @GracieeGorgeous · 16 Aug 2015
@ManhattanDA @RPLNYC **@NYPD28pct** Hope you folks are aware I'm going



🏠 Home    ⚡ Moments    🔔 Notifications    ✉ Messages    🐦    from:gracieegorgeous @nypd28p 🔍

SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x

KELLY PRICE

PLAINTIFF

-against-

DETECTIVE LINDA SIMMONS Individually,
and as an employee of the New York City Police
Department, ADA MARIA STROHBEHN and
ADA KENYA WELLS Individually,
and as employees of the New York County
District Attorney's Office, THE CITY OF NEW YORK,
Deputy DA Audrey Moore, ADA Larry Newman, ADA
Laura Higgins nee Richendorfer, ADA Christina
Maloney, ADA Patricia Bailey, ADA Susan Roque and
DA Cyrus Vance Jr., as employees of the New York
County District Attorney's Office, Inspector Obe of
the New York City Police Department, in her capacity
as an employee of the New York City Police Department,
Rose Pierre-Louis in her capacity as the Commissioner
of Domestic Violence of the City of New York,

DEFENDANTS,

--------------------------------------x

Index No. 15-CV-05
JURY TRIAL DEMANDED

RECEI
AUG 13
PRO SE

↩    🔁    ılı    •••

**K Grace Price** @GracieeGorgeous · 29 Jun 2015
@nypd28pct WHAT DO THOSE WHO ALLEGEDLY TRAFFICKED A 13 yo
Orthodox girl from BKLYN & my batterer SHARE? goo.gl/L2bqdd #MONELL

↩    🔁    ılı    •••

↩ In reply to Angela Greben

**K Grace Price** @GracieeGorgeous · 23 Jun 2015
@AngelaGreben @**NYPD28Pct** I JUST FELL IN LOVE FOLKS @JailsAction
@PROPNYC @ManhattanDA @BilldeBlasio @rachelnoerd @AntonioFrench
@MRFIVEINC

↩    🔁    2    ılı    •••

↩ In reply to Angela Greben

**K Grace Price** @GracieeGorgeous · 23 Jun 2015
@AngelaGreben @**NYPD28Pct** what you are doing is really terrific Angela
THANK YOU SO MUCH FOR FIGHTING THIS UNCONSTITUTIONAL
TWITTER BLOCKING

↩    🔁 1    1    ılı    •••

↩ In reply to Angela Greben

**K Grace Price** @GracieeGorgeous · 23 Jun 2015
@AngelaGreben @**NYPD28Pct** tell you the truth I am OVERDUE ON #myNYPD
#FOIA  REQUESTS!  I NEED A MANAGER.  I HAVE FAR 2 MANY BALLS IN
THE AIR

↩    🔁    ılı    •••

↩ In reply to Angela Greben

**K Grace Price** @GracieeGorgeous · 23 Jun 2015
@AngelaGreben @**NYPD28Pct** wow Angela who ARE YOU LADY AND WHERE
HAVE YOU BEEN MY WHOLE LIFE?????!!!!!!!

↩    🔁    ılı    •••

**K Grace Price** @GracieeGorgeous · 5 Jun 2015
@NYPD28pct Women of @newyorkcity BEWARE U aren't SAFE when U turn 2
#MyNYPD & @ManhattanDA 4 help w/#domesticabuse

**gorgeous212**
The Manhattan District Attorney's office STILL MAINTAINS the position to this day that I imagined/"fabricated" my own abuse. LETS BE CLEAR: I ...

gorgeous212.tumblr.com

↩   ↻   ılı   •••

**K Grace Price** @GracieeGorgeous · 20 Jan 2015
@BilldeBlasio "Do unto others as you would have them do onto you."
@NYPD28pct put me in #Rikers as #DV vctm. "Do Unto them" indeed Mr.
MAYOR

↩   ↻   ılı   •••

↩ In reply to NYC Scanner
**K Grace Price** @GracieeGorgeous · 21 Dec 2014
@NYScanner few of my injuries from DOZENS of beatings: @NYPD28pct
literally would throw away my 61s @NYPDCommAffairs

   
  



↩   ↻ 1   ılı   •••

↩ In reply to NYC Scanner
**K Grace Price** @GracieeGorgeous · 21 Dec 2014
@NYScanner @NYPD28pct Sgt Agron told me if I didnt leave he would arrest
me 4 trespassing. I MADE IAB COMPLAINT HE LOST VACATION DAYS.

↩   ↻ 1   ılı   •••

↩ In reply to NYC Scanner
**K Grace Price** @GracieeGorgeous · 21 Dec 2014
@NYScanner was it Desk SGT Agron whose Arm was broken? Once I went 2
@nypd28pct covered in own blood from a beating & he laughed in my face

↩   ↻ 1   ılı   •••

In reply to NYC Scanner

**K Grace Price** @GracieeGorgeous · 21 Dec 2014
@NYScanner never liked the **@nypd28pct**. As a #DomesticViolence survivor Rodney Harrison's team threw me in Rikers 2 protect my batterer.

↩     ⇄ 1                    ᶦᕦᶦ          •••

In reply to Chirlane McCray

**K Grace Price** @GracieeGorgeous · 29 Nov 2014
@Chirlane @BilldeBlasio My bday was T-giving: bc **@NYPD28Pct** & @manhattanda forsook me as an #IPV survivor I have little left to give thks 4.

↩     ⇄                    ᶦᕦᶦ          •••

**K Grace Price** @GracieeGorgeous · 23 Nov 2014
@NYPost @TymMatusov @BlinkerMullings Yea I know Harrison.  His **@NYPD28Pct** threw me in #Rikers when I went there 4 help as an #IPV victim.

↩     ⇄                    ᶦᕦᶦ          •••

In reply to Geoffery Mullings

**K Grace Price** @GracieeGorgeous · 29 Oct 2014
@BlinkerMullings @TymMatusov @NYPD26Pct it was **@NYPD28pct** not the 2-6 although the chief, Rodney Harrison, moved to the 2-6 after debacle

↩     ⇄        1           ᶦᕦᶦ          •••

**K Grace Price** @GracieeGorgeous · 17 Oct 2014
@manhattanda **@NYPD28pct** @CommissBratton daily @ St Elizabeth's I pray 4 the return of things you have taken from me

The following media may contain sensitive material.

Your media settings are configured to inform you when media may be sensitive.

| View content |

↩     ⇄                    ᶦᕦᶦ          •••

**K Grace Price** @GracieeGorgeous · 17 Oct 2014
@NYPDNews ran into good cops from @NYPD33pct @ Buczek Memorial & asked **@NYPD28Pct** to do better w #DomesticViolence

> **Manhattan District Attorney Cyrus Vance Jr.: END ...**
>
> "Secondary Victimization," is abuse suffered at the hand of not a primary batterer but also at the hands of a "justice system" meant to protect and offer refuge to ...
>
> change.org

↩     ⇄                    ᶦᕦᶦ          •••

In reply to Museum of Corruption

**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@CorruptMuseum **@NYPD28Pct** is the place for CORRUPTION in #MyNYPD - ask Inspector Obe chn.ge/1lfKJZd @sffny







**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPD28pct "Caller has checked the NYC municipal policy on blocking & they can only block a person if they were abusive" @CommissBratton



**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@CommissBratton @NYCMayorsOffice @Chirlane  Complaint vs. Insp. Obe @NYPD28pct for violations of NYC Social Media Policy: #C-1-1-1023188047



**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@SayNoMore @SafeHorizon RT: from @NYPD28Pct  "Tips & Suggestions On Reporting #DV...ow.ly/CdI1G" Obe suggests we buy earrings...

                    1              1



**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPD28Pct bad cops: Obe, Agron, Simmons (ret), Flowers(ret), Fontanez, Williams, D'Amato, Good cops: Sol, Walker, Harrison, LaRocca(ret)

           1

↩ In reply to NYPD 28th Precinct



**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPD28Pct make sure if you leave your car unattended that you At least pick up a nice pair of earrings 4 Inspector Obe! She prefers silver.

