| ServiceDate | Services Service Notes | Type of Service |
|---|---|---|
| | documents as her defense attorney sees fit. | |
| 4/3/2012 | SD s/w CL who called in with an update on court today. ADA announced he wasn't ready, and the case was adjourned until 5/23/12. Discussed with CL that WebCrims won't be reliable for counting days b/c it's dependent on the judge's calendar. CL requested call back from KT. | Follow Up |
| 4/3/2012 | SD s/w CL who called in with an update on court today. ADA announced he wasn't ready, and the case was adjourned until 5/23/12. Discussed with CL that WebCrims won't be reliable for counting days b/c it's dependent on the judge's calendar. CL requested call back from KT. | Crisis Counseling |
| 4/3/2012 | SD s/w CL who called in with an update on court today. ADA announced he wasn't ready, and the case was adjourned until 5/23/12. Discussed with CL that WebCrims won't be reliable for counting days b/c it's dependent on the judge's calendar. CL requested call back from KT. | Info-Legal |
| 4/3/2012 | KT called back CL | Follow Up |
| 4/3/2012 | KT rec'd message from CL | Follow Up |
| 4/4/2012 | SD consulted w/ Lisa at CVTC after s/w CL the day before re. charges pending against CL, CL working w/ her attorney instead of around her, and how CL is coping with everything. | PA-Legal |
| 4/4/2012 | SD consulted w/ Lisa at CVTC after s/w CL the day before re. charges pending against CL, CL working w/ her attorney instead of around her, and how CL is coping with everything. | PA-Counseling |
| 4/4/2012 | KT s/w CL and made plans for meeting with attorney - scheduled tentatively for next week. | Follow Up |
| 4/4/2012 | KT left message for CL | Follow Up |
| 4/4/2012 | KT s/w CL and made plans for meeting with attorney - scheduled tentatively for next week. | Info-Legal |
| 4/16/2012 | KT rec'd message from CL inquiring about date of appointment | Follow Up |
| 4/16/2012 | KT l/m for CL advising of appointment tomorrow at 4 | Follow Up |
| 4/16/2012 | KT l/m for CL advising of appointment tomorrow at 4 | Info-Legal |
| 4/16/2012 | KT emailed CL's attorney to confirm appointment time | CJA-Other |
| 4/16/2012 | KT rec'd response from CL's attorney advising she was out of town and would check upon return | CJA-Other |
| 4/17/2012 | KT rec'd message from CL confirming appt | Follow Up |
| 4/17/2012 | KT left message for CL confirming appt. | Follow Up |
| 4/17/2012 | KT rec'd email from CL's attorney advising she can still meet at 4 today if CL is available. | CJA-Other |
| 4/30/2012 | KT s/w CL and discussed housing court issues. Discussed eviction process and strategies to respond. CL stated she has retained records and we discussed requesting a summary of allegations and | Crisis Counseling |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | responding in turn to each with the evidence she has. | |
| 4/30/2012 | KT s/w CL and discussed housing court issues. Discussed eviction process and strategies to respond. CL stated she has retained records and we discussed requesting a summary of allegations and responding in turn to each with the evidence she has. | Info-Housing |
| 4/30/2012 | Discussed pending criminal case and meeting - will meet tomorrow at 4 with attorney. | CJA-Other |
| 4/30/2012 | KT s/w CL and discussed housing court issues. Discussed eviction process and strategies to respond. CL stated she has retained records and we discussed requesting a summary of allegations and responding in turn to each with the evidence she has. | Follow Up |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct - failure to pursue witnesses, etc. | Crisis Counseling |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct - failure to pursue witnesses, etc. | PA-Legal |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct - failure to pursue witnesses, etc. | Safety Planning |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct - failure to pursue witnesses, etc. | Follow Up |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct - failure to pursue witnesses, etc. | CJA-Other |
| 5/4/2012 | KT left message for CL re: evidence collecting. | Follow Up |
| 5/4/2012 | MM left message for CL. To collect more info on issues on case. | Follow Up |
| 5/16/2012 | KT emailed CL's attorney re: criminal case and evidence collecting. | CJA-Other |
| 5/16/2012 | KT rec'd response from CL's attorney advising no progress had been made. | CJA-Other |
| 5/22/2012 | KT rec'd email from CL's attorney advising that the 30-30 deadline had run out according to her information. | CJA-Other |
| 5/22/2012 | KT replied to CL's attorney via email. | CJA-Other |
| 5/24/2012 | SD s/w CL again who called back to say that she was able to find the case on WebCrims. I tried again and found it too. Case continued to 6/6/12. Verified to CL that I could find it, and suggested that I probably couldn't find it this morning b/c the site hadn't updated | Follow Up |

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | yet. | |
| 5/24/2012 | SD called Lisa @ CVTC to verify the charges were dropped. No answer. Left vm. | PA-Legal |
| 5/24/2012 | SD s/w CL again who called back to say that she was able to find the case on WebCrims. I tried again and found it too. Case continued to 6/6/12. Verified to CL that I could find it, and suggested that I probably couldn't find it this morning b/c the site hadn't updated yet. | Crisis Counseling |
| 5/24/2012 | SD s/w CL again who called back to say that she was able to find the case on WebCrims. I tried again and found it too. Case continued to 6/6/12. Verified to CL that I could find it, and suggested that I probably couldn't find it this morning b/c the site hadn't updated yet. | Info-Legal |
| 5/24/2012 | SD s/w CL who called in about what happened in the hearing yesterday. Informed her of what I told Lisa about the WebCrims info, but also that this doesn't mean the case was dismissed. It's possible the website hasn't been updated yet; however, it sounds like the case is about to be dismissed based on what happened in yesterday's hearing. | Follow Up |
| 5/24/2012 | SD s/w CL who called in about what happened in the hearing yesterday. Informed her of what I told Lisa about the WebCrims info, but also that this doesn't mean the case was dismissed. It's possible the website hasn't been updated yet; however, it sounds like the case is about to be dismissed based on what happened in yesterday's hearing. | Info-Legal |
| 5/24/2012 | SD s/w CL who called in about what happened in the hearing yesterday. Informed her of what I told Lisa about the WebCrims info, but also that this doesn't mean the case was dismissed. It's possible the website hasn't been updated yet; however, it sounds like the case is about to be dismissed based on what happened in yesterday's hearing. | Crisis Counseling |
| 5/29/2012 | KT s/w CL and discussed court case. She believes that her case will be dismissed based on speedy trial requirements. CL's attorney will file a motion to dismiss on that basis. Explained to CL that once the motion to dismiss is filed the prosecutor will have the opportunity to reply and the cas | |
| 5/30/2012 | SD s/w CL briefly at CVTC and discussed the CC case. CL believes the case will be dropped b/c her attorney assured she would file the motion to dismiss. Advised CL to be patient and follow her attorney's lead. | Crisis Counseling |
| 5/30/2012 | SD s/w CL briefly at CVTC and discussed the CC case. CL believes the case will be dropped b/c her attorney assured she would file the motion to dismiss. Advised CL to be patient and follow her attorney's lead. | Info-Legal |
| 5/30/2012 | SD s/w CL briefly at CVTC and discussed the CC case. CL believes | Follow Up |

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | the case will be dropped b/c her attorney assured she would file the motion to dismiss. Advised CL to be patient and follow her attorney's lead. | |
| 5/31/2012 | SD informed CL that in regards to getting her bail back, she will need ID but she should also discuss that w/ Tajuana to get a better idea of how that will all work out. | Info-Legal |
| 5/31/2012 | SD s/w CL who called back returning my vm. She said that Tajuana filed the motion to dismiss, and is trying to get a clerk to look at it today (she's unsure if she can pull that off). CL will keep us posted. | Follow Up |
| 5/31/2012 | SD called CL back returning her messages from this morning. No answer. Left vm. | Follow Up |
| 6/6/2012 | KT emailed CL's attorney in response. | CJA-Other |
| 6/6/2012 | KT called CL and left message advising atty was aware of situation. | Follow Up |
| 6/6/2012 | KT rec'd email from atty advising she had heard the case got called and re: CL's reaction. | CJA-Other |
| 6/6/2012 | KT emailed CL's attorney to see where she was. | CJA-Other |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Info-Other |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Info-Legal |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Crisis Counseling |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Follow Up |
| 6/6/2012 | KT called CL and left message advising atty was aware of situation. | Info-Legal |
| 6/13/2012 | SD explained that if her defense attorney had known about the cert. of readiness, then the mixup over what time the hearing was at | Info-Legal |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | wouldn't have even happened b/c the motion to dismiss wouldn't have happened making what transpired that morning inconsequential. | |
| 6/13/2012 | SD s/w CL about her wish to fire her defense attorney and represent herself. Informed her that I did not think this was a good idea. | Info-Legal |
| 6/13/2012 | SD informed CL that there may be a number of explanations as to why her defense attorney did not have the cert. of readiness before she decided to file a motion to dismiss. | Info-Legal |
| 6/13/2012 | SD tried to SP w/ CL in the context of the criminal case, but CL is pretty set on representing herself. | Safety Planning |
| 6/13/2012 | SD advised CL that I believed she would have a very difficult time finding a 3rd attorney to take the case if she fired her current attorney. | Info-Legal |
| 6/13/2012 | SD informed CL that I believed ADA Wells would refuse to work w/ her if she represented herself in court. | Info-Legal |
| 6/13/2012 | SD s/w CL about her upcoming appt with the 'Gender & Sexuality' clinic at Columbia Law. Informed her that I didn't think a law school clinic would take her case. | Info-Legal |
| 6/13/2012 | SD provided emotional support to CL. | Crisis Counseling |
| 6/13/2012 | SD w/ CL on the phone at CVTC. She decided to call instead of coming in for her appt. | Follow Up |
| 6/13/2012 | SD informed CL that I did not believe Judge Dawson would let her represent herself, but CL said she didn't care. | Info-Legal |
| 6/18/2012 | KT rec'd message from CL | Follow Up |
| 6/18/2012 | SD s/w CL who called in extreme crisis. She was yelling (sometimes inaudible) and saying that she got a text message from the defense attorney on the disorderly conduct saying he wouldn't be able to represent her anymore and she is due in court tomorrow at 9:30am. | Follow Up |
| 6/18/2012 | KT called CL and discussed criminal case. She was pretty upset and believed her attorney would not show up at court tomorrow - Ben Dell of Legal Aid who is representing her in the disorderly conduct case. Discussed criminal issues and her 6th amendment rights to counsel. | Info-Legal |
| 6/18/2012 | KT s/w Ben Dell and discussed criminal case. He will appear on CL's behalf tomorrow. Discussed various issues with representation. | CJA-Other |
| 6/18/2012 | SD instructed CL to call her SW @ CVTC or the main line at CVTC so that they can help her through this. CL was extremely escalated and talking about not being alive tomorrow. SD was able to help CL construct an immediate SP in order to come down from her escalated state. | Info-Counseling |
| 6/18/2012 | SD instructed CL to call her SW @ CVTC or the main line at CVTC so that they can help her through this. CL was extremely escalated | Crisis Counseling |

