RECEIVED
SDNY PRO SE OFFICE

# UNITED STATES DISTRICT COURT 21 PM 4:59
## SOUTHERN DISTRICT OF NEW YORK S.D. OF N.Y.

Kelly Price
_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

DETECTIVE LINDA SIMMONS Individually, and as an employee of the New York City Police Department, ADA MARIA STROHBEHN and ADA KEI

of the New York City Police Department, Rose Pierre-Louis in her capacity as the Former Commissioner of Domestic Violence of the City of New Yo

(List the full name(s) of the defendant(s)/respondent(s).)

15 CV 05871 (____)(____)

**Application for the Court to
Request Pro Bono Counsel**

I ask the Court to request a *pro bono* attorney to represent me in this action. In support of my application, I declare under penalty of perjury that the following information is true and correct:

1. Have you previously filed a "Request to Proceed in Forma Pauperis" (an IFP application)? Please check the appropriate box below:

   ☐ I have previously filed an IFP application in this case, and it is a true and correct representation of my current financial status.

   ☑ I have not previously filed an IFP application in this case and now attach an original IFP application showing my financial status.

   ☐ I have previously filed an IFP application in this case, but my financial status has changed. I have attached a new IFP application showing my current financial status.

2. Explain why you need an attorney in this case. (Please note that requests for pro *bono* counsel are rarely granted at the early stages of a case and usually not before the Court has issued a decision on the merits of the case.) If you asked for an attorney earlier in this case, please also explain what has changed since you last asked for an attorney.

See Attached Appendix I.  :
_____
_____
_____
_____
_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-21-16

Rev. 3/27/14

3. Explain what steps you have taken to find an attorney and with what results. (Please identify the lawyers, law firms or legal clinics you have contacted and their responses to your requests. If you have limited access to the telephone, mail, or other communication methods, or if you otherwise have had difficulty contacting attorneys, please explain.)

People I have approached and who have told me that they can't take the case: Emory Celli Brinkerhoff Abbady, Cleary Gottlieb, Ron Kuby, Joseph Daniels, Edward McDOnald Ronald Kuby, Norman Siegle, Tracey Kiernan, Advocates for Justice, Arthur Schwart, Sanctuary for Families, Joel Rubin, Jon Norinsburg, Bruce A Young, Jason Richland, Alex Reinert, ACLU, NYLPI, Josh Moscowit, Jane Bryialson, ECBA, Paul Prestia, Alan Figman, Paul Hines, Randy Neman. All have said too complicated, or they don't take cases on contingency or that they don't want to go up against the MDAO.

4. If you need an attorney who speaks a language other than English, state what language(s) you speak: _____.

5. I understand that if an attorney volunteers to represent me and that attorney learns that I can afford to pay for an attorney, the attorney may give this information to the Court.

6. I understand that even if the Court grants this application, I will receive *pro bono* counsel only if an attorney volunteers to take my case and that there is no guarantee that an attorney will volunteer to represent me.

7. I understand that if my answers on this application or in my IFP application are false, my case may be dismissed.

September 20, 2016
_____
Date

Price, Kelly
_____
Name (Last, First, MI)

534 w 187th st #7
_____
Address

(646)676-1940
_____
Telephone Number

_____
Signature

Prison Identification # (if incarcerated)

NEW YORK       NY       10033
City              State      Zip Code

GORGEOUS212@GMAIL.COM
_____
E-mail Address (if available)

2

APPENDIX I

I am requesting PRO BONO counsel from the court with my re-write for the following reasons:

(1) The constant reminder of the traumatic events I have to deal with in the complaint re-writing is a strain on my emotional, mental and physical well being.  Traumatic events are stored in a separate part of the brain and recalling them activates chemicals in the brain that make accurate memory recall about the traumatic incident impossible, spur emotional upsets, (Exhibit #4 Human Rights Watch Report on Trauma and the Brain) and ramp up symptoms of C-PTSD considerably (Exhibit #2 Mental Health Diagnosis. & Exhibit #3 trauma History)

 (2) The City Law Department has already put the appellant panel on notice (Exhibit #5 Letter from City Law Department dated 1/27/2016) that it will not be representing three of the parties named in my complaint (Simmons, Obe and Pierre-Louis) and I have no way of tracking down the addresses of a retired NYPD police officer (I did this once before and it took me four years to track down Lt. LaRocca in Florida and even then I got extremely lucky), a former NYC Commissioner of Domestic Violence, and a Current NYPD Police Inspector.

(3) I have held out hope that either Paul Prestia, Alex Reinert, Ron Kuby or Norman Siegel would take my case but they are all so busy.  Currently Mr. Siegel has expressed much interest in my case because I pointed out that quite possibly the absolute immunity defenses of the MDAO may be stricken as their actions towards me in their role as court advocate were INTER-TWINED with NON-ADVOCATE functions of intervening in the NYPD's investigative process as Lt. LaRocca's affidavit suggests (Exhibit #6 Affidavit from Lt. Larocca).   As established in *Doe v. Phillips* (citing *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996). I will need an attorney to help me navigate this very complicated case law.

(4)  I am also in desperate need of a lawyer to help me guide the class of people maliciously

prosecuted by the MDAO for CPLR 240.30(1) and other trafficking victims whose rights were

eschewed by authorities seeking to make use out of their proffer on other, unrelated cases and

unjustly targeted for prosecution and placed on the "Comp-Stat" list. I have found many other

victims that have suffered the same constitutional injuries springing from the same ill-charged

statute of the NYS penal code in the interim between your two orders and want to try to order

the city to change its practices.

5. Currently the Manhattan District Attorney is engaged in issuing a grant RFP to the tune of

~13 million dollars to various victims' services organizations. One of the reasons that I've had

such a hard time retaining counsel is because no one wants to go up against the MDAO as they

are beholden to him and his funding to support their advocacy programs ( See Attached Exhibit

#2 RFP from MDAO for Criminal Justice Initiatives.) It is impossible to find a non-profit who

wants to fight against the MDAO right now. He has an 850 million dollar war chest from

seizing funds from BNP Paribas for moving Iranian and Sudanese funds through NY banks

against international economic sanctions. How can I possibly fight against someone with such a

war chest alone? For the above reasons I am requesting Pro Bono counsel. Thank you Hon.

Judge Preska for your consideration of my request.

Sworn this 21st day of September, 2016

JOSEPH R DANIELS
Notary Public, State of New York
No. 02DA6213768
Qualified in Kings County
Commission Expires January 04, 20__

# EXHIBIT #2



**COMMUNITY**
**COUNSELING**
**& MEDIATION**

115 West 31st Street . 5th Floor . New York, NY  10001
PH 212 564 6006 . FAX 212 564 3440 . WWW.CCMNYC.ORG

January 25, 2016


To Whom It May Concern,

Ms. Kelly Price is a client here at the Manhattan clinic of Community Counseling and Mediation.  She is seen for weekly psychotherapy and has been diagnosed with:  F43.10 Posttraumatic Stress Disorder.  She began treatment on December 29, 2015 and her most recent appointment was Friday, January 15th.

Please inform if there is any additional information you may need.


Sincerely,


Alyssa Rodriguez, MHC Intern


Lauren L. Rigney, MS, LMHC, NCC
Clinic Director

**BOARD OF DIRECTORS**

LaWanda A. Jackson, Esq.
Chairperson

Russel Shuler
Treasurer

Jean Goossen
Secretary

Cassandra Underdue

Joyce Tyson
Past Chairperson

**ADVISORY BOARD**

Margaret Crawford

Jenny Morgenthau

Emory X. Brooks
President and CEO

THERAPEUTIC SERVICES FOR CHILDREN AND THEIR FAMILIES

# EXHIBIT #3

| Services | | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| 9/7/2011 | SD met with CL at CVTC. | CVTC |
| 9/7/2011 | SD did a lot of CC with CL during our meeting. | Crisis Counseling |
| 9/7/2011 | SD s/w CL about the likelihood that the charges against her will be dropped. | Info-Legal |
| 9/7/2011 | SD s/w CL about the history of DV b/w them and described the common tactics used by abusers to get what they want. | Info-Other |
| 9/7/2011 | SD advised CL that the court calendar governs when certain things happen, so if the ADA is planning on dropping the charges, he/she can do so at that court date. | Info-Legal |
| 9/7/2011 | SD suggested that CL look into the CCRB as a possible mechanism for holding the 28th precinct cops accountable for what they've done to her. | Info-Legal |
| 9/7/2011 | SD advised CL that the only real oversight with NYPD comes from IAB (which she's already involved with) and the CCRB. | Info-Legal |
| 9/7/2011 | SD advised CL that in cross-complaint cases, credibility is key and the pending criminal case against her puts her at a disadvantage as far as that's concerned. | Info-Legal |
| 9/7/2011 | SD informed CL that the first focus should be getting the charges dropped and once that's resolved, then see if it's possible to re-open the assault case against RESP. | Info-Legal |
| 9/7/2011 | SD gave CL my card with the LAP HL # on it in case she needs to contact me. | Info-Legal |
| 9/14/2011 | SD s/w CL who called in for me at CVTC. | Follow Up |
| 9/14/2011 | SD, with Lisa H. @ CVTC, attempted to contact Lisa Callahan @ the Mn DA's office. No answer. Left vm with my direct line and extension to call me back. | CJA-DA |
| 9/14/2011 | SD advised CL that b/c of the bureaucratic nature of the system, correcting mistakes like this take an extensive amount of time. | Info-Legal |
| 9/14/2011 | CL expressed fear at being incarcerated "for the rest of her life," and SD reminded her that these are all MISD charges and carry a maximum of 1 year. | Info-Legal |
| 9/14/2011 | SD advised CL that we tried to call Lisa Callahan at the DA's office, but there was no answer so we left a message asking her to call me back at the office on my extension. | Info-Legal |
| 9/14/2011 | SD advised CL that we have a working relationship with the DA's office and will try to utilize that to help her. | Info-Legal |
| 10/14/2011 | SD called Lisa @ CVTC to s/w her on CL's behalf about Belinda escorting CL to her appt with a City Council member to discuss her treatment by NYPD and the DA's office. No answer. Left vm. | PA-Legal |
| 10/28/2011 | SD s/w CL who called for me on the HL. | Follow Up |
| 10/28/2011 | SD offered CL emotional support given her treatment by the police and the DA's office. | Crisis Counseling |

