UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

KELLY PRICE

                          PLAINTIFF          Index No.:  15-CV-05871

           -against-

DETECTIVE LINDA SIMMONS Individually,
And as an employee of the New York City Police
Department, ADA MARIA STROHBEHN and
ADA KENYA WELLS Individually,
And as employees of the New York County
District Attorney's Office, THE CITY OF NEW YORK,
Deputy DA Audrey Moore, ADA Larry Newman, ADA
Laura Higgins nee Richendorfer, DA Cyrus Vance Jr.,
as employees of the New York County District
Attorney's Office, Inspector Obe of the New York City
Police Department, in her capacity  as an employee
of the New York City Police Department,
Sergeant Agron, in his capacity as an employee
of the New York City Police Department,
Rose Pierre-Louis in her capacity as the Former
Commissioner  of Domestic Violence of the
City of New York, PO Matthew Winters, individually
And in his capacity as an employee of the New York City
Police Department, PO Relf, individually
And in his capacity as an employee of the New York City
Police Department, PO Maladano, individually
And in her capacity as an employee of the New York City
Police Department, PO Jane Doe, individually
And in her capacity as an employee of the New York City
Police Department, Jane and/or John Doe Operator
of @NYPD28PCT Twitter Account,  John Doe Operator
of @NYCagainstAbuse Twitter Account,  John Doe Operator
of @RPLNYC Twitter Account, Jane Doe Assistant
District Attorney, John Doe Assistant District Attorney,
Jane Doe NYPD Officer 1, John Doe NYPD Officer 1,
Jane Doe Chief of Trial Bureau 70, John Doe Chief of
Trial Bureau 70



RECEIVED
SDNY DOCKET UNIT
2017 JAN 27  AM 11: 14

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  1-26-17

                          DEFENDANTS,

# Motion for Reconsideration

## January 26, 2017

Dear Hon. Polk-Failla:  This request addresses the order denying the complaint filed on or about January 2, 2017, as the operative pleading/ document the case will proceed with.

I.  Many of the actions I was instructed to explore and articulate and one action I had specifically requested to add are not in the operative document.  I respectfully request Hon. Judge Polk-Failla that you give me leave to amend my complaint to include these actions that grew out of my false arrest on or about October 12, 2010 that was not dismissed until on or about September 15, 2016.  I had been granted leave to amend my complaint to include these actions but even though I was granted leave by Hon. Judge Preska to amend the version of the complaint I turned in on or about September 15, 2016 was not accepted because I had mis-labeled it.  The version accepted and maintained as operative was turned in on Sept 2, 2016:  before the 10/12/10 arrest had even been adjudicated.

II.  Additionally I request that the court allow me to add back into the caption District Attorney Cy Vance Jr. and Maria Strohbehn and Detective Linda Simmons as individual parties and not just employees of the City of New York.

III.  All of my Section 1983 torts were filed timely, within the three year statute of limitations required for all actions arising out of the charges dismissed and sealed against me on or about on July 25, 2012 and while those actions still stand against the City of New York I believe I have met the requirements outlined in Ashcroft v Iqbal to draw a direct connection between Vance and the constitutional crimes unhanded by Vance and his ADA, Maria Strohbehn.  New evidence has come to light that directly connects them as I will outline in this request below.

IV.  Additionally, many of the exceptions to the tenants of Absolute and Qualified immunity that are usually available defenses to district attornies and assistant district attornies come into play in my circumstances.  I have already submitted as evidence the affidavit from former NYPD Lt. Mark C. Larocca (Exhibit A Affidavit from Retired NYPD Lt. Larocca):  this document proves the MDAO inserted itself into the investigatory role and thus all absolute defenses and many qualified immunity defenses are no longer available to members of Cy Vance Jr.'s staff and to the MDAO himself.

V. Since the date of my filing that has been accepted as the "operative complaint" by the court I have had two run-ins with the NYPD:  in both circumstances because I am on the

NYPD compstat "Arrest Alert List" and labeled STILL as a fabricator I have been denied services and protections on TWO occasions this fall:  One on November 17, 2017 and one once again on January 24, 2017.  I would like to fully have the chance to articulate the on-going denial of services I encounter because the MDAO marked me as a fabricator in their database years ago.  Additionally there are two incidents of denials of services by the NYPD from 2016 that I would like to add into my complaint that I did not include before. (Exhibit # L Photos of injuries from Police Arrest after encounter on subway where they looked me up in NYPD database and charged me with public intoxication and dragged me to Psych Ward for evaluation—I was discharged, again.)

Reconsideration of a court's judgement under Rule 59€ is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  USA Certified Merchants, LLD v. Koebel, 273 F. Supp 2d 501, 503 (S.D.N.Y 2003).  "A court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." Slater, 374 F. Supp. 2d at 253 (citing Atl. States Legal Found., Inc. v. Karg Bros., Inc., 841` Supp. 51, 53 (N.D.N.Y. 1993)).

In these circumstances I have several pieces of new evidence and I believe an obvious injustice has transpired as I had previously been both instructed by Hon. Judge Preska to examine State Created Danger torts to include in my actions AND I had been granted leave to add actions stemming from my false arrest on or about 10/10/10 that was not dismissed until on or about 9/15/2016.  None of these actions has been accepted by the court.  Both times I have submitted complaints with these actions the court has rejected my filing that sprung merely from a misunderstanding.  Below is a timeline regarding those actions:

I.
1. On July 26, 2016 Hon Judge Preska graciously ordered a third amended complaint be written and filed within 30 days.  In her orders she advised, among other instructions, that my arguments that the City of New York had an obligation to protect me were buttressed by State Law, and that under Federal Law there are specific circumstances in which the government is obligated to protect a private citizen.  She advised me to examine the case law surrounding Dwares, and from there I learned about State Create Danger, a concept I had never been introduced to before. I found Okin v Cornwell on Hudson and realized that a precisely what happened to Ms. Okin had happened to me and following that the heavy work of my rewrite involved me articulating how many events detailed in my specific

chronology of circumstances were violations of State Created Danger against me.

2. On August 25, 2016 I wrote the court requesting my complaint be accepted on September 2, 2016 as I had not received Hon. Judge Preska's order in the mail until August 3, 2016 and I needed the full 30 days to dispatch the work as I was grappling with the enormity of the task at hand.

