February 28, 2017

Hon. Katherine Polk Failla
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

RECEIVED
2017 FEB 28  P 7:43
U S DISTRICT COURT SDNY

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 2, 2017

      Re: <u>Price v. City of New York, Simmons et al</u>, 15-CV-5871, Plaintiff's Letter Opposing Defendant's Pre-Motion Letter Contemplating a Motion to Dismiss

Dear Judge Failla:

I am the Plaintiff in the above-captioned matter. I write to oppose Defendants' pre-motion letter contemplating a motion to dismiss a number of my actions related to unconstitutional torts levied at me by Selena Brooks, NYPD Inspector Obe, John Doe Police Officer and Jane Doe P.O. I am puzzled why the City Law Dept. has only addressed these specific actions in this request and still asks your Honor for a full dismissal of my complaint in its entirety; slaloming through the deep powder of my Section 1983 Civil Rights claims as if they do not exist.

**Background**
I filed this lawsuit in July 2015. In my initial complaint and in subsequent documents filed with the court I have alleged, among other things, claims under 42 U.S.C. § 1983 for violations of my First Amendment rights. Defendants now seek to file a motion to dismiss only the claims against Defendants Obe and Brooks, who violated my First Amendment rights when they blocked me from posting comments on Twitter pages for the 28th Precinct and the Mayor's Office to Combat Domestic Violence. Former Commissioner of the latter also blocked me on another account she used her official Title on and tweeted official news from: "@RPLNYC" on or about October of 2014. I have included in my 1/27/17 motion a request to add this action fully-articulated into my complaint as the statute of limitations expires on or about October of 2017 and as RPL was the supervisor of Selena Brooks these claims should be considered conterminously and as part of a larger conspiracy. For the following reasons I ask that your Honor denies the City's request wholesale.

**Social Media Should Be Treated Like a Traditional Public Forum**
Courts have traditionally applied "forum analysis" to determine if the government may place limitations on speech. *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 (2010). In conducting this analysis, courts characterize the public forum into one of three categories: (1) traditional public fora, such as public streets and parks, (2) government-designated public fora – i.e. "'government property' that has not traditionally been regarded as a public forum but is intentionally opened for that purpose," – and (3) limited public fora that are "limited to use by certain groups or dedicated" to the discussion of particular subjects. *Id.* at 679 n.11. For both traditional public fora and government-designated public fora, "any restriction based on the content of . . . speech must satisfy strict scrutiny." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009). For limited public fora, the government may only impose restrictions on speech that are "reasonable and viewpoint-neutral." *Id.* at 470.

Social media platforms are like traditional public forums. Social media forums provide the means to participate in a wide array of conversations, and the government's participation on these platforms creates an opportunity for members of the public and the government to engage in conversation. The City's participation in Twitter should be considered participation in a traditional public forum. Defendants' actions do not survive strict scrutiny since my posts on Twitter were excluded because they were critical of the 28th Precinct and the Mayor's Office to Combat Domestic Violence. *See* Pl.'s 3rd Am. Compl. Ex. 1 at 24-34.

1

**Under Limited Public Forum-analysis, Defendants' Conduct Violates the First Amendment**
Even if the 28th Precinct and the Mayor's Office to Combat Domestic Violence's presence on Twitter constitute limited public fora, Defendants may not regulate speech on a non-viewpoint-neutral basis. My posts on Twitter were critical of the 28th Precinct and the Mayor's Office to Combat Domestic Violence. *See* Pl.'s 3rd Am. Compl. Ex. 1 at 24-34. Exclusion on this basis amounts to a violation of my First Amendment rights.

Moreover, blocking me from posting on these sites altogether is a far more drastic measure and is inconsistent with New York City's Social Media Customer Use Policy ("the City's Social Media Policy") that states, "a comment may be deleted if it violates the comment policy described here." City of New York, Social Media Customer Use Policy, http://www1.nyc.gov/home/social-media-privacy-policy.page Defendants acted inconsistently with their own policy: by blocking me completely instead of merely deleting a comment, they rendered me unable to make any comments in the future on the 28th Precinct and the Mayor's Office to Combat Domestic Violence Twitter pages or to receive news of announcements broadcast their by others or the account operators.

**Private Citizens Posts on Twitter Are Not Government Speech**
Defendants' characterization of the 28th Precinct and the Mayor's Office to Combat Domestic Violence's Twitter pages as government speech is wholly inaccurate. Whether speech is considered "government speech" depends on at least three factors. *See Walker v. Texas Div, Sons of Confederate Veterans, Inc.*, 135 S.Ct. 2239, 2247 (2015) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)). First, where the practice is long standing, the speech is likely to be attributed to the government. *Id.* Second, courts consider whether the government is communicating in a one-way fashion – i.e. from the government to its citizens – or whether it has opened itself up to speech from others. *Id.* Where the government has opened itself up to speech from others, this factor favors a finding against government speech. *Id.*; *see also Pleasant Grove*, 555 U.S. at 471. Finally, courts evaluate whether the government takes and maintains control over the speech. *Walker*, 135 S.Ct. at 2247.

Speech on social media platforms is vastly different from monuments in a public park. A post on Twitter is more like a speech, march, or demonstration than a monument. *See Pleasant Grove*, 555 U.S. at 471. The Supreme Court acknowledged that conduct like speeches, marches, and demonstrations are fundamentally different from public monuments: parks can accommodate a large number of public speakers, parades, and demonstrations. *Id.* at 479. Social media platforms – like Twitter – can accommodate nearly a limitless number of posts by its users. Users' posts are specifically attributed to the Twitter users themselves – any reference to the City within a post does not convert the comment to government speech.

