15-CV-5871 (KPF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY PRICE,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS THE CITY OF NEW YORK, SELVENA BROOKS, INSPECTOR OBE, ROSE PIERRE-LOUIS, DETECTIVE SIMMONS, SGT. SHEVITZ, AND SGT. DEJESUS' MOTION TO DISMISS**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, NY 10007*

*Of Counsel:  Debra March*
*Tel:  (212) 356-2410*

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

CLAIMS AGAINST INSPECTOR OBE, SELVENA BROOKS,
AND ROSE PIERRE-LOUIS ......................................................................................... 1

CLAIMS AGAINST DETECTIVE SIMMONS ............................................................ 3

CLAIMS AGAINST SGT. DEJESUS AND SGT. SHEVITZ........................................ 4

STANDARD OF REVIEW ............................................................................................ 4

ARGUMENT

       POINT I

              PLAINTIFF CANNOT BRING A
              CONSTITUTIONAL CLAIM AGAINST ROSE
              PIERRE-LOUIS FOR BLOCKING PLAINTIFF
              ON TWITTER BECAUSE MS. PIERRE-LOUIS
              WAS NOT ACTING UNDER COLOR OF LAW .................................... 5

       POINT II

              PLAINTIFF'S CLAIM THAT SHE WAS
              BLOCKED ON TWITTER BY GOVERNMENT
              OPERATED TWITTER ACCOUNTS DOES NOT
              AMOUNT TO A CONSTITUTIONAL
              VIOLATION.................................................................................... 9

              A.  The Government Operated Twitter Accounts
                   Qualify as Government Speech ............................................ 9

              B.  At a Minimum, the Operators of the
                   Government Run Twitter Accounts are Entitled
                  to Qualified Immunity for their Actions ............................ 12

**Page**

POINT III

    PLAINTIFF'S SINGLE COURT APPEARANCE
IS NOT A SUFFICIENT DEPRIVATION FOR A
MALICIOUS PROSECUTION CLAIM ................................................... 16

POINT IV

    PLAINTIFF'S CLAIM THAT OFFICERS
FAILED TO PROCESS HER REPORT IS NOT A
CONSITTUTIONAL VIOLATION ......................................................... 17

POINT V

    PLAINTIFF CANNOT SHOW THE CITY WAS
LIABLE ................................................................................................. 18

CONCLUSION ................................................................................................. 20

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                                   <u>Pages</u>

<u>Ambrose v. City of New York,</u>
    623 F. Supp. 2d 454 (S.D.N.Y. 2009)......................................................................4

<u>Ashcroft v. Iqbal,</u>
    556 U.S. 662 (2009)....................................................................................4, 5

<u>Baptie v. Bruno,</u>
    88 A.3d 1212......................................................................................17

<u>Bell Atl. Corp. v. Twombly,</u>
    550 U.S. 544 (2007)....................................................................................4, 5

<u>Board of Regents of Univ. of Wis. System v. Southworth,</u>
    529 U.S. 217 (2000)......................................................................................9

<u>Brink v. Muscente,</u>
    2013 U.S. Dist. LEXIS 137880 (S.D.N.Y. Sep. 25, 2013)......................................9

<u>Burg v. Gosselin,</u>
    591 F.3d 95 (2d Cir. 2010)..............................................................................16

<u>Carlos v. Santos,</u>
    123 F.3d 61 (2d Cir. 1997)..............................................................................6

<u>City of Los Angeles v. Heller,</u>
    475 U.S. 796 (1986)................................................................................18, 19

<u>Davison v. Loudoun Cty. Bd. of Supervisors,</u>
    No. 1:16cv932, 2017 U.S. Dist. LEXIS 71585 (E.D. Va. May 10, 2017)
    (JCC/IDD), 2016 U.S. Dist. LEXIS 125083, (E.D. Va. Sep. 14, 2016)..........................14, 15

<u>Davison v. Plowman,</u>
    247 F. Supp. 3d 767 (E.D. Va. 2017) ..................................................................14

<u>Doninger v. Niehoff,</u>
    642 F.3d 334 (2d Cir. 2011)....................................................................12, 13, 14, 15

<u>Garcetti v. Ceballos,</u>
    547 U.S. 410 (2006)......................................................................................7

<u>Harper v. City of New York,</u>
    424 F. App'x 36 (2d Cir. 2011) ..........................................................................4

<u>Harrington v. Cty. of Suffolk,</u>
    607 F.3d 31 (2d Cir. 2010)..........................................................................17, 18

**Cases**                                                                 **Pages**

Harris v. Harvey,
   605 F.2d 330 (7th Cir. 1979) ...................................................................6

Henderson v. Ctr. for Cmty. Alts.,
   911 F. Supp. 689 (S.D.N.Y. 1996) ......................................................5, 8

Johnson v. Police Officer # 17969,
   99 Civ. 3964 (NRB),
   2000 U.S. Dist. LEXIS 18521 (S.D.N.Y. Dec. 26, 2000) ......................18

Kern v. City of Rochester,
   93 F.3d 38 (2d Cir. 1996).......................................................................7

Kirch v. Liberty Media Corp.,
   449 F.3d 388 (2d Cir. 2006)...................................................................5

Knight First Amendment Institute at Columbia University, et al. v. Donald J.
   Trump, President of the United States, et al.,
   17-cv-5205 (NRM) ..........................................................................13, 14

LaMagna v. Brown,
   474 F. App'x 788 (2d Cir. 2012) ...........................................................5

Latuszkin v. City of Chi.,
   250 F.3d 502 (7th Cir. 2001) .................................................................6

