UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY PRICE,

                                    Plaintiff,

                -against

THE CITY OF NEW YORK, ROSE                 15-CV-5871
PIERRE- LOUIS, in her individual and
official capacity, SELVENA BROOKS, in
her individual and official capacity,      LETTER SUMMARIZING
INSPECTOR OLUFUNMILO F. OBE, in            DISCOVERY ISSUES
her individual and official capacity,
DETECTIVE LINDA SIMMONS, in her
individual and official capacity, OFFICER
JOHN STAINES, in his individual and
official capacity, OFFICER ISELAINE
GUICHARDO HERMENE GILDO CRUZ,
in her individual and official capacity, LT.
NICHOLAS CORRADO, in his individual
and official capacity; LIEUTENANT
RAYMOND DEJESUS, in his individual
and official capacity; OFFICER EMMET, in
his individual and official capacity;
SERGEANT SHEVTIZ, in his individual
and official capacity; MTA OFFICER
STEPHEN MEARS, in his individual and
official capacity; MTA OFFICER ALISON
SCHMITT, in her individual and official
capacity
Defendants


Hon. Katherine Polk Failla
United States District Judge
c/o Pro Se Office
United States District Court
Southern District of New York
500 Pearl Street, Room 230
New York, NY 10007

Re:     ORDER to itemize discovery issues stemming from discussion during status
conference held via teleconference on November 5, 2020

Dear Judge Failla:

Your honor, for a long time there has been a constant, urgent plea I have issued to the court in all of my moving papers and oral arguments:  I have asked you to recognize at the very least that the Manhattan DAs office is sort of lax when it comes to producing honest responses to this court's orders and this issue has only expanded in discovery when it comes to the Manhattan DA and the delaying exculpatory evidence production, destroying evidence and forging evidence in response to the  subpoena for discovery materials that we served.

Recently there have been some judges in this courthouse that are starting to call out Federal Prosecutors in a string of recent high-profile orders in the SDNY.

While the Manhattan DA and the SDNY Federal prosecutor's office are entirely two different entities I don't see any clear path to holding the people who work at Hogan Place to a lower standard than the attorneys at St. Andrew's Place when it comes to how they conduct business in front of you and this court.  I ask you to consider the paltry evidence I have been able to squeeze out of MDAO obtained this year in discovery, which is in no way sates the demands of the discovery subpoena, and the way it was returned to me, against the landscape of recent comments about prosecutorial duty to unhand exculpatory evidence, and to be truthful in all dealings with the court.   I am referring to recent orders and opinions by judges such as Honorable Hellerstein,[1] in the case against Victor Mones Coro, and most presciently and recently Judge Nathan's in US v Najad (18-cr-224; 379) in

---

[1] See Attached Exhibit A

her decision and order issued on 9/16/20[2] in which she begins citing Brady and US v

Universitas;

"Prosecutors have constitutional and statutory duties to disclose many types of evidence to defendants. This principle of disclosure is central to our criminal-justice system. "A prosecutor that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant . . . That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice." Brady v. Maryland, 373 U.S. 83, 87–88 (1963). And federal prosecutors, like all parties that appear before the Court, have ethical duties of candor. United States v. Universita, 298 F.2d 365, 367 (2d Cir. 1962) ("The prosecution has a special duty not to mislead; the government should, of course, never make affirmative statements contrary to what it knows to be the truth.")[3]

As with the prosecutors in US v Najad and in this case, the Manhattan DA's office has

repeatedly violated their disclosure discovery obligations and, at best, toed the line with

respect to their duty of candor.  But they didn't stop at where the lawyers involved in the

Najad case did:  they topped it.

The DA's misconduct doesn't merely involve withholding exculpatory evidence and making

misleading statements as the prosecutors Hon. Judge Nathan is responding to in US v Najad

did.  Vance's office brazenly hubristic, criminal and unconstitutional behavior that has

come to my attention during the discovery process and the other issues I wish to bring to

the court's attention include:

I.   **Withholding exculpatory evidence essential to me that was my personal**

**property for nine years after criminal charges were dismissed and sealed**

**against me and; then again delaying its return for approximately an**

---

[2] US v Najad: 18cr-00224-AJN; 379; 9/16/20;
https://drive.google.com/file/d/1vS7SpDz8eNBrmwmP55q5SWU9w7P4Impc/view;
linked November 4, 2020.