↩ In reply to NYPD 28th Precinct



**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@CommissBratton. PRETTY PLEASE Commissioner B encourage your leaders to open their ears to #DomesticViolence survivors @NYPD28Pct @sffny

↩ In reply to NYPD 28th Precinct



**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@CommissBratton @NYPD28Pct @sffny. OBE You need to LISTEN to #DomesticViolence survivors: not just give lip service.





In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPD28Pct @NYCagainstabuse @ManhattanDA @CommissBratton
@SFFNY great choice to lead the corrupt & dirty 28th pct! Insp. Obe fits right in!

In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPDNEWS @CommissBratton @NYPD28Pct @NYCagainstabuse @SFFNY
Insp. Obe blocked me from the 2-8 twitter accnt. She is off to a good start!

In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPD28Pct @NYCagainstabuse PUBLIC OFFICIALS USING TWITTER
ACCNTS TO SERVE THE PUBLIC SHOULD NOT BLOCK USERS WHO VOICE
VALID COMPLAINTS OBE

In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPD28Pct @NYCagainstabuse as a PUBLIC OFFICIAL your job is to listen
to the people in your pct insp OBE.  Blocking #DV survivors = shallow

In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPD28Pct @sffny nice selection INSP OBE! Any extra time to respond to
the letter I sent 2 your precinct about #DV?



In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@**NYPD28Pct** @sffny ATTN Insp OBE:  link 4 #DomesticViolence prevention leads to a JEWELRY MALL. Your selection is nice ow.ly/Cdl1G

In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 13 Oct 2014
@**NYPD28Pct** @sffny WHY encourage #IPV Victims to report abuse if @NYPD does not help? chn.ge/1lfKJZd. The 2-8 needs to clean house!

> **Manhattan District Attorney Cyrus Vance Jr.: END ...**
> "Secondary Victimization," is abuse suffered at the hand of not a primary batterer but also at the hands of a "justice system" meant to protect and offer refuge to ...
> change.org

In reply to NYPD NEWS

**K Grace Price** @GracieeGorgeous · 12 Oct 2014
@NYPDnews @**NYPD28Pct** the @NYPD #Honor911 by treating survivors w respect. DON'T PROLONG OUR SUFFERING w MISDEEDS: chn.ge/1lfKJZd

In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 10 Oct 2014
@NYCAGAINSTABUSE @**NYPD28Pct**  victims be wary of the 2-8: their "Help" put me #Rikers & my abuser walked chn.ge/1lfKJZd #JAILSACTION

In reply to NYPD 43rd Precinct

**K Grace Price** @GracieeGorgeous · 10 Oct 2014
@NYPD43Pct @NYCagainstabuse I went to @**NYPD28Pct** 4 order vs my abuser I was thrown in #Rikers. Talk to Advocates 1st chn.ge/1lfKJZd

In reply to Commissioner Bratton

**K Grace Price** @GracieeGorgeous · 26 Sep 2014
@CommissBratton are the sgts being reminded to impart that pcts are not to rip up complaints of #IPV victims? DIR102111 @**NYPD28Pct** #sffny



Home Moments Notifications Messages from:gracieegorgeous @nycagai

from:gracieegorgeous @nycagainstabuse

Top | Live | Accounts | Photos | Videos | More options

Who to follow · Refresh · View all

Murtaza Hussain @Maz... Follow

Trymaine Lee @trymaine... Follow

Ryan J. Reilly @ryanjreilly Follow

Find friends

Trends · Change

**#PizzaHutHut**
Use #PizzaHutHut to bring football and pizza together.
Promoted by Pizza Hut

**#NYCFC**
2,026 Tweets

**#SnatchGameAllStars**
2,517 Tweets

**#hurricanehermine**
18K Tweets

**#ElDebate**
11K Tweets

**Garrison Keillor**
9,092 Tweets

**Melania Trump**
14.3K Tweets

**#QueenSugar**
1,211 Tweets

**Blazing Saddles**
5,372 Tweets

**App State**
18.2K Tweets

**#inners**
4,093 Tweets

© 2016 Twitter About Help Terms Privacy Cookies Ads info

**K Grace Price** @GracieeGorgeous · Jul 2
@CityLimitsNews @jarrettmurphy you forgot former commish Rose Pierre Louis, former Commish of **@NYCagainstabuse**

**City Limits** @CityLimitsNews
Another Resignation for the de Blasio Administration
bit.ly/29uHiLa

1

**K Grace Price** @GracieeGorgeous · 7 Aug 2015
**@NYCagainstabuse** FACT: 75% of women in prison are domestic violence survivors. Why? d.shpg.org/140683893t?ref... @JailsAction

**K Grace Price** @GracieeGorgeous · 30 Jul 2015
@sffny GREAT! Policy doesn't require endorsement of #dv status by pieholes @ #mynypd @manhattanda & **@NYCagainstabuse** futureswithoutviolence.org/survivors-of-d...

**K Grace Price** @GracieeGorgeous · 27 Jul 2015
**@nycagainstabuse** WOMEN IN @NYC SHOULD KNOW ABOUT THIS LAWSUIT VS RIKERS GUARDS WHO RAPE & ABUSE THEIR CONSCRIPTS gorgeous212.tumblr.com/post/125131713...

**K Grace Price** @GracieeGorgeous · 29 Jun 2015
**@NYCagainstabuse** WHAT DO THOSE WHO ALLEGEDLY TRAFFICKED A 13 yo Orthodox girl from BKLYN & my batterer SHARE? goo.gl/L2bqdd #MONELL

In reply to Angela Greben
**K Grace Price** @GracieeGorgeous · 23 Jun 2015
@AngelaGreben FYI THE COMMISSIONER OF #domesticviolence FOR THE CITY OF NEW YORK ALSO BLOCKED ME ON HER OFFICE'S ACCOUNT **@NYCagainstabuse** !!

1 1

**K Grace Price** @GracieeGorgeous · 19 Jun 2015
**@nycagainstabuse**

**gorgeous212**

FOR EACH OF THESE TEXT MESSAGES I SENT MY BATTERER TELLING HIM TO STOP BEATING ME, STEALING MY MONEY AND T...

gorgeous212.tumblr.com

K Grace Price @GracieeGorgeous · 18 May 2015
@nycagainstabuse #DomesticViolence survivor suing @Manhattanda 4 tossing me in #Rikers when I went to them 4 help

**Tumblr**
gorgeous212
4.0/5.0 stars – 313,438 ratings

K Grace Price @GracieeGorgeous · 2 Jan 2015
In reply to Voiceless No More
@voicelessnomore @TheJulieLevine from your lips to God's ears @sffny @JoeTorre @NYCagainstabuse @Chifrane

K Grace Price @GracieeGorgeous · 14 Dec 2014
CC: @Bgluso @CelesteKatzNYC @BlinkerMullings @av1tale @RStolarik @MRFIVEINC @erinmdurkin @NYCagainstabuse @errollouis @coreykligannon

K Grace Price @GracieeGorgeous · 5 Dec 2014
In reply to Office to Combat DV
@NYCagainstabuse you DM'd me three days ago, asked for my number and said someone would be in touch??? STILL NOTHING. crickets.

K Grace Price @GracieeGorgeous · 1 Dec 2014
In reply to Office to Combat DV
@NYCagainstabuse I cant reply to your DM bc you dont follow me.

K Grace Price @GracieeGorgeous · 1 Dec 2014
In reply to Office to Combat DV
@NYCagainstabuse where do we go when wrongly dubbed as "fabricators" by #MVNYPD & @manhattanda & denied entrance to Family Justice Centers?

K Grace Price @GracieeGorgeous · 3 Nov 2014
In reply to Office to Combat DV
@NYCagainstabuse Many more women could have benefited from services



at a FJC but were barred bc they were falsely labeled "fabricators."

In reply to JB James Brown

**K Grace Price** @GracieeGorgeous · 30 Oct 2014
@JBsportscaster @**NYCagainstabuse** @Chirlane @NYCMayorsOffice @NOMOREorg Congratulations and thank you so much for your advocacy James!