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | and talking about not being alive tomorrow. SD was able to help CL construct an immediate SP in order to come down from her escalated state. | |
| 6/18/2012 | SD advised CL that she is legally entitled to counsel at a CC trial, so if Legal Aid is, in fact, pulling themselves from the case, then she will need to request a new attorney in court. | Info-Legal |
| 6/18/2012 | SD instructed CL to call her SW @ CVTC or the main line at CVTC so that they can help her through this. CL was extremely escalated and talking about not being alive tomorrow. SD was able to help CL construct an immediate SP in order to come down from her escalated state. | Safety Planning |
| 6/18/2012 | KT called CL and discussed criminal case. She was pretty upset and believed her attorney would not show up at court tomorrow - Ben Dell of Legal Aid who is representing her in the disorderly conduct case. Discussed criminal issues and her 6th amendment rights to counsel. | Crisis Counseling |
| 6/27/2012 | SD s/w CL briefly about Legal Aid and what happened with the disorderly conduct hearing a few weeks ago. CL was allegedly informed by Ben Dell @ Legal Aid that they were not representing her anymore and that she would be by herself. That did not happen though. | Follow Up |
| 6/27/2012 | SD reiterated what KT said earlier about criminal cases and her right to an attorney. Tried to ease her fears that she will show up to the next hearing w/o an attorney and w/o any knowledge that she would be unrepresented. | Info-Legal |
| 6/27/2012 | SD s/w CL briefly about Legal Aid and what happened with the disorderly conduct hearing a few weeks ago. CL was allegedly informed by Ben Dell @ Legal Aid that they were not representing her anymore and that she would be by herself. That did not happen though. | Crisis Counseling |
| 6/27/2012 | SD s/w CL briefly about Legal Aid and what happened with the disorderly conduct hearing a few weeks ago. CL was allegedly informed by Ben Dell @ Legal Aid that they were not representing her anymore and that she would be by herself. That did not happen though. | Info-Legal |
| 7/23/2012 | KT called attorney to try to find out about court appearance tomorrow - left message. | CJA-Other |
| 7/23/2012 | KT s/w CL who called in crisis after learning her defense atty (Tajuana Johnson) had been in a car accident and was currently hospitalized. She has court tomorrow morning and is very concerned about what will happen. She advised she obtained a transcript of the hearing that reveals her attorney who was present in court on the day the Cert of Readiness was filed was NOT her attorney of record. Discussed issues. Discussed court tomorrow. | Info-Other |
| 7/23/2012 | KT s/w CL who called in crisis after learning her defense atty | Info-Legal |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | (Tajuana Johnson) had been in a car accident and was currently hospitalized. She has court tomorrow morning and is very concerned about what will happen. She advised she obtained a transcript of the hearing that reveals her attorney who was present in court on the day the Cert of Readiness was filed was NOT her attorney of record. Discussed issues. Discussed court tomorrow. | |
| 7/23/2012 | Disc safety threats and planning. | Safety Planning |
| 7/23/2012 | KT s/w CL who called in crisis after learning her defense atty (Tajuana Johnson) had been in a car accident and was currently hospitalized. She has court tomorrow morning and is very concerned about what will happen. She advised she obtained a transcript of the hearing that reveals her attorney who was present in court on the day the Cert of Readiness was filed was NOT her attorney of record. Discussed issues. Discussed court tomorrow. | Follow Up |
| 7/23/2012 | KT s/w CL who called in crisis after learning her defense atty (Tajuana Johnson) had been in a car accident and was currently hospitalized. She has court tomorrow morning and is very concerned about what will happen. She advised she obtained a transcript of the hearing that reveals her attorney who was present in court on the day the Cert of Readiness was filed was NOT her attorney of record. Discussed issues. Discussed court tomorrow. | Crisis Counseling |
| 7/26/2012 | SD called CL to s/w her about my last day (August 3rd) and the conclusion of the CC case against her. All of the DV charges were dropped, but there was no indication as to why they were dropped. No answer. Left vm. | Follow Up |
| 7/26/2012 | SD called CL to s/w her about my last day (August 3rd) and the conclusion of the CC case against her. All of the DV charges were dropped, but there was no indication as to why they were dropped. No answer. Left vm. | Info-Other |
| 7/30/2012 | SD offered CL emotional support. She wants to file a lawsuit against the city and the DA's office. | Crisis Counseling |
| 7/30/2012 | SD informed CL that Friday (8/3) is my last day. | Info-Other |
| 7/30/2012 | SD asked CL if she'd been given a reason for why the case was dropped. She said she didn't know, and I informed her that we don't know either. | Info-Legal |
| 7/30/2012 | SD s/w CL who called in on the HL returning my vm from 7/26. | Follow Up |
| 10/8/2012 | KT rec'd message from CL | Follow Up |
| 10/8/2012 | KT left message for CL, returning her call. | Follow Up |
| 11/30/2012 | KT rec'd message from CL | Follow Up |
| 12/6/2012 | KT s/w Det. Galan at 20th Pct and discussed case - he explained the reasons for the delay and that he was having a hard time with CL because he felt she would get upset and accusatory. We discussed case, his concerns and intentions, and he reassured me that he was | CJA-Police |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | very eager to get an arrest on this case and help the client. He explained his intentions for today and gave me contact info for the prosecutor on the case - ADA Bernard at DANY. | |
| 12/6/2012 | KT called CL and relayed conversation with Det. Galan; She is going to go down to the station and do the photo lineup and call me to let me know how it goes. | Info-Legal |
| 12/6/2012 | KT s/w CL and discussed current issues with law enforcement. CL was assaulted in August by a stranger in a bar and heard he was arrested, but has gotten mixed messages. She is uncertain about whether she should trust the detective she was working with, who has now asked her to come in to do a photo line up. I agreed to reach out to him - Detective Galan at the 20th Pct., (212)580-6414 | Follow Up |
| 12/6/2012 | KT s/w CL and discussed current issues with law enforcement. CL was assaulted in August by a stranger in a bar and heard he was arrested, but has gotten mixed messages. She is uncertain about whether she should trust the detective she was working with, who has now asked her to come in to do a photo line up. I agreed to reach out to him - Detective Galan at the 20th Pct., (212)580-6414 | Crisis Counseling |
| 12/6/2012 | KT s/w Det. Galan at 20th Pct and discussed case - he explained the reasons for the delay and that he was having a hard time with CL because she would get upset and accusatory. We discussed case, his concerns and intentions, and he reassured me that he was very eager to get an arrest on this case and help the client. He explained his intentions for today and gave me contact info for the prosecutor on the case - ADA Bernard at DANY. | CJA-Police |
| 12/6/2012 | KT s/w CL and discussed current issues with law enforcement. CL was assaulted in August by a stranger in a bar and heard he was arrested, but has gotten mixed messages. She is uncertain about whether she should trust the detective she was working with, who has now asked her to come in to do a photo line up. I agreed to reach out to him - Detective Galan at the 20th Pct., (212)580-6414 | Info-Legal |
| 12/6/2012 | KT called CL and relayed conversation with Det. Galan; She is going to go down to the station and do the photo lineup and call me to let me know how it goes. | Follow Up |
| 12/6/2012 | KT s/w CL and discussed current issues with law enforcement. CL was assaulted in August by a stranger in a bar and heard he was arrested, but has gotten mixed messages. She is uncertain about whether she should trust the detective she was working with, who has now asked her to come in to do a photo line up. I agreed to reach out to him - Detective Galan at the 20th Pct., (212)580-6414 | Safety Planning |
| 12/12/2012 | SN discussed CL's most recent case with her and discussed why the ADA may have chosen to pursue felony assault against an office charges instead of the assault charges she's attempted to file against the individual in question (who'd assaulted her in an UWS bar by punching her in the mouth). | Info-Legal |