1

| | Services | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| 10/28/2011 | SD advised CL that I can call the precinct to speak with the DVPO who took her rep't on RESP's latest attack (a PO Simmons) and find out what happened w/ the DIR. | Info-Legal |
| 10/28/2011 | SD advised CL that both Lisa @ CVTC and I have been trying to get through to the DA's office about getting the charges dropped but we're not getting anywhere on that front. | Info-Legal |
| 10/28/2011 | SD advised CL to send me her copy of the DIR and then I can call the 28th precinct to speak with DVPO Simmons about how it was "lost" according to Lt. LaRocca. Gave CL our fax #. | Info-Legal |
| 11/1/2011 | SD called the 28th precinct to speak w/ DVPO Simmons about this DIR. She was very resistant and wasn't able to provide any info except that the report got "lost in the system". Her stance was that CL must return to the precinct to file another one. | CJA-Police |
| 11/8/2011 | SD s/w CL about Belinda accompanying her to the precinct to make a report as well as to her meeting with Christine Quinn's office to report her treatment by the police. | Info-Legal |
| 11/8/2011 | SD offered CL emotional support and validated her feelings about the 28th precinct's handling of her case. | Crisis Counseling |
| 11/8/2011 | SD gave CL a run-down of the very unproductive phone call I had with the DVPO last week, and advised her that the issue is definitely not her fault. | Info-Legal |
| 11/8/2011 | CL called on the HL and SD s/w her about what happened when I called the 28th precinct last week. | Follow Up |
| 11/8/2011 | SD emailed KT & Anindita about having Belinda accompany CL to the 28th precinct to re-file the DIR that they "lost" in their system. | PA-Legal |
| 11/9/2011 | SD s/w CL briefly at CVTC about Belinda accompanying her to the 28th precinct. CL was just getting out of group at CVTC. | Follow Up |
| 11/9/2011 | SD s/w CL briefly at CVTC about Belinda accompanying her to the 28th precinct. CL was just getting out of group at CVTC. | Info-Legal |
| 11/9/2011 | SD provided CL w/ emotional support about her treatment by the 28th and confirmed that I was also stonewalled by the DVPO there. | Crisis Counseling |
| 11/9/2011 | SD advised CL that I would meet with Belinda on Friday to go over CL's case with her, so she should be able to accompany her next week. | Info-Legal |
| 11/15/2011 | SD called CL to set up a time for Belinda to accompany her to the precinct in order to make a report. No answer. Her voice mail box was full so I couldn't leave a message. | Follow Up |
| 11/15/2011 | SD called Lisa @ CVTC to s/w her about CL. No answer. Left vm asking for a call back. | PA-Legal |
| 11/15/2011 | SD s/w Lisa @ CVTC who returned my phone call. Discussed the accompaniment to the 28th precinct as well as CL possibly testifying at City Council. | PA-Legal |
| 11/16/2011 | SD met with CL at CVTC and briefly discussed Belinda escorting her | Info-Other |

| Services | | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| | to the 28th precinct to file her DIR as well as possibly testifying at City Council early next yr. | |
| 11/16/2011 | SD met with CL at CVTC and briefly discussed Belinda escorting her to the 28th precinct to file her DIR as well as possibly testifying at City Council early next yr. | Follow Up |
| 11/16/2011 | SD met with CL at CVTC and briefly discussed Belinda escorting her to the 28th precinct to file her DIR as well as possibly testifying at City Council early next yr. | Info-Legal |
| 11/22/2011 | SD called CVTC to s/w Lisa to let her know that Kelly and Belinda will be meeting at CVTC on Thursday (12/1) to head up to the 28th precinct. | PA-Legal |
| 11/22/2011 | BD s/w CL and arranged a date/time to meet @ CVTC and then to go up to the 28th precinct. | Info-Legal |
| 11/22/2011 | SD s/w CL who called in on the HL. Let her know that I hadn't been able to get a hold of her and had her s/w Belinda to schedule a time to go to the precinct. | Follow Up |
| 11/22/2011 | SD s/w CL who called in on the HL. Let her know that I hadn't been able to get a hold of her and had her s/w Belinda to schedule a time to go to the precinct. | Info-Legal |
| 11/30/2011 | SD advised CL that now that her OP was downgraded, it's critical that she obtain the DIR to prove the OP violation to the IDV judge. | Info-Legal |
| 11/30/2011 | SD called CL to s/w her about meeting tomorrow w/ BD to head to the 28th precinct. | Follow Up |
| 11/30/2011 | SD provided CL emotional support b/c of what occurred in IDV w/ her OP (hers was downgraded to a limited OP and he still has a stay away against her). | Crisis Counseling |
| 11/30/2011 | SD s/w CL about what happened in IDV court yesterday w/ her OP. | Info-Legal |
| 11/30/2011 | SD s/w CL about the possibility of a City Council hearing and let her know that it's still in the initial stages. I haven't heard anything more about it. | Info-Other |
| 11/30/2011 | SD confirmed the time/date for CL to meet with BD and head to the precinct. | Info-Legal |
| 12/1/2011 | SD called Lisa @ CVTC to give her an update on what took place today at the 28. No answer. Left vm. Also informed her about my conversation w/ KT and the potential to speak directly to Audrey but we need to be confident that there's nothing that can be used against CL. | PA-Legal |
| 12/1/2011 | BD met with CL at CVTC to accompany her to the 28th precinct. BD assisted CL with filing a DIR for the OP violation and emailed SD to inform her of what took place. CL was very happy with the effect of the accompaniment and articulated her desire for BD to accompany her in other respects. | CJA-DA |
| 12/1/2011 | SD s/w Lisa who called me back. Discussed CL's case and | PA- |

| | Services | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| | possibility of a meeting to try and hash out the probability of going to DA's office with a solid case for dropping the charges. Will speak to KT about this. | Counseling |
| 12/1/2011 | SD s/w Lisa who called me back. Discussed CL's case and possibility of a meeting to try and hash out the probability of going to DA's office with a solid case for dropping the charges. Will speak to KT about this. | PA-Legal |
| 12/1/2011 | BD met with CL at CVTC to accompany her to the 28th precinct. BD assisted CL with filing a DIR for the OP violation and emailed SD to inform her of what took place. CL was very happy with the effect of the accompaniment and articulated her desire for BD to accompany her in other respects. | CJA-Police |
| 12/1/2011 | BD met with CL at CVTC to accompany her to the 28th precinct. BD assisted CL with filing a DIR for the OP violation and emailed SD to inform her of what took place. CL was very happy with the effect of the accompaniment and articulated her desire for BD to accompany her in other respects. | Info-Legal |
| 12/1/2011 | BD met with CL at CVTC to accompany her to the 28th precinct. BD assisted CL with filing a DIR for the OP violation and emailed SD to inform her of what took place. CL was very happy with the effect of the accompaniment and articulated her desire for BD to accompany her in other respects. | Follow Up |
| 12/1/2011 | BD met with CL at CVTC to accompany her to the 28th precinct. BD assisted CL with filing a DIR for the OP violation and emailed SD to inform her of what took place. CL was very happy with the effect of the accompaniment and articulated her desire for BD to accompany her in other respects. | Crisis Counseling |
| 12/2/2011 | SD emailed Lisa to arrange a time for us to meet w/ KT to discuss CL's case and develop a strategy for advocating with the DA's office. | PA-Legal |
| 12/5/2011 | SD s/w CL who called in very upset b/c she ran into RESP at the bodega and had to turn around and walk out while they (him and his friend) laughed at her. | Follow Up |
| 12/5/2011 | SD s/w CL to try and de-escalate her a bit, and then reminded her that the best thing she can do for now is protect herself from the OP even though it's infuriating. | Crisis Counseling |
| 12/5/2011 | SD s/w CL to try and de-escalate her a bit, and then reminded her that the best thing she can do for now is protect herself from the OP even though it's infuriating. | Safety Planning |
| 12/5/2011 | SD advised CL that KT and I need to review her papers from court so that we can see what exactly happened there before we can do any kind of advocacy on her behalf. CL will fax them today. | Info-Legal |
| 12/6/2011 | SD called CL unblocked to f/u on her vm from yesterday about her fax. It was not in the fax machine. No answer. Left vm. | Follow Up |
| 12/6/2011 | SD s/w CL who called in returning my vm. Confirmed for her that I | Info-Legal |