3. Hon Preska approved that motion by order on or about early September of 2016.

4. On September 2, 2016 I wrote again requesting a second extension for the deadline of the third amended complaint because I had discovered an arrest and charge from October 2010 was still lingering, un-adjudicated against me in Supreme Court of NY due to an error on the behalf of the Manhattan District Attorney's Office. I requested a further extension of two weeks to have the charge adjudicated and retrieve documentation that the charges terminated in my favor (a predicate for bringing action). I needed to be able to include actions for this false arrest and conspiracy against me as early as October of 2010 to overcome some constraints on discovery that statute of limitations will entitle me to should I manage to keep my pleadings alive pro se somehow and reach a discovery phase.

5. I did not know if Hon. Preska would approve my second request for extension of the third re-write so I was obligated to turn in a version of my complaint regardless before receiving her orders approving my motions for deadline extension or risk complete dismissal if she did not approve my deadline request.

6. Because I could not risk complete dismissal I turned in the work I had managed to finish so that I did not risk dismissal by not turning in my work by the deadline.

7. On September 2, 2016 Hon. Judge Preska approved my extension to turn in my third re-write on September 15, 2016.

8. I didn't know how to label the version I was approved to turn in on September 15, 2016: I should have labeled it "2nd Version of 3rd Amended Complaint" or just FINAL Third Amended Complaint but Instead I made an HUGE mistake and labeled it "fourth amended complaint"

9. The reason I requested the extension, and was approved, was that I needed to wait for the 10/2010 charges against me to be dismissed. The version of my complaint that is now the operative document does not include these charges or the fuller articulated actions regarding State Created Danger et al that I worked on as per Hon Judge Preska's instructions. I found for the first time in the writing of the complaint I turned in on 9/16 (due on 9. /15 but turned in within the allotted 24-hour grace period of a deadline allowed) that I understood and was able to articulate many torts that I was unable to define in previous attempts to articulate constitutional wrongdoings that were levied against me that I describe in detail chronologically in my filing.

II.

1. New Evidence has come to light regarding DA Vance's and ADA Maria Strohbehn's direct involvement in my denial of due process rights and protections. I am aware that Ashcroft v Iqbal has created a high standard of evidence and I believe I have enough to tie directly Vance and Strohbehn, and maybe Christopher Ryan, Chief of the MDAO's Violent

Criminal Enterprises Bureau.

A. Previously I have included ADA Strohbehn's Resumes (Exhibit #s B & C) as proof that the ADA who refused to investigate my allegations of abuse unhanded to me by my ex-boyfriend /pimp and declined to prosecute him was also the ADA working on "Operation Crew Cut" that took down the 137th st Gang.

B. The "137th st. Gang" were investigated and indicted by Grand Jury on or about February 10, 2010 and arraigned by Cy Vance HIMSELF on February 16, 2011 (Exhibit # D DNAinfo.com news article pps 1-3). Vance had personal involvement and infact directed the investigation into the "take down:" "Two Harlem youth gangs running a violent crack-and gun-dealing operation centered on one Central Harlem block have been busted by authorities in an investigation personally let by Manhattan District Attorney Cy Vance Jr., his office announced." (Exhibit D page 1) And "The indicted members were charged with conspiracy gun and drug charges. A series of Arraignments beginning Manhattan Supreme Court late Wednesday morning." (Exhibit D page 2) VANCE HIMSELF STOOD BEFORE THE JUDGE AS THE DEFENDANTS WERE ARRAIGNED IN Manhattan Supreme Court." There is NO WAY he did not know that the proffer provided by my batterer and pimp, Raheem Andre Powell was used to garner the GJ indictment and to make out the facial sufficiency of the criminal complaint against the "137th St Gang." Nor is it not possible for Vance to have not known that Raheem was given a "deal" for testifying and that the MDAO agreed NOT to prosecute him for his crimes against me.

C. There is strong evidence that testimony given-over in the Grand Jury was offered by a person who was given a "deal" that I have just unearthed in the criminal court file of defendant Jaquan Layne. This particular decision on an Omnibus motion was withheld previously when I examined Mr. Layne's file as much of the file needs to be redacted by the clerks each time it is examined. Mr. Layne was arrested in 2009 and detained on Rikers until early February 2011, when his entire "Gang" was arrested in a round-up days after the MDAO declined to prosecute my batterer, Raheem Powell, and indicted in short-order en-masse after ADA Maria Strohbehn threw me out of her office and told me that if I made another report against Raheem she would "Lock me up and throw away the key." The importance and relevance of the timing of the "gang" arrest and indictment to my case is no coincidence. The decision itself also contains clues as to what was presented at the Grand Jury of the gang on or about February 10, 2010.

D. Members of the 137th st Gang asked the Criminal Court judge presiding over their case for the Grand Jury minutes to be reviewed to ensure proper directions were made. In his response to their Omnibus motion Hon. Judge McLaughlin made SPECIFIC instructions to DA

Vance's office regarding this: *"This court reminds the prosecution of its continuing duty to disclose favorable evidence intis possession to the defense…This obligation covers evidence material to the impeachment of prosecution witnesses, INCLUDING THE EXISTENCE OF ANY AGREEMENT MADE TO INDUCE A WITNESS'S TESTIMONY…"* (emphasis added) Exhibit # E Page # 3)

E.   I cannot possibly have access to the Grand Jury Indictment/minutes as this is never allowed without an order from the court as a result of a discovery process.  I pray I am able to steward my sad pleadings to this point.

F.   All of the actions made out in the complaint are from years before the arrest and indictment of all Gang-Members EXCEPT Jaquan Layne who was arrested in 2009 on an un-related assault charge.  (Exhibit # F Complaint vs 137th st Gang.)

G.   I .would like to request the Court's permission to ADD one other individual on my caption:  ADA Christopher Ryan, Chief Violent Criminal Enterprises, Manhattan DA (See Exhibit # G, Resume of Christopher Ryan).  As the chief of this operation it is highly unlikely that Ryan did not know that ADA Strohbehn had NOT investigated my allegations of abuse and trafficking.  Ryan still travels around the country bragging about the 137th st "gang bust" at paid-speaking appearances such as the "Prosecutors Against Gun Violence Summit" held in Los Angeles, CA on May 2, 2016 (Exhibit # H PAGB Powerpoint presentation given by Ryan.)