In addition, the *Pleasant Grove* factors favor me. First, the government has not long used social media to speak to the public. Second, social media platforms were established to encourage broad social interaction among the platform's users. Twitter is not merely a static website meant to convey information in a one-way direction; rather, the platform is designed to allow all users to participate in online conversations. Third, posts on social media are attributed to the users who post them. The city does not take "control" over users posts at any time and does not adopt them as their own.

**Qualified Immunity Does Not Apply**
Qualified immunity is only appropriate where the government official did not act unconstitutionally or where the constitutional violation was not clearly established under federal law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a right was clearly established, the court must consider "all relevant precedents, not simply those cited to, or discovered by, the district court." *Elder v. Holloway*, 510 U.S. 510, 512 (1994). That government actors violate citizens' First Amendment rights when they restrict speech through public forums has long been established. *See, e.g., Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661 (2010); *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *Cox v. Louisiana*, 379 U.S. 536 (1965).

2

The City's Social Media Policy demonstrates Defendants' knowledge of relevant First Amendment law, including that fact that that entirely blocking a Twitter user for voicing critical/opposing viewpoints would constitute a violation of that user's rights. The policy only permits the deletion of comments – not the wholesale blocking of individuals from commenting – and only for irrelevant comments or those that contain "obscene, threatening or harassing" language. City of New York, Social Media Customer Use Policy, http://www1.nyc.gov/home/social-media-privacy-policy.page. The individual Defendants ignored the City's Social Media Policy by blocking me entirely and they did so because I expressed views that were critical of the 28th Precinct and the Mayor's Office to Combat Domestic Violence. I have also tweeted vociferously my pejorative opinions of the MDAO and Mayor DeBlasio and they have not blocked me on Twitter.

**Municipal Liability**

Where municipal employees implement or execute policies or a custom that violates the constitution, the municipality itself will be liable and may not assert qualified immunity. *See Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997); *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008).

The City is the "ultimate decision making authority with respect to" the City's Social Media Policy. *Davison,*, 2016 WL 4801617, at *5. The City's Social Media Policy encourages New York City residents to "contact the City in a direct and meaningful way." City of New York, Social Media Customer Use Policy, http://www1.nyc.gov/home/social-media-privacy-policy.page. City employees blocked me from posting on at least three occasions: once with respect to the 28th Precinct's Twitter page and once with respect to the Mayor's Office to Combat Domestic Violence. The City's role in formulating and overseeing the City's Social Media Policy places them in the position of ratifying the conduct of the municipal employees. *See Davison*, 2016 WL 4801617, at *5-*6.

In addition, the fact that municipal employees blocked me on more than one occasion because I was critical of the City demonstrates that these employees likely acted in accordance with an unwritten custom of blocking users who frequently critiqued the police and the City. The City must realize that the failure to train employees on the proper use of social media carries a high risk that deleting comments or blocking users of violating those users' First Amendment rights. The absence of adequate social media training has resulted in the deprivation of my First Amendment rights on those two occasions.

I have asked the City of NY and the individuals who illegally blocked me on Twitter on several occasions to unblock me and to remediate my Constitutional wrongs as a result. I have presented as an exhibit attached to my complaint a copy of my 311 complaint to the City of NY, letters to Inspector Obe and to former Commish RPL herself requesting to be unblocked. I have also met the NEW Commissioner of the Office to prevent DV and requested to her and her staff that I be unblocked and they, as well as NYC have persisted in ignoring me.

For the foregoing reasons, I ask that the Court deny Defendants' request to file a motion to dismiss. I have asked the court on one prior occasion if I may be awarded Pro Bono counsel: may I please ask your honor to let me know if the bench will accept a second request at this time in light of the terse case law and issues I am tasked to research, understand and assimilate. Thank you for your time and consideration.

Sincerely,
Kelly Price

Sworn Before me on this ___ day of February, 2017

Jennifer J. Parish
Notary Public State of New York
No. 02PA6136940
Qualified in New York County
Commission Expires 11/14/2019

n.b. I have reviewed ECF for my case at the NYLAG Pro Se office and an exhibit attached to my Request for Reconsideration dated 1/27/2017 is incomplete. I have appended the whole document here for complete review.

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Kelly Price

_____
(List the name(s) of the plaintiff(s)/petitioner(s).)

15 Civ. 05871 ( ) ( )

- against -

City of New York et al

~~HolySee~~

_____
(List the name(s) of the defendant(s)/respondent(s).)

**AFFIRMATION OF SERVICE**

I, (print your name) Kelly Price, declare under penalty of perjury that I served a copy of the attached (list the names of the documents you served): Opposition Letter to Defendant's Pre-motion letter Contemplating a Motion to Dismiss upon all other parties in this case by (state how you served the documents, for example, hand delivery, mail, overnight express) Mail USPS to the following persons (list the names and addresses of the people you served): Diana March Elissa B Jacobs City Law Dept. 100 Church St., 4th Floor 10007

on (date you served the document(s)) 2/28/17.

2/28/17
Dated

Signature: Kelly Price
Address: 34 W 187th #7
City, State: New York, NY
Zip: 10033
Telephone Number: 646 678 1940
E-Mail Address: jorjoos2122@gmail.com

Rev. 01/2013