Livermore v. City of New York,
   08 CV 4442, 2011 U.S. Dist. LEXIS 4763 (S.D.N.Y. Jan. 13, 2011).......5

Llerando-Phipps v. City of New York,
   390 F. Supp. 2d 372 (S.D.N.Y. 2005)...................................................19

Malley v. Briggs,
   475 U.S. 335, 341 (1986)....................................................................12

Mech v. Sch. Bd. of Palm Beach Cty.,
   806 F.3d 1070 (11th Cir. 2015) ......................................................10, 14

Melville v. Town of Adams,
   9 F. Supp. 3d 77 (D. Mass. 2014) .........................................................7

Minn. Bd. for Commun. Colleges v. Knight,
   465 U.S. 271 (1984)......................................................................10, 12

Monell v. Dep't of Social Services,
   436 U.S. 658 (1978)............................................................................19

iv

**Cases**                                                                                                    **Pages**

Monsky v. Moraghan,
   Docket No. 97-7015, 1997 U.S. App. LEXIS 36158 (2d Cir. Oct. 2, 1997) ........................6, 8

Murphy v. Lynn,
   118 F.3d 938 (2d Cir. 1997)...............................................................................................16

Oklahoma City v. Tuttle,
   471 U.S. 808 (1985).........................................................................................................19

Page v. Lexington Cty. Sch. Dist. One,
   531 F.3d 275 (4th Cir. 2008) ......................................................................................13, 15

Parker v. City of New York,
   No. 05 Civ. 1803, 2008 U.S. Dist. LEXIS 791 (S.D.N.Y. Jan. 7, 2008)..........................16, 17

Pitchell v. Callan,
   13 F.3d 545 (2d Cir. 1994)..............................................................................................6, 8

Pleasant Grove City v. Summum,
   555 U.S. 460 (2009)................................................................................................9, 10, 11

Poe v. Leonard,
   282 F.3d 123 (2d Cir. 2002)..............................................................................................12

Putnam Pit, Inc. v. City of Cookeville,
   221 F.3d 834 (6th Cir. 2000) ......................................................................................14, 15

Richardson v. City of N.Y.,
   2006 U.S. Dist. LEXIS 92731 (S.D.N.Y. Dec. 21, 2006) ........................................................6

Rohman v. New York City Transit Authority,
   215 F.3d 208 (2d Cir. 2000).............................................................................................16

Rosenberger v. Rector and Visitors of the Univ. of Va.,
   515 U.S. 819 (1995)........................................................................................................10

Roth v. Jennings,
   489 F.3d 499 (2nd Cir. 2007).............................................................................................5

Runge v. Collins,
   99 Civ. 9639 (CM), 2000 U.S. Dist. LEXIS 7677 (S.D.N.Y. May 22, 2000)..................17, 18

Screws v. United States,
   325 U.S. 91, 111 (1945).....................................................................................................6

**Cases**                                                                                               **Pages**

Sutliffe v. Epping Sch. Dist.,
    584 F. 3d 314 (1st Cir. 2009) ............................................................................10, 11, 13, 15

Troy v. City of N.Y.,
    No. 13-cv-5082 (AJN),
    2014 U.S. Dist. LEXIS 136339 (S.D.N.Y. Sep. 25, 2014) .......................................17

Vippolis v. Vill. of Haverstraw,
    768 F.2d 40 (2d Cir. 1985)..........................................................................................19

Walczyk v. Rio,
    496 F.3d 139 (2d Cir. 2007).........................................................................................12

Walker v. Tex. Div., Sons of Confederate Veterans, Inc.,
    135 S. Ct. 2239 (2015) ........................................................................9, 10, 11, 12

West v. Atkins,
    487 U.S. 42 (1988) .......................................................................................................6

Whitnum v. Emons,
    No. 3:15-cv-959(SRU),
    2015 U.S. Dist. LEXIS 111509 (D. Conn. Aug. 24, 2015) .......................................7

Wyatt v. Cole,
    504 U.S. 158 (1992).......................................................................................................6

Wylie v. City of New Haven,
    No. 3:02cv313(PCD), 2003 U.S. Dist. LEXIS 25273 (D. Conn. Feb. 27, 2003).....................7

Zieper v. Metzinger,
    474 F.3d 60 (2d Cir. 2007)..........................................................................................12

**Statutes**

42 U.S.C. § 1983 .............................................................................1, 5, 6, 8, 16, 18, 19, 20

Fed. R. Civ. P. 12(b)(6).............................................................................................1, 4

## PRELIMINARY STATEMENT

Plaintiff *pro se* Kelly Price brings this action pursuant to 42 U.S.C. § 1983 against the City of New York, Selvena Brooks, Inspector Obe, Rose Pierre-Louis, Detective Simmons, Lt. Corrado, Officer Staines, Officer Guichardo-Hermenegildo Cruz, Sgt. Shevitz, Sgt. DeJesus, and John Doe MTA officers.   See Plaintiff's Amended Complaint, Civil Docket Entry No. 69, (hereinafter "Am. Complaint").  Defendants now move to partially dismiss plaintiff's Amended Complaint, pursuant to Rule 12(b)(6) on the grounds that: 1) plaintiff cannot bring a claim against Rose Pierre-Louis because Ms. Pierre-Louis was not acting "under color of law" when she blocked plaintiff on her personal Twitter account; 2) plaintiff's claim that she was blocked on Twitter by government operated accounts is not a constitutional violation; 3) plaintiff cannot bring a claim against Detective Simmons because a desk appearance ticket with a single court appearance for that ticket is not a sufficient deprivation of liberty; 4) plaintiff cannot bring a claim against Sgt. DeJesus and Sgt. Shevitz as failing to take a report is not a constitutional violation; and finally 5) the City moves to dismiss all claims against the City of New York on the grounds that plaintiff fails to allege a municipal liability claim.