[3] IBID

additional ten months after receiving a discovery subpoena for all materials.

II.  Destroying part of that evidence it unlawfully held for nine years

III. Making misrepresentations about its knowledge of what was on the phones.

IV. Conspiring to keep the exculpatory evidence from me to deny/delay me prevailing in a civil rights suit (in violation of 18 U.S. Code 1512.)

V.  Forging other evidence it presented in discovery

VI. Submitting statements it knew to be patently misleading and untrue under sworn affidavit to the court in winter of 2017

VII.    Allowing Linda Fairstein to exercise her personal animus against me in her professional spheres.

VIII.    Both of the people involved in responding to the Discovery subpoena from the MDAO's office are compromised ethically and likely will be called as witnesses in this case and should not be responsible for answering the subpoena(s) moving forward.

IX. The Court could consider levying sanctions against the MDAO's office or at least consider issuing orders to examine all DA communications and edits of affidavits submitted to the court and in discovery as Judge Nathan did.

X.  There are also several remaining discovery issues pending that have not been satisfied by the DA's office's responses to my former attorney's December 2019 letter.

XI. There are also several remaining discovery issues pending against the City defendants

**XII.    Attempts to settle with City Defendants**

**XIII.    Attempts to settle with MTA Defendants**

**Background:** I have spent a tremendous amount of time presenting the evidence I'm about to walk you through of the crimes committed against me and against this court by the MDAO's office with the City law department over the summer and in crafting settlement demands comprised of Actual and Punitive Damages and Equitable Reliefs. I presented these in writing and discussed evidence of DA withholding, destruction and forgery of evidence and sent proof to the City Law dept. Our discussions were unfruitful but not for my lack of trying.

- These conversations over the telephone and **emails[4]** spanned from approximately July 10-July 15th.

- Then I waited. Finally it was agreed that we would have a telephone conversation approximately six weeks later on August 27th at 1:00 p.m.

- On August 27th at approximately 11:00 am. The city law dept. sent me an email essentially stating it would offer me 2500.00 US and wanted to proceed to trial and depose me. I asked if we would still be keeping out 1:00 pm appointment to discuss via telephone and the City Law dept. attorney obliged and during that call refused to discuss why we couldn't discuss each of my settlement demands separately and was met with the repeated robotic response that the City was willing to offer me $2500.00.

---

[4] See attached Exhibit X: correspondences between Price and Iheanachor ref settlement

- I believe that the City should enter into good-faith settlement discussions with me and that the court can be very useful in these discussions.

**POINT I.  THE MDAO's OFFICE ILLEGALLY AND UNCONSTITUTIONALLY WITHHOLDS EXCULPTORY EVIDENCE FOR NINE YEARS.**  The Manhattan DA's office repeatedly denied me the return of two telephones I turned over to that office on June 21, 2011 during a "Queen for a Day" appointment with that office and my defense counsel.[5]  At that time my attorney and I informed the DA's office (Kenya Wells) that I had receipts for both phones. The details of that meeting and the handing over of the phones have been described in prior docket entries *ad nausea* and I believe the court is familiar with this narrative.  The phones were finally returned to my former attorney, Amanda Bakowski, at Cravath, on or about late March of 2020 by ADA Lauren Angelo, who had been assigned to respond to my discovery requests by Susan Roque, only recently.  Roque initially handled the DA's response to my discovery subpoena.  Months later Susan told my attorneys that because she was formerly a named party on my actions that the DA's office needed someone else to continue dispatching the request and suggested Ms. Angelo.  At the time I objected to Angelo's insertion into the process [6].

I had purchased both phones c 2010 and still have the receipts for both.  One of the phones was used by my abuser, Mr. Powell, who was meant to pay me back for the device and

---

[5] See attached Exhibit B:  Queen for a Day Agreement between K. Price & MDAO's office dated June 21, 2011.

[6]  I had tweeted about news of ADA Angelo's alleged criminal involvement in a scheme to cover-up the recording of her nanny changing in her bathroom that had made the papers and felt my public statements (over a year prior) would impugn Ms. Angelo's ability to dispatch her duties for me fairly and equitably.  Also an investigation into her involvement in the criminal matters made her controllable and I feared evidence manipulation.  **See Attached Exhibitions C & D**

never did although he continued to use it: so this phone is my property.  When my abuser

accidentally dropped it in my apartment in late January of 2011 I examined it and found

evidence of coercion and blackmail that he was preparing to use, (and maybe had already

employed) against me.