**K Grace Price** @GracieeGorgeous · 15 Oct 2014
@Chirlane @**NYCagainstabuse** @BilldeBlasio @NYCMayorsOffice Many of us still suffer bc of misdeeds by law enforcement

In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPD28Pct @**NYCagainstabuse** @ManhattanDA @CommissBratton @SFFNY great choice to lead the corrupt & dirty 28th pct! Insp. Obe fits right in!

1

In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPDNEWS @CommissBratton @NYPD28Pct @**NYCagainstabuse** @SFFNY Insp. Obe blocked me from the 2-8 twitter accnt. She is off to a good start!

2 1

In reply to NYPD 28th Precinct

**K Grace Price** @GracieeGorgeous · 14 Oct 2014
@NYPD28Pct @**NYCagainstabuse** PUBLIC OFFICIALS USING TWITTER ACCNTS TO SERVE THE PUBLIC SHOULD NOT BLOCK USERS WHO VOICE VALID COMPLAINTS OBE

1

Back to top ↑

Direct Messages

New Message

Would you like to receive browser notifications such as Messages, Follows, and Likes?

Maybe later | Enable notifications

**Trafficked No More** @traffickednomore
Thanks so much! Please visit our website traffickednomore.org and thank you for all your support!

**Dan Pierce** @dan_dpierce
THEY FUCKED W THE WRONG GIRL

**Office to Combat DV** @NYCagainstabuse
Is there a phone # to your office you can provide please?

**Tony Stiles** @TonyStiles
Did you know TonyStiles.com is the fastest growing liberty news site in America? LINK TO MY RADIO SHOW: TonyStiles.com

**Disrupt_Corruption** @Disrupt_now
We're thinkers, writers and truth seekers working collectively to understand the world critically. Join us at criticl.me

**MyCharityMap** @MyCharityMap
Are you or do you know a good charity? Please sign up on mycharitymap.org/contact/charit... and get found on the map!

**Zephyr Teachout** @ZephyrTeachout
*You shared @CorruptMuseum's Tweet. Hi Ms. Teachout. Im happy to nominate you and start a twitter push about others nominating you if you are keen?*

**Lil Egypt** @LilEgypt_
Thanks for following me Please check out my favorite artist @mrwoe songs on Reverbnation

Office to Combat DV

Thank you for contacting us. Please provide further details pertaining to your concerns and contact information so we may better assist you.

1 Dec 2014

Thank you for contacting us. Please provide further details pertaining to your concerns and contact information so we may better assist you.

2 Dec 2014

Happy to. 646 676 1940. The manhattanda conveniently labels women as fabricators of abuse whenever the batterer has intel on other cases.

He put me in rikers where I miscarried my baby all the while knowing I was an innocent victim

Ive been banned from using any rescources at the family justice center

The das only give lip service to victims.

2 Dec 2014

I had all charges dismissed and sealed and bc I filed a lawsuit im not allowed to step foot in the fjc.

2 Dec 2014

Can you provide us with your name

You can no longer send messages to this person. Learn more

Office to Combat DV

miscarried my baby all the while knowing I was an innocent victim.

Ive been banned from using any rescources at the family justice center

The das only give lip service to victims.

2 Dec 2014

I had all charges dismissed and sealed and bc I filed a lawsuit im not allowed to step foot in the fjc.

2 Dec 2014

Can you provide us with your name and borough so that we can connect you to the most appropriate staff?

2 Dec 2014

Kelly grace Price/nihin. I work w Lisa Hailisalassie for over 2 yrs @ the CVTC but have exceeded counselling quotas there.

2 Dec 2014

Thank you for your information. A member of our staff will contact you shortly to further assess.

2 Dec 2014

Hannah pennington from FJC called me. She has been trying to give me referrals as the DAs office doesnt want me in the FJC reminding them

Of how badly they do their jobs in the SVU.

15 Dec 2014

You can no longer send messages to this person. Learn more

Office to Combat DV

Thank you for contacting us. Please provide further details pertaining to your concerns and contact Information so we may better assist you.

1 Dec 2014

Thank you for contacting us. Please provide further details pertaining to your concerns and contact information so we may better assist you.

2 Dec 2014

Happy to. 646 676 1940. The manhattanda conveniently labels women as fabricators of abuse whenever the batterer has intel on other cases.

He put me in rikers where I miscarried my baby all the while knowing I was an innocent victim

Ive been banned from using any rescources at the family justice center

The das only give lip service to victims.

2 Dec 2014

I had all charges dismissed and sealed and bc I filed a lawsuit im not allowed to step foot in the fjc.

2 Dec 2014

Can you provide us with your name

You can no longer send messages to this person. Learn more

**Rose Pierre-Louis**
@RPL.NYC

You are blocked from following @RPL.NYC and viewing @RPL.NYC's Tweets. Learn more

Who to follow · Refresh · View all

Jamie Kilstein @ @jamiekil
Follow

Translator @ @translator
Follow

Erik Jensen @erikjensen81
Followed by Mr Five Muslim...
Follow

Find friends

Trends Change

from:gracieegorgeous @rplnyc

Top | Live | Accounts | Photos | Videos | More options

Who to follow · Refresh · View all

William Eric Waters @ezw... Follow

Peter Sarsgaard @peter... Follow

Annette Blankenship @Do... Follow

Find friends

Trends · Change

#PizzaHutHut
Use #PizzaHutHut to bring football and pizza together.
Promoted by Pizza Hut

#NYCFC
2,026 Tweets

#SnatchGameAllStars
2,517 Tweets

#hurricanehermine
18.9K Tweets

#ElDebate
14K Tweets

Garrison Keillor
9,488 Tweets

Melania Trump
14.3K Tweets

#QueenSugar
1,252 Tweets

Blazing Saddles
5,372 Tweets

App State
18.2K Tweets

#BrandA90sFilm
4,444 Tweets

© 2016 Twitter About Help Terms Privacy Cookies Ads info

**K Grace Price** @GracieeGorgeous · 19 Oct 2015
@BilldeBlasio: "@**RPLNYC** is tireless advocate for victims and survivors of #DV" OH NO: Quite the opposite! Wake UP Mr. Mayor: RPL is a fraud.

**K Grace Price** @GracieeGorgeous · 16 Aug 2015
@ManhattanDA @**RPLNYC** @NYPD28pct Hope you folks are aware I'm going to dig up all your sins... gorgeous212.tumblr.com/post/126873627...

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY PRICE

PLAINTIFF

-against-

Index No. 5-CV-05
JURY TRIAL DEMANDED

DETECTIVE LINDA SIMMONS Individually, and as an employee of the New York City Police Department, ADA MARIA STROHBEHN and ADA KENYA WELLS Individually, and as employees of the New York County District Attorney's Office, THE CITY OF NEW YORK, Deputy DA Audrey Moore, ADA Larry Newman, ADA Laura Higgins nee Richendorfer, ADA Christina Maloney, ADA Patricia Bailey, ADA Susan Roque and DA Cyrus Vance Jr., as employees of the New York County District Attorney's Office, Inspector Obe of the New York City Police Department, in her capacity as an employee of the New York City Police Department, Rose Pierre-Louis in her capacity as the Commissioner of Domestic Violence of the City of New York,

DEFENDANTS.

RECEI[VED] AUG 13 PRO SE

**K Grace Price** @GracieeGorgeous · 7 Aug 2015
@**rplnyc** 75% women @ #Rikers are #domesticviolence survivors-Why? d.shpg.org/140683893t?ref... @JailsAction @BilldeBlasio

IN 29 STATES, MOTHERS ARE PUT IN PRISON when they can't stop their abuser from harming their children.
IN 7, a mother could serve LIFE IN PRISON for it.
"MANDATORY ARREST" LAWS require police to make an arrest even if it means JAILING THE SURVIVOR who called for help
WOMEN OF COLOR are DISPROPORTIONATELY JAILED
75% OF WOMEN IN PRISON ARE DOMESTIC VIOLENCE SURVIVORS. HOW DID THEY GET THERE?
In California, 67% OF WOMEN in prison for killing a significant other DID SO IN SELF-DEFENSE.
A MAJORITY OF SURVIVORS on Rikers Island report they committed crimes due to the THREAT OF VIOLENCE FROM AN INTIMATE PARTNER.

SURVIVORS NEED SUPPORT, NOT JAIL TIME. SHARE IF YOU AGREE.