24

| Services | | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| 12/12/2012 | SN reviewed details of CL's OVS application briefly with Veronica and discussed her filing- specifically the amount she'd filed for, the materials she was able to gather to make the claim (there'd been difficulty accessing DIRs from the 28th precinct) and how she'd utilize said funds. | PA-CVB Application |
| 12/12/2012 | SN wrote a letter to CL's landlord attesting to the filing of her OVS application, with the hopes that this would assist her in disputing her impending eviction. | PA-CVB |
| 12/12/2012 | SN met with CL at CVTC. Stated that she would like a letter for her landlord stating she'd filed an OVS claim for the amount of $15,000. Additionally, CL worked to brief me on her present circumstances-, living next door to PERP, receiving threatening phone calls from unidentified women, being physically attacked in her neighborhood, and falling behind in her rent in amount close to $40,000. | CVTC |
| 12/12/2012 | SN met with CL at CVTC. Stated that she would like a letter for her landlord stating she'd filed an OVS claim for the amount of $15,000. Additionally, CL worked to brief me on her present circumstances-, living next door to PERP, receiving threatening phone calls from unidentified women, being physically attacked in her neighborhood, and falling behind in her rent in amount close to $40,000. | Safety Planning |
| 12/12/2012 | SN met with CL at CVTC. Stated that she would like a letter for her landlord stating she'd filed an OVS claim for the amount of $15,000. Additionally, CL worked to brief me on her present circumstances-, living next door to PERP, receiving threatening phone calls from unidentified women, being physically attacked in her neighborhood, and falling behind in her rent in amount close to $40,000. | Crisis Counseling |
| 12/12/2012 | SN met with CL at CVTC. Stated that she would like a letter for her landlord stating she'd filed an OVS claim for the amount of $15,000. Additionally, CL worked to brief me on her present circumstances-, living next door to PERP, receiving threatening phone calls from unidentified women, being physically attacked in her neighborhood, and falling behind in her rent in amount close to $40,000. | Follow Up |
| 12/12/2012 | KT emailed Audrey Moore to check in - advised I wanted to speak with her about the case | CJA-DA |
| 1/10/2013 | KT s/w CL's counselor Lisa Haileselassie re: various issues with the case. Discussed allegations that 28th Pct won't take reports - we strategized and decided to approach Audrey Moore again about the precinct/DANY issue. | PA-Counseling |
| 1/10/2013 | KT s/w Audrey Moore who advised she had not instructed, nor had her office, anyone not to take a report from CL. She discussed this issue with the captain who agreed they had not been instructed to do that. They will make sure officers are advised. | CJA-Police |
| 1/10/2013 | KT s/w CL and advised I had some updates. CL will call me back tomorrow. | Follow Up |
| 1/10/2013 | KT s/w CL's counselor Lisa Haileselassie re: various issues with the | PA-Other |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | case. Discussed allegations that 28th Pct won't take reports - we strategized and decided to approach Audrey Moore again about the precinct/DANY issue. | |
| 1/10/2013 | KT s/w CL's counselor Lisa Haileselassie re: various issues with the case. Discussed allegations that 28th Pct won't take reports - we strategized and decided to approach Audrey Moore again about the precinct/DANY issue. | Follow Up |
| 1/10/2013 | KT s/w Audrey Moore who advised she had not instructed, nor had her office, anyone not to take a report from CL. She discussed this issue with the captain who agreed they had not been instructed to do that. They will make sure officers are advised. | CJA-DA |
| 1/11/2013 | KT rec'd message from CL | Follow Up |
| 1/11/2013 | KT referred CL to VOW | Referral-Other |
| 1/11/2013 | KT called CL and discussed issues. Discussed conversation with Audrey Moore at DANY (see above) | Info-Legal |
| 1/11/2013 | KT s/w CL and discussed organizing around this issue with prosecution. Discussed structural issues with crimes of violence against women, etc. Discussed current organizign efforts | Info-Other |
| 2/26/2013 | KT left message for CL to follow up with her DV non profit efforts and efforts to reach VOW. | Info-Other |
| 2/26/2013 | KT left message for CL to follow up with her DV non profit efforts and efforts to reach VOW. | Follow Up |
| 3/15/2013 | KT rec'd email from CL re: request to speak with Normal Siegle; she is pursuing civil relief for the improper treatment of the DA's office and NYPD and he is considering taking her case. | Follow Up |
| 3/15/2013 | KT rec'd email from CL re: request to speak with Normal Siegle; she is pursuing civil relief for the improper treatment of the DA's office and NYPD and he is considering taking her case. | Info-Legal |
| 3/16/2013 | KT replied to CL to advise that I would speak to Mr. Siegle on her behalf. I advised the limitations of my ability to speak to her story because of the limited personal knowledge I have. | Follow Up |
| 3/16/2013 | KT replied to CL to advise that I would speak to Mr. Siegle on her behalf. I advised the limitations of my ability to speak to her story because of the limited personal knowledge I have. | Info-Legal |
| 3/19/2013 | KT s/w civil rights attorney extensively about CL's case. Advised that I believed she is the victim of abuse, that I did think she was treated in an extreme manner by NYPD and the DA's office but I could not speculate as to the reason, that I found it very unusual for a DV victim and I think the Manhattan DAs office usually recognizes victims in cases. | CJA-DA |
| 3/19/2013 | KT s/w civil rights attorney extensively about CL's case. Advised that I believed she is the victim of abuse, that I did think she was treated in an extreme manner by NYPD and the DA's office but I could not | CJA-Other |

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | speculate as to the reason, that I found it very unusual for a DV victim and I think the Manhattan DAs office usually recognizes victims in cases. | |
| 3/19/2013 | KT s/w civil rights attorney extensively about CL's case. Advised that I believed she is the victim of abuse, that I did think she was treated in an extreme manner by NYPD and the DA's office but I could not speculate as to the reason, that I found it very unusual for a DV victim and I think the Manhattan DAs office usually recognizes victims in cases. | PA-Legal |
| 3/29/2013 | KT s/w CL and discussed Siegle's choice to decline representation. I gave her my opinion on why he decided as he did. CL was very upset, distressed. Discussed other options, did some counseling, etc. | Info-Other |
| 3/29/2013 | KT made referral to Emerson, Celli et al to screen client for civil rights claim. | Referral-Other |
| 3/29/2013 | KT s/w CL and discussed Siegle's choice to decline representation. I gave her my opinion on why he decided as he did. CL was very upset, distressed. Discussed other options, did some counseling, etc. | Info-Legal |
| 3/29/2013 | KT s/w CL and discussed Siegle's choice to decline representation. I gave her my opinion on why he decided as he did. CL was very upset, distressed. Discussed other options, did some counseling, etc. | Crisis Counseling |
| 3/29/2013 | KT s/w CL and discussed Siegle's choice to decline representation. I gave her my opinion on why he decided as he did. CL was very upset, distressed. Discussed other options, did some counseling, etc. | Follow Up |
| 3/29/2013 | KT rec'd email from CL inquiring about s/w Siegle. | Follow Up |
| 3/29/2013 | KT rec'd message from CL | Follow Up |
| 7/8/2013 | KT rec'd message from CL | Follow Up |
| 7/9/2013 | KT s/w Audrey Moore about the case - she advised that CL had threatened her. | CJA-DA |
| 7/10/2013 | KT s/w CL and discussed current issues. CL stated she received a call from an ADA who said she was following up on the criminal case from last fall - when CL was punched in the face by a stranger. Read CL my notes from my phone call to Det. Galan. She requested I send them. CL advised she was no longer receiving services from CVTC - I suggested I make another referral but CL declined for now. Gave emotional support. | Follow Up |
| 7/10/2013 | KT s/w CL and discussed current issues. CL stated she received a call from an ADA who said she was following up on the criminal case from last fall - when CL was punched in the face by a stranger. Read CL my notes from my phone call to Det. Galan. She requested I send them. CL advised she was no longer receiving services from | Info-Legal |

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | CVTC - I suggested I make another referral but CL declined for now. Gave emotional support. | |
| 7/10/2013 | KT s/w CL and discussed current issues. CL stated she received a call from an ADA who said she was following up on the criminal case from last fall - when CL was punched in the face by a stranger. Read CL my notes from my phone call to Det. Galan. She requested I send them. CL advised she was no longer receiving services from CVTC - I suggested I make another referral but CL declined for now. Gave emotional support. | Info-Other |
| 7/10/2013 | KT s/w CL and discussed current issues. CL stated she received a call from an ADA who said she was following up on the criminal case from last fall - when CL was punched in the face by a stranger. Read CL my notes from my phone call to Det. Galan. She requested I send them. CL advised she was no longer receiving services from CVTC - I suggested I make another referral but CL declined for now. Gave emotional support. | Crisis Counseling |
| 7/10/2013 | KT rec;d message from CL requesting reminder on the conversation I had with Det. galan in December of last year. | Follow Up |
| 7/10/2013 | KT s/w CL and discussed current issues. CL stated she received a call from an ADA who said she was following up on the criminal case from last fall - when CL was punched in the face by a stranger. Read CL my notes from my phone call to Det. Galan. She requested I send them. CL advised she was no longer receiving services from CVTC - I suggested I make another referral but CL declined for now. Gave emotional support. | Info-Counseling |
| 7/16/2013 | KT rec'd message from CL stating she met with ADA today and they want to move forward with the charges against the man who assaulted her last fall. CL gave ADA my contact information. | Info-Legal |
| 7/16/2013 | KT left message for CL | Follow Up |
| 7/16/2013 | KT rec'd message from CL stating she met with ADA today and they want to move forward with the charges against the man who assaulted her last fall. CL gave ADA my contact information. | Follow Up |
| 1/17/2014 | KT rec'd message from CL - unable to hear her new number | Follow Up |
| 1/23/2014 | KT rec'd message from CL re: needing to file for an OP against Raheem. | Follow Up |
| 1/24/2014 | KT called CL and left message advising that I thought an OP would be challenging. Advised I will not be in on Monday but to call the helpline to process options for filing for an OP if that's the direction she wants to go in. Otherwise, call me Tuesday. | Info-Family Court |
| 1/24/2014 | KT called CL and left message advising that I thought an OP would be challenging. Advised I will not be in on Monday but to call the helpline to process options for filing for an OP if that's the direction she wants to go in. Otherwise, call me Tuesday. | Follow Up |
| 1/24/2014 | KT called CL and left message advising that I thought an OP would | Follow Up |

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | be challenging. Advised I will not be in on Monday but to call the helpline to process options for filing for an OP if that's the direction she wants to go in. Otherwise, call me Tuesday. | |
| 2/19/2014 | KT rec'd BCC'd email from CL to ADA Reichfelder re: moving forward with the case. | Follow Up |
| 2/19/2014 | KT replied to CL's email inquiring about the case w/ DANY | Info-Legal |
| 2/20/2014 | KT rec'd message from CL | Follow Up |
| 2/20/2014 | KT called CL back and left message re: following up on criminal court issue w/ DANY | Follow Up |
| 2/20/2014 | KT replied to CL's email inquiring about the case w/ DANY | Follow Up |
| 2/20/2014 | KT called CL back and left message re: following up on criminal court issue w/ DANY | Info-Legal |
| 2/24/2014 | KT called CL back and advised | |
| 2/24/2014 | KT s/w CL and discussed current criminal case. CL advised that the ADA wants to move forward on the criminal case but needs to speak with Cl's friend who she spent the night with. CL has asked her friend to contact the ADA but he won't reply. CL asked if I would reach out to explain the role of a witness and assure friend he wont get in trouble. Advised CL that I could speak to her friend about the role of a witness but not assure him of anything as I do not have that knowledge myself. | Info-Legal |
| 2/24/2014 | KT s/w CL and discussed current criminal case. CL advised that the ADA wants to move forward on the criminal case but needs to speak with Cl's friend who she spent the night with. CL has asked her friend to contact the ADA but he won't reply. CL asked if I would reach out to explain the role of a witness and assure friend he wont get in trouble. Advised CL that I could speak to her friend about the role of a witness but not assure him of anything as I do not have that knowledge myself. | Follow Up |
| 2/24/2014 | KT rec'd email from CL advising that my VM is full and she can't leave a message | Follow Up |
| 2/24/2014 | KT rec'd email from CL requesting I reach out to the ADA on the case to inquire why they haven't moved forward | Follow Up |
| 2/24/2014 | KT rec'd email from CL requesting I reach out to the ADA on the case to inquire why they haven't moved forward | Info-Legal |
| 2/24/2014 | KT s/w CL and discussed current criminal case. CL advised that the ADA wants to move forward on the criminal case but needs to speak with Cl's friend who she spent the night with. CL has asked her friend to contact the ADA but he won't reply. CL asked if I would reach out to explain the role of a witness and assure friend he wont get in trouble. Advised CL that I could speak to her friend about the role of a witness but not assure him of anything as I do not have that knowledge myself. | Safety Planning |
| 1/22/2015 | KT called CL back - she is on the pther line - will call me right back | Follow Up |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| 1/22/2015 | KT rec'd message from cl | Follow Up |
| 6/22/2015 | CL called SPs direct line; CL claims to have been calling connect CL but no one has gotten back to CL; SP explained to CL the CONNECT protocol in terms of HL; SP apologize to CL with regards belief that CONNECT had abadon her; SP explained changes CONNECT is undergoing; SP discussed case with SM/CC; SP will follow up with QW/SM/interm attorney on what to do next on the case- CL wants records | Follow Up |
| 6/22/2015 | CL called SPs direct line; CL claims to have been calling connect CL but no one has gotten back to CL; SP explained to CL the CONNECT protocol in terms of HL; SP apologize to CL with regards belief that CONNECT had abadon her; SP explained changes CONNECT is undergoing; SP discussed case with SM/CC; SP will follow up with QW/SM/interm attorney on what to do next on the case- CL wants records | Crisis Counseling |
| 6/22/2015 | CL called SPs direct line; CL claims to have been calling connect CL but no one has gotten back to CL; SP explained to CL the CONNECT protocol in terms of HL; SP apologize to CL with regards belief that CONNECT had abadon her; SP explained changes CONNECT is undergoing; SP discussed case with SM/CC; SP will follow up with QW/SM/interm attorney on what to do next on the case- CL wants records | Info-Legal |
| 6/22/2015 | CL called SPs direct line; CL claims to have been calling connect CL but no one has gotten back to CL; SP explained to CL the CONNECT protocol in terms of HL; SP apologize to CL with regards belief that CONNECT had abadon her; SP explained changes CONNECT is undergoing; SP discussed case with SM/CC; SP will follow up with QW/SM/interm attorney on what to do next on the case- CL wants records | PA-Other |
| 6/22/2015 | SM has held conversation about CL and what do to with case with CVTC staff member | PA-Other |