4

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | did not receive the fax (checked again), so she is going to drop it by the office today. I gave her the address. | |
| 12/6/2011 | SD called CL unblocked to f/u on her vm from yesterday about her fax. It was not in the fax machine. No answer. Left vm. | Info-Legal |
| 12/6/2011 | SD s/w CL who called in returning my vm. Confirmed for her that I did not receive the fax (checked again), so she is going to drop it by the office today. I gave her the address. | Follow Up |
| 12/7/2011 | SD and Lisa s/w CL about how her actions, w/o the context of the history of DV against her, could have been seen as a batterer's actions. | Info-Legal |
| 12/7/2011 | SD met with CL at CVTC. | CVTC |
| 12/7/2011 | SD and Lisa s/w CL about the common tactics batterers use to intimidate their victims, and how some of her actions and statements could be misrepresented to look like those tactics. | Info-Legal |
| 12/7/2011 | SD s/w CL about the 28th precinct and their handling of the case. | Info-Legal |
| 12/7/2011 | SD provided CL w/ emotional support given the handling of her case to date. | Crisis Counseling |
| 12/7/2011 | SD s/w Lisa about CL's case and tried to set up a time for her to meet with KT and I to go over the court doc's in CL's possession and work out a coherent story to possibly present to the DA's office on CL's behalf. | PA-Legal |
| 12/7/2011 | SD s/w CL about the DA's office's handling of her case. | Info-Legal |
| 12/8/2011 | SD s/w Lisa and KT about setting up a meeting sometime next week. | PA-Legal |
| 12/13/2011 | SD tried calling Lisa @ CVTC again to set up a time to meet w/ KT re. CL's legal case. Trying for tomorrow afternoon near the end of the day. | PA-Legal |
| 12/13/2011 | SD s/w Lisa who called me back, and we set up the time of 3pm tomorrow to meet w/ KT to review CL's legal case. | PA-Legal |
| 12/20/2011 | SD called Lisa returning her message about setting up a time to meet w/ KT re. CL's legal case. No answer. Left vm. | PA-Other |
| 12/20/2011 | SD called Lisa returning her message about setting up a time to meet w/ KT re. CL's legal case. No answer. Left vm. | PA-Legal |
| 12/20/2011 | SD s/w Lisa @ CVTC and (tentatively) set up a meeting for next week on Wed @ 11 am. | PA-Legal |
| 12/28/2011 | SD met w/ Lisa & KT re. CL's case; Family Court OP, Crim Court charges, and proving she's a survivor of DV. | PA-Legal |
| 12/28/2011 | KT met w/ Lisa & SD re. CL's case: Family Court OP, Crim Court charges, and proving she's a surivor of DV. | PA-Counseling |
| 12/28/2011 | KT met w/ Lisa & SD re. CL's case: Family Court OP, Crim Court charges, and proving she's a surivor of DV. | PA-Legal |
| 12/28/2011 | SD met w/ Lisa & KT re. CL's case; Family Court OP, Crim Court | PA-Family |

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | charges, and proving she's a survivor of DV. | Court |
| 12/28/2011 | SD met w/ Lisa & KT re. CL's case; Family Court OP, Crim Court charges, and proving she's a survivor of DV. | PA-Counseling |
| 12/28/2011 | KT met w/ Lisa & SD re: Family Court OP, Crim Court charges, and proving she's a surivor of DV. | PA-Family Court |
| 1/5/2012 | KT met with Lisa, SD, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Family Court |
| 1/5/2012 | KT met with Lisa, SD, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Legal |
| 1/5/2012 | SD met w/ Lisa, KT, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | Safety Planning |
| 1/5/2012 | KT met with Lisa, SD, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | Safety Planning |
| 1/5/2012 | KT met with Lisa, SD, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | Crisis Counseling |
| 1/5/2012 | SD met w/ Lisa, KT, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | Crisis Counseling |
| 1/5/2012 | SD met w/ Lisa, KT, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Legal |
| 1/5/2012 | SD met w/ Lisa, KT, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Family Court |
| 1/5/2012 | SD met w/ Lisa, KT, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Counseling |
| 1/5/2012 | KT met with Lisa, SD, and CL to discuss the FC case, the CC charges against her, short and long-term priorities and goals, and forming an effective strategy to address them. | PA-Counseling |
| 1/11/2012 | SD explained what our strategy will be in advocating with the DA's office and reminded her that while we believe her story, we have to know exactly what took place (whether it was incriminating or not) so that we can lay out the entire context of DV and its impact on her actions. | Info-Legal |
| 1/11/2012 | SD s/w CL about the different sub-sections of the aggravated harassment charge that she's facing and what they mean. | Info-Legal |
| 1/11/2012 | SD met w/ CL at CVTC to discuss the charges in-depth and to get a | Follow Up |