H.   Ryan signed the complaint and all the accompanying paperwork filed with Criminal Court making out the case against the 137th st Gang (Exhibit #I Ryan's Signature on Various 137th st criminal court filings.)

I.   Christopher Ryan stood at the podium on February 16, 2011 during the arraignments and at the Press Conference during which Cy Vance crowed about his office's work to bring down the gang (Exhibit # K, Transcript of Vance Presser ref 137th st gang w picture of Ryan on Page 6 standing next to Vance.)

J.   Detective Simmons was likewise directly involved in a conspiracy to deny my rights and I would like to request the court keeps her on the caption of my complaint as an individual and not just as an employee of the City of NYC.  Detective Simmons perjured herself in Family court by claiming she had investigated my claims when she had not.  Recent decisions in OTHER circuits have clearly stated that Gov't employees do not get immunity when perjuring themselves on the stand and I beseech your honor to allow me to continue to make this argument here in the SDNY.

Kelly Price                                    Sworn to me this 26th day of January 2017


_____        --------------------------------------------_____



_____

January 27, 2017

Address:  534 W 187th st #7, City New York, NY State NY Zip Code 10033

646 676 1940                    graciegracie212@gmail.com

                                    )

/.

Kelly Price

Sworn to me this 26th day of January 2017

---------------------------------------

January 27, 2017

SEAN BASINSKI
NOTARY PUBLIC of NEW YORK
No. 02BA6129047
Commission Expires 10/5/2017

Address:  534 W 187th st #7,  City  New York, NY  State NY  Zip Code  10033

646 676 1940          graciegracie212@gmail.com

)

/.

DECEMBER 18, 2015

My name is Mark Christopher LaRocca. I worked as a
Lieutenant in the New York City Police Department from 1997 to 2013
assigned to the 028 Precinct in Manhattan. Circa 2010 and 2011,
I had several conversations with Ms. Kelly Price in which she
claimed to be a crime victim, specifically a victim of
domestic violence.

During my interviews of Ms. Price, I found her allegations
of abuse, to be credible and with merit. I felt there was
sufficient evidence to prepare Complaint Reports to document
these allegations which would then be further investigated by
the Precinct Domestic Violence Officer and/or the Precinct Detective
Squad.

After speaking with the Detectives regarding Ms. Price's
allegations; I was informed that prior to a report being further
investigated, a phone call to someone in the Manhattan District
Attorney's office who was familiar with Ms. Price's history of
reporting crimes needed to be consulted.

Ms. Price informed me that she felt this hindered her ability
to receive fair treatment regarding the investigation of her complaints.
I informed her that as a victim, she should speak with the
supervisor of the person at the Manhattan District Attorney's Office
handling her complaint if she felt her complaints were being
stonewalled and not acted upon in a fair manner.

MARK C. LaROCCA

Mark C. LaRocca



Maria Strohbehn

Assistant District Attorney, Manhattan District Attorney's Office

Location

New York, New York (Greater New York City Area)

Industry

Law Practice

Maria Strohbehn's Overview

Current

- Assistant District Attorney at Manhattan District Attorney's Office

Past

- Law Clerk at U.S. Department of Justice, U.S. Attorney's Office, District of Maryland
- Intern at State Attorney's Office, Anne Arundel County
- Law Clerk at National District Attorney's Association/ American Prosecutor's Research Institute

see all...

Education

- The George Washington University Law School
- University of Maryland Baltimore County

Connections

**77 connections**

Maria Strohbehn's Experience

Assistant District Attorney

**Manhattan District Attorney's Office**

Law Practice industry

September 2008 – Present (2 years 11 months)

· Research and write various pre-trial and post-conviction motions, including motions in opposition of dismissal, motions in opposition of vacating judgment, and motions for protective order

· Write search warrants including residences, computers, cellular telephones, and other mobile technology

· Present cases to the grand jury in Manhattan, from complex identity theft cases to domestic violence assaults

· Investigate and prosecute long-term employee fraud

· Serve as First Chair on bench and jury trials

· Organize trial strategies by reviewing evidence and developing themes

· Collaborate with family lawyers in domestic violence-related custody and divorce issues in the Integrated Domestic Violence Part of the New York County Supreme Court

· Volunteer, such as a presentation to adolescents in upper-Manhattan on various aspects of the criminal law and law enforcement issues in New York, including dating violence

· Attend continuing legal education seminars including a lecture on various forms of financial evidence, and its collection

· Write complaints to commence prosecution on the basis of a thorough review of evidence in shifts, including shifts into the early morning

· Balance a caseload of about three-hundred active cases with an aggressive court schedule· **Chosen to begin working on a bureau based project targeting gang-related violent crime in the 28th precinct in 2011**

HARLEM (//WWW.DNAINFO.COM/NEW-YORK/MANHATTAN/HARLEM)

Courts (//www.dnainfo.com/new-york/topics/courts)

Crime & Mayhem (//www.dnainfo.com/new-york/topics/crime-mayhem)

## Harlem Gangs Busted in Crackdown

By DNAinfo Staff on February 16, 2011 11:16am | *Updated on February 17, 2011 6:10am*



**By Jeff Mays and Shayna Jacobs**

**DNAinfo Staff**

DOWNTOWN — Two Harlem youth gangs running a violent crack- and gun- dealing operation centered on one Central Harlem block have been busted by authorities in an investigation personally led by Manhattan District Attorney Cy Vance Jr., his office announced Wednesday.

Vance said 14 members of the "2 Mafia Family," also known as 2MF, and "Goons on Deck" (http://www.dnainfo.com/20091216/manhattan/harlem-caught-crossfire-of-youth-gangs) are among the city's "most violent criminal gangs." Based on 137th Street between Lenox and Seventh avenues, the crews joined efforts to run a brisk crack and cocaine business in a residential community that is home to churches, schools and community centers, Vance said.

The alleged gang members were caught discussing criminal business through recorded phone calls from Rikers Island and also on Twitter and other social networking sites, authorities said. Vance said there were over 1000 recorded calls, including many that were intercepted from jailed gang members at Rikers to alleged "137th Street Crew" members who were purportedly holding down the street operations.