## STATEMENT OF FACTS

Plaintiff's claims stem from plaintiff's interactions with a former government employee's personal Twitter account, two government operated Twitter accounts, a desk appearance ticket, and plaintiff's complaint of an assault. See Am. Complaint.

### Claims against Rose Pierre-Louis, Inspector Obe, and Selvena Brooks

Twitter is a social media website that allows people or organizations to have an account. Am. Complaint, p 10, ¶84.   People or organizations ("users") can create an account on Twitter. Id. When an individual has an account with Twitter, the user is allowed to share short posts called "tweets." Id. Each Twitter user has a private news timeline.  Id. at ¶85. This timeline

shows the tweets from the other Twitter users that the account follows. Id.  The NYPD 28th

Precinct maintains a Twitter Page @NYPD28Pct and the Mayor's Office to Combat Domestic

Violence maintains a Twitter page @NYCagainstabuse. Id. at ¶¶95, 110.  These Twitter pages

are public.  Id. at ¶86.  The public pages include a profile photo and background photo that is

chosen by the user, a description written by the user, a number of accounts that the user follows

and is followed by, and a feed showing all posts by that user. Id.

      Even if a Twitter account user is not logged into his or her account, the individual is able

to view the profile page for the public account. Id. at ¶87.  When a user is blocked on Twitter, the

individual cannot reply to the account's Tweets, view replies, share the account's tweets, or view

the tweets on her own timeline. Id. at ¶88. A Twitter user is unable to delete another user's tweet

on their page.  Id. at ¶89. However, if that user is blocked -- the user's comments will not appear.

Id.

      Plaintiff maintains the Twitter handle @GracieeGorgeous. Id. at ¶90.  On Twitter

plaintiff interacted with @NYPD28Pct, @NYCagainstabuse, and @RPLNYC. Ms. Pierre-Louis

maintains a twitter account under her name with the handle @RPLNYC.  Id. at ¶126.  Ms.

Pierre-Louis' maintains this Twitter account with the name "Rose Pierre-Louis."  Id.   During

this time period, Ms. Pierre Louis was the Commissioner of the Mayor's Office to Combat

Domestic Violence. Id. at ¶125.  In October 2014 Ms. Pierre-Louis blocked plaintiff. Id. at ¶133.

      In October 2014 Inspector Obe operated the 28th precinct's Twitter Account

@NYPD28Pct. Id. at ¶95.  Inspector Obe maintained this account for the 28th Precinct. Id.  The

28th Precinct's account is named "NYPD 28th Precinct." Id. The profile page for this account

states that it is "The official Twitter of the 28th Precinct."  Id. at ¶96. During this time, plaintiff

2

followed the 28th Precinct's Twitter Account. Id. at ¶101. According to the Amended Complaint, on October 14, 2014 Inspector Obe blocked plaintiff on this account.   Id. at ¶103.

In October 2014 Selvena Brooks operated the Mayor's Office to Combat Domestic Violence's Twitter Account @NYCagainstabuse. Id. at ¶110.  Ms. Brooks maintained this account for the New York City's Mayor's Office to Combat Domestic Violence. Id. The Account is named "Office to Combat DV." Id. Plaintiff followed this account on Twitter. Id. at ¶111. On December 1, 2014 Ms. Brooks blocked plaintiff on this account. Id. at ¶117.

### Claims Against Detective Simmons

According to plaintiff, on October 14, 2010 Detective Simmons gave her a desk appearance ticket (DAT). Id. at ¶¶31, 45. About a month later, in November 2010 plaintiff had a court appearance for this DAT. Id. at ¶49. At this court date plaintiff was informed that the charge would be adjudicated in six months if she did not get rearrested. Id. However, plaintiff was arrested in February 2011 for harassing Raheem Powell and again in May 2011 for Felony Contempt of Court. Id. ¶¶53-54. Plaintiff claims that she was placed on Rikers Island for the May 2011 arrest. Id. at ¶54.  Plaintiff alleges that the desk appearance ticket was always mentioned along with plaintiff's other arrest charges in February through May 2012. Id. ¶55. On July 25, 2012 Plaintiff was told by the Honorable Dawson's clerk that all charges had been dismissed and sealed against her. Id. ¶57. Plaintiff was informed that she could pick up the certificate of dismissal for the desk appearance ticket downstairs, but the office was closed when she arrived. Id. ¶58. Four years later, on August 24, 2016, plaintiff claims she went to the clerk's window and was informed that the desk appearance ticket had never been adjudicated. Id. ¶59. Plaintiff claims the desk appearance ticket was terminated in her favor on September 9, 2016. Id. ¶61.