After I had all charges dismissed and sealed in July of 2012 I demanded the phones be

returned and was refused (n.b. now for almost a decade.)  When the DA's office appointed

ADA Angelo to handle discovery in this case for the DA's office they delivered the phones

back to me only after I signed an affidavit stating I was the owner of the phones and some

ten months after the subpoena was served on them.  The phones should have been

returned when Judge Dawson dismissed and sealed all charges against me in July of 2012.  I

have made dozens of attempts to retrieve them from the MDAO's office and been refused

for a decade.


I elucidate each request I made and to who and who each refused me the return of my

property below in Point III.


**POINT II:  The DA's OFFICE Destroyed part of that evidence on the phones it**

**unlawfully held for nine years:**

I have proof that Ms. Angelo's representations about the phones being "never forensically

tested" by the DA's office are inaccurate at best and intentionally false at worst.   The first

evidence point I have that is proof of Ms. Angelo's false representations in discovery is from

the deletion logs still on the phones themselves.[7]

---

[7] See Attached Exhibit E:

A. Only the DA's office had possession of the phones on June 28th 2011 when these deletions were made.  My former attorney at Cravath sent the phones to ALIX PARTNERS, an International Forensic Technology Recovery Specialist Firm, and they made a mirror image of the discs of the phones.  The mirror image of the phone's hard disc or drive reveals on or about 69 (sixty-nine) files were deleted on or about June 28, 2011:  seven days after I gave the phones to the DAs office on June 21, 2011 during our queen for a day meeting.  I have presented the "queen for a day" agreement as evidence to this court in numerous prior proceedings and I'm sure the court is familiar with it.  It is signed by ADA Kenya Wells on June 21, 2011.[8]

**POINT III:  The DA's Office makes misrepresentations about its knowledge of what was on the phones**

When ADA Lauren Angelo returned my phones on or about February/March of 2020 she went out of her way to mention that the phones had not been "processed" by the DA's office and just sat "in the case file.  Her exact words were:

***" An item unintentionally not addressed in my letters are the cell phones related to the case. The phones were never forensically tested, but are still in the case file. You may send a messenger to pick them up at your convenience."[9]***

Evidence still on the phones proves my assertions and raises questions of why MDAO did not prosecute Raheem Powell for Coercion and other trafficking and assault/fraud crimes for his mendacious pimping and abuse of me.  Regardless of the deletions on the phones there is still sufficient material on the phones to prove my narrative:  in fact a frightening amount of it.

---

[8] See attached Exhibit F.
[9] See attached Exhibits G

- In one video on one of the phones held by the DA, and that Raheem Powell was using Mr. Powell records himself panning over a laptop open displaying photos of my headless, lingerie-clad body posted on an escort encounter website as he declares: "This is Ra; this Kelly Fuckin Price she is hoeing; she's a is a Hooker: she lis on CL: it says: …: that's the dirty truth—look look she's hoeing; that's her ass …" [10]

- In another string of texts on the same phone as above-video, dated January 26-27, 2011 that Mr. Powell sends to me he states:

  - o **"Got Yourself hurt."**

  - o **"This is for life play if you want"**

  - o **"Do you have the g?"**

  - o **"Bitch I will kill you."**

  - o **"I need some money. I'm not givin u no pho back intill my car is on the streets.  U spent the night and u let him give u a check**."[11]

- In another video Mr. Powell pans the camera over a laptop displaying photos of me in various stages of undress posted on an escort dating service website:  Mr. Powell's voice can be heard saying "This is Kelly Price."

- In another video Mr. Powell again pans the camera over the same laptop displaying photos of my body without my head or face posted on a website for escorts.  Mr. Powell's voice can again be heard saying: "This is Kelly Price, she's going out and sleeping with … and she's got pictures…"

---

[10] See attached Exhibit H.
[11] See Attached Exhibit I.

- In another text exchange I tell Raheem I will go the Police and report him for his abuse and he replies: "By that time You'll be Dead."

- In another text he sends me photos of the sex work ads featuring me and says: "Mommy, Daddy and Big Bro will be very interested in the info I got to share."