Home Moments Notifications Messages from:gracieegorgeous @rplnyc

**@rplnyc** Women of @newyorkcity BEWARE U aren't SAFE when U turn 2 #MyNYPD & @ManhattanDA 4 help w/#domesticabuse

**gorgeous212**
The Manhattan District Attorney's office STILL MAINTAINS the position to this day that I imagined/"fabricated" my own abuse. LETS BE CLEAR: I ...
gorgeous212.tumblr.com

**K Grace Price** @GracieeGorgeous · 25 Mar 2015
@RPLNYC Holding u 2 your promise to give me a tour of the Family Justice Center & to "show me how NYC does #DV" cc @rachelnoerd #Saynomore

**K Grace Price** @GracieeGorgeous · 14 Dec 2014
CC: @TymMatusov @gideonoliver @galeabrewer @**RPLNYC** @BilldeBlasio @HelenRosenthal @Dromm25 @NormanSiegel @jimdwyernyt

**Cyrus Vance Jr.'s 'Moneyball' Approach to Crime**
The district attorney of New York County believes you can get crime rates to zero — if you just look hard enough at the numbers.
nytimes.com

Back to top ↑

Home
Moments
Notifications
Messages
Search Twitter

Home Moments Notifications Messages Search Twitter

**Rose Pierre-Louis**
@RPLNYC

You are blocked from following @RPLNYC and viewing @RPLNYC's Tweets. Learn more

Who to follow · Refresh · View all

**Erik Jense...** Followed b... Follow

**Ali Abuni...** Follow

**Michael B...** Follow

Find friends

Trends · Change

**#PizzaHutHut**
Use #PizzaHutHut to bring football and pizza together.
Promoted by Pizza Hut

**#NYCFC**
2,597 Tweets

**#SnatchGameAllStars**
2,517 Tweets

**#hurricanehermine**
18K Tweets

**#EIDebate**
11K Tweets

**Garrison Keillor**
9,488 Tweets

**Melania Trump**
14.3K Tweets

**#QueenSugar**
1,252 Tweets

**Blazing Saddles**
5,372 Tweets

**App State**
18.2K Tweets

**#BrandA90sFilm**
4,266 Tweets

© 2016 Twitter About Help Terms Privacy Cookies Ads info

Home Moments Notifications Messages Search Twitter

**NYPD 28th Precinct**
@NYPD28Pct

You are blocked from following @NYPD28Pct and viewing @NYPD28Pct's Tweets. Learn more

Who to follow · Refresh · View all

Magnum ... Follow

김경 @sigh... Follow

Michael B... Follow

Find friends

Trends · Change

**#PizzaHutHut**
Use #PizzaHutHut to bring football and pizza together.
Promoted by Pizza Hut

**#NYCFC**
2,597 Tweets

**#SnatchGameAllStars**
2,517 Tweets

**#hurricanehermine**
18K Tweets

**#ElDebate**
11K Tweets

**Garrison Keillor**
9,488 Tweets

**Melania Trump**
14.3K Tweets

**#QueenSugar**
1,252 Tweets

**Blazing Saddles**

**#inners**
4,093 Tweets

**App State**
18.2K Tweets

© 2016 Twitter About Help Terms Privacy Cookies Ads info

**Exhibit A**

1

1    COURT OF APPEALS

2    STATE OF NEW YORK

3    ----------------------------------------

4    PEOPLE,
                        Respondent,

5          -against-
                                        No. 72
6    RAPHAEL GOLB,

7                        Appellant.

8    ----------------------------------------

9                                        20 Eagle Street
10                               Albany, New York 12207
                                         March 25, 2014

11   Before:

12         CHIEF JUDGE JONATHAN LIPPMAN
           ASSOCIATE JUDGE VICTORIA A. GRAFFEO
13         ASSOCIATE JUDGE SUSAN PHILLIPS READ
           ASSOCIATE JUDGE ROBERT S. SMITH
14   ASSOCIATE JUDGE EUGENE F. PIGOTT, JR.
           ASSOCIATE JUDGE JENNY RIVERA
15         ASSOCIATE JUDGE SHEILA ABDUS-SALAAM

16

17   Appearances:

18                  RONALD L. KUBY, ESQ.
            LAW OFFICE OF RONALD L. KUBY
                  Attorney for Appellant
19          119 West 23rd Street, Suite 900
                    New York NY 10011

20
                    VINCENT RIVELLESE, ADA
21   NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE
                  Attorney for Respondent
22                     Appeals Bureau
            One Hogan Place, Room 854
23                  New York NY 10013

24
                                Karen Schiffmiller
25                        Official Court Transcriber

2

1      CHIEF JUDGE LIPPMAN:  72, People v. Golb.

2      Counselor, do you want any rebuttal time?

3      MR. KUBY:  I'll take three, if you would,

4   Judge, okay?

5      CHIEF JUDGE LIPPMAN:  Three minutes, you

6   have it, go ahead.

7      MR. KUBY:  Thank you so much.  May it

8   please the court, my name if Ron Kuby.  And this case

9   presents the question of whether communicating under

10   the name of another real person, an act of literary

11   impersonation becomes the crime of fraud simply

12   because the writer intends some benefit from his or

13   her writing or intends some harm, as a result of his

14   or her writing, regardless of whether that benefit -

15   - -

16      JUDGE SMITH:  Can - - - can this - - - are

17   you really saying that this legal for - - - for you

18   to take - - - to send e-mails in my name confessing

19   to the assassination of President Kennedy or

20   whatever.  You can do that?

21      MR. KUBY:  Great news, Judge, in your name,

22   no, because you're the government.  And the

23   government - - - I recognize you're a branch of the

24   government, but an important one, and the government

25   simulation of court process, official judicial

3

1      imprimatur is different.

2              JUDGE SMITH:  Okay, well - - - so you're

3      saying - - - but - - - but when I'm not the

4      government next January, you can do it?

5              MR. KUBY:  I wouldn't, but it would not be

6      criminal.  Would it be rude and boorish?  Yes.  Would

7      you have a remedy for this - - -

8              JUDGE GRAFFEO:  Well, what if - - - what if

9      somebody loses their employment because their

10     employers think that they're engaged in some activity

11     that they're not doing, because they - - - they've

12     been represented on the Internet as taking certain

13     positions or engaging in certain activities that they

14     didn't authorize.

15             MR. KUBY:  I understand that.  And - - -

16             JUDGE GRAFFEO:  That's not - - - that's not

17     criminal?

18             MR. KUBY:  Well - - -

19             JUDGE GRAFFEO:  I mean, there can be some

20     serious financial and employment and personal

21     ramifications?

22             MR. KUBY:  Well, yes, there could be, and -

23     - - and when you're talking about generalized

24     reputational damage, I lost my job for this discreet

25     sum of money because this person said these things

4

1     about me, there is a civil remedy.

2              CHIEF JUDGE LIPPMAN:   Where - - - where

3     does it cross over into criminal?   Where - - - where

4     would it be in this kind of situation that - - - that

5     you're dealing with?   What - - - what - - - what

6     would your client have done that would have made it

7     criminal - - -

8              MR. KUBY:   Oh, oh, oh.

9              CHIEF JUDGE LIPPMAN:    - - - as opposed to

10    what he did now?

11             MR. KUBY:   Easy.   He writes, takes the

12    Lawrence Schiffman e-mail.

13             CHIEF JUDGE LIPPMAN:   Right.

14             MR. KUBY:   Sends an e-mail to the - - - the

15    bursar at NYU saying, you know, because I stole

16    Norman Golb's theory and so much of my success is

17    dependent on Norman Golb, please deposit ten percent

18    of my salary into Norman Golb's checking account.

19             CHIEF JUDGE LIPPMAN:   So it's got to be a

20    direct economic benefit?   That's criminal.

21             MR. KUBY:   Well, if - - - if there is a

22    direct economic benefit, or economic harm, it is

23    criminal.

24             CHIEF JUDGE LIPPMAN:   What if - - -

25             JUDGE PIGOTT:   You're saying it's a

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 50 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 6 of 81

5

1  larceny.