**Exhibit AA**

Page 1 of 1

0728121118.jpg



0728121119.jpg



Exhibit BB

APR-21-2013   00:30        NYPD 1ST PCT

P.002
Page 1 of 2

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

MISDEMEANOR

Rami Baly (M 34),

Defendant.

Police Officer Jessica Valle, Shield 298 of the 1st Precinct, states as follows:

*The defendant is charged with:*

| 1 | PL 140.10(a) | Criminal Trespass in the Third Degree (defendant #1: 1 count) |
| 2 | PL 245.00 | Public Lewdness (defendant #1: 1 count) |
| 3 | PL 245.01 | Exposure of a Person (defendant #1: 1 count) |

On or about April 20, 2013 at about 8:22 P.M., at 64 Fulton Street in the County and State of New York, the defendant knowingly entered and remained unlawfully in a building and upon real property which was fenced and otherwise enclosed in a manner designed to exclude intruders; the defendant intentionally exposed the private parts of his body in a lewd manner and committed a lewd act in a public place and in private premises in which he might readily be observed from a public place with intent that he be so observed; the defendant appeared in a public place in such a manner that the private parts of his body were exposed.

*The factual basis for these charges are as follows:*

I am informed by Kristyn Abbale, of an address known to the District Attorney's Office, that the informant lives in an adjacent building to the above location and that she saw the defendant on top of the roof of above building building looking into her apartment window with his penis exposed and manipulating it in an up and down manner.

I arrested the defendant on the rooftop of the above building which is a location beyond a posted sign that reads in part "Do Not Enter. Only Authorized Personel."

The defendant provided contradictory statements and stated in substance that he worked in the building but then stated that he did not live in the building and that he was only trying to do his laundry.

Case 1:15-cv-05871-KPF   Document 19-5   Filed 05/09/16   Page 10 of 55

20:30          NYPD 1ST PCT                                                    P.003
                                                                              Page 2 of 2

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

            -against-                          MISDEMEANOR

Rami Baly (M 34),

                              Defendant.

False statements made in this written instrument are punishable as a class A
misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes.

_____                    4/24/13        0012
Police Officer Jessica Valle                Date          Time

CRIMINAL COURT OF THE CITY OF NEW YORK
RECORD OF COURT ACTION

**Date** / **Part** (PART A, CT RPT S. STATSINGER, CT RPT D MCNEILL 4-26-2013) / **Judge** / **Reporter**

HOLD

SD S
TC (180) 30J
OSACHS
5-3

☐ TOP
SBC
Bail Condition          Judge

| Present | Absent | Reading |
|---|---|---|
| ☐ Defendant | ☐ Defendant | ☐ π ready |
| ☐ Attorney | ☐ Attorney | ☐ π not re |

Interpreter

**Reason for Adjournment**
☐ S/D            ☐ Hearing
☐ OFD/Discovery  ☐ Bench Trial
☐ Possible Disposition ☐ Jury Trial
☐ Decision       ☐ Program

A   5-10  RD

**Notify**
☐ Charged   ☐ Defendant   ☐ Defenda
☐ Excluded  ☐ Attorney                Excused

---

**Date** / **Part** (PART A, CT RPT J. PETERSON FUTURES, HON L PETERSON 5-10-2013) / **Judge** / **Reporter**

HOLD Δ MADE BAIL
plea to 2cts
30 day jail

☐ TOP
BC                    WP
Bail Condition          Judge

| Present | Absent | Readines |
|---|---|---|
| ☐ Defendant | ☐ Defendant | ☐ π ready |
| ☐ Attorney | ☐ Attorney | ☐ π not rea |

Interpreter

**Reason for Adjournment**
☐ S/D            ☐ Hearing
☐ OFD/Discovery  ☐ Bench Trial
☐ Possible Disposition ☐ Jury Trial
☐ Decision       ☐ Program

7-9-13  ROD  A

**Notify**
☐ Charged   ☐ Defendant   ☐ Defendant
☐ Excluded  ☐ Attorney        Excused

---

**Date** / **Part** (PART K THIMBREL, HON BYAB, CT RPT 7-9-2013) / **Judge**

HOLD D/e - 30 day
H1 W/D ordered
sentence TC

| Present | Absent | Readiness |
|---|---|---|
| ☐ Defendant | ☐ Defendant | ☐ π ready |
| ☐ Attorney | ☐ Attorney | ☐ π not ready |

Interpreter

**Reason for Adjournment**
☐ S/D            ☐ Hearing
☐ OFD/Discovery  ☐ Bench Trial
☐ Possible Disposition ☐ Jury Trial
☐ Decision       ☐ Program

Case 1:15-cv-05871-LAP   Document 16-5   Filed 05/09/16   Page 12 of 55

PTZ ctr + Z
30 days jail     PNR

| Part | PART A PETERSON HON L. PETERSON CT RPT W GRANT 8-7-2013 | | | ☐ x ready ☐ Attorney / ☐ x not ready |
|---|---|---|---|---|
| | | | **Interpreter** | |

| | | **Reason for Adjournment** | |
|---|---|---|---|
| | ☐ S/D | ☐ Hearing | |
| | ☐ OFD/Discovery | ☐ Bench Trial | |
| | ☐ Possible Disposition | ☐ Jury Trial | |
| | ☐ Decision | ☐ Program _____ | |

10-3-13   A   H + T

| Reporter | ☐ TOP | | Notify |
|---|---|---|---|
| | BL                     WP | ☒ Charged | ☐ Defendant | ☐ Defendant Excused |
| | Bail Condition      Judge | ☐ Excluded | ☐ Attorney | |

| Date | HOLD _____ | **Present** | **Absent** | **Readiness** |
|---|---|---|---|---|
| | | ☐ Defendant | ☐ Defendant | ☐ π ready |
| | | ☐ Attorney | ☐ Attorney | ☐ π not ready |
| | | | **Interpreter** | |

π NR
ADA on TL
PTC - cont # 2
30 days

| Part | PART B BOYAR HON. JANE J. MARTINEZ CT RPT B - 2013 10-3-2013 | | **Reason for Adjournment** | |
|---|---|---|---|
| | | ☐ S/D | ☐ Hearing |
| | | ☐ OFD/Discovery | ☐ Bench Trial |
| | | ☐ Possible Disposition | ☐ Jury Trial |
| | | ☐ Decision | ☐ Program _____ |

| Judge | | |
|---|---|---|

FW JP13        H&T

| Reporter | ☐ TOP | | Notify |
|---|---|---|---|
| | PN | ☐ Charged | ☐ Defendant | ☐ Defendant Excused |
| | Bail Condition  4 X  Judge | ☐ Excluded | ☐ Attorney | |

| Date | OCT 03 2013 | HOLD _____ | **Present** | **Absent** | **Readiness** |
|---|---|---|---|---|---|
| | | | ☐ Defendant | ☐ Defendant | ☐ π ready |
| | | | ☐ Attorney | ☐ Attorney | ☐ π not ready |
| | | | | **Interpreter** | |

Dhrs 3rd case with
MOTION Schedule on what
A for R/D on 12/2/13

BC
Consents N
→ A

12/2/13 H+T.

| Part | JURY 13 | **Reason for Adjournment** | |
|---|---|---|---|
| | | ☐ S/D | ☐ Hearing |
| | | ☐ OFD/Discovery | ☐ Bench Trial |
| | | ☐ Possible Disposition | ☐ Jury Trial |
| | | ☐ Decision | ☐ Program _____ |

| Judge | HON. ANTHONY J. FERRARA | |
|---|---|---|

| Reporter | ☐ TOP | | Notify |
|---|---|---|---|
| Alexander | BC | ☐ Charged | ☐ Defendant |

THE CITY OF NEW YORK
RECORD OF COURT ACTION

| | Present | Absent | Readiness |
|---|---|---|---|
| | ☐ Defendant | ☐ Defendant | ☐ π ready |
| | ☐ Attorney | ☐ Attorney | ☐ π not ready |
| | | Interpreter | |

**Reason for Adjournment**

☐ S/D ☐ Hearing
☐ OFD/Discovery ☐ Bench Trial
☐ Possible Disposition ☐ Jury Trial
☐ Decision ☐ Program

*(handwritten)* F—R
AC 30 days
DA—R
2nd call
TP

J-2 1+3 H&T
2:15

**Judge**

**Reporter**

☐ TOP

Bail Condition

| | Notify | |
|---|---|---|
| ☐ Charged | ☐ Defendant | ☐ Defendant Excused |
| ☐ Excluded | ☐ Attorney | |

**Date** DEC - 3 2013

HOLD _____

*(handwritten)* PI S-F
Hearing—Denied
Opening

| | Present | Absent | Readiness |
|---|---|---|---|
| | ☐ Defendant | ☐ Defendant | ☐ π ready |
| | ☐ Attorney | ☐ Attorney | ☐ π not ready |
| | | Interpreter | |

**Part** JURY 2

**Reason for Adjournment**

☐ S/D ☐ Hearing
☐ OFD/Discovery ☐ Bench Trial
☐ Possible Disposition ☐ Jury Trial
☐ Decision ☐ Program

J-2 12-4 Cont
T

**Judge** HON. KEVIN B. McGRATH, JR.

**Reporter** Oviedo, Y

☐ TOP

Bail Condition

| | Notify | |
|---|---|---|
| ☐ Charged | ☐ Defendant | ☐ Defendant Excused |
| ☐ Excluded | ☐ Attorney | |

**Date** DEC - 4 2013

HOLD Trial

*(handwritten)* 140.10
245.00
245.01

| | Present | Absent | Readiness |
|---|---|---|---|
| | ☐ Defendant | ☐ Defendant | ☐ π ready |
| | ☐ Attorney | ☐ Attorney | ☐ π not ready |
| | | Interpreter | |

**Part** JURY 2

**Reason for Adjournment**

☐ S/D ☐ Hearing
☐ OFD/Discovery ☐ Bench Trial
☐ Possible Disposition ☐ Jury Trial
☐ Decision ☐ Program

**Judge**

# Criminal Court of the City of New York

## New York County
### Misdemeanor Complaint

The People of the State of New York
vs.