| Services: | | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| | full account of her version of events. | |
| 1/11/2012 | SD did some emotional, physical, and legal SP w/ CL because he is still calling her and she is talking to him b/c she misses him. | Safety Planning |
| 1/11/2012 | SD provided CL w/ emotional support throughout this process. | Crisis Counseling |
| 1/11/2012 | SD s/w CL in-depth about her version of events (# of phone calls and texts, what was said, the nature of the interactions w/ him, and her intent during these interactions). Recorded CL's version of events in a timeline format. | PA-Legal |
| 1/12/2012 | KT s/w Audrey Moore, CHief of DV Bureau @ NYCo DA's office, to inquire about case and raise issues of victim treated as perp. AM requested email with identifying email; I will follow up with her. | CJA-DA |
| 1/13/2012 | SD s/w CL who called in on the HL. | Follow Up |
| 1/13/2012 | SD offered CL emotional support b/c of how traumatized she was yesterday over her attorney's conduct. | Crisis Counseling |
| 1/13/2012 | SD s/w CL about her decision to fire Kartegener and the possibility of tapping into her resources at the Legal Aid office since she had a good feeling about them. | Info-Legal |
| 1/13/2012 | SD s/w CL about what the plea offer could mean for her and that it illustrates a posible problem with the state's case. | Info-Legal |
| 1/13/2012 | SD did some SP w/ CL b/c she mentioned just waking up (3:15pm) after taking sleeping pills the night before. She clarified that she didn't try to overdose; she took them just to knock her out. | Safety Planning |
| 1/13/2012 | SD called Lisa @ CVTC to update her on the case. No answer. Left vm requesting a call back. | PA-Legal |
| 1/17/2012 | SD called for Lisa @ CVTC again returning her vm. No answer. Left vm letting her know what happened w/ ADA since she's meeting with CL at 2pm today and asked her to call me. | PA-Legal |
| 1/19/2012 | SD s/w CL who called in on the HL but she hung up when I tried to talk to her about leaving a vm on our phone rather than calling over and over again. I informed her that we can't have someone call incessantly and that I was planning on returning her message when CL got frustrated and hung up the phone. | Follow Up |
| 1/19/2012 | KT emailed Audrey Moore and Lisa Haileselassie re: case status and advocating for dismissal. | CJA-DA |
| 1/19/2012 | SD s/w Lisa who called in returning my vm. S/w her about CL's case and the upcoming disorderly conduct hearing. | PA-Counseling |
| 1/19/2012 | SD sent KT the info for CL's case and the info for RESP who then forwarded that info to Audrey Moore at the DA's office. | CJA-DA |
| 1/19/2012 | SD s/w Lisa who called in returning my vm. S/w her about CL's case and the upcoming disorderly conduct hearing. | PA-Legal |
| 1/19/2012 | SD s/w CL who called in on the HL but she hung up when I tried to talk to her about leaving a vm on our phone rather than calling over | Info-Legal |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | and over again. I informed her that we can't have someone call incessantly and that I was planning on returning her message when CL got frustrated and hung up the phone. | |
| 1/19/2012 | SD called Lisa @ CVTC back returning her vm from earlier today. No answer. Left a detailed vm about CL as well as about the other HL case they were helping us with. | PA-Legal |
| 1/20/2012 | SD s/w CL who called in on the HL about yesterday's conversation. | Follow Up |
| 1/20/2012 | SD gave CL emotional support in response to her anxiety over the criminal charges against her. | Crisis Counseling |
| 1/20/2012 | SD s/w CL about the criminal charges pending against her and the upcoming hearing on the disorderly conduct case. | Info-Legal |
| 1/24/2012 | SD s/w CL who called in on the HL w/ an update on the disorderly conduct case. ADA Wells offered an ACD, but she did not accept. | Info-Legal |
| 1/24/2012 | SD s/w CL who called in on the HL w/ an update on the disorderly conduct case. ADA Wells offered an ACD, but she did not accept. | Follow Up |
| 1/31/2012 | SD informed CL that we gave her info and the info of the case to the SVB chief (Audrey Moore) in the DA's office a couple weeks ago and we're still waiting on the outcome of that. | Info-Legal |
| 1/31/2012 | SD informed CL that even one missed court date can result in a dismissal of her FC case against RESP, which is what happened. However, she didn't show b/c Kartegener told her the wrong date and they've given her until Mon to come back w/ a new attorney. | Info-Legal |
| 1/31/2012 | SD informed CL that if ADA Wells knew she wasn't going to take the deal, then he didn't have to formally offer it to her (it sounds like he did not). | Info-Legal |
| 1/31/2012 | SD s/w CL who called in on the HL very upset and threatening to "go to the Bk Bridge" right now (basically providing an underlying implication of suicidality). | Crisis Counseling |
| 1/31/2012 | SD s/w CL who called in on the HL very upset and threatening to "go to the Bk Bridge" right now (basically providing an underlying implication of suicidality). | Follow Up |
| 2/3/2012 | SD s/w CL who called in on the HL about the pending crim charges. Wanted to know what we "sent" to the DA's office and I informed her that we only provided her name and the docket # of the case b/c that's all they wanted. | Follow Up |
| 2/3/2012 | SD s/w CL who called in on the HL about the pending crim charges. Wanted to know what we "sent" to the DA's office and I informed her that we only provided her name and the docket # of the case b/c that's all they wanted. | Info-Legal |
| 2/3/2012 | SD confirmed w/ CL that it would still be okay to present what she gave us to the DA's office if they ask for it. She said that was fine. | Info-Legal |
| 2/6/2012 | SD called Lisa @ CVTC back returning her call re. status of CL's case and advocacy with DA's office. | PA-Legal |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| 2/6/2012 | SD s/w CL who called in to update me on the case. | Follow Up |
| 2/6/2012 | SD s/w CL about the pending crim case and her new Legal Aid attorney. | Info-Legal |
| 2/6/2012 | SD s/w CL about meeting w/ her Legal Aid attorney. Will discuss w/ KT and see if there is an appropriate meeting time this week (may not be possible this week). | Info-Legal |
| 2/7/2012 | SD responded to CL's email w/ corrected count info, docket #'s, and an explanation of what an ACD is for her formal complaint about the DA's office. | Info-Legal |
| 2/7/2012 | SD s/w Lisa who called re. the pending criminal charges and case developments. Lisa will be seeing CL later today for a counseling session. | PA-Counseling |
| 2/7/2012 | SD responded to CL's email w/ corrected count info, docket #'s, and an explanation of what an ACD is for her formal complaint about the DA's office. | Info-Legal |
| 2/7/2012 | SD responded to CL's email w/ corrected count info, docket #'s, and an explanation of what an ACD is for her formal complaint about the DA's office. | Info-Legal |
| 2/7/2012 | SD responded to CL's email w/ corrected count info, docket #'s, and an explanation of what an ACD is for her formal complaint about the DA's office. | Follow Up |
| 2/7/2012 | SD s/w Lisa who called re. the pending criminal charges and case developments. Lisa will be seeing CL later today for a counseling session. | PA-Legal |
| 2/7/2012 | SD informed CL that Lisa @ CVTC called me re. updates on the case and that she's prob concerned about that. | Info-Counseling |
| 2/7/2012 | SD provided CL my email address b/c she would like me to look over the formal complaint she's going to write about the DA's office's handling of her case. I agreed to look at it. | Info-Legal |
| 2/7/2012 | SD informed CL that her theory as to overall office responsibility may not be true; it's highly unlikely the entire DA's office is involved (as opposed to ADA Stroben and/or Wells). | Info-Legal |
| 2/7/2012 | SD s/w CL who called in on the HL w/ an update on the case. Her neighbor is on the community board with an inspector at the 28th, and the neighbor asked him what was going on w/ CL's case. The inspector allegedly stated that it was all the DA's office. | Follow Up |
| 2/7/2012 | SD provided CL w/ emotional support re. the new info she's rec'd about the DA's office's conduct in her case (according to an inspector at the 28th precinct that is). | Crisis Counseling |
| 2/8/2012 | KT emailed Lisa Haileselassie and SD re: conversation with defense attorney and gathering evidence, developing plan for crisis management, reporting on performance in court, etc. | PA-Counseling |
| 2/8/2012 | KT emailed Tajuana Johnson w/ same info | PA-Legal |

9

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| 2/8/2012 | KT emailed Lisa Haileselassie and SD re: conversation with defense attorney and gathering evidence, developing plan for crisis management, reporting on performance in court, etc. | PA-Legal |
| 2/8/2012 | KT called Tajuana Johnson, CL's new defense attorney at Legal Aid, and left message advising of who I am and my role in case. | PA-Legal |
| 2/8/2012 | KT emailed Tajuana Johnson w/ same info | CJA-Other |
| 2/8/2012 | KT called Tajuana Johnson, CL's new defense attorney, and discussed situaton briefly. Discussed our role and the ways we can support. She is interested in our working with Kelly to prepare documents re: her victimization. I will reach out to SD and LH re: preparing this evidence. | CJA-Other |
| 2/8/2012 | KT called Tajuana Johnson, CL's new defense attorney at Legal Aid, and left message advising of who I am and my role in case. | CJA-Other |
| 2/15/2012 | SD met w/ CL briefly at CVTC re. doc's to bring to Friday's meeting w/ Tajuana (e.g. records from glass companies, medical records from incidents identified on her timeline, etc.). CL stated that she's scared about the trial and I validated her feelings about that. | Follow Up |
| 2/15/2012 | SD met w/ CL briefly at CVTC re. doc's to bring to Friday's meeting w/ Tajuana (e.g. records from glass companies, medical records from incidents identified on her timeline, etc.). CL stated that she's scared about the trial and I validated her feelings about that. | Info-Legal |
| 2/15/2012 | SD met w/ CL briefly at CVTC re. doc's to bring to Friday's meeting w/ Tajuana (e.g. records from glass companies, medical records from incidents identified on her timeline, etc.). CL stated that she's scared about the trial and I validated her feelings about that. | Crisis Counseling |
| 2/16/2012 | SD called CL to remind her to bring the doctor's reports and receipts from the glass companies tomorrow. No answer. Left vm and also emailed CL w/ the same request. | Follow Up |
| 2/16/2012 | SD called CL to remind her to bring the doctor's reports and receipts from the glass companies tomorrow. No answer. Left vm and also emailed CL w/ the same request. | Info-Legal |
| 2/17/2012 | KT met w/ Lisa Haileselassie, Tajuana Johnson and CL to discuss criminal case. Discussed strategy, prospects, useful ways to prepare. | Follow Up |
| 2/17/2012 | KT met w/ Lisa Haileselassie, Tajuana Johnson and CL to discuss criminal case. Discussed strategy, prospects, ACD v. dismissal, useful ways to prepare. | Safety Planning |
| 2/17/2012 | KT met w/ Lisa Haileselassie, Tajuana Johnson and CL to discuss criminal case. Discussed strategy, prospects, useful ways to prepare. | PA-Legal |
| 2/17/2012 | KT met w/ Lisa Haileselassie and Tajuana Johnson to discuss case. Discussed outlook, position of prosecutor, attorney's impression of defense issues. Discussed ways we can assist, victimization, etc. | PA-Legal |
| 2/17/2012 | KT met w/ Lisa Haileselassie and Tajuana Johnson to discuss case. | Safety |

10

| Services | | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
|  | Discussed outlook, position of prosecutor, attorney's impression of defense issues. Discussed ways we can assist, victimization, bottom lines for CL re: safety and autonomy. | Planning |
| 2/17/2012 | KT met w/ Lisa Haileselassie and Tajuana Johnson to discuss case. Discussed outlook, position of prosecutor, attorney's impression of defense issues. Discussed ways we can assist, victimization, etc. | CJA-Other |
| 2/17/2012 | KT met w/ Lisa Haileselassie, Tajuana Johnson and CL to discuss criminal case. Discussed strategy, prospects, useful ways to prepare. | CJA-Other |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. | Crisis Counseling |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. Discussed safety issues while she remains living next door to perp w/o an active order, which was dismissed 1/31/12. | Safety Planning |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. | Follow Up |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a | CJA-Other |