In the excerpts of Dec. 2 calls listed in the indictment, one of the alleged Harlem gang members, Jaquan Layne, 20, gave instructions to another purported gang member, Jeffrey Brown, 19, on how to sell drugs, and asked "if the money was flowing...on the block."

Brown allegedly said, "The most I bust yet was a $70 dollar sale yesterday."

Layne, whose alias is "Jay Cash," then proceeded to advise Brown on the best way to earn drug money, the DA said.

"You gotta be out there in the morning...Just sit in front of the stoop in the morning. You catch all the morning flow, cause they'll all like come see you," Layne began, according to the recording. "Boom, boom, boom. Cause that's the morning. That's their first high, so you know they're gonna come get that."

The indicted members were charged with conspiracy, gun and drug charges. A series of arraignments began in Manhattan Supreme Court late Wednesday morning. Vance himself stood before the judge as the defendants were arraigned in Manhattan Supreme Court.

Several of the alleged gang members face life in prison if convicted of the top felony charge, first-degree conspiracy. All but two of the defendants were in custody Wednesday morning and awaiting arraignment.

Prosecutors said the gang members used female associates to carry and sell firearms in an attempt to conceal their illegal activities. One of the suspects arraigned Wednesday, Afrika Owes, 17, is accused of carrying guns for the gang.

"She is widely known among the individuals in the indictment and in her peer group as one of the females who carries the guns for the males so when the males get stopped by the NYPD the gun is not found on [them]," said Assistant District Attorney Christopher Ryan, adding, "This is a very, very commonly known tactic by gang members."

The group also allegedly recruited youths under age 16 to carry and transport guns and drugs.

The 137th Street block had been lorded over by the crews and their activities for years, locals told DNAinfo reporters over the course of the past year. Last year, DNAinfo chronicled the rise in Harlem youth gangs and the way locals have been terrorized by them (http://www.dnainfo.com/20091216/manhattan/harlem-caught-crossfire-of-youth-gangs) with an interactive map and the harrowing tales from locals caught in the crossfire between dozens of gangs scattered throughout Upper Manhattan. The immediate surrounding areas are home to the Abyssinian Baptist Church and Harlem Hospital.

"Although criminal activity has thankfully dropped citywide over the past few years

gang activity remains a constant threat," Vance said at a press conference Wednesday.

One alleged gang member, Jonathan Hernandez, 19, was charged with attempted murder for allegedly firing a handgun into a crowd on Fourth of July weekend last year.

Jarel Robinson, 17, was the only alleged gang member to be released without bail on Wednesday. Prosecutors said he had posted several photos of his friends — who are allegedly fellow gang members charged in the conspiracy — to various social networking sites and Photobucket.

He is "a prolific poster of Internet photographs of himself and his fellow gang members," ADA Ryan said. At least one of the photos shows Robinson pointing a gun at the camera, Ryan added.

But his lawyer said Robinson is nothing more than "a serial photo uploader" who is charged with nothing substantial in the 51-page indictment that ties him to the drug- and gun-ring conspiracy.

"[They] have not separated the gangsters from the wannabes," in this case, said Anastasios Sarikas, Robinson's lawyer.

Prosecutors expect to charge members of other organized gangs in the future.

Prosecutors have identified the following defendants who were charged as part of the gang bust: Jaquan (Jay Cash) Layne, 20, Dashawn (Rock) Davis, 20, Jeffrey Brown, 19, Jonathan Hernandez, 19, Habiyb Mohammed, 31, Malik (Zab) Layne, 18, Jahlyl (Lyl) Layne, 18, Afrika Owes, 17, Jazeke (Zeke) Samuels, 17, Pierce Gross, 18, Brandon (Monk) Santiago, 17, Jarel (Rel) Robinson, 17, Tyrone (Tata) Gibbs, 18, and Louis (Lou Money) Williams, 17.

The Rev. Vernon Williams, who has worked for several years to curb gang violence, said he was excited to hear that Vance would prosecute the cases.

"I believe that the District Attorney's willingness to have a hands-on approach is refreshing. It's a sign that he wants to uphold law and order," said Williams.

For years, Williams said he felt like no one was listening to the concerns he was raising about the rise in Harlem youth gangs.

"It pays off when you keep banging pots and pans in the forest because it eventually chases the bear away," he said.

He added that the success of the arrests and prosecutions depends on how deep the investigation went into dismantling the gang.

"If they just got the young guns and not the adults who are facilitating this activity, it's not going to do much," he said. "There is no such thing as osmosis when it comes to gangs. There are adults who are facilitating this violence and death in our community."

Many locals say the existence of gangs has become a fact of life in the area.

"You have to walk without fear and mind your own business. The problem is that a bullet has no name," said Marisa Negron, 52, a restaurant manager.

"More needs to be done than just arrests," Negron added. "Right now, these kids don't

have good alternatives and outlets."

Monique Caines, 23, an event coordinator has lived in the area her entire life and said she's not sure the arrests would make a difference in the long haul.

"The only way this makes a difference is if they keep them in jail for a while and they get all of them. If there are some left on the streets, it's not going to work."

Caines said parental control is the issue.

"It's up to the parents to control their kids. They have to find positive outlets," she said.



Introducing the **dna**info app.

Because neighborhood matters.

### ⚙ Recommended

UPPER EAST SIDE » (HTTPS://WWW.DNAINFO.COM/NEW-YORK/MANHATTAN/UPPER-EAST-SIDE-ROOSEVELT-ISLAND)
**Trump Is Making Second Avenue Subway Expansion a Priority, Pol Says**
(https://www.dnainfo.com/new-york/20170126/upper-east-side/second-avenue-subway-east-harlem-midtown-federal-priority-list-funding)


(https://www.dnainfo.com/new-york/20170126/upper-

ASTORIA » (HTTPS://WWW.DNAINFO.COM/NEW-YORK/QUEENS/ASTORIA-LONG-ISLAND-CITY)
**Shia LaBeouf Shoves Hitler Fan on Video, Gets Arrested**
(https://www.dnainfo.com/new-york/20170126/astoria/shia-labeouf-arrest-trump-museum-of-the-moving-image-nypd)