3

**Claims against Sgt. DeJesus and Sgt. Shevitz**

On January 24, 2017 plaintiff claims she was assaulted on the downtown 1 train.  Id.
¶170. Apparently, the "subway reported the incident" and officers from the 34th precinct and
Transit Bureau 3 ("TB3") responded.  Id. ¶171. Plaintiff claims that an officer responded and
took plaintiff's ID and advised her to call the next day for an incident report.  Id. ¶¶172-173. The
next day plaintiff called TB3 and was informed that no report had been made.  Id. ¶174.  During
that conversation, she was told to call back the next day.  Id. Plaintiff called again and was told
the same response.  Id. ¶175.  The next day plaintiff called and spoke to Sgt. DeJesus.  Id. ¶176.
Plaintiff complained about her report not being processed.  Id. ¶177. Apparently, Sgt. DeJesus
requested that plaintiff send the video to him via email.  Id. ¶178. A few days later, plaintiff
called TB3 and spoke with Sgt. DeJesus.  Id. ¶179. Plaintiff claims Sgt. DeJesus promised a full
investigation.  Id.  About a week later plaintiff called TB3 to check on the status.  Id. ¶180. This
time, Sgt. Shevitz answered the phone and promised a full investigation.  Id. Plaintiff claims to
this date nothing has been done to follow-up on this incident.  Id. ¶181.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), a pleading may be dismissed for "failure to state a claim upon
which relief can be granted."  To survive a Rule 12(b)(6) motion, "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011) (quoting Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))). "A
plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels
and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
Ambrose v. City of New York, 623 F. Supp. 2d 454, 463 (S.D.N.Y. 2009) (internal alterations
and quotation marks omitted).  Thus, "naked assertions devoid of further factual enhancement"

or "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to state a claim. Iqbal, 556 U.S. at 678 (internal quotations omitted) (internal alterations omitted). For example, an allegation that lacks a factual basis is merely "a conclusory allegation 'masquerading as [a] factual conclusion[],' which is insufficient to defeat a motion to dismiss." LaMagna v. Brown, 474 F. App'x 788, 790 (2d Cir. 2012) (quoting Kirch v. Liberty Media Corp., 449 F.3d 388, 398 (2d Cir. 2006)). In sum, when a plaintiff's allegations are insufficient to "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Livermore v. City of New York, 08 CV 4442, 2011 U.S. Dist. LEXIS 4763, at *14 (S.D.N.Y. Jan. 13, 2011) (quoting Twombly, 550 U.S. at 570).   In addition to the factual allegations in the Am. Complaint, the Court may consider: (1) documents incorporated by reference in the complaint, (2) documents in plaintiff's possession and relied on to craft the pleading, and (3) matters of which judicial notice may be taken. See, e.g., Roth v. Jennings, 489 F.3d 499, 509 (2nd Cir. 2007).

## ARGUMENT

### POINT I

**PLAINTIFF CANNOT BRING A CONSTITUTIONAL CLAIM AGAINST ROSE PIERRE-LOUIS FOR BLOCKING PLAINTIFF ON TWITTER BECAUSE MS. PIERRE-LOUIS WAS NOT ACTING UNDER COLOR OF LAW[1]**

"To state a claim under the First Amendment or under 42 U.S.C. § 1983, the behavior complained of must be considered an action of the government, and not that of a private actor." Henderson v. Ctr. for Cmty. Alts., 911 F. Supp. 689, 707 (S.D.N.Y. 1996). Under §1983 "the

---

[1] In the alternative, if the Court finds that Ms. Pierre-Louis' personal Twitter account constituted government action, then this claim too should be dismissed for the same reasons stated below as the government run twitter accounts.

conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). "Under color of law" has been interpreted to mean acting "under 'pretense of law.'" Id. at 547-48 (quoting Screws v. United States, 325 U.S. 91, 111 (1945)).

To act under pretense of law "the defendant must have exercised power possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law." Monsky v. Moraghan, Docket No. 97-7015, 1997 U.S. App. LEXIS 36158, at *7 (2d Cir. Oct. 2, 1997)(internal quotations omitted); Carlos v. Santos, 123 F.3d 61, 65-66 (2d Cir. 1997) (finding that when "[a]ny citizen may perform [the challenged] acts" it does not constitute state action);  see also West v. Atkins, 487 U.S. 42, 50 (1988) (noting that "a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State"). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992); Harris v. Harvey, 605 F.2d 330, 337 (7th Cir. 1979) (finding that a judge was "acting under color of law" and "us[ed] the power and prestige of his state office" when he urged the firing of an individual by writing on his official stationary, disseminating press releases identifying himself as county judge, and used his judicial influence); Richardson v. City of N.Y., 2006 U.S. Dist. LEXIS 92731, at *49-50 (S.D.N.Y. Dec. 21, 2006)(finding reasonable juror could find officer acting "under color of law" when she engaged in sexual relations with plaintiff, since the alleged incidents occurred in her office, and she was responsible for plaintiff's pre-sentence report).

Moreover, a government official does not act under color of law when she engages in a "personal pursuit." Pitchell, 13 F.3d at 548; Latuszkin v. City of Chi., 250 F.3d 502, 506 (7th

6

Cir. 2001) (noting that defendant not acting "under color of law" where plaintiff made "no allegation that [defendant] was engaged in police activity, that he displayed any police power, or that he possessed any indicia of his office at the time of the accident"); Whitnum v. Emons, No. 3:15-cv-959(SRU), 2015 U.S. Dist. LEXIS 111509, at *5-6 (D. Conn. Aug. 24, 2015) (finding Section 1983 cause of action was not plead because plaintiff alleged that the Judge "was acting 'as a private citizen,' and 'was not performing her job as a judge'"); Wylie v. City of New Haven, No. 3:02cv313(PCD), 2003 U.S. Dist. LEXIS 25273, at *6 (D. Conn. Feb. 27, 2003) (finding off duty officer from different municipality not acting "under color of law" when he witnessed an unlawful arrest in another municipality).

Further "a citizen who works for the government is nonetheless a citizen." Garcetti v. Ceballos, 547 U.S. 410, 419 (2006). "Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996). "It cannot be true, simply by virtue of [the official's] position…that all of her speech regarding 'town business' necessarily equates to 'job-related' speech." Melville v. Town of Adams, 9 F. Supp. 3d 77, 104 n.6 (D. Mass. 2014).