- In another text he threatens/ demands that I pay his car note and insurance note…

I can go on and on but this proof THAT WAS IN THE POSESSION OF THE MANHATTAN DA'S OFFICE FOR A DECADE should have been used to prosecute my batterer and pimp for coercion but instead I was unconstitutionally and maliciously prosecuted and have spent the last ten years trying to restore myself to the status I enjoyed before these events WITHOUT THIS EVIDENCE.  This entire past decade my phones with this evidence on them sat in the DA's "Folder," "unprocessed."

This is the DA's office with a ten million dollar phone tech lab?

Setting aside for a moment the ridiculosity of this statement, and setting aside my fourth and first amendment rights that have been violated by the MDAO's of illegal seizure of my property and exculpatory evidence I want to discuss the various attempts I made over the years to recover the phones:

- Susan Roque is one person with first hand knowledge of my requests for my phones.

- In my 2014 FOIL[12] to the MDAO's office for all information on me held by that office I specifically requested the phones back but ADA Maloney, who was the FOIL officer assigned to respond to my request (*and also coterminously the ADA assigned to defend the DA's office against my action in State Court,) ignored my request for my phone outright and when I appealed, Susan Roque, her supervisor intercessed as

---

[12] See Exhibit J

FOIL appeals officer and instructed a de novo review of my FOIL[13] but ADA Maloney's response to my FOIL belies that she had knowledge of what was on the phones because she outright denies me the return of the phones with a clever brush of the hand: "You are denied access to the complaining witness' phone records on the grounds that disclosure would be an unwarranted invasion of privacy"[14]  stated ADA Maloney in her de novo reply to my FOIL request for my phones and all data on the phones be returned.

- I personally have emailed, submitted briefs, receipts for the purchase of the phones and spoken with ADA Kenya Wells, Bureau Chief Minton Sabor, Chief of Staff Jeffrey Schlanger and Chief of Staff Jeffrey Rosenberg, Patricia Bailey and Susan Roque on numerous occasions over the past nine years requesting my phones back.  IN all cases I have been refused without explanation.[15]

- It is a stunning admission by ADA Lauren Angelo to claim the phones were: "sitting in the file overlooked and unprocessed" for NINE years.

- In the DA's OWN DISCOVERY DISCLOSURE documents provided to my former counsel on February 7, 2020 state that the DA's office drafted a memo and had a "discussion" to discuss defending itself against a potential civil rights lawsuit on the day after Judge Dawson Dismissed my criminal on our about July 25, 2012.   What was discussed during this strategy meeting and memo?  Not to return evidence to me to support my civil rights litigation?  The cases had been dismissed why was the DA s office working on a MEMO about a prosecution strategy in anticipation of

---

[13] See attached exhibits K-O
[14] see attached exhibit O: Page 2..
[15] see attached exhibit P

litigation? [16]  Did the MEMO instruct to withhold evidence from me?  Were my

phones and the evidence on them discussed?  This privilege assertion is too broad

and convenient.


**POINT IV:  THE DA's OFFICE Conspired to keep the exculpatory evidence from me to**

**deny/delay me prevailing in a civil rights suit in violation o 18 U.S. Code § 1512.**

In addition to being guilty of the same withholding of type of exculpatory evidence in

discovery that Hon. Judge Nathan describes the US Attorney's office is guilty of in her

9/16/20 Opinion & Order, the Manhattan District Attorney's office is in violation federal

law.

The co-conspirators in the DA's office who intentionally denied me the return of my phones

are guilty under 18 U.S. Code § 1512.  The tolling is stayed b/c of the doctrine of Spoliation

and b/c I just got the phones back in the Spring of 2020 (so this material is considered new

evidence and tolling has just begun.)

The District Attorneys' office has had this proof in its files for nine years and refused to

return it to me.  They will assert this is because one charge, the desk appearance ticket, still

lingered open until 2016 because of an overlooked error. But why then were the material

not returned in 2016 when I had the desk appearance ticket forcibly dismissed? If they

knew they still had the phones—and they knew they did because of my constant court

filings to get them back, phone calls, FOIL demands etc., the office cannot coterminiously

---

[16] Exhibit G page 1: "Privilege Log addendums:" #4: The memo, drafted on July 25, 2012, is
an evaluation by prosecutors of plaintiff's criminal cases and prosecution strategy which
was prepared in anticipation of litigation....#% & #8 through #11-The subject relates to a
discussion between ADA's regarding the litigation anticipated to be filed by the plaintiff."

assert it accidentally "forgot" to dismiss the DAT.  Which is exactly what they are claiming-

but I will get to that later in Point V.