2         MR. KUBY:  Right.  Or in this case, it

3  would be standard as - - - as you put it, Judge

4  Smith, good old fashioned fraud.

5         CHIEF JUDGE LIPPMAN:  Okay, that's one

6  criminal - - - that's one thing he could have done.

7  What else could he have done that's criminal?  We

8  have a whole bunch of charges here.  What else would

9  have been a criminal act in a context of what we're

10  dealing with here?

11         MR. KUBY:  He - - - for example, he wants

12  his father to show up at a particular lecture and

13  doesn't want Schiffman to be at a particular lecture,

14  so he takes his Lawrence Schiffman e-mail address,

15  sends the airlines a note, saying I'm canceling my

16  reservation.  You lose the value of the plane ticket.

17  Tot - - - clearly, exactly the type - - -

18         JUDGE RIVERA:  And if - - - and if someone

19  disinvites him because of the barrage of e-mails?

20         MR. KUBY:  I'm sorry?

21         JUDGE RIVERA:  Is that - - - if someone

22  disinvites the speaker, and they lose - - -

23         MR. KUBY:  Then that begins - - -

24         JUDGE RIVERA:  - - - the financial benefit

25  and the reputational benefit of the invitation.

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 51 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 7 of 81

6

1          MR. KUBY:  Well, how is that any different

2    from the type of public criticism that public folks

3    go through every single day?  There - - -

4          JUDGE SMITH:  Well, because you lie - - -

5    because there's a lie.  Because you're - - - you're

6    deceiving people into believing that this is Mr.

7    Schiffman and it's not.

8          MR. KUBY:  Well, that's right, Judge.  But

9    that - - - unfortunately, we're - - -

10          JUDGE SMITH:  Why - - - why - - - I mean,

11    does it make sense that you say it could be criminal

12    to cancel a guy's plane reservation - - -

13          MR. KUBY:  Right.

14          JUDGE SMITH:  - - - using his name, but it

15    - - - but it's not to destroy his reputation?

16          MR. KUBY:  Well, again, it depends how you

17    destroy somebody's reputation.  If you destroy

18    somebody's reputation by sending out this false

19    confession that is directly linked to the true

20    account of plagiarism, and people read that and say,

21    oh, my God, Lawrence Schiffman, in fact, is a

22    plagiarist, if you - - - if you tease them in by the

23    use of - - - of the Schiffman name, and then they

24    come to the conclusion that Schiffman has done these

25    terrible things, and he loses his job because he's a

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 52 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 8 of 81

7

1       plagiarist - - -

2                JUDGE RIVERA:  But what you're saying is

3       the person admits to the plagiarism?

4                MR. KUBY:  Pardon me?

5                JUDGE RIVERA:  You're saying through the e-

6       mail that he's admitting to the plagiarism - - -

7                MR. KUBY:  Well - - - well - - -

8                JUDGE RIVERA:  - - - which is different

9       from someone - - -

10               MR. KUBY:  Right.

11               JUDGE RIVERA:  - - - simply claiming the

12      person is a plagiarist.

13               MR. KUBY:  How is that any different from -

14      - - from Tucker Carlson sending out his e-mail under

15      the name Keith Olbermann, and sending out something

16      that actually sounds like Keith Olbermann, only a

17      little crazier than Keith actually is, and - - -

18               JUDGE RIVERA:  So - - - so - - -

19               MR. KUBY:  - - - and people say, wow, he's

20      really nuts.  And - - -

21               JUDGE RIVERA:  So apparently - - -

22      apparently to the research assistants they thought it

23      was the professor.

24               MR. KUBY:  Well, one - - - yeah, that's

25      right.  One student thought it was the professor and

8

1     came up to Professor Schiffman and in substance said,

2     don't worry, Professor Schiffman; your - - - your

3     history of plagiarism and your desire to conceal is

4     safe with me.  That's - - -

5          JUDGE SMITH:  But you're - - - you're - - -

6     is it - - - is it necessary to your argument that

7     Schiffman's in fact guilty of the - - - of the crime

8     that - - - that your - - - you know, your client had

9     him admit to or used his name to admit to?

10          MR. KUBY:  It - - - it is not, although

11    frankly, it's - - - it's helpful, but it's not

12    necessary.  Los Angeles Times - - -

13          JUDGE SMITH:  But it could be - - - it

14    could be - - - he - - - he - - - he could have done

15    the - - - he could have admitted that he's, you know,

16    that he's an assassin, that he's a thief.  And you -

17    - - are you saying that's because the statute doesn't

18    cover it, or because it's constitutionally protected?

19          MR. KUBY:  I'm saying that the statute

20    doesn't cover it on vagueness grounds.  The statute

21    doesn't cover it, because the statute has never been

22    read to cover that.  And as to whether you ultimately

23    could criminalize conduct that you have not yet

24    criminalized in the State of New York, I will go in

25    the same direction as the Skilling Court.  I'm not

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 54 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 10 of 81

9

1    going to start to define with precision when

2    intangible harm crosses the line into vagueness.  All

3    I will say is that - - - that as in Skilling, if - -

4    - if your definition of harm or benefit is anything,

5    psychic joy, savage pleasure in demolishing an

6    opponent in an Internet argument, that goes way too

7    far.  Now - - -

8             JUDGE SMITH:  What the stat - - - what the

9    statute says is the person is guilty of "criminal

10   impersonation when he impersonates another and

11   doesn't act in such assumed character with intent to

12   obtain a benefit or to injure or defraud another."

13            MR. KUBY:  That's right.

14            JUDGE SMITH:  It sounds - - - sounds like

15   it describes what your guy did.

16            MR. KUBY:  Well, it does.  As long as you

17   want to define benefit or harm to be anything.

18            JUDGE SMITH:  Well, I was actually defining

19   the word "injure".  I mean, isn't - - - I mean, isn't

20   - - - isn't injuring Schiffman exactly what your guy

21   was trying to do?

22            MR. KUBY:  Well, I would maintain that what

23   my guy was trying to do was expose Schiffman for the

24   mendacious plagiarist that he was.  Now - - -

25            JUDGE SMITH:  Okay.  Okay, okay - - -

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 55 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 11 of 81

10

1          MR. KUBY:  Now, obviously Schiffman sees it

2     differently.

3          JUDGE SMITH:  Okay, but the jury did not

4     seem to agree with you.

5          MR. KUBY:  Right.  Well, the jury wasn't

6     given the opportunity to consider that question - - -

7          JUDGE RIVERA:  And he did it by

8     impersonating him, as opposed to simply saying, he's

9     mendacious.

10          MR. KUBY:  That's right.

11          JUDGE RIVERA:  Right?

12          MR. KUBY:  That's right.  But how is this

13     any different from the impersonations that are done

14     of Cormac McCarthy to the Koch brothers, from Sarah

15     Palin to the mayor of Paris.

16          JUDGE SMITH:  No, no, but wait a minute.

17     No, but - - - I mean, if - - - because nobody - - -

18     because everybody knows that Tina Fey isn't Sarah

19     Palin.

20          MR. KUBY:  I'm not talking about that.  The

21     New York Times was fooled enough by a tweet from

22     Sarah Palin that they published it.  Governor Scott

23     Walker actually thought he was talking with David

24     Koch when the radio host impersonated him.

25          JUDGE SMITH:  But why - - - why - - - why

1    should - - - why should we assume that the people who

2    - - - who pulled those little capers are not

3    punishable?

4            MR. KUBY:  Well, if you're going to assume

5    that, in fact, all of these people are publishable

6    (sic), including the Republican Party, which opened

7    up eighteen websites in the names of democratic

8    candidates who they wished to attack, you're

9    attracted - - - wow, it's Nancy Pelosi.  I'm a Nancy

10   Pelosi supporter.  I click on and I read all kinds of

11   things I didn't know about Nancy Pelosi.

12           JUDGE SMITH:  Okay, but if - - - yeah - - -

13   well, wait - - -

14           MR. KUBY:  If - - - if those prosecutions

15   are going to go forward, then Mr. Rivellese should do

16   them.