*Det. In First Row*
*Re Arrest*

| DEFENDANT: | CHARGES: | DOCKET NUMBER: |
|---|---|---|
| Rami Baly (M 34) | PL 140.10(a) | 2013NY031505 |
| M13635565 04/20/2013 20:22 | PL 245.00 | |
| 765 AMSTERDAM AVENUE | PL 245.01 | |
| MANHATTAN NY | | |

Interpreter Language _____ Screener: TEMPLE, TEMPLE - TB60

**Notices Served at Arraignment:**
- ☑ CPL 710.30(1)(A) - Statement
- ☑ CPL 710.30(1)(B) - Identification
- ☐ CPL 250.20 - Alibi
- ☐ PL 450.10(48 hrs /15 days) - Property
- ☐ CPL 170.20 - Grand Jury
- ☐ Cross Grand Jury
- ☐ OTHER: _____

**Documents:**

| Served at Arraignment: | Needed For Conversion |
|---|---|
| ☑ Supporting Deposition | ☑ |
| ☐ DMV Abstract | ☐ |
| ☐ Lab Report/ Field Test | ☐ |
| ☐ DWI Paperwork | ☐ |
| ☐ Domestic Incident | |
| ☐ Family Registry | |
| ☐ Underlying T.O.P. | ☐ |

**Disposition:**
- ☐ ACD - CPL 170.55
- ☐ ACD - CPL 170.56
- ☐ Waives Prosecution by Information and Pleads Guilty to
  PL 240.20/ _____
- ☐ Investigation & Sentence Ordered
- ☐ DNA -Eligible Misdemeanor
- ☐ DNA Sample Taken

**Adjournment:**

Part: A Date: 4/29

**Bail Condition:**

1,500 / 1,500 /

(Ins. Co. Bond)   (Cash)   (Other) _____

- ☐ ART 730 Exam Ordered
- ☐ Protective Custody
- ☐ Medical Attention
- ☐ Psychiatric Evaluation
- ☐ Suicide Watch
- ☐ Deemed an Information
  Defense Motions Due:
- ☐ T.O.P. / F.O.P.

**Sentence (or Promise):**

_____ days jail
Conditional Discharge:
_____ Days Community Service
_____ Days Jail Alternative
Other: _____

Mandatory Surcharge (and CVAF):
- ☐ Judgment Entered - All Fees
- ☐ $200 Misd. ☐ $120 Viol. ☐ $80 VTL*
- ☐ $395 VTL1192 Misd.* ☐ $255 VTL1192(1) Infrac.*
  *(For offenses on or after August 1, 2008)
- ☐ $50 - DNA Fee

| Arresting Officer | Court Reporter | Date | Part |
|---|---|---|---|
| JESSICA VALLE | | | AR-4 |
| Judge: | | | HON M. STALLMAN |
| | | | RPT. J. MARTINEZ |
| | | | 04/21/13 |

## Criminal Court of the City of New York
### New York County
### Misdemeanor Complaint



The People of the State of New York
vs.

*Det. In First Row*
***Re Arrest***

| DEFENDANT: | (M 34) | CHARGES: | DOCKET NUMBER: |
|---|---|---|---|
| Rami Baly | | PL 140.10(a) | 2013NY031505 |
| M13635565   04/20/2013 20:22 | | PL 245.00 | |
| 765 AMSTERDAM AVENUE | M13635565 | PL 245.01 | |
| MANHATTAN NY | | | |

Interpreter Language _____   Screener: TEMPLE, TEMPLE - TB60

**Notices Served at Arraignment:**
- ☑ CPL 710.30(1)(A) - Statement
- ☑ CPL 710.30(1)(B) - Identification
- ☐ CPL 250.20 - Alibi
- ☐ PL 450.10(48 hrs /15 days) - Property
- ☐ CPL 170.20 - Grand Jury
- ☐ Cross Grand Jury
- ☐ OTHER: _____

**Documents:**
**Served at Arraignment:**                    **Needed For Conversion**
- ☑ Supporting Deposition                     ☑
- ☐ DMV Abstract                              ☐
- ☐ Lab Report/ Field Test                    ☐
- ☐ DWI Paperwork                             ☐
- ☐ Domestic Incident
- ☐ Family Registry
- ☐ Underlying T.O.P.                          ☐

**Adjournment:**

Part: A   Date: 4/26

**Bail Condition:**
1,500 / 1,500 /
(Ins. Co. Bond)   (Cash)   (Other) _____

- ☐ ART 730 Exam Ordered
- ☐ Protective Custody
- ☐ Medical Attention
- ☐ Psychiatric Evaluation
- ☐ Suicide Watch
- ☐ Deemed an Information
  Defense Motions Due: _____

- ☐ T.O.P. / F.O.P.

**Disposition:**
- ☐ ACD - CPL 170.55
- ☐ ACD - CPL 170.56
- ☐ Waives Prosecution by Information
  and Pleads Guilty to
  PL 240.20/ _____
- ☐ Investigation & Sentence Ordered
- ☐ DNA -Eligible Misdemeanor
- ☐ DNA Sample Taken

**Sentence (or Promise):**
_____ days jail
Conditional Discharge:
_____ Days Community Service
_____ Days Jail Alternative
Other: _____
Mandatory Surcharge (and CVAF):
- ☐ Judgment Entered - All Fees
- ☐ $200 Misd.  ☐ $120 Viol.  ☐ $80 VTL*
- ☐ $395 VTL1192 Misd.*  ☐ $255 VTL1192(1) Infrac.*
  *(For offenses on or after August 1, 2008)
- ☐ $50 - DNA Fee

| Arresting Officer | Court Reporter | Date | Part |
|---|---|---|---|
| JESSICA VALLE | | | AR-4 HON M. STALLMAN |
| Judge: | | | RPT. J. MARTINEZ 04/21/13 |

**Exhibit CC**

-----Original Message-----
From: Gracie [mailto:graciegracie212@gmail.com]
Sent: Monday, July 28, 2014 1:10 PM
To: Pennington, Hannah (FJC)
Subject: RE:

Hannah;

I'm growing discontent day by day at the lack of services available to me as I have been blacklisted from using the FJC.

Employment: despite attending the meeting at FEGS and providing my very solid employment credentials to your contact @ FEGS I've never heard back from them about employment workshops, job leads or follow up AT ALL.

HOUSING:  the little raggedy SRO I moved into to stay off the streets has incurred ten violations from the Housing Commission that include no heat-no hot water- gaping holes to sky in roof.  I have had to report my neighbor twice for assaults against my person.  He is mad because I rebuff his sexual advances.  Its really a dangerous nightmare living here.

PUBLIC ASSISTANCE BENEFITS:  my case has been closed ten times because HRA still has a "General delivery" address for me in their system and I don't get mail they send me about mandatory recertification meetings et al.  This is odd because I receive housing assistance checks for my landlord- HRA know the correct address- they just continue to send mail to the "general delivery" address at the post office on34th st!  I have requested ten times this be updated but it still hasn't.  Each time my case is closed I call the Fair Hearing office and they check and see that the letters have been sent errantly and they reinstate my case and I have to wait additional weeks each time for my benefits.  This is a ridiculous waste of everyones time and I need my benefits to survive.  Without my Asthma medication I cannot breathe and I cannot affford the co pays as HRA keeps messing with my cash assistance and cancelling my Medicaid.

PSYCHOLOGICAL SUPPORT:  LET'S JUST SAY I'M COMPLETELY AND UTTERLY ALONE AND MY C-PtSD is not improving with all these stresses and obstacles.

Please I need help.  Its ridiculous that because a group of people within the MDAO made egregious errors and illegal actions against me that I SHOULD STILL BE MADE TO SUFFER WHEN THERE IS HELP AVAILABLE @ YOUR CENTER.

 I AM A FOURTH GENERATION DAUGHTER OF THE CITY OF NEW YORK AND THIS TREATMENT BY CARPET BAGGING OFFICIALS NOT FAMILIAR WITH THE COMPLEXITIES OF CITY LIFE SHOULD NOT BE ALLOWED TO HOLD SWAY OVER RESOURCES THAT MY TAX DOLLARS AND MY FAMILY'S TAX DOLLARS HAVE BEEN PAYING FOR FOR OVER A CENTURY AND A HALF.

I'm going to start being very vocal about this.  Please I need help.  There is no reason I should keep being punished for the mistakes made by people on the payroll of the MDAO.

"Pennington, Hannah (FJC)" <HannahP@fjcnyc.org> wrote:

> Sorry to hear that.
>

>
> Hannah Pennington
> Executive Director
> NYC Family Justice Center, Manhattan
> Mayor's Office to Combat Domestic Violence
> 80 Centre Street, 5th Floor
> New York, NY 10013
> (212) 602-2828 Direct | (212) 602-2800 Main hannahp@fjcnyc.org |
> www.nyc.gov/domesticviolence
>
>
>
>

Exhibit DD

October 1, 2013


Ms. Kelly G. Price

New York, NY


Conviction Integrity Program

New York County District Attorney's Office

One Hogan Place

New York, NY 10013


Dear Madam or Sir:

I would like to request that you carry out a preliminary review of a conviction metted out to me, Kelly Price, for disorderly conduct on 10/19/1012 arising from an incident which occurred on 09/24/2011.