11

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. | |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. | PA-Legal |
| 2/24/2012 | KT met w/ CL and defense atty Tajuana Johnson. Discussed history of abuse and clarified facts from timeline. Discussed current charges against her and potential outcomes. KT and CL listened in to TJ's phone call with ADA Wells. They have a recording of the OP violation and therefore TJ feels she will not be offered lower than a Family ACD. Discussed future recourse for injustice of dropping charges against her. TJ offered to help bring a case against prosecutor for abuse of discretion. CL very upset at prospects and will consider whether to accept ACD. TJ advised she intends to do a full investigation. We will support however we can. | Info-Legal |
| 2/24/2012 | Discussed right to file for another OP if necessary. | Info-Family Court |
| 2/27/2012 | SD informed CL that I don't know how this is all going to play out, but that the ADA has to prove that she had the intent to commit the crimes she's charged with. | Info-Legal |
| 2/27/2012 | SD advised CL to take her cues from Tajuana and to let her handle the case. | Info-Legal |
| 2/27/2012 | SD s/w CL briefly but I had not spoken to KT yet about the meeting they all had on Friday (I was out of town). Provided her w/ some emotional support and also discussed the statements the ADA apparently made to Tajuana. | Info-Legal |
| 2/27/2012 | SD s/w CL briefly but I had not spoken to KT yet about the meeting they all had on Friday (I was out of town). Provided her w/ some emotional support and also discussed the statements the ADA apparently made to Tajuana. | Follow Up |
| 2/27/2012 | SD s/w CL briefly but I had not spoken to KT yet about the meeting they all had on Friday (I was out of town). Provided her w/ some emotional support and also discussed the statements the ADA apparently made to Tajuana. | Crisis Counseling |
| 3/2/2012 | SD s/w CL who called in scared about the hearing on Tuesday. SD | Crisis |

12

| | Services | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | offered emotional support. | Counseling |
| 3/2/2012 | SD s/w CL who called back to ask about the ACD and her ability to sue after the 1 yr time period is up. I confirmed what both KT and Tajuana told her about this on Friday. | Info-Legal |
| 3/2/2012 | SD s/w CL who called back to ask about the ACD and her ability to sue after the 1 yr time period is up. I confirmed what both KT and Tajuana told her about this on Friday. | Follow Up |
| 3/2/2012 | SD s/w Lisa @ CVTC about my conversation w/ CL earlier today. Let her know that CL was pretty upset, but I was able to talk her down. | PA-Counseling |
| 3/2/2012 | SD s/w Lisa @ CVTC who returned my call. Discussed the hearing on Tuesday and the fact that she might not be able to go. Also discussed the 30/30, which is a no go b/c Kartegener did ask for an adjournment. | PA-Legal |
| 3/2/2012 | SD informed CL that I have no idea who the "phone expert" the ADA mentioned to Tajuana would be, but that Raheem has to confirm to the court that the phone call came from CL on the alleged date after the OP was issued. | Info-Legal |
| 3/2/2012 | SD s/w CL about Raheem showing up at the hearing on Tuesday to vet the phone call for the contempt of court charge, and CL reiterated that he won't be there. | Info-Legal |
| 3/2/2012 | SD informed CL that the ADA has to prove 3 things: 1) that she committed the crime, 2) that she had the intent to commit the crime, and 3) these two things beyond a reasonable doubt. | Info-Legal |
| 3/2/2012 | SD s/w CL who called in scared about the hearing on Tuesday. SD offered emotional support. | Follow Up |
| 3/2/2012 | SD informed CL that if this goes to trial, the ADA has to provide his evidence to Tajuana who will have the opportunity to investigate all of it. | Info-Legal |
| 3/6/2012 | SD s/w CL after hearing and advised her that it's essential that she listen to and trust Tajuana's actions in court. Confirmed what Tajuana told her after court about how to act when in front of the judge, and to let her make the plays. | Crisis Counseling |
| 3/6/2012 | SD s/w CL after hearing and informed her that when Tajuana checked the calendar, she found that Kartegener had agreed to each adjournment, so today is the first day of the 30/30 clock. This is why she needs to let Tajuana control what's happening in court (she was trying to push the next hearing back into April to run down the clock). | Info-Legal |
| 3/6/2012 | SD went to IDV w/ Tajuana, Rammel (from CVTC), and CL for criminal trial hearing. People weren't ready. 30/30 time started. Adjourned until 3/15/12. | PA-Legal |
| 3/6/2012 | SD s/w CL after hearing and advised her that it's essential that she listen to and trust Tajuana's actions in court. Confirmed what | Info-Legal |

13

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | Tajuana told her after court about how to act when in front of the judge, and to let her make the plays. | |
| 3/6/2012 | SD s/w CL after hearing about the trajectory of the case over the past year from 300+ charges to an ACD to now not being ready when Tajuana indicated she is ready. | Info-Legal |
| 3/6/2012 | SD went to IDV w/ Tajuana, Rammel (from CVTC), and CL for criminal trial hearing. People weren't ready. 30/30 time started. Adjourned until 3/15/12. | CJA-DA |
| 3/6/2012 | SD went to IDV w/ Tajuana, Rammel (from CVTC), and CL for criminal trial hearing. People weren't ready. 30/30 time started. Adjourned until 3/15/12. | PA-Counseling |
| 3/8/2012 | KT s/w Tajuana, CL's defense attorney. Discussed issues with the case, potential responses to assist with the criminal charges. | PA-Legal |
| 3/9/2012 | KT s/w CL and discussed what happened in court. Discussed straying from plan, CL's concerns with prosecution, etc. Did CC. | Follow Up |
| 3/9/2012 | KT s/w CL and discussed what happened in court. Discussed straying from plan, CL's concerns with prosecution, etc. Did CC. | Crisis Counseling |
| 3/9/2012 | KT s/w CL and discussed what happened in court. Discussed straying from plan, CL's concerns with prosecution, etc. Did CC. | Info-Legal |
| 3/13/2012 | KT s/w CL's social worker Lisa Haileselassie and discussed case. Discussed mental health issues and appropriate responses. Discussed ways to assist CL's attorney. | PA-Counseling |
| 3/13/2012 | KT s/w CL's social worker Lisa Haileselassie and discussed case. Discussed mental health issues and appropriate responses. Discussed ways to assist CL's attorney. | CVTC |
| 3/13/2012 | KT s/w CL's social worker Lisa Haileselassie and discussed case. Discussed mental health issues and appropriate responses. Discussed ways to assist CL's attorney. | PA-Legal |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as she was extemely distressed by the conversation. Discussed plan for upcoming court | Crisis Counseling |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as she was extemely distressed by the conversation. Discussed plan for upcoming court | Info-Legal |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as | PA-Legal |

| | Services | |
|---|---|---|
| Service Date | Service Notes | Type of Service |
| | she was extemely distressed by the conversation. Discussed plan for upcoming court | |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as she was extemely distressed by the conversation. Discussed plan for upcoming court | Safety Planning |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as she was extemely distressed by the conversation. Discussed plan for upcoming court | Follow Up |
| 3/14/2012 | KT met w/ CL and Tajuana Johnson; discussed cases. Discussed defense for violation as well as disorderly conduct. Discussed issues with presentation in court, how to manage abusive and manipulative tactics by abuser, how to stay safe during process. Did CC w/ CL as she was extemely distressed by the conversation. Discussed plan for upcoming court | CJA-Other |
| 3/15/2012 | KT s/w CL who reported on court case. Raheem did not show up in court again. Prosecutor requested an adjournment on the case and advised he still needed more time. CL distressed by the extension of the case but understood the legal strategy. | Follow Up |
| 3/15/2012 | KT s/w CL who reported on court case. Raheem did not show up in court again. Prosecutor requested an adjournment on the case and advised he still needed more time. CL distressed by the extension of the case but understood the legal strategy. | Crisis Counseling |
| 3/15/2012 | KT s/w CL who reported on court case. Raheem did not show up in court again. Prosecutor requested an adjournment on the case and advised he still needed more time. CL distressed by the extension of the case but understood the legal strategy. | Info-Legal |
| 3/21/2012 | KT s/w CL and discussed upcoming court. She spoke with her defense attorney who wants her to begin collecting evidence. Atty said she does not want to flush out the case before seeing what the prosecutor has. CL and I discussed abuse issues and her efforts to try to keep the situation under wraps. Did safety planning and discussed strategy for getting protection once this is over. CL became very distressed during the conversation and I tried to calm her down a little bit. She is very worried about the ways her abuser will use this against her in the future. | Info-Legal |
| 3/21/2012 | KT s/w CL and discussed upcoming court. She spoke with her defense attorney who wants her to begin collecting evidence. Atty said she does not want to flush out the case before seeing what the prosecutor has. CL and I discussed abuse issues and her efforts to | Safety Planning |