(https://www.dnainfo.com/new-york/20170126/astoria/shia-

YORKVILLE » (HTTPS://WWW.DNAINFO.COM/NEW-YORK/MANHATTAN/UPPER-EAST-SIDE-ROOSEVELT-ISLAND)
**'Rat Circus' Has Taken Control of the Upper East Side, Residents Say**
(https://www.dnainfo.com/new-york/20170126/yorkville/rats-upper-east-side-health-department-east-88th-street)


(https://www.dnainfo.com/new-york/20170126/yorkville/rats-street-

UPPER EAST SIDE » (HTTPS://WWW.DNAINFO.COM/NEW-YORK/MANHATTAN/UPPER-EAST-SIDE-ROOSEVELT-ISLAND)
**City's Zoos Are Fighting Over Who Has the Cutest Animals on Twitter**
(https://www.dnainfo.com/new-york/20170126/upper-east-side/cute-baby-animal-photos-zoo-aquarium-nyc)


(https://www.dnainfo.com/new-york/20170126/upper-east-side/cute-baby-animal-photos-zoo-aquarium-nyc)

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY: CRIMINAL TERM: PART 93
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
THE PEOPLE OF THE STATE OF NEW YORK,

                                          **Decision On Omnibus**
        — against —                        **Motion**

JAQUAN LAYNE,

                                            **Ind. No.  89/2011**

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

EDWARD J. MCLAUGHLIN, J.:

      Defendant's motion for this court to inspect the grand jury minutes is granted.  The evidence before the grand jury supports the crimes charged.  The prosecutor properly instructed the grand jury on the law, and the grand jury presentation was not defective.  After examining the minutes, this court determines that release of the minutes is not necessary to assist this court in deciding this motion (CPL 210.30 [3]).  Defendant's motion for release of the grand jury minutes is denied.

      The prosecutor shall disclose *Rosario* material (*see People v Rosario*, 9 NY2d 286 [1961]) within the timetable described in CPL 240.45 (1).

      The prosecutor shall disclose to the defense a copy of the search warrants and underlying affidavits for the search warrants that authorized police to search 75 LaSalle Place, in New York County, and 1361 Webster Avenue, in Bronx County.  The prosecutor shall also provide this court with a copy of those documents.

      The remaining discovery provided by the prosecutor in the voluntary disclosure form is adequate.  If the defendant believes that any response to his demand for discovery

or his request for a bill of particulars is inadequate, he may move to reargue within 10 days of the serving of a copy of this decision.

The defendant is directed to comply with the prosecutor's demand for reciprocal discovery or be precluded as to each item sought.

Defendant's motion to suppress identification evidence, as the product of an unduly suggestive, police-arranged identification procedure, is granted to the extent of ordering a *Rodriguez* hearing (*see People v Rodriguez*, 79 NY2d 445 [1992]). The prosecution bears the burden of establishing that an identification was confirmatory (*see id.* at 452). The prosecution's motion lacks factual allegations supporting its claim that the identifying witness was sufficiently familiar with the defendant (*see People v Williams*, 182 AD2d 490, 491-492 [1st Dept 1992] [conclusory allegation that the parties are known to each other is insufficient when the prosecution failed to state in an "evidentiary fashion that the defendant was previously know to the witness"]). A motion court can refer to the grand jury minutes to confirm factual allegations in the motion (*see People v Rumph*, 248 AD2d 142 [1st Dept 1998] ["the court's use of the Grand Jury transcript to confirm the facts stated in the People's response was appropriate"]), but incorporation by reference of the information in the grand jury minutes is not a substitute for factual allegations. Because the defense does not have access to the grand jury minutes during the motion practice stage of the case, the practice of incorporation by reference prohibits the defendant from controverting a claim that an identification was

2

confirmatory (*see People v Rodriguez*, 79 NY2d at 451 [emphasizing "the importance adversary testing of claims that an identification was 'merely confirmatory'"]). Consequently, a *Rodriguez* hearing is required to determine the witness's alleged prior familiarity with the defendant.

This court reminds the prosecution of its continuing duty to disclose favorable evidence in its possession to the defense (*see Brady v Maryland*, 373 US 83 [1963]; *People v Bryce*, 88 NY2d 124 [1996]). This obligation covers evidence material to the impeachment of prosecution witnesses, including the existence of any agreement made to induce a witness's testimony (*Giglio v United States*, 405 US 150 [1972]; *People v Novoa*, 70 NY2d 490 [1987]). The prosecution shall disclose such evidence without regard to whether the nondisclosure of such evidence would be so serious as to require reversal on appeal after a conviction (*see Strickler v Greene*, 527 US 263, 281 [1999]). This duty applies not only to information that could be admitted as evidence at trial but to any information that could lead to the discovery of favorable evidence that could be admitted at trial (*see United States v Rodriguez*, 496 F3d 221, 226 n 4 [2d Cir 2007]). If the prosecution doubts whether certain evidence constitutes favorable evidence to be disclosed to the defendant, such evidence should be submitted to this court for *in camera* inspection (*see People v Contreras*, 12 NY3d 268, 273-274 [2009]).

Defendant's motion to preclude the prosecutor from introducing, in its direct case, evidence of prior crimes or bad acts committed by defendant, is referred to the trial court

(see People v Ventimiglia, 52 NY2d 350 [1981]).

Defendant's motion to prevent the prosecutor from questioning defendant about any prior crimes or bad acts, if defendant elects to testify at trial, is referred to the trial court (see People v Sandoval, 34 NY2d 371 [1974]).

This constitutes the decision and order of this court.