Here, Rose Pierre-Louis was not acting "under color of law" when she allegedly blocked plaintiff from her Twitter Account @RPLNYC because this was her *personal* Twitter Account. While plaintiff claims that Ms. Pierre-Louis used her account to disseminate official information during the time she was commissioner and that Ms. Pierre-Louis identified herself as the Commissioner (Am. Complaint, ¶¶127-128), an exhibit attached to her third Amended Complaint shows that Ms. Pierre-Louis did not in fact identify herself as the Commissioner on her Twitter page.   Civil Docket Entry, No. 21-1, page 39.  Further, the mere fact that Ms. Pierre-Louis may have disseminated official information through her account (Am. Complaint, ¶¶129) does not make it "job-related speech." Melville 9 F. Supp. 3d at 104 n.6.

7

Plaintiff's potential claim against Pierre-Louis is in contrast to her claims against the government run twitter accounts operated by City employees in the course of their jobs. <u>Henderson</u>, 911 F. Supp. at 707. Here, Pierre-Louis's Twitter Account was not "made possible only because [she was] clothed with the authority of state law." <u>Monsky</u>, 1997 U.S. App. LEXIS 36158, at *7. Specifically, there is nothing in the pleadings to indicate that Ms. Pierre-Louis used her authority as the Commissioner of the New York City Mayor's Office to Combat Domestic Violence to create a Twitter Account. Instead, Pierre-Louis engaged in a "personal pursuit" creating a personal Twitter Account. <u>Pitchell</u>, 13 F.3d at 548. Moreover, plaintiff even admitted at the conference that she was blocked from Pierre-Louis' *personal* account. (Civil Docket Entry No. 62, Transcript of 3/15/17 Proceedings 23: 24).  As a result, plaintiff cannot state a §1983 claim against Pierre-Louis for allegedly blocking plaintiff on her own *personal* account. Thus, plaintiff's First Amendment rights were not violated by Ms. Pierre-Louis acting in her personal capacity.

8

**POINT II**

**PLAINTIFF'S CLAIM THAT SHE WAS BLOCKED ON TWITTER BY GOVERNMENT OPERATED TWITTER ACCOUNTS DOES NOT AMOUNT TO A CONSTITUTIONAL VIOLATION[2]**

Plaintiff's first amendment claims stem from the fact that she was blocked by three users on twitter – two governmental accounts and one personal account of a public employee.   The First Amendment as applied to social media is developing law, it has generally been analyzed as either government speech or through the theory of a limited public forum. Under either analysis, plaintiff's claims fail.

**A. The Government Operated Twitter Accounts Qualify as Government Speech**

"The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." Pleasant Grove City v. Summum, 555 U.S. 460, 467 (2009). The government "has the right to 'speak for itself.'" Id. at 467 (quoting Board of Regents of Univ. of Wis. System v. Southworth, 529 U.S. 217, 229 (2000)). Therefore, where the government is speaking for itself, the First Amendment does not apply. Summum, 555 U.S. at 467. To determine whether the government is speaking for itself courts can look to certain factors such as (1) the history of the medium for the communication; (2) whether the communication is "closely identified in the public mind with the State," and (3) whether the state controls direct control over the message. Walker v. Tex. Div., Sons of Confederate Veterans, Inc., 135 S. Ct. 2239,

---

[2] To the extent plaintiff alleges a First Amendment Retaliation claim, this claim must also be dismissed. "Private citizens alleging retaliation for their criticism of public officials are generally required to show that they engaged in protected speech, persons acting under color of state law took adverse action against them in retaliation for that speech, and the retaliation resulted in 'actual chilling' of their exercise of their constitutional right to free speech." Brink v. Muscente, 2013 U.S. Dist. LEXIS 137880, at *21 (S.D.N.Y. Sep. 25, 2013)(internal quotations omitted). Because plaintiff has not engaged in protected speech for the reasons stated herein, she cannot allege a retaliation claim.

2248-2249, 2253 (2015)(internal citations omitted)(finding Texas's specialty license plate designs constituted government speech and that it was constitutional for Texas to reject certain designs by private parties); Mech v. Sch. Bd. of Palm Beach Cty., 806 F.3d 1070, 1074 (11th Cir. 2015) (noting that "the Supreme Court has not articulated a precise test for separating government speech from private speech, but its recent decision in *Walker* concluded that the specialty license plates for motor vehicles in Texas were government speech based on three factors").

When speaking for itself, the government can "'say what it wishes,' and [] select the views that it wants to express." Summum, 555 U.S. at 467-68 (quoting Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819, 833 (1995)). For example, in Sutliffe v. Epping School District, the First Circuit held that a town did not violate the First Amendment when it rejected certain hyperlinks from inclusion on its website. Sutliffe v. Epping Sch. Dist., 584 F. 3d 314, 329, 331-332 (1st Cir. 2009). In that case, a town maintained a website and included only certain hyperlinks on it. Id. at 331. The Town rejected plaintiffs' link for placement on its website. Id. at 323-24. By choosing which links to place on its website, the Town was able to convey the message it *wanted* to convey about itself. Id. at 332. Moreover, "when the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes." Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 833 (1995). Further, [n]othing in the First Amendment or in [the Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." Minn. Bd. for Commun. Colleges v. Knight, 465 U.S. 271, 285 (1984).