It is reasonable to assume ADAs Maloney, Angelo, et al would pretend the DA's office didn't

possess/process the phones is because of the cornucopia of evidence on the phones that

buttresses my narrative and destroys the one the DA's office tried to cling to all these

years.  The DA can't sit on my personal property and deny me justice for a decade and get

away with it.

- The City is culpable for withholding this material from me and denying me the right
  to restore myself to justice for nine years because while the DA represents itself in
  these proceedings that office is a policy-making one and it has been established that
  the city is responsible for the actions of the DA's office (Walker v City of New York).
  I would like to ask the court to allow me to amend my complaint to include these
  violations of my constitutional rights as first, fourth, fifth and potentially 14th
  amendment actions.

Although I hold no sway with the Federal Prosecutor's office here is the section of 18 US
§ 1512 I'm focused on that I believe the MDAO's office violated:

"b) Whoever knowingly uses intimidation, threatens, **or corruptly persuades another
person, or attempts to do so, or engages in misleading conduct toward another
person, with intent to—**
(1)
influence, delay, or prevent the testimony of any person in an official proceeding;
**(2) cause or induce any person to—**
**(A) withhold testimony, or withhold a record, document, or other object, from an
official proceeding;**
**(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's
integrity or availability for use in an official proceeding;**
**(c) Whoever corruptly—**

**(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or**
(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
shall be fined under this title or imprisoned not more than 20 years, or both."


**POINT V:  THE DA's OFFICE likely forged other evidence it presented in discovery:**

There simply is no other explanation for TWO different DAT dismissal documents to be in

existence:  one that I received on 9/12/2016,[17] and another that was produced by the DA's

office in the summer of 2019.[18]


Here is verbatim the email I sent to the City Law dept. about this issue this summer:



**Grace <gorgeous212@gmail.com>** Jul 13, 2020, 4:37 PM

 to Laura

Dear Ms. Iheanachor:

I've been thinking about our conversation last Friday July 10, 2020 and I don't believe I emphasized enough that there is another (aside from illegally seizing my phones for nine years and deleting files off them) behemoth issue with the DA's discovery production:  they produced a forged Desk Appearance Ticket dismissal to me as well.

The version sent over in the discovery packet last summer is not the version I received in early Sept, 2016:  it is a wholly new document.  You may be aware that attorneys at Cravath requested the e-file so that we can examine the IPTC data/embedded file info no less than six times from the DA's office.  They have been unable to provide the file.  They present screenshots of their database and incredulous explanations as to why they are unable to provide me the e-version of the file for examination but never the simple file.

---

[17] See attached Exhibit Q:
[18] See attached Exhibit R:

I can fwd. these communications to you but I have a feeling you have seen them.

The only explanation for this is that the document is a forgery:  Cravath hired handwriting experts to examine the signatures at the bottom of the page.

See for yourself:  ask the DA's office to send you the Sept 2016 DAT dismissal in its original version.  I guarantee you that they will be unable to provide you with a file that has embedded file-info/IPTC data with a document creation date that matches the written date of the document (or even dated within a week).

These stunts by the people who also happen to be public officials who have taken sworn oaths to uphold the law are disgraceful and very damaging not only Vance and his cronies but the City of NY which in the end is fiscally responsible to me for his crimes.

I can send over the original DAT dismissal that I was given and the forged the DAs office coughed up if you need them again.

best,
Miss Price


What is at stake is the potential dismissal of the surviving action(s) related to the DAT in

my complaint.  There is case law that states that if a DAT is left open "by accident" that law

enforcement is immune from fourth amendment illegal search and seizure constitutional

actions.  This attempted forgery, submitted under sworn affidavit in response to the court's

subpoena is another violation of the court's trust and the professional obligations the DA's

office has to behave lawfully in all its dealing with this court.  I distinctly remember

November 9, 2010 when I appeared at County Criminal Court to be arraigned for the DAT

that I was pulled aside by a court officer who told me the ada assigned to the case: "She

wanted to wait to see what was really going on" before making a decision about

prosecuting me for the DAT." Cravath also hired an handwriting specialist to review the

documents.  We needed more samples to make a final determination but a layman's glance

at the signatures gives credence to the theory that the same person signed both signatures

and the document is a forgery.  Also the DA's office is unable to explain why they can't

provide the original document file for examination.  There are other timeline issues with

the DA's documents.  If their DAT was created on 9/12/16 why is part of that dismissal

dated 9/16/16?