17           JUDGE SMITH:  Wait a minute.  Wait a

18   minute.  They - - - yeah, those - - -

19           MR. KUBY:  Do something useful.

20           JUDGE SMITH:  Yeah, there might be a

21   problem there, but - - - but you don't go to that - -

22   - the Nancy Pelosi, then you don't see Nancy Pelosi

23   confessing all her sins on that website.

24           MR. KUBY:  Oh, say - - - I actually didn't

25   click on.  Let's say you do.  Nancy Pelosi confesses,

12

1    yes, I'm destroying America through Obamacare.  Yes,

2    I have.  I have handed over the reigns of power to a

3    Kenyan-born Muslim - - -

4              JUDGE SMITH:  And - - - and - - - and - - -

5              MR. KUBY:  - - - who wants to destroy

6    America.  Then they get prosecuted?

7              JUDGE SMITH:  And you say that I - - - I,

8    the Republican Party, am entitled to do that?  That's

9    legal?

10             MR. KUBY:  I'm sorry, Judge?

11             JUDGE SMITH:  You say that the people who

12   put up a website like that are entitled to do it?

13             MR. KUBY:  Well, you know what?  Nobody,

14   nobody has prosecuted them yet, and I suspect that

15   it's not going to happen from this side of the table,

16   nor is Tucker Carlson going to get prosecuted.  The

17   person - - - as with all broad sincerest power, the

18   people who get prosecuted are not the people who have

19   power who can push back.  They're the nerds and the

20   dweebs.

21             JUDGE GRAFFEO:  So what - - - so what - - -

22   what are you asking us to define - - -

23             MR. KUBY:  The dissidents.

24             JUDGE GRAFFEO:  - - - as to when the line

25   is crossed between civil or criminal liability in

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 58 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 14 of 81

13

1      these cases?

2              MR. KUBY:  Well - - -

3              JUDGE GRAFFEO:  What are you - - - what are

4      you suggesting we say?

5              MR. KUBY:  What I'm suggesting you say - -

6      -

7              JUDGE GRAFFEO:  I presume you're not going

8      to - - - you don't expect us to say there's never any

9      criminal - - -

10             MR. KUBY:  Nope.

11             JUDGE GRAFFEO:  - - - liability.

12             MR. KUBY:  Nope.  I'm suggesting that you

13     do exactly the same thing that the Skilling Court

14     said, which is, based - - - he essentially, based on

15     our case law, we have authorized the prosecutions for

16     property, pecuniary interests, and also defrauding

17     the government, obtaining government benefits.  So

18     even intangible benefits like liberty, but - - -

19             CHIEF JUDGE LIPPMAN:  But does annoying

20     behavior, obnoxious behavior, never can cross over

21     the line into criminal behavior?

22             MR. KUBY:  Well, obnoxious behavior, as

23     such, intent to annoy, intent to be obnoxious, that

24     in and of itself, cannot be criminalized - - -

25             JUDGE SMITH:  You're now - - - you're now

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 59 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 15 of 81

14

1    on the harassment charge, I think.  The - - - the - -

2    - I think the Chief's - - - the Chief's question

3    really is - - -

4                MR. KUBY:  Yes, I think that's right.

5                JUDGE SMITH:  Yeah, spend a minute on - - -

6    spend a minute on the harassment charge.

7                MR. KUBY:  That's right.  And if we want to

8    - - - and I do want to go to that, because Judge

9    Berkman was extremely careful to make sure she

10   imposed a jail sentence for each and every conviction

11   to make sure that, even if I won ninety percent of

12   this case, this guy was still going to do some time

13   at Rikers Island.

14                So I do want to address that, and in

15   Dupont, Smith, Bethea, Dietze, they all say, okay,

16   you can convict somebody for alarming and annoying a

17   person as long as the way you anar - - - alarm and

18   annoy them is within one of the five areas that have

19   no First Amendment protection.  And - - - and what

20   the People have carved out here is they've said, this

21   is invasion of privacy in an essentially intolerable

22   way.  You have no privacy right to - - -

23                JUDGE SMITH:  But even - - - even if

24   they're right, isn't there a rather serious

25   overbreadth problem with the statute.

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 60 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 16 of 81

15

1          MR. KUBY:  Completely.  If it's interpreted

2    this way, which is why it is always been cabined by

3    every court to consider it.

4          JUDGE SMITH:   In the time you don't have

5    left, do the - - - do the computer fraud prosecution.

6          MR. KUBY:  Simply stated - - - I mean,

7    first and foremost, this is - - - this is Drew all

8    over again, except instead of a Terms of Service

9    Agreement, it's an agreement between NYU.

10         Not only would no one have a clue; that by

11   violating the computer policy, they're committing an

12   independent crime, the only subsection in - - - in

13   that policy itself that makes independent reference

14   to criminal liability is subsection C, I believe,

15   which has nothing to do with what Mr. Golb did.  It

16   has everything to do with giving other people who

17   aren't authorized to be at NYU access to the

18   computer.

19         In addition, the other question, which we

20   will not address right now, unless you want to ask me

21   some questions, is the very notion that somehow

22   acting in excess of authorization means acting

23   without authorization.  And so far, the consensus of

24   opinion around the country construing statutes very

25   much like this, is, no, we really don't want to go

1          there.

2                      JUDGE SMITH:  That's - - - that's what

3          you're not going to say, right?

4                      MR. KUBY:  That's what I didn't say, yeah,

5          thank you.

6                      CHIEF JUDGE LIPPMAN:  But we'll ask you

7          more questions.

8                      MR. KUBY:  Oh, good.

9                      CHIEF JUDGE LIPPMAN:  Let's - - - let's get

10         to your adversary.

11                     MR. RIVELLESE:  May it please the court,

12         I'm Vincent Rivellese for the Manhattan District

13         Attorney.

14                     CHIEF JUDGE LIPPMAN:  Start with the

15         aggravated harassment.  What's that about?  Can you -

16         - -

17                     MR. RIVELLESE:  Well, well - - -

18                     CHIEF JUDGE LIPPMAN:  Is this aggravated

19         harassment or is this just annoying behavior?

20                     MR. RIVELLESE:  Well, it's both, that's for

21         sure.  What's the - - -

22                     CHIEF JUDGE LIPPMAN:  Well, but is it

23         technically a crime?  Can it be in this kind of - - -

24                     MR. RIVELLESE:  Yes.

25                     CHIEF JUDGE LIPPMAN:  Isn't that a little

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 62 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 18 of 81

17

1    bit overbroad?

2            MR. RIVELLESE:  No.

3            CHIEF JUDGE LIPPMAN:  No?  Go ahead.  Why

4    not?

5            MR. RIVELLESE:  This - - - this is the

6    closest argument obviously in the case, but the

7    aggravated harassment involves an intent to harass,

8    annoy or alarm, and it's - - - it's got an intent

9    that's required.  It's also got the likelihood of

10   harassing or alarming the recipients or the victims.

11   It's also got - - -

12           JUDGE SMITH:  If I - - - if I ask you a

13   question that I expect to be an annoying question,

14   and is likely to be an annoying question, am I

15   committing a misdemeanor by asking the question?

16           MR. RIVELLESE:  No, because there's no

17   writing.  The aggravated harassment - - -

18           JUDGE SMITH:  Oh, but - - - oh, but if I

19   submitted the question in writing, it would be a

20   misdemeanor?

21           MR. RIVELLESE:  Well, if - - - if you

22   conveyed to somebody.  So if you e-mailed somebody or

23   you wrote a letter - - -

24           JUDGE SMITH:  Really?  Really?

25           MR. RIVELLESE:  That's the statute - - -

18

1          JUDGE SMITH:  If I e-mail someone an

2    annoying question, I get a year?

3          MR. RIVELLESE:  Well, it has to be likely

4    to annoy, harass, or alarm - - -

5          CHIEF JUDGE LIPPMAN:  So if Judge Smith put

6    what he's asking you now in writing, this is a crime?

7          MR. RIVELLESE:  I'm not annoyed.  I'm not

8    annoyed.  So I'm fine.

9          CHIEF JUDGE LIPPMAN:  Oh, okay, you're not

10   annoyed.  Okay.  It might have been mis - - -

11         JUDGE SMITH:  Give me - - - give me time.

12         MR. RIVELLESE:  The proper discussion - - -

13         JUDGE ABDUS-SALAAM:  Counsel, is it that

14   subjective that the person who receives the question

15   has to feel that it's annoying?