The docket # is:

Please find enclosed log books, video tape and audio tape and photographs for your review.

1. On September 24, 2011 I was propositioned by a man at a bar and I rebuffed his advances. The gentleman as it turns out was the owner of the bar and was upset at the way I turned him down. He put his hands on me and I told him he had no right to touch me. The spat escalated and he had his bouncer grab me and throw me out of the bar injuring me as I was tossed through the door. My chest was sore and beginning to bruise and I know NO ONE is allowed to put their hands on me so I called the police to report the incident (see video inside bar).

2. When the police arrived the lead officers ignored me and marched into the bar to talk to their buddies (apparently the bar is only a block away from the 14th pct. and they frequent the place).

3. Without listening to my side of the story the officer in charge, Matthew Winters, told me "to keep it moving" that he wasn't doing anything to record the menacing, assault, and harassment I had just encountered. I told the officers they are not allowed to refuse to take my 61 report and that I would be making CCRB and IAB reports about their misconduct and callous regard for my safety. I was upset and I turned to walk away I was crying and I said to the officers: "Ya'll don't help anyone ya'll should go fuck yourselves." (see video outside bar)

4. I proceeded two steps away from the group of four cops and from behind me and without warning Officer Winters tackled me to the ground by kneeing the back of my right knee and forcing me to collapse. He also grabbed my upper arms so hard literally each of his fingers made a bruise in my flesh. You can make out his handprints in the flesh of my upper arms (see attached photos and the bruise in the back of my right leg among others see exhibits 8, 9 and 10.)

5. I woke up hours later in a jail cell literally covered in bruises with officer Winters standing over me. He told me that I was arrested for disorderly conduct and that he had gone through my purse and found a few small dime bags of weed that I had as well as several condoms. He said that he was throwing the weed out as a favor to me and expected me "to do him a favor in return." He suggested that I don't report my injuries incurred during arrest and that "things would go in my favor." He also asked why I had so many condoms. I told him I was headed to a swinger's party that evening and he informed me he could have me also arrested on suspicion of prostitution and intent to distribute marijuana but that he was "being a nice guy." I listened to him with doubt and astonishment as I rubbed at my swollen wrists, hands and several dozen bruises all over my body. I was furious. Since when does a woman in NYC who calls the police for help B/C SHE has been harmed wind up incarcerated and beaten by the cops responding to her call for help?

6. ADA Kenya Wells caught the case. At that time another drawn-out case maliciously filed against me by Mr. Wells was pending over me. Mr. Wells kept insisting that I had made false reports to the police about my ex-boyfriend, Raheem Powell who had been beating me and subjecting me to economic, emotional, and physical abuse. I was charged after I went to the police for help to get him away from me because of my ex's relationship with the precinct as a confidential informant. He was a key witness in a murder, an attempted murder and several gang-related cases that were in-motion already so the police and Mr. Wells threw me to the wolves instead of assisting me at the darkest, bleakest, most helpless moment in my life. That case against me was eventually dropped after I stood in court for two years with the scars on my body burning under my dress as I repeatedly was called a fabricator in the I-DV court part. Mr. Wells had already made poorly-investigated conclusions about my other case (again similar scenario with him—no investigation just jumping to conclusions based on his own gut). Eventually that case was dismissed and sealed after I rejected every offer Mr. Wells through at me to try to cover up his errors. **Mr. Wells had a special vendetta against me because he was forced to drop the (329 incorrectly charged and malicious) charges he had filed. When it came time for trial for my disorderly conduct case Mr. Wells was prepared to do whatever it took to win: his reputation and his personal vendetta against me, a domestic violence survivor, a 911 survivor, and a 4th generation  New Yorker was at stake.**

7. **SETTING THE SCENE:** September 24, 2011 was an emotional time for me. It was shortly after the ten-year anniversary of the 911 attacks that I had survived by running for my life away from the towers and everything I had built for myself had subsequently unraveled around me because of the ineptitude and hubris of this young, untrained, sloppy District Attorney who had thown me in Rikers island on Mothers' day after I miscarried my child and turned my life upside

down. I had spent all weekend with a friend of mine, Lewyn Pogue, a member of NAVY SEAL TEAM 6, who was in town to swim in the "Little Red Light house Race" to raise money for the families of his friends who had died in an horrible attack on their helicopter in Afghanistan earlier that summer. It was the deadliest attack to date in that war and our emotions were high. I had been crying all day for the most part. I had nothing left inside of me. I wanted to sit down and have a drink quietly somewhere before moving on to a party that night. **Coincidentally the cops were twitchy. The entire city was on red-alert because the Occupy Wall Street marchers had violently clashed for the first time that morning with police and many members of the 14th pct. had been involved in crowd control. The cops were agitated and twitchy.** The bruises literally covering my body were a by-product of their sour mood. Lewyn can testify to the fact that I had nary a bruise on me when he left me half an hour before I strolled into the Stitch bar on W 37th st where I was assaulted. I had also had dinner at a place in Midtown I go to often and the bartender can also aver that I had nary a bruise on me while she served me my Cobb salad and coffee. I'm happy to provide you this information should you need it.

8. **Mr. Wells didn't even investigate the case:** My Lawyer, Benjamin Dell from Legal Aide, spoke with Mr. Wells after the arrest and before my first court appearance. Mr. Wells didn't know that I had called 911. He said to my lawyer that in fact the incident had happened because the police had come upon me screaming and simply arrested me. When my lawyer, Benjamin Dell, suggested to Mr. Wells that there are 911 calls of my calmly requesting for police assistance Mr. Wells seemed panicked. He was also informed that there were video cameras all over the bar that would corroborate my story and it was suggested that he drop the case because the police had beaten me badly and I was a woman who had called them for help. Mr. Wells refused and scrambled to try to reconcile the way he wanted to paint the events of the evening to get a conviction. He knew he couldn't prove that a crowd had gathered or that I had blocked traffic on the sidewalk if the video was shown at trial. He then embarked on a campaign to keep the video tapes of the events from surfacing. Please pull the Part A transcripts for the case and pay careful attention to how many times Mr. Wells argues with the judges (on more than one occasion) about the lack of necessity of attaining the video tapes. In one instance Judge _____ remarks that she is surprised that Mr. Wells didn't already have the tapes in his possession and that he doesn't feel they are relevant! Isn't it the DAs DUTY to investigate? Isn't failing to do so an egregious error that allows for the breakdown of prosecutorial immunity? Is this not being taught to young ADAs in the Manhattan District Attorney's office? We (Mr. Dell and I) had asked the bar for the tapes and they had refused. Instead we subpoenaed them from the CCRB as I had made a CCRB complaint as soon as I was released from jail. Graham Daw at the CCRB can attest to the fact that the bar sent over edited versions of the video tapes first that omitted all interaction I had with the police outside the bar. Why would the bar do this? Someone needs to ask the owners of Stitch bar if they were instructed by the police or by Mr. Wells to do so when they have to answer under sworn testimony. Eventually the correct tapes were sent to the CCRB and Graham Daw on passed them to the court. This caused MUCH consternation, huffing, puffing and pouting at each new court date when they didn't appear and Mr. Wells wanted to press on for trial. Surprise: the tapes were mysteriously LOST in the courthouse for months after they arrived. Please note the court transcripts where My lawyer

asks for a delay in trial until the tapes can be found by the Part A clerk and please note Mr. Wells insistence that the trial go forward without the tapes. The judges kept asking Mr. Wells why he had not pulled the tapes to begin with and Mr. Wells simply kept averting the questions. The plain truth is that he HAD to have already pulled the tapes and they did not corroborate the Police's version of the story that would allow him to take me to trial and justify his pursuit of the case against me so he tried to keep them out of our hands and the hands of the court. He stated MANY times on record that he had never seen the tapes.   I would be very interested if your conviction integrity officers can compare records of when he got a hold of the tapes at the DAs office and then compare that information with Mr. Wells' statements in court. He claims the first time he saw the video was in late Sept/early Oct of 2012. I sincerely doubt his honesty concerning his statements to this effect.

9. **In each of the three interviews the CCRB conducts with three of the four officers who responded to my 911 call there is a different story told than the manufactured, glossed, coached and clean version that Mr. Wells helped the officers recapitulate on the stand at trial.** Please listen to each of the interviews. Not one of the officers states that I raised my voice and screamed at a level 10 out of 10 being the loudest a human voice can possibly make during their CCRB interviews. In fact the officers don't even recall what I said as I walked away from them. But MAGIC! –when Mr. Wells called them to the stand they ALL say that I screamed "FUCK YOU" at the top of my lungs to the cops. How strange: magically over a year later all three cops' stories changed  and were consistent!  There must be a magic memory pill in the water at the 80 Centre Street witness lounge! A few weeks after the incident when the officers were questioned by CCRB inspectors there was not a narrative consensus about what I said or how I said it but  over a year later at trial all of a sudden each officer magically remembers that I screamed at the top of my lungs "fuck you?" I find this incredulous.  None of the log books of the officers reflects that I screamed aloud or even recounts what I said. One would logically think that this information had it really occurred would have been recorded in the log books OR remembered in the CCRB interviews.

10. The fourth Police officer, a young, Caucasian, female officer was never interviewed or called to testify.  We need to get her version of the story.  Her name was Officer _____.

11. The video tapes show that a crowd NEVER gathered to witness "the spectacle I [sic] was making." Please review. The cops all say different-sized clusters of people were standing just out of camera sight in their CCRB interviews in different places. NONE of their statements to the CCRB is consistent with what they claimed at trial. Please make note of time-stamps: xyz on the video tape and abc on the ccrb interviews.

12. The conviction revolved around Mr. Wells' LIE about the tone of my voice. He coached the cops to say that I screamed at the top of my lungs at a level TEN (being the  loudest a human voice can possibly make according to Wells). Never had the cops made this statement before to any interviewer of the CCRB or in their log books. The reason Mr. Wells had to coach the cops to LIE is this is the only way he could win the case. This is why he didn't want the video tapes introduced into evidence. He did not want to have to suborn perjury but was forced to do so to

win the case and tried everything in his power to avoid this. There simply is no other explanation for his reticence in presenting the tapes to court.

13. I was convicted of TWO counts of disorderly conduct as one was for allegedly screaming and one was for making an obscene gesture but never in court did anyone mention that I made an obscene gesture in their logs, in their CCRB interviews or at Trial. This count should most certainly be dropped because it was never proven. Instead it was merely just bivouacked onto the other charge without any lip-service whatsoever.