15

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | try to keep the situation under wraps. Did safety planning and discussed strategy for getting protection once this is over. CL became very distressed during the conversation and I tried to calm her down a little bit. She is very worried about the ways her abuser will use this against her in the future. | |
| 3/21/2012 | KT s/w CL and discussed upcoming court. She spoke with her defense attorney who wants her to begin collecting evidence. Atty said she does not want to flush out the case before seeing what the prosecutor has. CL and I discussed abuse issues and her efforts to try to keep the situation under wraps. Did safety planning and discussed strategy for getting protection once this is over. CL became very distressed during the conversation and I tried to calm her down a little bit. She is very worried about the ways her abuser will use this against her in the future. | Follow Up |
| 3/21/2012 | KT s/w CL and discussed upcoming court. She spoke with her defense attorney who wants her to begin collecting evidence. Atty said she does not want to flush out the case before seeing what the prosecutor has. CL and I discussed abuse issues and her efforts to try to keep the situation under wraps. Did safety planning and discussed strategy for getting protection once this is over. CL became very distressed during the conversation and I tried to calm her down a little bit. She is very worried about the ways her abuser will use this against her in the future. | Crisis Counseling |
| 3/26/2012 | KT s/w CL and discussed that I could not attend Monday's meeting. CL understood. CL stated that she was receiving messages on her "Kelly Price" phone line from a blocked number and she believed it was Kenya Wells calling her. CL stated that the called said sexually explicit things and was harassing her. She has received repeated messages from this number. CL was very upset. Did a little CC. Discussed legal strategy and our potential role - will help to gather documents as her defense attorney sees fit. | Follow Up |
| 3/26/2012 | KT s/w CL and discussed that I could not attend Monday's meeting. CL understood. CL stated that she was receiving messages on her "Kelly Price" phone line from a blocked number and she believed it was Kenya Wells calling her. CL stated that the called said sexually explicit things and was harassing her. She has received repeated messages from this number. CL was very upset. Did a little CC. Discussed legal strategy and our potential role - will help to gather documents as her defense attorney sees fit. | Crisis Counseling |
| 3/26/2012 | KT s/w CL and discussed that I could not attend Monday's meeting. CL understood. CL stated that she was receiving messages on her "Kelly Price" phone line from a blocked number and she believed it was Kenya Wells calling her. CL stated that the called said sexually explicit things and was harassing her. She has received repeated messages from this number. CL was very upset. Did a little CC. Discussed legal strategy and our potential role - will help to gather | Info-Legal |

| | Services | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| | documents as her defense attorney sees fit. | |
| 4/3/2012 | SD s/w CL who called in with an update on court today. ADA announced he wasn't ready, and the case was adjourned until 5/23/12. Discussed with CL that WebCrims won't be reliable for counting days b/c it's dependent on the judge's calendar. CL requested call back from KT. | Follow Up |
| 4/3/2012 | SD s/w CL who called in with an update on court today. ADA announced he wasn't ready, and the case was adjourned until 5/23/12. Discussed with CL that WebCrims won't be reliable for counting days b/c it's dependent on the judge's calendar. CL requested call back from KT. | Crisis Counseling |
| 4/3/2012 | SD s/w CL who called in with an update on court today. ADA announced he wasn't ready, and the case was adjourned until 5/23/12. Discussed with CL that WebCrims won't be reliable for counting days b/c it's dependent on the judge's calendar. CL requested call back from KT. | Info-Legal |
| 4/3/2012 | KT called back CL | Follow Up |
| 4/3/2012 | KT rec'd message from CL | Follow Up |
| 4/4/2012 | SD consulted w/ Lisa at CVTC after s/w CL the day before re. charges pending against CL, CL working w/ her attorney instead of around her, and how CL is coping with everything. | PA-Legal |
| 4/4/2012 | SD consulted w/ Lisa at CVTC after s/w CL the day before re. charges pending against CL, CL working w/ her attorney instead of around her, and how CL is coping with everything. | PA-Counseling |
| 4/4/2012 | KT s/w CL and made plans for meeting with attorney - scheduled tentatively for next week. | Follow Up |
| 4/4/2012 | KT left message for CL | Follow Up |
| 4/4/2012 | KT s/w CL and made plans for meeting with attorney - scheduled tentatively for next week. | Info-Legal |
| 4/16/2012 | KT rec'd message from CL inquiring about date of appointment | Follow Up |
| 4/16/2012 | KT l/m for CL advising of appointment tomorrow at 4 | Follow Up |
| 4/16/2012 | KT l/m for CL advising of appointment tomorrow at 4 | Info-Legal |
| 4/16/2012 | KT emailed CL's attorney to confirm appointment time | CJA-Other |
| 4/16/2012 | KT rec'd response from CL's attorney advising she was out of town and would check upon return | CJA-Other |
| 4/17/2012 | KT rec'd message from CL confirming appt | Follow Up |
| 4/17/2012 | KT left message for CL confirming appt. | Follow Up |
| 4/17/2012 | KT rec'd email from CL's attorney advising she can still meet at 4 today if CL is available. | CJA-Other |
| 4/30/2012 | KT s/w CL and discussed housing court issues. Discussed eviction process and strategies to respond. CL stated she has retained records and we discussed requesting a summary of allegations and | Crisis Counseling |

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | responding in turn to each with the evidence she has. | |
| 4/30/2012 | KT s/w CL and discussed housing court issues. Discussed eviction process and strategies to respond. CL stated she has retained records and we discussed requesting a summary of allegations and responding in turn to each with the evidence she has. | Info-Housing |
| 4/30/2012 | Discussed pending criminal case and meeting - will meet tomorrow at 4 with attorney. | CJA-Other |
| 4/30/2012 | KT s/w CL and discussed housing court issues. Discussed eviction process and strategies to respond. CL stated she has retained records and we discussed requesting a summary of allegations and responding in turn to each with the evidence she has. | Follow Up |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct - failure to pursue witnesses, etc. | Crisis Counseling |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct - failure to pursue witnesses, etc. | PA-Legal |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct - failure to pursue witnesses, etc. | Safety Planning |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct - failure to pursue witnesses, etc. | Follow Up |
| 5/1/2012 | KT attended meeting with CL at CL's attorneys office. Discussed collection of evidence to establish victimization. Discussed evidentiary issues, legal relevance, defenses. Discussed issues with prosecutorial misconduct - failure to pursue witnesses, etc. | CJA-Other |
| 5/4/2012 | KT left message for CL re: evidence collecting. | Follow Up |
| 5/4/2012 | MM left message for CL. To collect more info on issues on case. | Follow Up |
| 5/16/2012 | KT emailed CL's attorney re: criminal case and evidence collecting. | CJA-Other |
| 5/16/2012 | KT rec'd response from CL's attorney advising no progress had been made. | CJA-Other |
| 5/22/2012 | KT rec'd email from CL's attorney advising that the 30-30 deadline had run out according to her information. | CJA-Other |
| 5/22/2012 | KT replied to CL's attorney via email. | CJA-Other |
| 5/24/2012 | SD s/w CL again who called back to say that she was able to find the case on WebCrims. I tried again and found it too. Case continued to 6/6/12. Verified to CL that I could find it, and suggested that I probably couldn't find it this morning b/c the site hadn't updated | Follow Up |

| | Services | |
|---|---|---|
| **ServiceDate** | **Service Notes** | **Type of Service** |
| | yet. | |
| 5/24/2012 | SD called Lisa @ CVTC to verify the charges were dropped. No answer. Left vm. | PA-Legal |
| 5/24/2012 | SD s/w CL again who called back to say that she was able to find the case on WebCrims. I tried again and found it too. Case continued to 6/6/12. Verified to CL that I could find it, and suggested that I probably couldn't find it this morning b/c the site hadn't updated yet. | Crisis Counseling |
| 5/24/2012 | SD s/w CL again who called back to say that she was able to find the case on WebCrims. I tried again and found it too. Case continued to 6/6/12. Verified to CL that I could find it, and suggested that I probably couldn't find it this morning b/c the site hadn't updated yet. | Info-Legal |
| 5/24/2012 | SD s/w CL who called in about what happened in the hearing yesterday. Informed her of what I told Lisa about the WebCrims info, but also that this doesn't mean the case was dismissed. It's possible the website hasn't been updated yet; however, it sounds like the case is about to be dismissed based on what happened in yesterday's hearing. | Follow Up |
| 5/24/2012 | SD s/w CL who called in about what happened in the hearing yesterday. Informed her of what I told Lisa about the WebCrims info, but also that this doesn't mean the case was dismissed. It's possible the website hasn't been updated yet; however, it sounds like the case is about to be dismissed based on what happened in yesterday's hearing. | Info-Legal |
| 5/24/2012 | SD s/w CL who called in about what happened in the hearing yesterday. Informed her of what I told Lisa about the WebCrims info, but also that this doesn't mean the case was dismissed. It's possible the website hasn't been updated yet; however, it sounds like the case is about to be dismissed based on what happened in yesterday's hearing. | Crisis Counseling |
| 5/29/2012 | KT s/w CL and discussed court case. She believes that her case will be dismissed based on speedy trial requirements. CL's attorney will file a motion to dismiss on that basis. Explained to CL that once the motion to dismiss is filed the prosecutor will have the opportunity to reply and the cas | |
| 5/30/2012 | SD s/w CL briefly at CVTC and discussed the CC case. CL believes the case will be dropped b/c her attorney assured she would file the motion to dismiss. Advised CL to be patient and follow her attorney's lead. | Crisis Counseling |
| 5/30/2012 | SD s/w CL briefly at CVTC and discussed the CC case. CL believes the case will be dropped b/c her attorney assured she would file the motion to dismiss. Advised CL to be patient and follow her attorney's lead. | Info-Legal |
| 5/30/2012 | SD s/w CL briefly at CVTC and discussed the CC case. CL believes | Follow Up |