Dated:   April 19, 2011

APR 1 9 2011     J.          EDWARD J. McLAUGHLIN

4

SUBSTITUTION

FILED BY _____

ADDRESS _____

TELEPHONE _____

□ REI.   □ ISB   □ LA   □ NDS   □ NYCDS

ARRAIGNMENT   PART **PT. 93 FEB 16 2011**

**NOT GUILTY BY COURT**
**EDWARD J. McLAUGHLIN**

JUSTICE _____

COUNSEL PRESENT   *Chris Ryan*

A. PRESENT   *R. Pasacreta*

COURT REPORTER   **Chuck Dominick**
**Senior Court Reporter**

RFPRTER _____

COURT CLERK   **A. SYKES, S.C.C.**

RECOGNIZANCE   □ BAIL. CONT'.   □ SBC   □ ROR

□ NEW BAIL FIXED   ☒ REMAND

AMOUNT _____

FIXED _____   20 ___   $ ___

SURETY _____

□ REMAND □ ROR

□ NEW BAIL CONDITIONS

BAILED _____   20 ___   $ ___

SURETY _____

WARRANT ORDERED _____

JUSTICE _____

□ BAIL FORF. □ ROR REVOKED

ROW _____   20 ___

JUSTICE _____

□ RECALL FORF.   □ BAIL EXON

□ REMAND □ ROR

□ NEW BAIL CONDITIONS

BAILED _____   20 ___   $ ___

SURETY _____

WARRANT ORDERED _____

JUSTICE _____

□ BAIL FORF. □ ROR REVOKED

40. On or about December 2, 2009, in the vicinity of The Rikers Island Jail Complex, defendant **JAQUAN LAYNE**, a/k/a "Jay Cash," a/k/a "Jay," engaged in a narcotics-related telephone conversation with defendant **HABIYB MOHAMMED** in part and substance directing defendant **HABIYB MOHAMMED** not to do anything that will draw law enforcement attention to the Layne home.

41. On or about December 2, 2009, in the vicinity of The Rikers Island Jail Complex, defendant **JAQUAN LAYNE**, a/k/a "Jay Cash," a/k/a "Jay," engaged in a narcotics-related telephone conversation with defendant **HABIYB MOHAMMED** in part and substance reminding defendant **HABIYB MOHAMMED** that defendants **JEFFREY BROWN** and ███████████ are new and to "KEEP THEM ON POINT."

42. On or about December 4, 2009, in the vicinity of West 137th Street and Seventh Avenue, defendant **JEFFREY BROWN** engaged in a narcotics-related telephone conversation with defendant **JAHLYL LAYNE**, a/k/a "Lyl," in part and substance informing defendant **JAHLYL LAYNE**, a/k/a "Lyl," that defendant **JEFFREY BROWN** was "ON 37TH HUGGIN' THIS SHIT."

Reorder No. 5105
JULIUS BLUMBERG, INC.
N.Y.C.  10013
©19's P.C.W.

# Christopher Ryan

**344**
connections

### Chief, Violent Criminal Enterprises, Manhattan DA

Greater New York City Area ｜ Law Enforcement

| | |
|---|---|
| Current | New York County District Attorney's Office |
| Previous | New York County District Attorney's Office |
| Education | University of Virginia School of Law |
| Websites | Company Website |

## View Christopher's full profile. It's free!

Your colleagues, classmates, and 400 million other professionals are on LinkedIn.

**View Christopher's Full Profile**

## Christopher's Activity

 **The Power of the Blue Light**
Christopher liked

 **The latest installment of EBG's Thought Leaders in Health...**
Christopher liked

 **Exiger announces the launch of our Global Investigations...**
Christopher liked

 **I was quoted recently in "Mental Health False Claims Case...**
Christopher liked

## Experience

### Chief, Violent Criminal Enterprises

New York County District Attorney's Office

June 2010 – Present (6 years 8 months)

• Supervise a specialized unit of experienced prosecutors, investigative analysts and police detectives responsible for the dismantling of sophisticated criminal enterprises throughout New York City, including interstate gun traffickers, major narcotics organizations, and criminal street gangs.
• Developed the methodology of using large-scale, long-term, multi-defendant prosecutions under New York State's conspiracy statutes against violent neighborhood-based street crews throughout New York City which became the NYPD's "Operation Crew Cut," incorporating homicides, non-fatal shootings, robberies, firearms sale and possession, and narcotics offenses, with evidence derived from court-authorized wiretaps, social media and recorded jail telephone calls, and confidential sources.

https://www.linkedin.com/in/ogisjdfo3862eee

2/3

• Increased gun trafficking prosecutions in Manhattan by 1100% between 2010 and 2015, and removed over 1000 illegal handguns from New York City streets in proactive investigations.
• Brought 21 separate indictments against 64 illegal gun traffickers.
• Conduct complex anti-money laundering investigations in conjunction with financial services personnel from major New York-based financial institutions, including banks, brokerage firms, and money transfer enterprises to trace, seize and forfeit millions in illicit assets from drug organizations and illegal gun traffickers.
• Provided expert legal counsel on the law of conspiracy to possess explosives and weapons possession as a crime of terrorism in the first indictments brought by the Manhattan District Attorney's Office under New York State's terrorism statutes.
• Supervised the largest gun trafficking prosecution in New York City history.
• Supervised the largest gang prosecution in New York City history.
• Brought 15 conspiracy indictments against 17 gangs and 400 gang members in four years.

**Assistant District Attorney**
New York County District Attorney's Office
September 1998 – Present (18 years 5 months)

• Tried over 40 criminal cases to verdict, including murder, kidnapping, robbery, grand larceny, identity-theft, narcotics and weapons sale and possession.
• Conducted hundreds of grand jury investigations.

**Deputy Chief, Firearms Trafficking**
New York County District Attorney's Office
June 2006 – June 2010 (4 years 1 month)

• Supervised a unit of prosecutors focused on the possession and sale of narcotics and firearms.

Education

**University of Virginia School of Law**



**Union College**
BA, Political Science

**University of California, San Diego**

Latin American Studies



**Virginia Law**

Reorder No. 5105
JULIUS BLUMBERG, INC.
NYC  10013
®10% P.C.W.

# PAGV SUMMIT
## LOS ANGELES, CA
### MAY 2, 2016

CHRISTOPHER RYAN,

CHIEF

VIOLENT CRIMINAL ENTERPRISES UNIT

NEW YORK COUNTY DA'S OFFICE

# Conspiracy Upside/Downside

Upsides of Conspiracy:

- evidentiary umbrella charge

- requires no pattern crimes, no hierarchy, no discernable structure requirement

Downside:

- always a non-violent offense

- no liability under state law for substantive offenses committed as overt acts

# Conspiracy in the First Degree

- PL: 105.17:

  – With intent that conduct constituting a class "A" felony be performed, he, being 18 years old or more, agrees with one or more persons under the age of 16, to engage in or cause the performance of such conduct."