Here, Inspector Obe and Ms. Brooks actions in blocking plaintiff's Twitter account @Gracieegorgeous was permissible as government speech.   Looking to the three factors discussed in Walker, all three factors are met in this case.   First while Twitter is a new phenomenon for government communication, historically the government has communicated with the public through technology in the form of radio and television, as well as various forms of online communication.   Second, the government's communication on Twitter as @NYPD28Pct is closely identified in the public mind with the state as the page for @NYPD28Pct is labeled as the official account for the 28th Precinct. Am. Complaint, ¶95. Likewise, @NYCagainstabuse is closely identified with the state as it identifies itself as the account for the Mayor's Office to Combat Domestic Violence.   Am. Complaint, ¶103. Finally, the government directly maintains control over these accounts—as Inspector Obe maintained the account for the 28th precinct and Ms. Brooks for the Mayor's Office to Combat Domestic Violence. Am. Complaint, ¶¶95, 110.   According to plaintiff's allegations, Inspector Obe and Ms. Brooks controlled the government's message by choosing a profile photo, background photo, a description for the government's page, and posting. Am. Complaint, ¶86. In addition, the government's twitter pages showed the individuals they *chose* to follow along with their feed showing all posts by the accounts.   Am. Complaint, ¶86.

Consequently, Inspector Obe and Ms. Brooks were speaking for the government through the respective accounts @NYPD28Pct and @NYCagainstabuse.   By blocking plaintiff, the government was simply "speaking for itself" and maintaining the message that it wished to promote. Pleasant Grove City v. Summum, 555 U.S. 460, 467-68 (2009). The government is not required to promote plaintiff's point of view through their Twitter accounts. See Sutliffe v. Epping Sch. Dist., 584 F. 3d 314, 329, 331-332 (1st Cir. 2009).   These accounts allow the

government to speak for itself by allowing the messages it *choses* to convey to the public. Walker v. Tex. Div., Sons of Confederate Veterans, Inc., 135 S. Ct. 2239, 2246 (2015) (noting that "as a general matter, when the government speaks it is entitled to promote a program, to espouse a policy, or to take a position"). Further, the government twitter accounts are not obligated to "listen or respond" to plaintiff's communications. Minn. Bd. for Commun. Colleges v. Knight, 465 U.S. 271, 285 (1984).   Thus, Inspector Obe's and Ms. Brooks' operation of @NYPD28Pct and @NYCagainstabuse and subsequent decision to block plaintiff constituted government speech.

### B. At a Minimum, the Operators of the Government Run Twitter Accounts are Entitled to Qualified Immunity for their Actions

Qualified Immunity shields governmental actors from "civil damages if their actions were objectively reasonable, as evaluated in the context of legal rules that were 'clearly established' at the time." Poe v. Leonard, 282 F.3d 123, 131-32 (2d Cir. 2002). To determine if qualified immunity applies there is a two-step inquiry. Doninger v. Niehoff, 642 F.3d 334, 345 (2d Cir. 2011). First, "whether the defendant violated a constitutional right." Id. Second, "whether that right was 'clearly established.'" Id. "'[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. at 334 (quoting Zieper v. Metzinger, 474 F.3d 60, 68 (2d Cir. 2007)). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "If [officials] of reasonable competence could disagree on the legality of the action at issue in its particular factual context, then the defendant is entitled to qualified immunity, [e]ven if the right at issue was clearly established in certain respects." Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007)(internal quotations omitted).

"Qualified immunity operates to protect officials in such areas of indeterminacy and 'to ensure that before they are subjected to suit, [they] are on notice their conduct is unlawful.'"

12

Doninger v. Niehoff, 642 F.3d 334, 355 (2d Cir. 2011)(internal citations omitted).  For example, in Doninger, the Second Circuit found that school officials were entitled to qualified immunity where they prohibited a student from wearing a home made t-shirt to a school assembly. In that case, the Court noted that "even assuming, *arguendo*, that it would be clear to a reasonable official that the *Tinker* standard applied in the circumstances presented, Defendants are still entitled to qualified immunity if such an official could have reasonably erred in determining whether the potential for disruption at the assembly was sufficient to satisfy that standard." Doninger, 642 F.3d at 354.

Here, there is no First Amendment precedent on whether a government official can block someone on Twitter.  See Knight First Amendment Institute at Columbia University, et al. v.  Donald J. Trump, President of the United States, et al., 17-cv-5205 (NRM) (briefing on whether President Donald Trump's blocking other users is a constitutional violation).   Only a handful of cases have even dealt with the government, social media, and the First Amendment, and none in this Circuit or district.   Those that have addressed social media have failed to create a clear standard that would allow these individuals to know that their actions in blocking Ms. Price violated the First Amendment.  See Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 334-35 (1st Cir. 2009) (stating that "[i]t is possible there may be cases in which a government entity might open its website to private speech in such a way that its decisions on which links to allow on its website would be more aptly analyzed as government regulation of private  speech"); Page v. Lexington Cty. Sch. Dist. One, 531 F.3d 275, 284 (4th Cir. 2008)(finding that the government speech doctrine applied to the School District's inclusion of links to private websites on its webpage but noted that "[h]ad the linked website somehow transformed the School District's website into a type of 'chat room' or 'bulletin board' in which private viewers could express opinions or post information, the issue would, of course, be different"); Putnam Pit. Inc. v. City of Cookeville, 221 F.3d 834, 842 (6th Cir. 2000) (applying the public forum analysis and finding no constitutional violation where the City refused to

maintain a link to plaintiff's private website on its website); <u>Davison v. Plowman</u>, 247 F. Supp. 3d 767, 780 (E.D. Va. 2017)(noting that "the Court must conclude that any First Amendment right Plaintiff might have had to continue posting comments on Defendant's Facebook page, notwithstanding his repeated violations of the Loudoun County Social Media Comments Policy, was not clearly established at the time Defendant blocked him"); <u>Davison v. Loudoun Cty. Bd. of Supervisors</u>, No. 1:16cv932 (JCC/IDD), 2017 U.S. Dist. LEXIS 71585, at *16 (E.D. Va. May 10, 2017)(noting that "[w]hen a social media website may be considered 'governmental' for purposes of the First Amendment, notwithstanding that it is controlled privately by a government official, appears to be a novel legal question"); <u>Mech v. Sch. Bd. of Palm Beach Cty.</u>, 806 F.3d 1070, 1076 (11th Cir. 2015)(analyzing that "if the School Board posted a message about school closings for inclement weather on Facebook or Twitter, we would have little difficulty classifying the message as government speech, even though social media is a relatively new phenomenon").