**POINT  VI:  THE DA's OFFICE Submits statements it knew to be untrue under sworn**

**affidavit to the court in winter of 2017:**

In the Winter of 2017 I asked the court to allow me to name Cy Vance and several of his DA

employees as individuals on  the caption of my complaint and I thought I made a

compelling argument to the court proving I had met the requirements of Iqbal v Ashcroft to

name Vance as an individual on my complaint.  Your Honor issued an order to the DA's

office to respond.  Instead of responding the DA's office pretended it hadn't noticed your

honor's order and asked for an extended amount of time to respond.  Your honor gave

them a week.  The response came back and basically the nub, claimed the DA's affidee,

Christoper Ryan, was that my ex batterer and pimp, Raheem A Powell, had not received

favors from the DA's office and was not assisting the DA's office in any way in any of its

cases.  But that is not exactly what the DA affidee said: it was what they wanted you to

think it said.  As my moving papers from the Winter of 2017 explain this carefully crafted

affidavit was intended to mislead the court about the nature of the relationship between

law enforcement and Raheem A. Powell.  I have further proof that Mr. Powell did have a

robust relationship with the MDAO/NYPD.

- Property Seizure Sheet showing arrest of Raheem A. Powell in Aug 2010 by Det

    David Bailey of the MHTN South Task Force. Arrest # 10672627N on 8/14/10 by

Detective David Bailey.  They let him walk without prosecution or community service for a Felony Sale to a Detective a B Felony, returned my car without processing it .[19]  This was right bf his battery of me ramped up and I started begging NYPD for help in fall of 2010.

• Evidence of Mr. Powell's best friend's (Mr. Maurice Nieves) remarkable parole from a PA state facility in 2010 even though he had previously been a parole absconder.[20] I attempted to FOIL the parole board records to find out why Mr. Nieves was granted parole after absconding and was denied access to those records.  Maybe they can be unsealed with a court order?


**Point VII: Linda Fairstein, the former head of the MDAO's SVU and her involvement in labeling me a "Fabricator."**

--Fairstein lived across the street from me at 211 e 70th st from 2004-2007 when I lived at 206 e 70th St. I always knew someone from the DA's office lived there and screamed at me all the time when I walked my boxers accusing me of owning "violent pit-bulls" but I did not know it was Linda until 2019 when I combed through Vance's campaign contribution records and found her named as living at 211 e 70th st.

--Linda had a reputation for outrageous prosecution of people she encountered in her personal life such as of her malicious prosecution of Sarit Schmueli.[21]

--Linda worked at K2 Investigations[22] developing technical workflows for sexual assault investigations such as algorithms, evaluative tools and violence models.  K2 did work for

---

[19] See attached Exhibit S.
[20] See attached Exhibit T.
[21] https://law.justia.com/cases/federal/appellate-courts/F3/424/231/484632/

Palantir:  "The DA's office said that favoritism did not play a role in contracting with K2. It said the firm was chosen because of its expertise in Palantir, a powerful data-analytics program used by several law enforcement and intelligence agencies."[23]

There is nothing in the DA's discovery that indicates who made the determination that I was a "fabricator" and not to receive police services—who sent notices to the 28th precinct to stand down and ask them for permission to serve me as Lt LaRocca has stated in his affidavit- or who has stewarded the continuation [24]  Others at the precinct confirm my name, photograph and details were shared at the 28th precinct roll-calls for months on end with an announcement that the DA's office had instructed for me not to be assisted by the NYPD.  Why aren't these instructions issued/documented in the discovery materials turned over?

The discovery disclosures by the DA's office have not been completed, honest or thorough. This relates to (but is not limited to) what Ms. Bakowski refers to in her December 2019 letter (Exhibit V) to Ms. Angelo as: "*Third*, there are several documents Plaintiff believes DANY possesses that are responsive to the subpoena *duces tecum* but were not produced or described in the Privilege Log."