16         MR. RIVELLESE:  Well, no, it is - - - it's

17   reasonableness.

18         JUDGE ABDUS-SALAAM:  It has to have an

19   objective right.

20         MR. RIVELLESE:  It has to likely to harass

21   or alarm - - -

22         JUDGE PIGOTT:  I read this too to mean,

23   it's almost like there's a third-party one, that - -

24   - that if I write to you, and - - - and say something

25   that harasses or annoys Judge Smith, about Judge

1    Smith, that that's aggravated harassment, even though

2    I'm writing to you and he thinks it's annoying.

3         MR. RIVELLESE:  Well, if I'm the governor

4    and I could fire him, that would - - - that could be

5    the case, but what's happening here is that he's

6    targeting the people that have control over his

7    victims - - -

8         JUDGE PIGOTT:  But as a third - - - you're

9    saying there can be a third-party aggravated

10   harassment.

11        MR. RIVELLESE:  Yes, if still - - - there's

12   still an intended victim.

13        JUDGE PIGOTT:  So if - - - well, that's I -

14   - - you get - - - you get three college kids - - -

15   you get some college kid who write - - - who e-mails

16   the girlfriend of his roommate saying, you know, he

17   really is a useless person.  Is that aggravated

18   harassment with respect to the victim,

19   boyfriend/roommate?

20        MR. RIVELLESE:  Yes, because it's got - - -

21        JUDGE PIGOTT:  Really?

22        MR. RIVELLESE:  It meets all the elements.

23   It does not require that the person that you send the

24   communication to is the same person that you intend

25   to harass, annoy and alarm.  It's - - -

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 65 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 21 of 81

20

1       JUDGE SMITH:  Wasn't - - - wasn't - - -

2   didn't the First Department hold this - - - or at

3   least say in Dupont, that this statute is

4   unconstitutional?

5       MR. RIVELLESE:  Well, the First

6   Department's decision in Dupont wasn't very clear,

7   because it says in the alternative a few different

8   things.  One thing it said was that the statute did -

9   - - wasn't even violated at all by the conduct.

10  Another thing it said was that it was

11  unconstitutional.

12      JUDGE SMITH:  So what's - - - what's

13  unclear about that?  It said two things in the

14  alternative.  It sounds clear to me.  And how - - -

15  how - - - my question is how can they then affirm a

16  conviction under the same statute, without even

17  citing Dupont?

18      MR. RIVELLESE:  Well, Dupont is - - - if

19  you read Dupont closely, it's rather hard to

20  understand because it says things in the alternative

21  that don't seem consistent with each other, by saying

22  it's not a violation of the statute, and at the same

23  the statute unconstitutionally violated the

24  defendant's rights.  It can't really be both at the

25  same time.  But in Dupont there was no - - -

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 66 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 22 of 81

21

1          JUDGE SMITH:  Isn't - - - isn't it a little

2    odd to in - - - if you said, whether oddly or wrongly

3    or not, if you said a statute is unconstitutional,

4    isn't it kind of funny to enforce it in the next case

5    without mentioning the precedent?

6          MR. RIVELLESE:  Well, well, in Dupont, it

7    was a little different, because in Dupont the

8    communication wasn't made from one person to another.

9    It was just a publication.  So - - - so the defendant

10   in Dupont just published his comments that - - -

11   granted they were about a particular person - - - but

12   he wasn't conveying his writing to a person, saying

13   here, I'm saying this about so-and-so, or giving it

14   to the person himself.  He was just publishing it.

15          JUDGE SMITH:  But why is - - - why is - - -

16   why is Dietze - - - what it is - - - forget about

17   Dupont - - - why doesn't Dietze knock out this

18   statute?  How does Dietze - - - how is the statute in

19   Dietze distinguishable from - - - from this one?

20          MR. RIVELLESE:  Could Your Honor remind me

21   - - - is that the speaking - - - calling the names

22   against the people?

23          JUDGE SMITH:  Well, that's the case, but

24   they - - -

25          MR. RIVELLESE:  Right.

22

1           JUDGE SMITH:  - - - but they - - - but I

2    think we - - - I thought - - - I thought we held that

3    statute unconstitutional, not just - - -

4           MR. RIVELLESE:  But that's - - - that's the

5    speaking of the bad words and calling names - - -

6           JUDGE SMITH:  Yes, yes.

7           MR. RIVELLESE:  - - - it's a different - -

8    - it's a different subdivision of the harassment.

9           JUDGE SMITH:  Yes, yes, but it seems to me

10   that that subdivision is narrower that this one.

11          MR. RIVELLESE:  Well - - -

12          JUDGE SMITH:  That one was overbroad.  How

13   can this one possibly survive?

14          MR. RIVELLESE:  Well, well, if - - - I

15   guess, if you're saying that it's possible that

16   somebody could violate the statue in a way that would

17   be unconstitutional, is different from saying it was

18   unconstitutional as applied to this defendant - - -

19          JUDGE SMITH:  No, this is - - - I mean,

20   isn't - - - when you're talking about a First

21   Amendment claim, and we are, right?  Isn't over - - -

22   isn't it - - -

23          MR. RIVELLESE:  On the - - - on the

24   aggravated harassment?

25          JUDGE SMITH:  Yes.  I mean, he's - - - he -

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 68 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 24 of 81

23

1        - - as I understand it, the claim your adversary

2        makes is that this statute infringes on protected

3        rights - - - rights protected by the First Amendment.

4                    MR. RIVELLESE:  Right - - - by being too

5        vague in this case.

6                    JUDGE SMITH:  Or too broad.

7                    MR. RIVELLESE:  Or overbroad.

8                    JUDGE SMITH:  And then isn't - - - isn't he

9        - - - even assuming that his conduct could be made

10       criminal, in a First Amendment situation, you're

11       entitled to do that, aren't you?  Saying the statute

12       is overbroad and therefore you can't enforce it, even

13       against the narrow category who might be - - - who it

14       might be legitimate to punish.

15                   MR. RIVELLESE:  Well, no, it should - - -

16       it has to be - - - he's not the one who can claim

17       that some other defendant could be violated here.

18       That would be the case where another defendant who's

19       closer to the line - - -

20                   JUDGE SMITH:  I'm - - - I'm not suggesting

21       to you that in the First Amendment area, that's not

22       the law, that the - - - that the guy who - - - that

23       the guy who is doing something punishable, can indeed

24       assert the rights of others.  Do you think - - - do

25       you think I'm wrong about that?

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 69 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 25 of 81

24

1         MR. RIVELLESE:  Well, I - - - I think

2   you're wrong that he can say that it's

3   unconstitutionally overbroad, when he has clearly

4   fallen within the statute.  He - - - because he has

5   clearly intended to harass, annoy or alarm.  He has

6   clearly sent hundreds of e-mails.  He has clearly

7   succeeded in harassing, annoying, and alarming.

8         JUDGE SMITH:  Okay, okay, but you don't

9   seem to be narrowing the statute that much.  I mean,

10  you - - - you - - - maybe I'm back where I started,

11  but you're really saying that any e-mail intended to

12  annoy somebody that succeeds is a misdemeanor.

13        MR. RIVELLESE:  Well, it has to be

14  reasonably likely.  The fact that it might succeed

15  could be unreasonable, depending on the - - -

16        JUDGE SMITH:  Okay, any - - - any - - -

17  yeah, suppose - - - I can - - - I - - - I'm pretty

18  good at annoying e-mails.  I could send out a lot of

19  e-mails that I guarantee you will be annoying.  You

20  say everyone of those is a misdemeanor.

21        MR. RIVELLESE:  Well, the legislature has

22  said so, and in this case, I would give it much more

23     - - -

24        JUDGE SMITH:  And you - - - you don't think

25  there's anything overbroad about that?

25

1          MR. RIVELLESE:  I think you could find a

2    case where it would be, I just don't think this is

3    that case.

4          JUDGE PIGOTT:  Going - - - going from there

5    to the - - - to the other charges, I was trying to

6    figure out where you draw this line of the People

7    versus somebody, as opposed to what is civil.