14. Mr. Wells started his statements at trial by alleging to the judge that I am a "fabricator" and that I had hundreds of criminal charges filed against me because of this false fact. He was so hell-bent on making me appear to be a lying fabricator that he asked his colleague, ADA Bernard, to decline to prosecute another man who had hit me outside of a bar on July 28, 2012 shortly before my trial date. That man went on to assault, stalk, masturbate on, and trespass against several other women in town BECAUSE HE WAS not punished for his acts against me. Please look up this criminal: Rami Baly. ADA Richendorfer is FINALLY prosecuting him OVER a full year later for his crimes against me because I made complaints to the DOI, the IAB, the State Attorney General, Senator Gillabrand, Councilwoman Quinn, Councilwoman Dickenson, the Mayor's office, the Borough President, the Public Advocate, and the New York State Bar Association about how my right to equal protection under the law had been stripped from me. **Mr. Wells couldn't have me appear as an innocent defendant in the same courthouse at the same time he was trying to paint me as a crazy fabricator in front of the judge to win a disorderly conduct conviction. So Mr. Baly was set free instead to punch NYPD officers (he was arrested a month later for assaulting an officer, arrested in November of 2012 for lewd acts on an Amtrak train, arrested in March of 2013 for trespassing and stalking, again in May, again in June and again in July of 2013. Conveniently Mr. Wells aided and abetted Mr. Baly in his crime spree against other women in the City of New York by tricking his fellow colleague into declining to prosecute Mr. Baly so that he could paint me as ugly as possible on a fresh courtroom canvas. Look: this is anathema.** Re-read the above paragraph. Mr. Wells wanted to win against me so badly that he had a colleague sit on a case against a man who clearly needed to be under psychiatric care and have his dopamine levels regulated and monitored all in the name of winning against me. Is this really a person you want in your office? This guy is the JAYSON BLAIR of the District Attorney's office and should be arrested himself for malicious prosecution, obstruction of justice, tampering with evidence and suborning perjury.

I encourage you to research the facts of my case with a fresh perspective. I believe you will find many illegal misdeeds and cover-ups along the way that Mr. Wells is responsible for. Make sure you have a barf-bag in front of you while you investigate: Mr. Wells will make you sick.

These are the true facts of the case. Why would Cyrus Vance want this guy's dirty work besmirching his legacy and his office? Please get this guy.

Exhibit EE

February 2, 2015

Miss Kelly Price
534 w 187th st #7
New York, NY 10033
Via email

Mr. Jeff Schlanger
Chief of Staff
Manhattan District Attorney's Office
80 Hogan Place
4th Floor
New York, NY 10013
Via email:  JShlanger@DANY.nyc.gov

Dear Mr. Schlanger:

I'm writing to provide comprehensive information, to make you aware and to PROPOSE A
PATH FORWARD out of the devil's cauldron of gross negligence, deliberate malice, outright
unprofessional, unethical and illegal activity taking place in the Manhattan District Attorney's
office (and vis a vis "collaboration" within the NYPD at the direction of the MDAO) towards
innocent crime victims seeking assistance/justice.  The following is a brief regarding the handling
of me as a victim of domestic violence, the deliberate pattern of denial of services unhanded to
me as a victim of Domestic Violence and as a victim of street assaults in NYC and the continuing
problems I've encountered with the MDAO and the NYPD in the wake of being falsely branded a
"fabricator" when not one official sought to investigate the true facts of my complaints.

        -The MDAO never investigated my claims of abuse.  No one interviewed neighbors, had
        me sign HPPA forms, reviewed photos of injuries I sustained during battery, or even
        called me to ask about my complaints until MONTHS after I was accused of harassing
        my batterer by allegedly making false complaints of abuse, arrested, arraigned, charged,
        incarcerated in Rikers and had my constitutional rights violated.

        -As I was labeled a "fabricator" I ended up on a "do not service list" kept by the
        NYPD/MDAO of persons whose complaints are not to be addressed by the police.

        -My batterer is still walking free.  Why?

        -How many other women are denied services like welfare assistance, counseling and
        relocation/housing which are "signed-off" on by Family Justice Centers around the city
        that are literally embedded in DAs offices in each borough because they are dubbed
        "fabricators" without anyone ever investigating her/his/its claims?  How many other
        women are DENIED access to the FJC services as I have been/still am?

        -Because of my status as a "fabricator' in the eyes of the MDAO OTHER WOMEN IN
        NYC WERE STALKED, ASSAULTED, MASTURBATED ON, PREYED UPON AND
        HARASSED BY at least ONE MAN THE MDAO REFUSED TO ARREST FOR

1

CRIMES AGAINST ME.

The following information is broken down into five categories:

| | |
|---|---|
| I. | Introduction/brief outline of events |
| II. | Rough timeline of events involving violence against me by Powell |
| III. | Events that led to the filing of Federal Civil Rights/Department of Justice, CCRB, IAB, DOI and OIG complaints vs. the MDAO and NYPD and details of those incidences. |
| IV. | Details of attacks on my person that the 28th precinct and other precincts in town refused to follow up on because they were told by the MDAO that I was no longer entitled to Police Services |
| V. | Moving Forward: the MDAO and Miss Price, the Business of Photojournalism in NYC and the way forward. |

# I. Introduction/Brief Outline of Events

a. My Birthname is Kelly Cathleen Price.  I Go by GRACE:  my beloved Grandmother's name.  She was a great New Yorker and when this episode in my life is over I plan on changing my name.

b. My SS# is 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

c. My DOB is 11/27/1970

d. Please find attached the final dispositions/Orders from NY Supreme Court to dismiss and seal docket #s 20075-2011 and 20111-2011 (Exhibit #7) as well as the original complaints against me (Exhibit #4 & 5).

e. I was Arrested on 5/6/2011 and 3/24/2011 by the 28th precinct and 9/24/11 by the 14th pct.

f. On 5/6/11 I was arrested by Detective Samuel Fontanez, shield #00311 of the 028 Detective Squad and on 3/24/11 by various detectives inside the Family Courthouse as I waited to appear in front of Judge Sattler to have my order of protection against my batterer renewed and then handed over to detective Flowers of the 28th precinct.  I do not have Dt. Flowers' shield # and neither does the Pct. as he has since retired (I was informed this by the dt squad when I called to ask for the number for you).

g. I have included copies of emergency room reports and ambulance reports of some/most of the injuries I sustained.  I have also included a disc with images of my various injuries incurred on my person from assaults by my batterer, Raheem Andre Powell, his mother, Nancy R. Gaines and by members of the NYPD as well as people on the street.

h. As a domestic violence victim I went to the authorities, specifically, the 28th Pct. as I lived in that district, and then to Cyrus Vance's staff in the DA's office for help.  I began asking for assistance in the spring of 2010 and continued up until the winter of 2011.  I have a timeline with specifics detailing the interaction that I can provide.  Instead of anyone investigating my claims of abuse I was instead falsely accused and charged with crimes as I was labeled a "fabricator" my

2

complaints against him and communications I had with him were viewed as hundreds as counts of aggravated harassment and I was imprisoned.   I was prosecuted by the Manhattan DAs office on 325 counts of aggravated harassment and one count of contempt of court. The complainant is a man who battered me for two years.

i.   When I finally went to the police and the DAs office for help I was arrested instead, they refused to investigate my claims of abuse, and I ended up incarcerated on Riker's island regardless of the evidence in my favor: hospital records, eyewitnesses, 911 calls, photographs, permanent scarring, records for repairs of my front door and windows that were constantly being broken as he attempted to gain access to me in my apartment et al. After approximately two years of endless hearings in NY Supreme Court the DAs office offered me ACDs on the counts which I refuse to plead to as my batterer was walking free without a charge or restraining order against him. My civil rights have been violated in so many ways: I feel strongly that the pain, humiliation and anguish caused me need to be recognized. The people responsible for these malicious prosecutions and false arrests should be held accountable. This is virtually a horror-film script ripped from Hollywood: as an innocent crime victim when I turned to the authorities in my darkest, most desperate hour I was cast as a pariah, a liar, and as a femme fatale who allegedly injured herself in order to accuse her most beloved of the same crimes that he actually perpetrated.   You allowed my batterer to manipulate the criminal justice system to continue his control over my suffering.  My abuser did this with the assistance of officers of the MDAO and NYPD who willfully lapsed in their duties to investigate the circumstances of my injuries.

j.   If this has happened to me it can and has happened to other women and I want to make sure it never does again.

k.   The MDAO refused to investigate my claims of abuse: I have plenty of proof that this disregard for the obligation to investigate occurred in my case.   I received call from DA Strohbehn on February 2, 2011.   She told me I have "less than an hour" to get downtown to her office regardless of the difficulty in travelling that day as the city had been blanketed by a blizzard the previous evening. When I arrived at her office she had me wait in the Safe Horizon office for over two hours.   When she greeted me she withdrew her right hand as I outstretched mine to shake hers as is common in professional and official circumstances to do. She led me brusquely down the hall of the 2nd floor she and Det. Simmons and another Dt from the 28th pct pepper me with questions about how I came to own a car, how I earned a living, and accuse me of answering my phone earlier in the day "with a fake accent.' They proceeded to call me a liar and refuse to look at any material I had that proved I was telling the truth. ADA Strohbehn informed me she was declining to prosecute Raheem, and informed me that if I make another report against RAHEEM that she will 'lock me up and throw away the key." She also informed the 28th precinct that she will personally handle all of my "police service needs" and if I have "a bullet-hole in my head that they are to call her first before responding to any call from me." She informs me that she has already assisted Raheem in drawing up a Family Court petition to attain a counter restraining order against me in order to press counter-claims of harassment against me.  She further instructs me that even though I haven't been

3

served that I am to show up in family court the next morning to respond to Raheem's charges. She tells me I will be charged with contempt of court if I do not show up "as she as an officer of the court was ordering me to appear even though there was no time to serve me with a subpoena (sic)." She tells me her only concern is that "an innocent black man has been sitting in jail for 24 hours..." I ask to speak with her supervisor to show her my proof and have my neighbors interviewed etc. and Ms. Strohbehn informs me that "she already checked with her supervisor (Audrey Moore) and that she has been given carte blanche to deal with me with finality." I am instead thrown out of her office. My landlord and others try to speak with Ms. Strohbehn to introduce investigatory evidence and she rebuffs them (please see attached letters from landlord, Adam Gargani, My neighbors Marilyn Benetatos et al about Ms. Strohbehn's and ADA Kenya Wells' refusal to investigate.