19

| Services | | |
|---|---|---|
| ServiceDate | Service Notes | Type of Service |
| | the case will be dropped b/c her attorney assured she would file the motion to dismiss. Advised CL to be patient and follow her attorney's lead. | |
| 5/31/2012 | SD informed CL that in regards to getting her bail back, she will need ID but she should also discuss that w/ Tajuana to get a better idea of how that will all work out. | Info-Legal |
| 5/31/2012 | SD s/w CL who called back returning my vm. She said that Tajuana filed the motion to dismiss today, and is trying to get a clerk to look at it today (she's unsure if she can pull that off). CL will keep us posted. | Follow Up |
| 5/31/2012 | SD called CL back returning her messages from this morning. No answer. Left vm. | Follow Up |
| 6/6/2012 | KT emailed CL's attorney in response. | CJA-Other |
| 6/6/2012 | KT called CL and left message advising atty was aware of situation. | Follow Up |
| 6/6/2012 | KT rec'd email from atty advising she had heard the case got called and re: CL's reaction. | CJA-Other |
| 6/6/2012 | KT emailed CL's attorney to see where she was. | CJA-Other |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Info-Other |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Info-Legal |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Crisis Counseling |
| 6/6/2012 | KT s/w CL who called in crisis. Her attorney was late to court and the judge called the case, knowing she was not present. The case got adjourned for two months. CL is very fearful of what will happen and stressed over trying to manage this case and the pressure from Raheem. Discussed options; she is considering trying to fire Tajuana and represent herself today so that the hearing will be heard. | Follow Up |
| 6/6/2012 | KT called CL and left message advising atty was aware of situation. | Info-Legal |
| 6/13/2012 | SD explained that if her defense attorney had known about the cert. of readiness, then the mixup over what time the hearing was at | Info-Legal |

# EXHIBIT #4

cogneurosociety.org

# The Neuroscience of Trauma from Sexual Assault

lmunoz

"I believe that you believe something happened to you." The young woman repeated the detective's statement to me again. It had been the detective's response to her question of whether he believed her account of the brutal sexual assault she had experienced the past weekend.

As a counselor on the local rape crisis hotline, it was not the first time I had heard such a demoralizing story of an individual's attempt to report sexual violence to law enforcement. Because her story had been disjointed, and she had stumbled over several sections of it, the detective had thought that she was confabulating, creating a crime where none had occurred.

When I hear of this dynamic, my thoughts often turn to the neuroscience of trauma. The brain's response to trauma is complex, and human behavior in response to trauma, particularly sexual violence, is not well-understood but recent research does offer some important insights.

The rate of false report in sexual violence is actually low, estimated by most studies to be around 7% (to compare, this is considerably lower than the rate of insurance fraud). Moreover, research shows that sexual violence is in fact underreported: Many more incidents of violence occur than are reported to law enforcement or other legal authorities. Studies show that there are many factors that may predict whether an individual will report, including level of acquaintance with the perpetrator and whether alcohol was consumed.

Taken together, research findings on the factually low rate of false report and on the underreporting of the crime itself demonstrate a clear contradiction in people's conceptions of sexual violence and that violence in reality. There is a mismatch between media portrayals of "ideal victims"- young, sober women attacked at knifepoint in parking lots at night – and research on real-world victims- nearly three quarters of whom know the perpetrator (rising to nearly 90% on college campuses) and only 7% of whom were attacked with a firearm, knife, or other weapon.

This kind of misunderstanding of an individual's experience of sexual assault is heartbreakingly common. A high school student's report of sexual assault was viewed skeptically by an elected lawmaker, who stated on the public record that "some girls, they rape so easy." More recently, a fan base made it clear that it did not believe a woman accusing a sports hero of rape, and that she was making the story up for attention.

Why are victims so often not believed? A large amount of this disbelief may be linked to the behavioral patterns of victims themselves, which can vary widely from case to case and often include behaviors of which the average police detective would be skeptical. To understand these

patterns, it is helpful to look at how the brain and body respond to stress and trauma, such as that experienced during sexual violence.

A relatively new area of the literature on human response to trauma, particularly the trauma experienced during sexual violence, is that of "tonic immobility." Defined as self-paralysis, or as the inability to move even when not forcibly restrained, tonic immobility has long been studied in non-human animals as the "freeze" response to extreme stress. Recently, it has been observed in the laboratory as a stress response in humans, as well. This finding explains the reaction of many victims of sexual violence, who report that they felt like they could not escape, even when no weapon was present.

Additionally, due to an entire cascade of hormonal changes, which includes oxytocin and opiates, associated with pain management, adrenaline, commonly associated with "fight or flight," and cortisol, functional connectivity between different areas of the brain is affected. In particular, this situation affects pathways important for memory formation, which means that an individual can fail to correctly encode and store memories experienced during trauma. While an individual generally will remember the traumatic event itself (unless alcohol or drugs are present in the system), these memories will feel fragmented, and may take time to piece together in a way that makes narrative sense.

Behavioral patterns in individuals who have experienced sexual violence mirror those seen in other traumatized populations, like combat veterans. This pattern of symptoms, known as post-traumatic stress disorder, or PTSD, can include emotional numbness, intrusive memories of the traumatic event, and hyperarousal (increased awareness of one's surroundings, or constantly being "on guard").

Research shows that the majority of individuals who experience sexual assault demonstrate at least some of these symptoms of PTSD immediately after the assault and through the two weeks following the assault. Nine months after the assault, 30% of individuals still reported this pattern of symptoms. Overall, it is estimated show that nearly one-third of all victims of sexual assault will develop PTSD at some point in their lives.

These findings are complicated by the fact that the response of any given person to trauma can look extremely different, based on previous life experiences and health factors. Research has found that cognitive variables, such as perceived negative responses of other people and poor coping strategies, were significantly linked both to development of PTSD and severity of PTSD. In another study, lower cortisol levels as measured in the emergency room have been related to increased risk for the development of PTSD. In other words, a maladaptive version of nature/nurture is involved in individuals' responses to trauma.

As with many questions related to health, it is difficult to pinpoint the cause: existing neurobiological and psychosocial risk factors, such as mental illness, can contribute to the development of PTSD, and PTSD can lead to other health problems. There is no hard and fast rule of victimology: every individual who experiences sexual violence will respond differently.

Therefore, the detective who was unable to believe the story told to him by my crisis caller was likely misinterpreting the discrepancies in her story as lies, rather than as her brain's responses to extreme trauma. Best practices now suggest that officers wait at least two sleep cycles, generally 48 hours, before interviewing a victim of sexual violence. Additionally, the interview should be handled in a victim-centered manner, not as an interrogation. Research-informed practices have the potential for not only better outcomes for survivors of sexual violence, but also for reporting and prosecution rates for our legal system.

—

Kathryn Gigler is a doctoral candidate studying the cognitive neuroscience of learning and memory at Northwestern University. She also serves as director of the Women's Center at Elizabeth City State University.

A version of this column also appeared on Huffington Post as "How Brain Science Can Help Explain Discrepancies in a Sexual Assault Survivor's Story."

**Are you a member of CNS with research you want to share? Consider contributing a guest post about your work or trends in the field. *It could then become part of the new HuffPost Science series exploring the surge of new research on the human brain.* Email your ideas to CNS Public Information Officer, Lisa M.P. Munoz (cns.publicaffairs@gmail.com).**

# EXHIBIT #5



THE CITY OF NEW YORK

# LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NY 10007

ZACHARY W. CARTER
*Corporation Counsel*

DIANA LAWLESS
Phone (212) 356-0848
Fax (212) 356-2509
E-mail dlawless@law.nyc.gov

January 27, 2016

<u>By Email</u>

Hon. Catherine O'Hagan Wolfe, Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *Price v. Simmons*, Case No. 16-243

Dear Ms. Wolfe:

The New York City Law Department respectfully requests that it be stricken from the docket sheet as appearing for defendants Detective Linda Simmons, Inspector Obe, and Rose Pierre-Louis in this appeal.

In this case, the district court dismissed the plaintiff's complaint *sua sponte*, apparently before these defendants had been served with process. These defendants did not appear before the district court, and thus the Law Department did not enter an appearance on their behalves. We therefore request that the Law Department not be listed on the docket sheet for this appeal as appearing as counsel for these defendants.

In addition, please note the attached order of the District Court dated January 26, 2016 (ECF No. 11), which granted the plaintiff reconsideration of the order appealed from.

We will continue to monitor the appeal as a matter of interest.

Thank you for your time and consideration.

Respectfully,

Diana Lawless
Assistant Corporation Counsel

encl: District Court order dated January 26, 2016 (ECF No. 11)

cc:, Kelly Price, appellant *pro se* (by U.S. mail)
    Patricia J. Bailey, Assistant District Attorney (by U.S. mail)

2

# EXHIBIT #6

My name is Mark Christopher LaRocca.    December 18, 2015
Lieutenant in the New York City Police Department. I worked as a
assigned to the 028 Precinct in Manhattan. From 1997 to 2013
I had several conversations with Ms. Kelly Price in which she
claimed to be a crime victim, specifically a victim of
domestic violence.

During my interviews of Ms. Price, I found her allegations
of abuse, to be credible and with merit. I felt there was
sufficient evidence to prepare complaint reports to document
these allegations which would then be further investigated by
the Precinct Domestic Violence Officer and/or the Precinct Detective
Squad.

After speaking with the Detectives regarding Ms. Price's
allegations, I was informed that prior to a report being further
investigated, a phone call to someone in the Manhattan District
Attorney's Office who was familiar with Ms. Price's history of
reporting crimes needed to be consulted.