  - Conspiracy 1 is a class A-I felony, 15 to Life minimum state prison sentence

# Conspiracy in the First Degree

Class A narcotics felonies:

A-I:   Sale of narcotics, 2 oz or more

Possession of narcotics, 8 oz or more

A-II:   Sale of narcotics, ½ or more

Possession of narcotics, 2 oz or more



137th Street Indictment
February, 2011
14 defs, Consp 1,2,3,4
Att.Murder, Ass1, CPW





# In Conspiracy Trial, a Query: What, Exactly, Is a Gang?

By JOHN ELIGON   OCT. 11, 2011



Jaquan Layne is accused of being a leader of a violent gang that controlled drugs on a block of 137th Street in Harlem.
Yana Paskova for The New York Times

Jaquan Layne:

    **Yo me, Lyl, Zab, and Rock is going down.**

Unidentified Female:  For real?

Jaquan Layne:

    **Yo you know.  You been in my house.  You ain't see whats really in my house. We got all types of drugs in there.**

Malik Layne:

**Jay what's good with that um the uh nine situation? Leaky still got it?**

Jaquan:

**I don't want...stop talking like that on the phone.**

Jaquan Layne

When I get home I ain't doing a damn thing but selling crack. You know how it is.  Hug my blocks all day.

Jaquan Layne: I got a few people for you, alright?

Malik Layne: Alright.

Jaquan Layne: I'm a get you my man that come for 12 and 24 too.





# THE WALL STREET JOURNAL.

Home   World   U.S.   Politics   Economy   Business   Tech   Markets   Opinion   Arts   Life

- Yahoo Board to
  Weigh Sale of
  Internet Business

- EU to Investigate
  McDonald's Tax
  Affairs

- Medicare Rules
  Reshape Hospital
  Admissions

- Pla
  Gu
  Co

**YOU ARE READING A PREVIEW OF A PAID ARTICLE.**   **SUBSCRIBE NOW**   **TO GET MI**

NY AP TOP NEWS

## Convicted NYC drug gang boss gets 20 to life

Updated Nov. 29, 2011 4:51 p.m. ET

Associated Press

NEW YORK — A sentencing for five convicted players in a violent local drug gang Tuesday became a judge's rallying cry for communities to crack down on gun crime, with the judge urging Harlem residents to search their own homes for relatives' illegal guns and give tips to police.

"Rather than wringing its own hands, the community can act to reduce the number of guns in its youths' hands," Manhattan state Supreme Court Justice Edward J. McLaughlin said as he sent convicted gang leader Jaquan "Jay Cash" Layne and four others to prison, Layne for at least 20 years. "If your relative has money, jewelry and nice clothes but no job, your relative is in the drug business. If you do nothing, you are complicit."





# 137th Street Pre-Takedown
## Magnified Image:

Jan 2008 – Feb 2011
Shootings and Shooting
Homicides

= Shooting Homicides

= Shootings

32







129th Street Pre-Takedown

June 2007 – October 2011
Shootings

32

25

28

= Shootings





Reorder No. 5105.
JULIUS BLUMBERG, INC.
NYC 10013
©10% P.C.W.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 93

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE PEOPLE OF THE STATE OF NEW YORK

-against-

Jaquan Layne,

                                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATEMENT OF PREDICATE
FELONY CONVICTION

PURSUANT TO CRIMINAL
PROCEDURE LAW SECTION 400.
AND PENAL LAW SECTION 70.06

RELATING TO INDICTMENT
NO. 89/2011

The above-named defendant has previously been subjected to one or more predicate felony

convictions as defined in Penal Law §70.06(1)(b), to wit:

On April 30, 2008, in the Supreme Court of New York County, in the State of New York,

the defendant was convicted of the felony of Robbery in the Third Degree.

Dated: New York, New York
       November 28, 2011

                                   Christopher Ryan
                                   Assistant District Attorney



® **Blumberg**Excelsior® Inc., NYC 11241
www.blumberg.com   30% P.C.W.
Reorder No. 5105

0:01

morning everybody thank you very much for coming

0:04

I I'd like to thank

0:07

New York Police Department inspector Ken Kelly

0:10

who was representing the problem here today I

0:13

and case detective Angus Mackenzie who unfortunately could not be with us today

0:18

but who worked very closely with us on this investigation

0:21

and we're also joined this morning by Captain ready a

0:24

from narcotics borough manhattan North one thank them for coming today in for

0:29

their partnership

0:30

with our office in helping us on this and so many other cases

0:33

not personal note I want to say that by thirty years ago when I started as an

0:37

assistant DA

0:38

I can Kelly who was the patrol officer in the 30 precinct worked on a number of

0:43

cases together and yes

0:44

can it's good to see that our lives intersected I

0:47

again after so many years at for Captain

0:51

public safety is the first priority I love this office

0:55

and our partners the NYPD and although crime

0:59

has thankfully dropped citywide over the last year's

1:03

gang-related violence remains a constant threat

1:06

as we continue she organized groups

1:10

around Manhattan responsible for murders

1:13

shootings and rent a drug-dealing and this is particularly true in northern

1:17

Manhattan

1:17

many these crimes go unsolved as victims and witnesses

1:22

are fearful to come forward this morning

1:25

we are announcing the indictment a forty members a violent streak ru

1:29

that operated in central harlem a gang

1:32
that held the residence near 137 Street Lenox Avenue
1:36
hostage for years these defendants
1:39
faced serious charges five of the defendants
1:42
face life in prison charged with conspiracy in the first-degree
1:46
the clash a one felon this case represents
1:51
an important step in our office is deliberately focus strategy
1:55
to work with the NYPD to attack
1:58
gang violence neighborhood by neighborhood around Manhattan and take
2:02
gangs down earlier this year oh we
2:06
announced that we were for me a crime strategies in the in the office
2:09
the point of the crime strategies unit was to help our office
2:13
make intelligence-driven prosecution decisions and working with our violent
2:17
criminal enterprise unit which is represented here
2:20
up by Chris reineck we propose proposed to my right
2:23
up and with broadway's projects in our trial division
2:26
we have identified gang activities in specific locations around Manhattan
2:31
assign teams a prosecutor's within our office
2:34
to focus on those who are committing violence and were controlling the game
2:38
to each of those what we call hot spots
2:40
and develop the plant overtime
2:44
to taking them we have built strong cases in the past
2:49
against individual members against I
2:52
but as I say this case represents
2:56
another step in our proactive strategy to address
2:59
violent crime activity throughout manhattan the 14 defendants in this case
3:04
all belonged 22 New York City's most violent criminal Ganesh
3:09
call to Mafia family and goons on deck for GOP
3:13
and they came together in this case over years