Therefore, even if the government operators' actions were unconstitutional, they are entitled to qualified immunity as First Amendment rights with regards to social media are undefined and still evolving. Twitter has only existed since 2006—and there is *no* controlling authority in this jurisdiction on whether a government operated Twitter account can block a private user's account. <u>See</u> <u>Knight First Amendment Institute at Columbia University, et al. v. Donald J. Trump, President of the United States, et al.</u>, 17-cv-5205 (NRM). In fact, President Donald J. Trump is being sued in this district for the *same* issue, however, there has been no dispositive ruling as defendants have filed their motion for summary judgment on October 13, 2017. <u>Id.</u> at Docket Entry No. 35. Nevertheless, any subsequent ruling on this issue could not qualify as putting these government operators "on notice" for plaintiff's claims that arose three years ago in 2014 . <u>Doninger v. Niehoff</u>, 642 F.3d 334, 355 (2d Cir. 2011); Am. Complaint, ¶¶103, 117. Even so, the jurisdictions that have discussed the First Amendment and social media have applied conflicting standards. <u>See e.g.</u> <u>Sutliffe v. Epping</u>

14

Sch. Dist., 584 F.3d 314, 334-35 (1st Cir. 2009) (applying the government speech doctrine); Page v. Lexington Cty. Sch. Dist. One, 531 F.3d 275, 284 (4th Cir. 2008)(applying the government speech doctrine); Putnam Pit, Inc. v. City of Cookeville, 221 F.3d 834, 842 (6th Cir. 2000)(applying the public forum analysis); Davison v. Loudoun Cty. Bd. of Supervisors, No. 1:16cv932 (JCC/IDD), 2016 U.S. Dist. LEXIS 125083, at *16-18 (E.D. Va. Sep. 14, 2016)(applying government forum analysis).

The confliction in these jurisdictions and lack of any case law, underscores the uncertainty of this right. The defendants cannot be found to have violated a right—blocking an individual on Twitter--which they did not even know existed. Doninger v. Niehoff, 642 F.3d 334, 345 (2d Cir. 2011). Here, Officials cannot be held responsible for a right that those dedicated to the study and practice of law cannot decipher—as "[officials] of reasonable competence" could *certainly* "disagree on the legality of the action at issue." Doninger, 642 F.3d at 345. These limited cases highlight the unsettled nature of the First Amendment as applied to social media. Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 334-35 (1st Cir. 2009) (stating that "[i]t is possible there may be cases in which a government entity might open its website to private speech in such a way that its decisions on which links to allow on its website would be more aptly analyzed as government regulation of private speech"); Page v. Lexington Cty. Sch. Dist. One, 531 F.3d 275, 284 (4th Cir. 2008)(finding that the government speech doctrine applied to the School District's inclusion of links to private websites on its webpage but noting that "[h]ad the linked website somehow transformed the School District's website into a type of 'chat room' or 'bulletin board' in which private viewers could express opinions or post information, the issue would, of course, be different"). Thus, even if the government's blocking of plaintiff on Twitter was a First Amendment violation, the government operators cannot be liable because the right was not clearly established.

15

**POINT III**

**PLAINTIFF'S SINGLE COURT APPEARANCE IS NOT A SUFFICIENT DEPRIVATION FOR A MALICIOUS PROSECUTION CLAIM**

Under New York law, to establish a claim of malicious prosecution, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997). A malicious prosecution claim brought under § 1983 also requires "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. New York City Transit Authority, 215 F.3d 208, 215 (2d Cir. 2000); see also Parker v. City of New York, No. 05 Civ. 1803, 2008 U.S. Dist. LEXIS 791, at *26 (S.D.N.Y. Jan. 7, 2008) (finding that "[a] plaintiff does not have a claim for…malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he is already in custody on other charges, because there is no deprivation of liberty interests"). Plaintiff's malicious prosecution claim fails as a "a pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure." Burg v. Gosselin, 591 F.3d 95, 101 (2d Cir. 2010).

Here, plaintiff's single court appearance does not amount to a deprivation of her liberty interest. Burg, 591 F. 3d at 101. Plaintiff only alleges that she attended court *once* for this desk appearance ticket in November 2010. Am. Complaint, ¶49. Plaintiff cannot attribute the additional court appearances to this single DAT. Even if the DAT was mentioned along with other charges, plaintiff had to return to court because she was arrested on *other* charges—including an assault and felony contempt charge. Am. Complaint, ¶¶53-54. Plaintiff would have

had to attend court for the assault and felony contempt charges regardless of the DAT.  Similar to

the plaintiff in <u>Parker v. City of New York</u>, who could not claim a deprivation for an additional

charge when he was already incarcerated, plaintiff has not alleged that she was required to attend

any additional court appearances.  <u>Parker,</u> 2008 U.S. Dist. LEXIS 791, at *26.  Moreover,

plaintiff believed this DAT was dismissed for almost five years ago until she decided to visit the

clerk's window in August 2016 for a certificate of dismissal.  Thus, plaintiff has not alleged a

sufficient deprivation.     Am. Complaint, ¶¶58-59.