**Point VIII:  Both of the people involved in responding to the Discovery subpoena from the MDAO's office are compromised ethically and likely will be called as witnesses in this case and should not be responsible for answering the subpoena(s) moving forward.**  I would like to ask the court to appoint a special discovery manager

---

[22] See attached Exhibit Z
[23] See attached Exhibit Y
[24] see attached EXHIBIT U

from OUTSIDE of the DA's office and at the very least to have both Ms. Angelo and Ms. Roque removed from all discovery/litigation management activities regarding my case.

**Point IX:  The Court should consider levying sanctions against the MDAO's office.**

In light of events that have unfolded recently that I have just described regarding the Manhattan DA's discovery obligations to this court I would like to  ask the court to consider applying certain sanctions against the City and the MDAO.

Similar to the Federal Prosecutors Judge Nathan's sanctions were aimed at, the MDAO's office has made countless belated disclosures and false statements to the court are serious dereliction and require a serious response. [25] the DA is a policy making official (Walker v City of NY) and an agent/employee of the City of New York and thus the City is responsible to me for these harms by their city agents.

- At the very least I would like to ask the court to allow me to amend my complaint to add the DA and various employees back onto the complaint in light of this new evidence.

**Point X:  There are also several remaining discovery issues pending that have not been satisfied by the DA's offices responses to my former attorney's December 2019 letter.[26]**

      A.   Other major issues with discovery: DA's office won't give anything up regarding my accusations vs. Mr. Powell.  They claim I need Mr. Powell's permission to open those files or a separate court order.  I believe the subpoena we sent is sufficient to receive all these materials.  The DA's office

---

[25] https://www.casemine.com/judgement/us/5914beeeadd7b049347ab253
[26] See Exhibit V:

can't assert I need my former pimp's permission to have these files if your

honor has already issued a subpoena *duces tecum?*

B.  Ms Angelo asserts privilege on many items in her privilege log claiming that

they are privileged work-product in anticipation of litigation (#4, #5, #8, #9,

#10 & #11) but  the litigation is my own civil action against them—not

criminal litigation.  I hadn't even filed a notice of claim until July of 2013—

how can the DA's office assert this privilege for documents created AFTER

criminal proceedings ended against me and BEFORE I even filed a notice of

claim in state court and in some circumstances when members of the

MDAO's office are not even meeting with a lawyer that would represent

them?

C.  Privilege Log addendums provided by ADA Angelo for items #5, #8, #9, #10,

& #11 do not sufficiently elucidate these items, list the participants, and/or

the case and/or policy that the document addresses and whether the

document contains fact or opinion information.  Angelo doesn't even attempt

to share this information in her response to Ms. Bakowski.

D.  Many discovery log work-product privileges claimed by ADA Angelo to be

extended to documents in the DA's custody are factual work product that

disclose statements or summaries of the statements of officers or witnesses

and NOT entirely opinion product.  We had asked Ms. Angelo:

> "Several entries on DANY's Privilege Log do not provide
> descriptions sufficient to identify whether the assertion of the work-product
> privilege is valid:  If upon further review, you continue to believe the above-
> listed documents are privileged, please provide additional information
> regarding the basis of such privilege, including, for example, the date of the
> document, the case and/or policy that the document addresses and whether

> the document contains fact or opinion information.  Otherwise, please
> produce the documents to Plaintiff…. As in *Abdell*, DANY is a non-party; the
> information (interview summaries and DA DATA Sheets) is routinely
> disclosed to the defense in criminal proceedings; there is no danger of
> freeloading because the cases were criminal; and there is no risk of
> interfering with ongoing litigation since the criminal cases were terminated.
> *See id.*  Thus, to the extent entries 14, 16, 20, 22, 28, 31, 33 and 34 contain
> factual information (including summaries), rather than an attorney's
> impressions or conclusions, those documents should be redacted, as
> appropriate, and produced to Plaintiff."

But Ms. Angelo has NOT provided descriptions sufficient to identify if the privilege is valid:

she has merely stated they were created "in anticipation of litigation."