8          And if - - - if the victims here went into

9    their local police station and said, you're not going

10   to believe this, but this is what happened to me,

11   would they immediately pull out some forms and start

12   to - - - to put together some charges, or do they

13   say, go fi - - - well, go hire a lawyer.  You've got

14   - - - you know, you got libel; you got slander; go

15   sue.

16        MR. RIVELLESE:  Well, well, yeah, the

17   gravamen of these offenses here is that the defendant

18   intended to impersonate another person and to

19   convince people he was someone other than who he was,

20   and get reliance on that deception.  So that's the

21   thing that makes this different from any kind of a

22   civil libel case.

23        In a civil libel case, you - - - you can be

24   the person who's accusing someone else, and - - - and

25   you're being honest about who you are, but you can

1   still say something bad about the person, right?

2   Here, you have the defendant pretending to be someone

3   else, getting reliance on his deception.  That's the

4   thing that's different here than in a civil case.

5          JUDGE SMITH:  I mean, you're talking about

6   the impersonation count?

7          MR. RIVELLESE:  Well, all of the counts,

8   except the aggravated harassment at this point.  The

9   identity theft - - -

10          JUDGE SMITH:  Well, and the - - - and the -

11   - - and the use of the computer.

12          MR. RIVELLESE:  Right, right.  The

13   impersonation of the - - -

14          CHIEF JUDGE LIPPMAN:  But most of these

15   situations are not - - - are not prosecuted.  What -

16   - -

17          MR. RIVELLESE:  Well - - -

18          CHIEF JUDGE LIPPMAN:  What is it exactly

19   that makes this different from all of the

20   circumstances your adversary mentioned that you read

21   about all the time?  Why aren't all those people

22   prosecuted?

23          MR. RIVELLESE:  Well, those - - - those

24   people did not try to convince other people that they

25   were someone else.  So for example - - -

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 72 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 28 of 81

27

1          CHIEF JUDGE LIPPMAN:  Happens all the time.

2          JUDGE PIGOTT:  They do - - - they do it on

3     the radio.  That's what Mr. Kuby was pointing out,

4     where, you know, somebody's on the radio, and they

5     pretend to be somebody, and they're - - - you know,

6     they're - - - then all of a sudden it turns out not

7     to be true.  There were a couple in Florida that did

8     that, ended up - - - I do think they were prosecuted

9     - - -

10         MR. RIVELLESE:  Well - - -

11         JUDGE PIGOTT:  - - - but they ended up - -

12         -

13         MR. RIVELLESE:  Well, it would be

14    prosecutable if you're actually trying to convince

15    people you are someone else and get reliance on that.

16         CHIEF JUDGE LIPPMAN:  Could you do an

17    interview program, and you call in, and you pretend

18    to be someone else, do you get prosecuted?

19         MR. RIVELLESE:  Well, you have to meet all

20    of the elements of the crime.  You have to intend to

21    get people to rely on your deception, to believe that

22    you're the other person, and also intent to defraud.

23         JUDGE PIGOTT:  Well, what about the poor

24    Republican Party that Mr. Kuby just beat up?  I mean,

25    is that true what he said, that all of those websites

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 73 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 29 of 81

28

1    might be criminal?

2          MR. RIVELLESE:  But - - - but they're not

3    trying to convince people that they are those other

4    politicians.  That's the whole point is that this is

5    - - - it's a spoof.  It's a parody; it's a mockery.

6          JUDGE SMITH:  But - - - but if they - - -

7    but if they were, if people are actually deceived,

8    you say it's punishable.

9          MR. RIVELLESE:  It would be against the

10    law.  The examples you gave before, if you pretend to

11    be a judge, or if you pretend to be a private

12    citizen.

13          CHIEF JUDGE LIPPMAN:  So if you succeed,

14    it's punishable, but if you don't, you're okay.  If

15    you're so bad at it, that you don't succeed - - -

16          MR. RIVELLESE:  Well, it's your intent.  If

17    you're intending to convince people you're someone

18    else, get them to rely on it - - - it's the elements

19    of the crime.  You intend to get - - -

20          CHIEF JUDGE LIPPMAN:  But if you're - - -

21    if you're really bad at it, though, you're not going

22    to get prosecuted, right?

23          MR. RIVELLESE:  If you intend, you will.

24          CHIEF JUDGE LIPPMAN:  If you don't succeed

25    - - - if you intended, but they know who you are, so.

Case 1:15-cv-05871-KPF   Document 21-1   Filed 09/02/16   Page 74 of 76
Case 1:15-cv-05871-LAP   Document 16-1   Filed 05/09/16   Page 30 of 81

29

1              JUDGE ABDUS-SALAAM:  Well, what about the -

2     - -

3              MR. RIVELLESE:  Well, you might just have

4     an attempt, because you failed, but - - - but you've

5     attempted the crime if you intend to convince people

6     you're someone else, get them to rely on that, and

7     then get a benefit or a harm, those are the elements

8     of the crime.

9              JUDGE ABDUS-SALAAM:  Mr. Rivellese, what

10    about the use of the computer?  Apparently Mr. Golb

11    was an - - - is an NYU alum, and he, you know, paid

12    into the Bodner (sic) library or joined, you know, a

13    membership group that allowed him to use the

14    computer, so how is the use of the computer that

15    apparently was permitted, how did that become a

16    crime?

17             MR. RIVELLESE:  Well, the terms of use that

18    were found in his apartment said that he could not

19    commit crimes with the computers, and he also said

20    during his own testimony that he would assume that

21    you're not permitted to commit crimes on the

22    computers.  So assuming that the other counts stand,

23    he committed crimes with the computers, and that's

24    why in this - - -

25             JUDGE RIVERA:  But - - - but the question

30

1    is, not that's a crime.  He may assume that he

2    shouldn't do that, but he may not assume that it's

3    criminal to do that.  I think that's the distinction

4    he's drawing, if I'm understanding him correctly.

5         MR. RIVELLESE:  Well, then that goes to you

6    don't have to know that conduct's criminal, if you

7    know you're committing the conduct.  So - - -

8         JUDGE SMITH:  But is it - - - is it - - - I

9    mean, is it more generally - - - are you - - - is it

10   - - - is it a crime in New York anytime anyone

11   exceeds the te - - - the terms of use of his

12   computer?  So if my - - - if I work at a place that

13   doesn't let me go on Facebook, and I go on Facebook,

14   that's a crime?

15        MR. RIVELLESE:  I don't think that would be

16   a crime.  If - - -

17        JUDGE SMITH:  Why not?  I mean, it's a - -

18   - you're authorized to use this computer, but you're

19   not authorized to go on Facebook.

20        MR. RIVELLESE:  Well, I think that would be

21   a very difficult question, but I think that once - -

22   -

23        JUDGE SMITH:  That's why I asked it.

24        An annoying question.

25        CHIEF JUDGE LIPPMAN:  Annoying, annoying.

31

1    Very annoying question.   Go ahead.

2              MR. RIVELLESE:   It's possible that would be

3    a crime.   It's just not what this case is about,

4    because this - - -

5              CHIEF JUDGE LIPPMAN:   How could that be a

6    crime?   That you - - - that you - - - that you don't

7    follow the exact - - - half the people in this - - -

8    three-quarters of the people in this world work in

9    places where they have computers and they have

10   policies and what they can use it for and what they

11   can't.   And each time a person does that, it's a

12   crime?

13             MR. RIVELLESE:   Well, according to the

14   statute, but - - -

15             CHIEF JUDGE LIPPMAN:   If they ma - - - mean

16   to commit a crime?   But you're saying if it's - - -

17   if it's - - - if it differs from the terms of how

18   they're allowed to use it, it's a crime?

19             MR. RIVELLESE:   Well, it's the same as if

20   somebody doesn't give you permission to use their car

21   in a certain way, and you use it a certain way - - -

22             JUDGE SMITH:   Couldn't - - - can't - - -

23   can't the statute be read more narrowly?   A person's

24   "guilty of unauthorized use of a computer, when he or

25   she knowingly uses, caused to be used, or accesses a