1.  The conduct on which I base my complaints about the MDAO and NYPD includes (but is not limited to):

   **a. stripping me of my First Amendment Rights to petition the Government for redress of grievances**

   **b. knowingly keeping me under unreasonable seizure for an elongated period of time during my false arrest and drawn-out prosecution lasting approximately two years (during which the seizure continued) denying me my Fourth Amendment right against unreasonable searches and seizures**

   **c. eschewing my Eighth Amendment rights by denying me police services asserting excessive and unusual punishment**

   **d. Denying my Sixth Amendment right to a speedy trial**

   **e. Depriving me of my Fourteenth Amendment rights to not be deprived of life, liberty or property without due process of the law**

   **f. denying me my Sixteenth Amendment right to equal protection under the law.**

   **g. The Causes of Action include but are not limited to: Malicious Prosecution, Intentional Infliction of Emotional Distress, Abuse of Process, Actual and Constructive Fraud, Negligent Misrepresentation, Denial of Due Process and a Fair Trial (under 42 U. S. C 1983), Deprivation of Liberty, Negligent Hiring, Training and Supervision as the MDAO, the NYPD & the City of New York:** (1) unjustifiably denied me any police services; 2) refused to investigate my claims of violent physical abuse (3) instructed for my arrest me without probable cause; (4) maliciously prosecuting me for crimes against my batterer under the false pretense that I had made up my claims of abuse (5) conspired to present falsified evidence to, and to withhold exculpatory evidence from, a seated family court judge (JUDGE SATTLER) and seated NY Supreme Court judge (JUDGE DAWSON); (6) deliberately suppressed material evidence of the true nature of my status as a domestic violence survivor from the trial file; and (6) manufactured evidence that I was a "Fabricator" who insinuated her own

4

injuries on herself. 7) Thwarted my right to due process by insinuating I was in fact a violent abuser and not a crime victim in open court.  8) Conspired to manufacture evidence/perjury.

2.  I was arrested and charged with 325 counts of aggravated harassment and one count of Contempt of Court as I sat in front of a family court judge (Judge Sattler on March 8, 2011) as I was trying to get a restraining order extended against my violent batterer. I served between eight to ten days incarcerated in the tombs and on Rikers Island and years repeatedly going back to court monthly--sometimes more often--to stand accused by a system that should have been prosecuting my batterer: But he walked free.

3.  The cases against me were eventually ordered dismissed and sealed on July 24, 2012 by the I-DV division of NY Supreme court I was never given an explanation as to why or even permitted to stand in front of the judge and add something onto the record about my disgust and despair at the way I was treated by the Police and the DA's office. My batterer was walking free: everyone in my community was looking at me in strange ways and distancing himself or herself from me. Others openly confronted me in the neighborhood: I was assaulted by various people who had known my batterer for decades who had heard swirling rumors fueled from the actions of the 28th precinct.  For two years the pallor of serious criminal charges hung over me:  the threat of incarceration for many years and the complete alteration of the life I had built for myself.  I was not about to take a plea that admitted any sort of guilt for crimes of any kind. I was the one who had gone to the MDAO and the police for help.

4.  I feel strongly that the MDAO can choose to decline to prosecute a batterer if they don't have enough proof to bring charges against him/her but this is not what happened in my situation. They flat-out denied any investigation of my claims of abuse even though there was plenty of evidence supporting my story. I have advocated for myself and had representatives from the Mt. Sinai/St. Luke's Roosevelt Hospital's Crime Victims Center, Connect NYC, Senator Gillabrand's, Public Advocate Leticia James, and Council Speaker Quinn and other Domestic Violence Advocacy groups review my case and lobby on my behalf as well. There is a mountain of evidence and the Domestic Violence community in town has been supportive of me. The 'authorities' never interviewed neighbors (and even lied about this), never looked at or compared photos of my severe injuries to hospital emergency room reports, and refused to collect/accept other evidence such as 911 calls, receipts for repair work for broken windows or doors that have been kicked down as well as other evidence that proves that constant battery had taken place. They accused me of fabrication without even knowing or seeking to examine the facts and then initiated an elongated, over-zealous, and incorrectly-charged criminal prosecution of me based on the belief that I was a fabricator. This is anathema at best and police/ prosecutorial misconduct at worst.

5.  I spent tens of thousands of dollars defending myself and my life has been turned upside-down as a result of the accusations levied at me. I have fallen into financial ruin, can't get a job and have a debilitating psychological disorder as a result of the battery and re-victimization by the "judicial" system.   I have been diagnosed with Complex Post Traumatic Stress Disorder by Psychiatrists and social workers at the Mt. Sinai/St. Luke's Roosevelt Crime Victims Center where I have been in treatment for over two years and by members of the James B. Zadroga 9/11 Survivors' Federal Healthcare program at Bellevue Hospital.

5

6.   Since the time of my troubles with the 28th pct. and DAs office I have been attacked many times in NYC in various forms and each time I call the police I am told that I am no longer entitled to Police services as per the edict of the Manhattan District Attorney's office. This is a violation of my 14th amendment rights to equal protection under the law, my first amendment right to redress the government for grievances, and my fifth amendment right to due process.

7.   On several occasions I was beaten and went to the 28 pct. bloodied and bruised and was told by desk Sergeant Agron at the 28th pct. that I was not allowed police services. The DAs office has continued their posture that I am a fabricator even after charges have been dismissed against me and continued to inform the NYPD not to take any complaint from me in violation of my Constitutional rights. When I have been assaulted and complaints have been made the DAs office has instructed the precinct involved not to pursue charges against the perp. This has happened on numerous occasions notably: 6/3/2013, 5/17/13, 10/17/12, 07/27/12: (incident #2012-020-2969 described above), 7/14/12, 4/17/12, 1/20/12, 12/1/11, 8/13/11, 8/4/11, 8/2/11. I can provide incident IDs that were never followed up on, proof that the officers refused to even take a report, or Jaywalking tickets issued to me for the latter date when officers from the 28th pct. engaged in outright harassment of me (e.g. Docket Number 2013SN053520 was dismissed on 8/27/2013). Most frustrating is that the police have been instructed not to assist me or to prosecute those who do harm to me. The 28th pct. constantly harassed me when they saw me in the neighborhood. In June of 2013 I was en route to the train passing the precinct and the detectives yelled out my name from the second-story squad window and then proceeded to MOO at me as if I am a Cow. Other times the cruisers pass me on the street and make sucking sounds at me (insinuating sexual acts with their crude verbosity,) other times they would pull their cruisers over and slap me with a jaywalking ticket even when I wasn't jaywalking.

8.   The emotional pain and suffering from these events is overwhelming. I've lost everything I worked for: most beloved was my personal identity, my career and my sense of place in life. I was at one time trusted and loved professionally until my world fell apart because of this mess. I more than anything want my name back and I want to continue to do the good work I was producing. I struggled to build a beautiful life for myself. Now I'm trying to put the pieces of my life together but nothing is easy and my troubles seem to compound as time slips by.

9.   I would appreciate you taking the time to look over some of the links I've provided below so you can get an idea of the high-level I used to operate at vs. where my life is now because of the malicious mis-handling of my case. The links are to examples of news production I did and to the kinds of people who trusted me with their lives. I ran the world's top photojournalists in and out of war zones and covered top stories on all fronts for the past decade. I had achieved a high level of respect and admiration based on trust and love. Now my life is literally in tatters. Credibility is key to the journalistic community and the pallor of criminality still follows me as a result of the bad arrests and prosecutions concocted for me between the NYPD and the DAs office.

6

10. I began the careers of many journalists such as David Rochkind: his work on the drug wars in South America spans a decade of reportage we produced together. The Guardian just did a review of his book co-produced with the Pulitzer Center:
    a. http://www.guardian.co.uk/artanddesign/photography-blog/2013/jan/25/mexico-drug-war-photographer-david-rochkind?intcmp=ILCMUSTXT9384

11. Scout Tufankjian was asked to be President Obama's White House Photographer after her comprehensive coverage of his 2008 campaign. I was Scout's editor who stewarded all of her work with the campaign: Scout even mentions me as the reason for her success when interviewed on the Charlie Rose show:
    a. http://www.charlierose.com/view/interview/10026
    b. http://www.scouttufankjian.com/#/yes-we-can---the-book

12. Photographers such as Max Becherer, Christoph Bangert, Johan Spanner and Mitchell Prothero needed help getting into Iraq to work. I not only got them safely in and out of the country hundreds of times I trained them on how to operate while there and subsequently all became full-time freelance staffers at the NYT House in Baghdad kicking-off their careers as war photographers.
    a. http://maxbecherer.com/#/the-dark-days-iraq/01182013_Becherer_IraqDark001

13. Exclusive access inside the home of Benazir Bhutto in Pakistan while she was placed under house arrest by the Pakistani government upon her return after years in exile a week before her assignation:
    a. http://www.time.com/time/photogallery/0,29307,1683694_1485358,00.html

14. I worked with Stephanie Sinclair who gained a never-before-seen intimate portrayal of the family of polygamist Warren Jeffs for the NYT Magazine (Winner of National Magazine Award for Best Cover Story, 2009)
    a. http://www.childbrides.org/raid_NYTimes_children_of_God.html

15. Here are links to some of my 9/11 photos I took myself as I fled away from the falling towers:

16. http://digitaljournalist.org/issue0609/watching-the-world-change.html

17. http://www.amazon.co.uk/102-Minuten-erz%C3%A4hlte-Geschichte-%C3%9Cberleben/dp/3492250521/ref=sr_1_11?s=books&ie=UTF8&qid=1363704757&sr=1-11

18. http://www.nytimes.com/2001/09/23/arts/the-aftermath-peering-into-the-abyss-of-the-future.html

19. http://www.time.com/time/magazine/article/0,9171,1053663,00.html

20. http://www.thetimes.co.uk/tto/news/uk/jubilee/article3353131.ece

21. I worked with photojournalist Evelyn Hockstein on many stories including the origin of a new deadly super-virus in Angola:
    a. http://www.nytimes.com/2005/04/17/international/africa/17angola.html?_r=0

22. I positioned photojournalist Robert Stolarik in NOLA days before hurricane Katrina and more than supported his efforts to document the events during and after the storm: We won many awards that year and Robert's coverage secured him a staff position at the NYT: http://www.nypress.org/KATRINA/index.html

23. There are literally thousands of other pieces I could show you but the above offers a glimpse I think into the life of the person I once was before being cast as a pariah by the people sworn to protect me. Please help me make sure this doesn't happen to other women in NYC and to help me move forward and try to restore myself the status I occupied before the malicious arrests and prosecutions.