Ms. Price informed me that she felt this hindered her ability
to receive fair treatment regarding the investigation of her complaints.
I informed her that as a victim, she should speak with the
supervisor of the person at the Manhattan District Attorney's Office
handling her complaint if she felt her complaints were being
stonewalled and not acted upon in a fair manner.

MARK C. LaROCCA
Mark C. LaRocca

Exhibit #7


**CJII** CRIMINAL JUSTICE INVESTMENT INITIATIVE


District Attorney of
New York County


CUNY INSTITUTE
FOR STATE & LOCAL
GOVERNANCE

# Criminal Justice Investment Initiative

**Request for Proposals to**
**Increase Access to Services**
**for Survivors of Crime**
No. 004
Expires 10/14/2016

# Table of Contents

I.      Cover Sheet............................................................................... 1

II.     Key Terms.............................................................................. 3

III.    Summary of the Request for Proposals............................................. 4

IV.     Anticipated Scope of Services....................................................... 7

V.      Deliverables............................................................................ 12

VI.     Proposal Content and Format....................................................... 12

VII.    Proposal Evaluation and Contract Award.......................................... 17

VIII.   Appendices.............................................................................. 19

## I.   Cover Sheet for Access to Services

### A.  Goal of the RFP

The goal of this Request for Proposals (RFP) is to solicit proposals that *increase access to services for survivors of crime*, particularly those from underserved groups, which may in turn *increase crime reporting*.[a] Programs that address barriers to service access have the potential to increase service usage and increase reporting, both of which may improve survivor outcomes. Increased use of services and reporting may also facilitate the prosecution of criminals and mitigate the increased risk of criminal offending that is often associated with victimization[1] or circumstances surrounding victimization,[2] ultimately increasing public safety.

Applicants may propose to a) expand/enhance their existing capacity to deliver services or b) develop and pilot new approaches to accomplish the aforementioned goals. Proposed programs should focus on one or more of the following groups that face significant barriers to access: immigrants; lesbian, gay, bisexual, transgender, or queer (LGBTQ) individuals; individuals who are D/deaf or hard of hearing; individuals with disabilities; people of color; and/or individuals who belong to other underserved groups. Proposed programs should also reflect best practices for working with survivors of trauma and include a new/enhanced outreach strategy tailored to the group(s) served. Programs should be administered in Manhattan and/or serve residents of Manhattan, with preference given to applicants that have close community ties to and serve residents of one or more of the following four focus neighborhoods: East Harlem, Central and West Harlem, Washington Heights, and the Lower East Side. DANY and ISLG encourage organizations with varied levels of capacity, and organizations with singular and multiple areas of expertise, to submit proposals in response to this RFP.

Such programming is critical given that victimization can increase the likelihood of mental health issues,[3] adversely affect occupational functioning[4] and social relationships,[5] and contribute to other harmful and lasting effects. Although supportive services have the potential to decrease the risk of negative outcomes, survivors frequently fail to report victimization[6] or utilize services,[7] highlighting but also contributing to persistent challenges in responding to victimization.

### B.  Timeline and Submission Instructions

1. **Release Date of RFP: June 23, 2016**

2. **Questions:** Questions about this RFP may be submitted in writing at http://cuny-islg.fluidreview.com. Questions and requests for clarification must be submitted by **August 19, 2016, at 11:59pm EST**.

3. Answers to all questions will be available as an addendum to this RFP by **11:59pm on September 16, 2016**. It will be the responsibility of applicants to check the CJII

---

[a] Throughout this RFP, "survivor" and "victim" are used interchangeably. When possible, this RFP uses "survivor" to emphasize individuals' resilience and the possibility of improving the life outcomes of those who have experienced victimization. "Victim," however, is more commonly used in the criminal justice field and when referring to others who help survivors of crime (e.g., "victim advocate"). When citing specific research and policy sources, this RFP adopts the terminology used in the publication of note.

1

website to remain up-to-date regarding all addenda issued for the current RFP. Any addenda will be posted here: http://cjii.org/category/opportunities/

4. **Proposal Due Date:** Proposal submissions are due on **October 14, 2016, at 11:59pm EST**. Proposals should be submitted via http://cuny-islg.fluidreview.com.

5. Failure to submit a proposal by the due date and time will result in the proposal being considered non-responsive to this RFP and not considered for award. Unless an addendum to this RFP is issued extending the due date and time, all proposals must be submitted prior to the time and date set forth above.

6. Anticipated Contract Start Date: **Winter 2016**

## C. <u>Amount and Number of Awards</u>

DANY anticipates total funding to be up to $11.4 million (to be spread across up to ten awards).

Applicants may request funds for planning and implementation, or solely for implementation, depending on the nature of proposed programming. (For example, increasing the number of service slots to expand the capacity of an established program would not warrant a planning grant, whereas developing and piloting a new approach to provide services might require funding for both planning and implementation.) In instances where a planning grant is awarded, subsequent implementation funding will be contingent upon approval of the program plan developed during the planning phase.

Funding will be for up to three years for program implementation. Projects that include a planning phase will receive additional funding for up to six months, prior to the start of implementation funding.

## D. <u>Contact Information</u>

Questions regarding RFP content should be submitted in writing at http://cuny-islg.fluidreview.com. Questions regarding technical difficulties should be sent to cjii@islg.cuny.edu.

2

## II.    Key Terms

**Criminal Justice Investment Initiative (CJII):** CJII was established by the New York County District Attorney's Office (DANY) in 2014 to invest funds in impactful projects that will improve public safety and promote a fair and efficient justice system.[b]

**CUNY Institute for State and Local Governance (ISLG):** ISLG oversees CJII on behalf of DANY, manages and provides guidance to CJII contractors, and conducts oversight and performance measurement throughout the lifetime of the initiative.

**New York County District Attorney's Office (DANY):** Manhattan District Attorney's Office. The Criminal Justice Investment Initiative was established by DANY.

**Research Foundation:** Under CJII, all funds will be awarded through the Research Foundation of CUNY. The Research Foundation is a not-for-profit educational corporation that provides CUNY and non-CUNY clients with the administrative infrastructure that supports sponsored program activities. The Research Foundation acts as CUNY's fiscal agent and administers funds and signs certain contracts on behalf of ISLG, including those related to CJII.

**Trauma:** Trauma results from an event, series of events, or set of circumstances experienced by an individual or group as physically or emotionally harmful or life threatening, and has lasting adverse effects on functioning and mental, physical, social, emotional, or spiritual well-being.[8]

**Trauma-Informed:** Organizations and practices that incorporate an understanding of the pervasiveness and impact of trauma and are designed to reduce re-traumatization, support healing and resiliency, and address the root causes of abuse and violence.[9]

---

[b] These are asset forfeiture funds, derived from settlements with international banks that violated U.S. sanctions.

3

## III.   Summary of the Request for Proposals

### A.   <u>Purpose of the RFP</u>

The New York County District Attorney's Office (DANY) has committed to investing funds through its Criminal Justice Investment Initiative (CJII) to support impactful projects that improve public safety and promote a fair and efficient justice system in New York City. Up to $11.4 million will be available to fund proposals to *Increase Access to Services for Survivors of Crime* across Manhattan, as described in this RFP.

The City University of New York Institute for State and Local Governance (ISLG) is the technical assistance consultant to DANY for CJII. ISLG oversees CJII on behalf of DANY, including managing the solicitation and contracting process, managing and providing guidance to award recipients, and conducting oversight and performance measurement throughout the lifetime of the initiative. Proposals will be submitted and funds awarded through the CUNY Research Foundation.

ISLG is seeking proposals that aim to *increase access to services for survivors* of crime, with a particular focus on survivors from underserved groups. Increased access and service usage may in turn lead to increased crime reporting and improved survivor outcomes. Proposed programs should reflect best practices for working with survivors of trauma. Applicants may propose to a) <u>expand/enhance their existing capacity</u> to deliver services or b) <u>develop and pilot new approaches</u> to accomplish the aforementioned goals. Proposals should address one (or more) of the following needs:

- ***Sign language interpretation and translation services*** to ensure communication and service access for survivors who are D/deaf or hard of hearing[c] and/or non-English speaking

- ***Education and training for service providers*** on culturally-competent programming tailored to particular groups of survivors

- ***Culturally-specific/competent programming*** tailored to a specific group of survivors, taking into account members' unique identities and needs

- ***Public awareness and outreach programs*** that aim to raise awareness about and connect survivors to available services, increase crime reporting, and educate about victimization, particularly with respect to underserved groups and those who may experience higher rates of victimization

- ***Other approaches*** to increase use of supportive services (by increasing access) for survivors, which may, in turn, increase crime reporting

Proposals should focus on one (or more) of the following groups that currently face significant barriers to service access: immigrants; lesbian, gay, bisexual, transgender, or queer (LGBTQ)

---

[c] "Deaf" refers to individuals who identify as belonging to a unique cultural and linguistic community, whereas "deaf" refers to an audiological condition of not hearing. In this RFP, one focus population consists of Deaf, deaf, and hard of hearing individuals, which will be referred to as "D/deaf and hard of hearing" from here forward.

4