3:16
to operate in narcotics operation this case demonstrates that we in law
3:21
enforcement as
3:22
in this community's have to look if the collective impact
3:25
and damage that gang members do on our neighborhoods
3:29
in on the human lives our residents this game
3:34
over years creating an environment where residents lived in a state of alert
3:38
in a state of fear ready for the next gunshot and the next drug deal
3:42
for the next active violence in their neighborhood the block
3:46
which served as the primary day service games operation
3:49
as I said was 137 between Lenox and 7th Avenue
3:53
and it became nearly impassable as gang members established a thriving operation
3:58
shelling crack cocaine this was certainly
4:01
one of the most a violent large in the 32nd precinct
4:05
based on gang activity and as you can see from the map here to my left
4:10
137 are we r this game is charged with
4:14
operating its illicit enterprises is also in the middle
4:19
I love some harlem's most significant when Marsh
4:22
the mother AME baptists Zion Baptist Church
4:25
a block away from abs-cbn Baptist Church the house Center for Women
4:30
on seventh Avenue and across the street I'll
4:33
on Lenox Avenue Harlem Hospital Harlem Children's Zone
4:37
and the parent community center so we had a thriving
4:41
gang operation a drug operation in the core
4:44
a central harlem affecting some %uh central harlem
4:48
and its residents most important institutions and gang are calculated by
4:53
was regularly spilled out
4:55
into the surrounding residential cultural and commercial neighborhood
4:59
in addition to the possession sale of crack cocaine

3

5:02
the defendants are charged with using shaming automatic handguns revolvers and
5:06
ammunition
5:07
to maintain their geographic dominance in central harlem
5:11
137 Street crew members used by lunch including shootings beatings and
5:14
robberies
5:15
to protect their narcotics trafficking business to enhance their own status
5:19
within the gaming
5:20
in to enhance again street credibility with rival street gangs
5:24
they are also charged with using violence against their own members
5:28
to discourage them from providing information about the gang
5:31
to law enforcement the forties this isn't just about 3h
5:36
to safety on our streets this gang also
5:39
specifically threaten the safety juveniles
5:42
young men and women in the neighborhood the gang targeted children
5:46
and young teenagers to hold in transport firearms and individual gang members
5:51
and guns held collectively by the King teens under the age of 16
5:56
were recruited into gang activity including shootings
5:59
gang assaults and robberies and were used to transport
6:02
and shell crack cocaine and the defendant specifically targeted young
6:06
women
6:07
to transport loaded firearms to reduce the likelihood
6:10
the guns being detected by law enforcement
6:14
disturbingly in particular even once incarcerated
6:19
membership this can continually provided each other with intelligence about
6:23
police activity
6:24
in and around West 237 Street we know this through our recorded telephone
6:28
conversations
6:30
from Rikers Island that they shared news with in Rikers Island

6:34
on the activities of the 137 Street crew the arrest its members and associates
6:38
and the actual violence between their game and rival street gangs
6:43
recently in another matter our office obtained an indictment from the grand
6:47
jury
6:47
against a shitty corrections officer for bringing a confidential phone into a
6:51
correctional facility
6:52
and this is because we know it and it demonstrates the issue
6:56
it without a doubt criminal enterprises are still being run
6:59
from behind bars as I mentioned we anticipate
7:03
if you are planning strategies unit are fine a criminal enterprise unit in a
7:06
trial division
7:07
other gang takedown sure the future as part of a deliberate steps
7:11
to focus on gaining guns and drugs throughout manhattan
7:15
this is among our offices highest priorities we will not allow
7:18
in our city should not allow or block a neighborhood or any part
7:22
a Manhattan to be held hostage by pearl enterprise
7:26
neighborhoods at this particular about the residence at this particular
7:29
neighborhood
7:29
were silenced first Fifield for years
7:33
and we believe it is our duty as prosecutors to speak for them
7:36
and we do so today with this indictment we can't permit gays to terrorize our
7:41
streets
7:41
or to rob young men women up their futures
7:46
%uh now like to turn this over to pick you fellows in asking to see if you
7:49
watch
7:52
on behalf I'll but we supplement and Manhattan of my father's in particular
7:56
is always
7:57
good thing when an organization I cause works with the district attorney's

8:01
office
8:02
and include the case this magnitude
8:05
the message that stanton that one the
8:09
axle violent reaction drug sales are taken seriously by both of us
8:13
and the case will be prosecutors thought fullest
8:18
and we will not stop until a completely finished with meeting
8:21
the neighborhood hope both both of these problems
8:24
I am it also isn't a good message to the neighborhood
8:27
that they see is out there they see that the arrest in May that the indictment
8:30
announced
8:31
and I the people that are om being arrested on a tape are facing very
8:35
serious charges and is being taken seriously by everyone
8:38
of they can
**Uploaded on Sep 26, 2011**

Manhattan District Attorney Cyrus R. Vance, Jr., announces indictments of 14 members of a violent criminal street gang on charges including charges of conspiracy to commit narcotics and weapons offenses, and in the case of certain individual defendants, charges of attempted murder, attempted assault, firearms possession, and narcotics sale.

http://www.manhattanda.com/press-rele...

- 4.4.13 DA Vance Discusses Indictment of 63 Members of Major Rival East Harlem Gangs TheManhattanDA 1,307 views

12:30

- 
- 11.18.11: DA Vance: Major Forged Credit Card Ring Indicted for Enterprise Corruption TheManhattanDA 658 views

Reorder No. 5105
JULIUS BLUMBERG, INC.
NYC 10013
⊗10% P.C.W.















Exhibit J

Reorder No. 5105
JULIUS BLUMBERG, INC.
NYC 10013
©10% P.C.W.

RECEIVED

2017 JAN 26  P 11: 31

U S DISTRICT COURT SDNY

Attn Pro Se Unit

For Hon Judge Polk-Failla

Kelly Price

534 W 187th #7

New York, NY 10033

USM5W

SDNY

RECEIVED
SDNY DOCKET UNIT
2017 JAN 27  PM 1:44