## POINT IV

### PLAINTIFF'S CLAIM THAT OFFICERS FAILED TO PROCESS HER REPORT IS NOT A CONSITTUTIONAL VIOLATION

Plaintiff's final claim states that Sgt. DeJesus and Sgt. Shevitz failed to process her

complaint.  "It is well established that '[t]here is . . . no constitutional right to an investigation by

government officials.'" <u>Troy v. City of N.Y.,</u> No. 13-cv-5082 (AJN), 2014 U.S. Dist. LEXIS

136339, at *15 (S.D.N.Y. Sep. 25, 2014); <u>Runge v. Collins,</u> 99 Civ. 9639 (CM), 2000 U.S. Dist.

LEXIS 7677, at *10 (S.D.N.Y. May 22, 2000) (noting that "[p]laintiff has no constitutional right

to have police officers investigate [her] claims, and it is not a violation of [her] civil rights if they

fail to do so").  "[T]he duty to investigate criminal acts (or possible criminal acts) almost always

involves a significant level of law enforcement discretion." <u>Harrington v. Cty. of Suffolk</u>, 607

F.3d 31, 35 (2d Cir. 2010); <u>Baptie v. Bruno</u>, 88 A.3d 1212, 1216 (stating that  "the scope of

defendant's investigation into plaintiffs' complaint was at the heart of his official and

discretionary duties as a police officer").  Additionally, "[n]o right, privilege or immunity

guaranteed by the Constitution or the laws of the United States is implicated by a civilian

complaint to a police department." <u>Johnson v. Police Officer # 17969</u>, 99 Civ. 3964 (NRB), 2000

U.S. Dist. LEXIS 18521, at *17 (S.D.N.Y. Dec. 26, 2000)(finding no § 1983 claim where plaintiff alleged officers failed to take report regarding assault).[3]

Here, plaintiff merely alleges that Sgt. DeJesus and Sgt. Shevitz "picked up the phone" on different occasions when she attempted to follow up on a complaint she made.     Am. Complaint, ¶¶176, 180. While plaintiff would not even have a claim against the responding officer who she alleges failed to take her report, the allegations against these officers is even more attenuated. Johnson, 2000 U.S. Dist. LEXIS 18521, at *17. Plaintiff claims that these two officers promised an investigation and that to this date nothing has been done to follow-up. Am. Complaint, ¶¶180, 181. As an initial matter, plaintiff's allegations do not amount to a constitutional claim. Johnson, 2000 U.S. Dist. LEXIS 18521, at *17; Runge, 2000 U.S. Dist. LEXIS 7677, at *10.  Nevertheless, plaintiff has not alleged that an investigation did not take place by these officers—as she even alleges that Sgt. DeJesus requested that she send him the video of the assault. Am. Complaint, ¶¶178. It is within Sgt. DeJesus and Sgt. Shevitz discretion what to do with the information plaintiff provides as, they have no duty to investigate the way plaintiff desires. Harrington, 607 F.3d at 35.

## POINT V

### PLAINTIFF CANNOT SHOW THE CITY WAS LIABLE

To succeed on municipal liability plaintiff must first show that there was an underlying constitutional violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  Secondly, in order to hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must establish that the municipality itself was somehow at fault. Oklahoma City

---

[3] To the extent plaintiff alleges the officers owed her a duty, that claim should also be dismissed as it is a state law claim and plaintiff has failed to file a Notice of Claim.

v. Tuttle, 471 U.S. 808, 810 (1985); Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978) (liability exists only where "action pursuant to official municipal policy of some nature caused a constitutional tort"). A municipality may not be held liable under § 1983 on the basis of respondeat superior. Monell, 436 U.S. at 694-95. Instead, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . . Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted). To the extent plaintiff's complaint can be construed as asserting a claim for municipal liability against the City of New York under Monell v. Department of Social Services, 436 U.S. 658, 609-91 (1978), that claim should be dismissed. Therefore, in order to establish municipal liability, plaintiff must demonstrate that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." Monell 436 U.S. at 694. Further, to establish municipal liability, plaintiff must show that there was an underlying constitutional violation, e.g., a false arrest. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

Plaintiff's own alleged single, isolated incident is insufficient as a matter of law to give rise to an inference of a systemic informal practice that can support a municipal liability claim. Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382-82 (S.D.N.Y. 2005). As discussed above, blocking an individual on twitter is not a constitutional violation, failing to take a complaint is not a constitutional violation, a desk appearance ticket with a single court appearance for that ticket is not a sufficient deprivation of liberty, and plaintiff has alleged no connection between being brought to Bellevue by NYPD officers and an unconstitutional City

policy. Thus, plaintiff's claims against the City should be dismissed. Accordingly, the Court should dismiss any § 1983 claims against the City.

**CONCLUSION**

WHEREFORE, defendants the City of New York, Inspector Obe, Ms. Brooks, Ms. Pierre-Louis, Sgt. DeJesus, and Sgt. Shevitz respectfully request that an order and judgment be entered dismissing the Amended Complaint and denying the relief requested therein in its entirety, together with costs, fees, disbursements, and such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              November 3, 2017

              ZACHARY W. CARTER
              Corporation Counsel of the
                City of New York
              Attorney for defendants
              100 Church Street
              New York, New York 10007

By:     _Debra March_

              Debra March
              Assistant Corporation Counsel