E.   Privilege Log items 15 and 21 do not have dates?  Incredulous.

F.   Again we asked if Privilege log entries 14, 16, 20, 22, 28, 31, 33 and 34

contain factual information (including summaries), rather than an attorney's

impressions or conclusions, and asked those documents should be redacted,

as appropriate, and produced.  But ADA Angelo insists these are all

mandatory DV "worksheets" without adding information about their creation

date, creator, or whether the sheets contain information that is factual or

opinion.  If they are DV worksheets I was the victim and the DA's office

KNEW this from the evidence they had on the phones they withheld so how

can they claim privilege in anticipation of criminal prosecution of me when

they KNEW THEY SHOULDN'T BE PROSECUTING ME IN THE FIRST PLACE?

**Point XI: There are also several remaining discovery issues pending against the City**

**defendants including:**

**A.  Submissions are limited to only the specific incidents outlined in the complaint however the discovery subpoena requests all NYPD documents/correspondences/database notes/inquiries/meeting notes/reports/transcripts/ about me/mentioning me.**

**B.  Submissions received are limited to written officer notes- they do not include any 911 instructions, radio runs, algorithms, databases, emails, communications regarding these specific incidents.**

A.  Discovery submissions have been limited to only the specific incidents outlined in the complaint however the discovery subpoena requests all NYPD documents/correspondences/database notes/inquiries/meeting notes/reports/transcripts/ about me/mentioning me from the beginning of  on our about 2008 until now.

B.  Likewise NYPD has not been disclosive of anything new.  They gave me the of same files I received from Foiling the NYPD. I literally know a dozen cops in the 28 who will testify that at line ups they were told not to respond to my requests for help if they pulled radio runs at the end of my 911 calls and that my photo was held up at line ups 3x daily for months on end.  Where are these materials? What about my Palantir records? IAB files?

C.  Members of the NYPD have held up their smart phones and read to me from what is written there about me:  "Ms. Price is not to receive NYPD services because she has filed false reports" read NYPD officer

Bonhomme of the 34th precinct back in c 2014-2015 when he responded to a 911 call I made when my neighbor assaulted me in the tiny SRO bathroom I share with others on my floor on w 187 St. in Washington Heights, Manhattan.  Where are these records?

D.  Discovery Submissions received are limited to written officer notes- they do not include any 911 instructions, radio runs, algorithms, databases, emails, communications regarding these specific incidents. Database entries, police notes etc.  Nothing from Palantir or K2  or other NYPD technology database/predicative tool assessment associates.

E.  City Defendants haven't even provided a privilege log claiming discovery production exemptions for anything—not for emails, not for IAB investigations, not for all communications about the tens of dozens of IAB and CCRB complaints I made for the treatment I was unhanded at my lowest nadir by the NYPD.  What about my communications with former NYPD Chief of Patrol, Bralio Rodriguez (aka Faustio Picardo) who was the integrity control officer at the 28th precinct in 2014 when he wrote to me and told me "As I explained earlier during our phone conversation, all of the cases/complaints you mentioned have been closed and investigated by the Detective Squad. Regarding your complaints about the District Attorney's Office refusing to offer you any help, you need to contact their office and file a complaint with the Department Disciplinary Committee (212)401-0800 or log on manhattanda.org. Unfortunately, the Police

Department does not handle complaints against the D.A's Office."[27] Why haven't any of these communications and/or the ensuing investigative materials been disclosed by City defendants?  I wrote dozens of letters to people in the NYPD asking for help and made dozens of complaints. Where is the privilege log claiming these materials are excluded from discovery for me to challenge?

F.  I have turned over almost half a million pages of documents in discovery: every time I mention my case or the NYPD in any document (except in communications with lawyers) has been turned over—even if it doesn't have anything to do with this case.  I expect no less from the City Law dept and the Manhattan District Attorney's office in their discovery compliance.

**Point XII:  Attempts to settle with City Defendants**

• I would like to settle this now.  How much longer must I wait for justice?  Why is the City not willing to acknowledge their responsibility for the DA's behavior?  I've included communications with the city regarding settlement that display an earnest effort on my behalf to settle these matters.[28]

---

[27] Exhibit W
[28] See Exhibit X

24

**Point XIII:  Attempts to settle with MTA Defendants:**  I have only had limited discussions with MTA defendants ref settlement.  I haven't received any discovery from them yet so I am waiting to see what comes from that but I am open to it.

Kelly Price

Pro se

534 w 187th st #7

New York, NY

10033

646 932 2625

gorgeous212@gmail.com

/s/ [Kelly Price].                    December, 30 2020