UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY PRICE,

                     Plaintiff,

        -against

| | |
|---|---|
| THE CITY OF NEW YORK, ROSE PIERRE- LOUIS, in her individual and official capacity, SELVENA BROOKS, in her individual and official capacity, INSPECTOR OLUFUNMILO F. OBE, in her individual and official capacity, DETECTIVE LINDA SIMMONS, in her individual and official capacity, OFFICER JOHN STAINES, in his individual and official capacity, OFFICER ISELAINE GUICHARDO HERMENE GILDO CRUZ, in her individual and official capacity, LT. NICHOLAS CORRADO, in his individual and official capacity; LIEUTENANT RAYMOND DEJESUS, in his individual and official capacity; OFFICER EMMET, in his individual and official capacity; SERGEANT SHEVTIZ, in his individual and official capacity; MTA OFFICER STEPHEN MEARS, in his individual and official capacity; MTA OFFICER ALISON SCHMITT, in her individual and official capacity Defendants | 15-CV-5871 <br><br> ADDENDUM TO LETTER SUMMARIZING DISCOVERY ISSUES |

Hon. Katherine Polk Failla
United States District Judge
c/o Pro Se Office
United States District Court
Southern District of New York
500 Pearl Street, Room 230
New York, NY 10007

Re:     ADDENDUM to 12/30/20 Letter ref 11/30/20 ORDER to itemize discovery issues stemming from discussion during status conference held via teleconference on 11/5/20.

Dear Judge Failla:

Your Honor, please accept my apologies I only saw your *entire* November 30, 2020 order on Saturday January 2, 2021:  after I made my filing on December 30, 2020.  I had only read the LAST paragraph of your order that was posted in the email[1] that ECF auto-sent to my email address on November 30, 2020 before I scripted my response.  I had not seen your entire order.  I found your whole order when I Googled my case and  found it posted on a CASE TEXT website.[2]

I don't have access to download any documents on PACER—not even from my own docket. I couldn't even download the filing I posted on 11/30/20 to send you with the ECF script at the top of the pages as is required as per your Honor's Part Rules which I hope you remember I mentioned to you when I made that filing. I had asked your clerk last Spring to email me anything new on the docket[3] because of problems with my PACER account and I assumed that what came to me via email on November 30, 2020[4] was your entire order.  Is Tara Schwartz still in your court part your honor?  Please could I trouble you to examine a communication I had with her last March in which I explained I couldn't see all PACER filings and could she please email me all orders because I can't come down to the courthouse to check the docket?  Ms. Schwartz replied affirmatively that she would send me all order but I did not receive your entire 11/30/20 order.  I apologize your honor this

---

[1] See Exhibit A
[2] https://casetext.com/case/price-v-city-of-ny-12?PHONE_NUMBER_GROUP=P
[2] https://casetext.com/case/price-v-city-of-ny-12?PHONE_NUMBER_GROUP=P
[3]  See Exhibit B
[4] See Exhibit A

is a major problem because I responded to your order incorrectly and I hope you will

accept this addendum to cure my deficiencies in the interest of justice and expedience.

In response to your full 11/30 order I have nine important points  I would be humbled if

you would consider in addition to my 12/30/20 letter:

**POINT I: Linda Fairstein's Influence:  the 'Light bulb' Moment**

**POINT II:  Evidence of continuing danger against me has been introduced in actions**

**outlined in my Fifth Amended complaint; in all of my moving papers, and in my**

**12/30/20 letter do not only outline police refusal to act on past violence against me**

**but also elucidate a pattern of CONTINUING and aggrandizing violence against me**

**that the State actively created and or increased against me.**

**POINT III:  PACER Access**

**POINT IV:  The District Attorney's assertion that they should not be added back onto**

**the complaint because they would be "prejudiced by being reintroduced into the**

**case several years after being dismissed" in March of 2017 is not accurate.**

**POINT V:  NY State Executive Laws do provide another exception to DWARES that I**

**have cited in the past in my moving papers in this case.**

**POINT VI:  IMPLICATIONS FOR MY INDEX: RE-NAMING MDAO PARTIES ON MY**

**COMPLAINT.**

**POINT VII:  EXHIBITS, Pro Se LITIGANTS AND FACIAL SUFFICCIENCY.**

**POINT VIII: DISCUSSION OF RELEVANT DUE PROCESS CLAIMS**.

**POINT IX:  tolling on all my allegations is still stayed due to the doctrine of continuing**

**violations:**

**Point I: Linda Fairstein's Influence:  The Light bulb Moment:**

in my 12/30/20 filing I mention that I lived at 206 e 70th across from Linda Fairstein from 2004-2007 but I didn't know this until the summer of 2019 when I examined Vance's campaign contribution filings.  This was a light bulb moment for me because my abuser, Mr. Powell, used to TAUNT ME AND CONTROL ME BY SAYING THINGS LIKE:  'SOMEONE KNOWS YOU FROM YOUR OLD PLACE ON THE UPPER EAST SIDE IN THE DA'S OFFICE AND THEY DON'T LIKE YOU-THEY HATE YOU-I COULD DO ANYTHING TO YOU… LOOK HOW THEY BEEN PLAYIN YOU…I GET WHATEVER I WANT FROM THE DA'S OFFICE BECAUSE THEY HATE YOU THERE.  WHEN I'M THERE MEETING WITH KENYA [ADA Kenya Wells] he leaves the room and talks to someone very important whenever a decision has to be made and they HATE YOU…"

A.   Mr. Powell knew that the DAs office was maligned against me *and in fact creating the danger for me by sharing this information with him-* that he used to constantly laugh at me when he would beat me and tell me "nobody is going to do anything" and; "[5]

---

[5] See Exhibit C:  text From Raheem Powell: "I will turn your life upside down one [sic] I'm in Jail. ..U think I'm playing. Play with the cops and u will never hoe or work again.. ts [sic] your word against mine let's play I got pi [sic] and everything else."  And that he has "friends" in law enforcement that will protect him: "Not when they see what I got and the people who will come downtown to help me." ["downtown" meaning the courthouse, "people" meaning the NYPD and DA's office.]

B.  The allegations in the active, Fifth Amended Complaint do allege a fact-pattern of

State Created Danger (paragraphs 50-54 et al) that do illuminate a pattern of

increased danger created by the DA's office for me that Mr. Powell was aware of and

took advantage of:  Mr. Powell did turn my life upside down.  He did ensure I would

never work again, and indeed Detective Simmons and TWO other detectives from

the NYPD precinct  did "appear downtown" as Mr. Powell promised in his texts (see

Exhibit X, IBID) in family court and "helped"  him:

"50.  On or about January 28, 2011 Ms. Price attempts to make formal police reports about all of the
abuse unhanded to her by Powell.

51.  On or about February 1, 2011 Ms. Price is called to the Manhattan District Attorney's office by
ADA Maria Strohbehn who informed Ms. Price that she was declining to charge Mr. Powell, and had
put Ms. Price on a do-no-serve services list, and had informed NYPD that any involvement by the
police with Ms. Price required ADA Strohbehn's prior approval.

52.   On or about February 2011 ADA Maria Strohbehn has a conversation with Ms. Price's landlord,
Adam Gargani looking for information about Ms. Price's alleged fabrications. Mr. Gargani stated
that he wasn't aware of any fabrications, and offered evidence that supported Ms. Price's claims.
Ms. Strohbehn hangs up the phone on Mr. Gargani. (See a written statement from Adam Gargani,
attached as Exhibit A).

53.   On or about February 2011, Ms. Price is arrested by Detective Linda Simmons inside the Family
Courthouse in Manhattan as she appeared to have her restraining order renewed by Hon. Judge
Sattler and charged with 324 counts of  NYS CPL 240.30(11) for allegedly harassing her abuser,
Raheem Powell, electronically via text and telephone calls.

54.   On or about May 8, 2011 Ms. Price is arrested for Felony Contempt of Court and placed on
Rikers Island." [6]

Mr. Powell used the threat of incarceration itself to control me throughout the pendency of

---

[6] Price V City of New York, Linda Simmons:  1:15-cv-05871-KPF Document 153 Filed
11/29/19 Page 7 of 21

criminal proceedings against me.

Throughout this period I was constantly attacked, harassed, assaulted in threatened in Harlem by Mr. Powell and his family, friends and associates.  I submitted this timeline of violent events against me to various agencies and members of the NYPD and DA's office (Faustio Braulio Picardo Rodriguez, at the time the Integrity Control Officer for the 28th Precinct, formerly the NYPD Chief of Patrol;[7] NYC Mayor's Office to Prevent Domestic Violence Commissioner Rose Pierre Louis; Manhattan District Attorney's Office Chief of Staff Jeffrey Schlanger;[8] when Schlanger departed his role I forwarded this brief and sent a drive with all the attachments to the new Manhattan District Attorney's Office Chief of Staff Benjamin E Rosenberg. I sent similar brief to NYC Public Advocate Gail Brewer, NYC Councilwoman Laurie Cumbo et al. I wrote emails to the IAB; I wrote a letter detailing the continued violence against me to the NYC Department of Investigations.[9] All of these letters with the timeline of violent events against me that Mr. Powell enacted and/or orchestrated have been filed in the past as evidence in other complaints/moving papers.  The singular consistent narrative in all of these briefs is that Mr. Powell was able to continue orchestrating violent chaos against me because he KNEW law enforcement would do nothing.  Please refer to pages 9-16 attached of my letter to Manhattan District Attorney's Former Chief of Staff Jeffrey Schlanger "II. Rough timeline of events involving violence against me by Powell[10] for a timeline that includes an almost weekly itinerary of violent

---

[7] See Exhibit D: Letter to 28th Pct. ICO Faustio Picardo Braulio Rodriguez timeline of events pps 2-11.
[8] See Exhibit E:  Letter to Manhattan District Attorney's Office Chief of Staff Jeffrey Schlanger
[9] See Exhibit I: Letter to Inspector Kim of the NYC Department of Investigation (OIGNYPD)
[10]  See Exhibit E above :  Letter to Manhattan District Attorney's Office Chief of Staff Jeffrey Schlanger pages 9-16.

actions against me at the hands of Mr. Powell and/or his associates/friends/family.

**Point II:  Evidence of introduced in actions outlined in my Fifth Amended complaint; in all of my moving papers, and in my 12/30/20 letter do not only outline police refusal to act on past violence against me but also elucidate a pattern of CONTINUING violence against me that the State actively created or increased against me.**  This violence was two fold: 1) by actively prosecuting me and allowing Mr. Powell to further control and conscript me into a pimping scheme under threat of incarceration and; 2) through further repeated physical violence at his hands and at the hands of his friends and associates.  In sum:  there are facts already alleged in my complaint that  do implicate my rights were violated under the Due Process Clause in Dwares.[11]

> A. I have introduced into evidence numerous times the "text strings" from Mr. Powell in which he threatens me that if I go to the police and report him for his abuse and trafficking he will "turn my life upside down" (check) and "you will never work again" (check yes my career as a photojournalism editor is over) and "people will come downtown for me"  (check, yes members of the NYPD 28th precinct detective squad appeared downtown in Family Court in March of 2011 and swayed proceedings against me as I tried to renew a restraining order I had filed for in Family Court as per Lt. Larocca's suggestion because the 28th precinct refused me assistance). Mr. Powell warned me that he had "people in his pocket" from prior

[11] Taking citation from your Honor's 11/30/20 order: See Dwares v. City of New York,985 F.2d 94, 99 (2d Cir. 1993), overruled on other grounds by Leatherman v. Tarrant Cty. Narc. Intelligence &Coordination Unit, 507 U.S. 163 (1993).

dealings with the NYPD and the Manhattan DA's office.  I have offered this narrative in the past in all my moving papers and specifically in my April 2017 letter to the Court:

"Plaintiff's batterer enjoyed a privileged status with the MDAO and NYPD as a result of several incidents:  he had assisted in helping the police previously and warned her that she would be unable to find sympathetic ears regarding his violence."[12]

C.   Mr. Powell's mother, Nancy Gaines, assaulted me on or about October of 2010 and I managed to file a report at the 28th precinct about the assault because the damage to my face was so severe.  The day I filed the report there was/were (a) loud disagreement(s) in the precinct between the uniformed POs (downstairs) trying to take my complaint, and the detectives, (upstairs), who told them not to take my complaint.  Ms. Gaines was arrested that day but her charges were dropped without prosecution[13] further incentivizing Mr. Powell to ramp up his abuse of me.[14]  He used to mock me because of the scars her attack left on my face and tell me: "remember your broken face every time you think about going to the cops again"[15] and; "Got Yourself hurt" and; "This is for life play if you want."[16] These texts from Mr. Powell clearly acknowledge violence was happening to me and that he would never suffer consequences for it because he knew law enforcement would never take me seriously because of the animus he had seen openly displayed against me;

---

[12] See Exhibit F:  April 2017 Letter to Hon. Judge Polk-Failla.
[13] See Exhibit G: Nancy Gaines arrest #
[14]  See Exhibit I:  timeline of abuses as shared with OIGNYPD Inspector Kim
[15]  See Exhibit G:  photo of scratched on face over a week after assault by Mr. Powell's mother, Nancy Gaines.
[16] See December 30, 2020 K Price Letter to Hon. Judge Polk-Failla; Exhibit H.

because of the arrests made against me; because of the stronger restraining order
he had against me etc.

D. Mr. Powell would also monitor me to make sure I wouldn't stay over at client's
homes because he didn't want me getting close to anyone.  But I did.  I got very close
to one person, whom I will name if I have to but will ask the court to seal his name,
who works at a well-known media outlet in NYC.  Let's call him "Rainmaker"
because this was his nickname.  Rainmaker had friends at the NYPD because he
belonged to a fancy cigar club in midtown owned by a few retired NYPD Sergeants.
Rainmaker witnessed the continued parade of bruises and whip marks on my body
and was very concerned about my well being.  Rainmaker asked his friends at the
Cigar club to ask around about why I couldn't get any help from the NYPD because
he didn't believe me that the police wouldn't help me and the word came back to
him:  "leave her alone:  that's a situation you don't want any part of." The implication
here being someone OUTSIDE of NYPD control was calling the shots: someone from
the Manhattan DA's office. "Rainmaker" spent the night at my apartment on 120th
street twice in the fall of 2010 and both times Mr. Powell found out and tried to
break down the door outside my garden level brownstone apartment and broke the
window at the front of my apartment trying to get in through the window bars.
Rainmaker brought a GUN (that one of the NYPD sergeants from the Cigar Club had
leant him I think) the next time he came to stay with me in Harlem over Christmas of
2010-2011.  All of these continued acts of violence occurred because of Mr. Powell's
extensive dealings with law enforcement and the assurances they had made to him

in exchange for his cooperation in other matters involving the prosecution of the 137th St. gang.

E. Even a few months later when we had restraining orders against each other Mr. Powell would call me and approach me outside my brownstone apartment on w 120th St.[17]--and he did it with impunity and with regularity from February of 2011 through July of 2012 when the charges against me were finally dropped.  This is how Mr. Powell set a trap for me and had me charged with a felony contempt of court charge for allegedly violating a restraining order against him in May of 2011.  *He did this to prove that the NYPD would not help me after he thought I had had our child aborted when I had not—I had miscarried.  But this in itself is very persuasive evidence that Mr. Powell knew the NYPD would not help me and he used the criminal "justice" system to further punish me, to torture and control me under threat of his own violence (personally and via his agents) and also under the threat of further violence I would suffer while incarcerated.*

F. **Mr. Powell continued to abuse me by further Conscripting me into a continue pimping scheme WHILE CRIMINAL CHARGES STILL PENDED AGAINST ME:**

EVEN AFTER HE HAD ME LOCKED UP ON RIKERS ISLAND Mr. Powell continued to use further acts of violence and to use the criminal "justice" system to conscript me into continuing to work as a prostitute and to give him 50% of the proceeds.  Mr. Powell approached me on January 1, 2012 (he knocked on my front door early in the

---

[17]  See Exhibit H: CONNECT NYC Database Note indicating advocates were scrambling to get the NYPD 28th PCT to take a complaint from me 2011 alleging Mr. Powell had violated his restraining order against me and enacted other continued acts of violence against me. Mr. Powell was never arrested for this or his other violence after my arrests in the spring of 2011.  I made IAB complaints and nothing was ever done.

morning) and explained to me that: "he didn't want to hurt me any more" and; "he knew he had abused his role with the NYPD and MDAO to literally "turn my life upside down" as he had promised a year before."[18]  Mr. Powell proposed to me that he would stop cooperating with the DA's office's prosecution of me and go into hiding and not show up to court so the DA would eventually have to drop charges against.  When Mr. Powell appeared he had shaved his head bald and had grown a goatee so he didn't look like photos of him the NYPD had in order to disguise himself.  BUT, in return, he commanded/proposed I had to CONTINUE GIVING PROCEEDS of prostitution activities to him.  Your Honor, I had no choice but to comply with unhanding fifty percent of all monies I received from prostitution/escort/sex work activities to Mr. Powell from on or about January of 2012 to August of 2013 (the charges were dropped in July of 2012 but Mr. Powell promised if I continued to 'work' for him that he would "tell the truth" when I sued the City of NY and the Manhattan DA for malicious prosecution et al. I 'escaped' this situation when I was finally left Harlem for good because I was evicted in 2013.  I told many people about this untenable situation I was in:

1.  my defense attorney, Tajuana Johnson at Legal Aide Society: she knew Mr. Powell was not going to show up in court before ADA Kenya Wells did each time we had a court appearance scheduled in Hon. Judge Dawson's IDV Court Part in NY Criminal Supreme Court from January 2012 until July of 2012.  She would pretend to be surprised when Mr. Wells would call her the evening before scheduled trial dates and sheepishly say he was "not ready," often pretending it

---

[18] Exhibit. C: texts from Mr. Powell on phone DA held for nine years threatening to "turn my life upside down" if I reported him for his abuse(s).

was because he was busy on another matter.   Ms. Johnson would biter her tongue and try to act surprise but she knew -- because I told her he wasn't showing up—and he didn't for some FIVE court appearances before the charges were eventually dropped in July of 2012 and;

2. my therapist at the Crime Victims Center, Lisa Hailisalassie, knew I was talking with my batterer/pimp in the early part of 2012 and that I had made a deal with him to get the false charges filed against me dropped and;

3. my neighbor who lived above me on W 120th St.: Elizabeth Walker, a Harvard Law School graduate working at Quinn Emmanuelle. Ms. Walker, to her credit, kept telling me it was ludicrous that I continued to be complicit in Mr. Powell's pimping scheme.  After I got the charges dropped she urged me to stop participating in his tit-for-tat arrangement that could go on indefinitely she pointed out.  Ms. Walker also constantly told me: "if he really loves you he will tell the truth when the time comes." Ms. Walker has written a affidavit that I have turned in as evidence in the past many times over in which she detailed her alarm at having witnessed NYPD Officer Walker (same last name) tell me that the 28th Precinct was not allowed to give me services after I had been assaulted on or about October of 2012 by an associate of Mr. Powell's as I was walking home from the subway.[19]  This is exactly the time frame where Mr. Powell was struggling to retain control over me because the charges had been dropped against me and I suffered countless attacks on the streets of Harlem whenever I went out. I tried to file complaint after complaint to the NYPD about these

---

[19] See Exhibit J (Affidavit of Elizabeth Walker).

attacks by friends and associates of Mr. Powell and the NYPD just kept refusing

to help and Mr. Powell kept using this as leverage to keep me under his control;

to force me to prostitute myself and give him the proceeds; increasing the

danger to me and;

4. Mr. Steven Banks, Commissioner of HRA and his agency Director of Legal Affairs,

Michele Murphy (I worked at the Urban Justice Center in 2015-2016 and HRA

executives would meet with a group called 'Safety Net Activists' to discuss ways

the Human Resources Administration could improve services and service

delivery to its beneficiaries.)  During a meeting on or about January/February of

2016  I shared with Mr. Banks that even during criminal proceedings against me

that my abuser/pimp, Mr. Powell, conscripted me to continue prostituting

myself and giving him proceeds from those activities in order to get the charges

against me dropped (Mr. Banks had been the Director of the Legal Aide Society

when I was being prosecuted and represented by LAS.) I also shared with Mr.

Banks and Ms. Murphy that I had been trying fruitlessly to hold the NYPD and

Manhattan DA's office accountable in State and Federal Court and that no one

would help me because my litigation goals involved exposing the horrifying

torture of crime victims by Cy Vance's office.  Within a year of this meeting Mr.

Banks funded the NYLAG Pro Se Legal Clinic which was up and running in the

late fall of 2016.

G. Mr. Powell's restraining order had even been less severe against me (he only had a "no

contact" order against me but I had a specific distance restriction on my restraining order

prohibiting me from being within 200 feet of Mr. Powell. If Mr. Powell felt I wasn't giving him enough money he would pop up in public places in the neighborhood at the same time I was there forcing me to leave: reminding me that he had control of me and I needed to give him more money. Often he felt I was holding back money from him (I was) and we would fight and he would abuse me. Although during this period after my arrests he never choked me again or covered my head with the duvet and deprived me of air as he did before my arrests. He would sneak into my apartment and take things from me: a gold bracelet that my father gave to me when I graduated from high school; an iPod; a sterling silver bubble-blower from Tiffany's my best friend from Mount Holyoke had given me as a "thank you" for organizing her Bachelorette party in Seattle etc. I was helpless to do anything. When I confronted Mr. Powell about these thefts he would use violence against me. I was helpless do anything. Your Honor: do you know what you do when you are helpless to get out of a situation? You get in deeper.

Specifically I have written in my moving papers this fact pattern that reflects this constant threat of control under the threat of violence that Mr. Powell exercised over me because he knew the police and DA's office would do nothing to help me. I have shared that Mr. Powell would pop up in bodegas I was waiting for sandwiches to be prepared in forcing me to leave without my lunch, or in the local Best Yet grocery store on Frederick Douglass Boulevard forcing me to abandon my grocery cart and leave the supermarket. Mr. Powell was aware of Law enforcement's instructions not to assist me. He knew my photos were shown at precinct roll-calls and that officers had been instructed not to take my complaints or extend me police services and Mr. Powell used this to increase his control over me while criminal proceedings were still pending against me: this to me your honor constitutes

"evidence that my placement on a no-services list by the 28th precinct increased danger to me." Mr. Powell was aware of the situation and used it to continue to control, torture, manipulate and abuse me.

   H.   When Mr. Powell approached me on January 1, 2012  I still had the stronger restraining against me so he told me unless I cooperated in his pimping scheme he would go back to the police and tell them I *again* broke the (stronger ) restraining order he had against me and get me locked up in Rikers "***for good.***"  I had absolutely no choice but to continue working actively as a prostitute to bring in daily revenue.  Mr. Powell would appear in the middle of the night after I would return home -sometimes asleep- and would just take money out of my purse if I hadn't given him what he thought was his 'cut.'  Other times I would literally count out bills to him if he was in my apartment waiting for me when I came home at night.  All this was because Mr. Powell KNEW he could continue abusing me:  he would always say: "There's something about you other women don't like:  someone at the DA's office knows you and REALLY hates you:  I could OFF you and get away with it." When I would say I would go to the police and show them photos of my injuries he would destroy my phones and laptops or steal my phones with texts on them that implicated him in his scheme of violent control over me.

Frankly I had NO idea who Mr. Powell was referring to UNTIL I stumbled on Linda Fairstein's name on Vance campaign contribution filings in 2019 and I realized it was HER who was always screaming at me about my dogs and at community board meetings I attended when I didn't have my press pass displayed.

I had NO IDEA Mr. Powell was referring to the CHIEF of the Manhattan District Attorney's office's SVU:  Linda Fairstein.  I didn't even know her name before I was arrested.  I just

thought she was a spiteful, vengeful, off-kilter lady who lived across the street from me when I live at 206 e 70th St. from on or about July of 2004 to on or about August of 2007.

**POINT III:  PACER Access**: Your honor I have tried to include these state created danger actions in my complaint before but because of unfortunate timing the version of the complaint I turned in on September 16, 2016 was stricken from the record.  I filed a notice of appeal about this on or about October of 2016 and at that point Hon. Judge Preska issued an order allowing me to add certain aspects of the 9/16/16 complaint back into my actions but not allowing the state created danger actions to survive because I hadn't filed them by 8/30/16 (this is all explained in Exhibit XXX notice of appeal).  In short that kerfunkle in 2016 with my docket was caused because I did not have access to ECF to read court orders and responses –I had to wait for mail. Judge Preska's acceptance of my request for extension for filing and amended complaint did not reach me by the day the original filing was due~!~.  Similarly in these circumstances I didn't have access to your entire 11/30/20 order because PACER won't even allow me to download the one allowed copy of each document on my ECF docket and I didn't see your entire order. ! This is so frustrating for me because I would have included all of these fact points in my filing due on 12/30/20 had I had access to your entire order to review and respond to.  Please accept this addendum to my 12/30/20 filing into the docket.  I know there is a debate going on about whether or not to make all PACER document free for the public to access and I have to admit I have a strong opinion to offer on this subject after these forced errors on my docket I have had to incur because of lack of free PACER access.

**POINT IV:  The District Attorney's assertion that they should not be added back onto the complaint because they would be "prejudiced by being reintroduced into the case several years after being dismissed" in March of 2017 is not accurate.**  While I had made my initial filing in the SDNY on or about May of 2015 all the work being done was PRIOR to a complaint being served—The FIRST complaint to be "ACTIVE" was the THIRD AMENDED complaint accepted in in Fall of 2016—less than a year after they had been dismissed off of the complaint (and not "several years.")

**POINT V:  NY State Executive Laws do provide another exception to DWARES that I have cited in the past in my moving papers in this case.**  The law REQUIRES police in NY State to investigate complaints of trafficking/pimping/coercion.  This is the only category of complaint police are REQUIRED to investigate/follow up on in NY State under this law. Had I had my cell phones that the DA withheld from me in my possession when my case was in front of Hon. Louis B York of NY State Supreme Court I strongly believe my assertions of  violations of the Due Process clause would have been upheld—and those claims did not suffer any tolling, statute of limits deficiencies.  In other words, even if you find all my other arguments fail, you must consider that I was denied justice by the potential DA Defendants because they withheld my phones and I was unable to articulate my pleadings sufficiently in state court because of this illegal search and seizure.

**POINT VI:  IMPLICATIONS FOR MY INDEX: RE-NAMING MDAO PARTIES ON MY COMPLAINT:**  Your honor, if you do agree with me that The MANHATTAN DISTRICT Attorney's Office DID affirmatively impeded my ability to pursue justice, (in violation of

Dwares, Pina, Okin et al) allegedly to protect Mr. Powell, I would like to ask your honor to allow me to expand the claims I currently have in my fifth amended complaint that begin to spell out the complete scheme of state created danger I suffered and expand on them back into my complaint.  I hope you find this request reasonable in light of the revelations that the seized cell phones have brought seen against the fact patterns I have described that indicate a repeated pattern of evidence that my alleged placement by Defendants on a "do not serve" list increased the danger to me because Mr. Powell continued to manipulate  me and the system against me. I believe the fact pattern I have outlined above (that has been woven in my narrative throughout the timeline of this case) make an unequivocal showing that Dwares v. City of New York,985 F.2d 94, 99 (2d Cir. 1993), overruled on other grounds by Leatherman v. Tarrant Cty. Narc. Intelligence &Coordination Unit, 507 U.S. 163 (1993) is relevant and prescient in my circumstances and that the instructions issued from the Manhattan DA's office that that I was placed by Defendants on a "do not serve" by the 28th precinct  increased the danger to me by allowing Mr. Powell to use the threat of incarceration and his own violence and the violence of his agents against me.   These claims suggest not only that "police officers had failed to act upon reports of past violence," but that Mr. Powell KNEW of the police's intentions not to act and these allegations ***DO*** "implicate the victim's [my] rights under the Due Process Clause."

**POINT VII:  EXHIBITS, Pro Se LITIGANTS AND FACIAL SUFFICCIENCY:**  There is a Federal Rule that allows federal Judges to only interpret exhibits turned in by Pro Se litigants when determining if the allegations in a complaint are sufficient.  I ask your honor to consider this in reviewing my past complaints and moving papers and note the extensive

exhibits I have attached that have been in support of these State Created Danger allegations I have been trying to articulate. In other words, because I am a pro se litigant you  are allowed to also consider my exhibits and evidence provided attached to my moving papers and complaints to fill in some of the blanks that I may have technically overlooked-- when weighing whether or not to grant my request() and consider the basis of my request factual and sufficient

**POINT VIII: DISCUSSION OF RELEVANT DUE PROCESS CLAIMS**: As is required by Leatherman v. Tarrant Cty. Narc. Intelligence &Coordination Unit, 507 U.S. 163 (1993)I do believe that  I have already articulated "a short and plain statement of the claim" of State Created Danger  in the allegations as outlined in the active, Fifth Amended complaint.  As the timeline described in the Fifth complaint alleges Mr. Powell knew the police and DA's would not help me  (because he was not arrested when I made complaints and because the DA's office and NYPD had told him this) and Mr. Powell used this fact to further torture and control me with incarceration on Rikers and the threat of long-term future incarceration by filing false criminal charges against me.  Further, "[i]t requires no stretch to infer that such prior assurances from the NYPD and MDAO's office would have increased the likelihood that the Mr. Powell would continue to assault, pimp, coerce, terrorize and control" me as he did.

    A.   the facts that I have shared with you in this document and that I have outlined already to some extent in my Fifth Amended Complaint present extremely compelling evidence that Mr. Powell knew of the Police and the DA's refusals to help me and that enabled and allowed him to further abuse me.  The City

Defendants and members of the Manhattan District attorney's office are "state actors who are liable under section 1983 if they affirmatively created or enhanced the danger of private violence."[20]   "[T]hough an allegation simply that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process clause, an allegation that the officers in some way had assisted in creating or increasing the danger to the victim would indeed implicate those rights." [Dwares, 985 F.2d at 99.]  I have always  alleged that the officers from the NYPD 28th precinct, and specifically Detective Simmons, had in effect aided and abetted the deprivation of [my] civil rights by allowing me to be subjected to not only arrests and restraining orders but also the prolonged, pimping, battery, financial abuse and emotional assault "without interfering."  Certainly "[s]uch a prearranged official sanction of Mr. Powell's privately inflicted injuries to me would surely have violated my (the victim's) rights under the Due Process Clause."[21]

B. **In Hemphill v. Schott,** 141 F.3d 412 (2d Cir.1998), judges found:  "where the state actors actually contributed to the vulnerability of the plaintiff, or where the state actors aided and abetted a private party in the deprivation of a plaintiff's civil rights, a violation of the Due Process Clause does occur."   Id. at 419. But this is precisely the case with Mr. Powell's continued use of violence, pimping and threat of incarceration against me that I have elucidated in my Fifth Amended complaint, and in all of my moving papers.

---

[20] [Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir.1993), overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).]

[21] Dwares, 985 F.2d at 99.

C. **Pena v. DePrisco:**  Since Dwares, courts have sustained inaction by government officials, in the face of potential acts of violence, might constitute "prior assurances," Dwares, 985 F.2d at 99, rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement [Pena v. DePrisco, 432 F.3d 98, 111 (2d Cir.2005)].  In Pena it was held that when, as I allege is the case with Mr. Powell, "state officials communicated to a private person that he or she will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct under Dwares.  This is so even though none of the defendants [is] alleged to have communicated the approval explicitly."  But in my case the communications were VERY explicit:  for example, witness Detective Simmons' testimony in front of (then) Family Court Judge Lori Sattler and then her executing an arrest of me INSIDE THE FAMILY COURTHOUSE IN FRONT OF MR POWELL;[22] or ADA Maria Strohbehn's decision to decline prosecution of Raheem Powell on or about early February of 2011; or Strohben's assistance in helping Mr. Powell draft a request for a counter application against me for a restraining in family court on or about February 2, 2011; or the over 40 times I had to stand in court as the defendant against Mr. Powell's allegations of 324 counts of aggravated harassment and one count of contempt of court that I  was charged with (Fifth Amended complaint paragraphs #53-53).  ***These are all very explicit communications to Mr. Powell***

---

[22] See Exhibits K-P transcript pages of March 2011 Family court hearing.

***by the NYPD and the MDAO's office by  "state officials [that]communicated to***

***Mr. Powell that he would not be punished."*** This behavior—the actions by the

DA's office to not charge Mr. Powell for his violence against me (and the actions

by Dt. Simmons) and the 28th Precinct to instead arrest me is in fact a "subset of

the affirmative conduct by state actors that can [and did] enhance the danger to

[me] a victim."

D.   **Okin**: Again, in addition to the actual violence against my person perpetrated by

Mr. Powell and by his agents, the actions by state agents taken to arrest ME

instead of Mr. Powell for allegedly harassing Mr. Powell "plainly transmitted the

message that what he did [to me] was permissible and would not cause him

problems with authorities."[23] In fact "the authorities" REWARDED Mr. Powell by

dismissing other charges against him (not only my complaints but his August

2010 "B" Felony arrest for Felony Sale to an Undercover Narcotics Officer that I

discuss in my 12/30/20 filing). Authorities also lobbied on behalf of Mr. Powell's

best friend, Maurice Nieves, to be released on parole from a PA state facility as I

discuss in my 12/30/20 filing.  Mr. Powell was clearly transmitted messages by

these actions by government officials in the Manhattan DA's office and/or the

NYPD that I have discussed in my Fifth Amendment Complaint and subsequent

filings, including this one.  "Okin provides a series of optional factors rather than

hard-line tests for proving a viable claim under the state-created danger

doctrine. **These factors include whether a police officer implicitly**

**communicated to a perpetrator that the perpetrator would not be**

---

[23] Okin, 2006 U.S. Dist. LEXIS 75881, at *49, 2006 WL 2997296, at *17.

**apprehended for his actions**, thereby increasing the victim's vulnerability, or whether the officer's repeated sustained inaction in the face of violence condoned the perpetrator's acts. A victim need not prove all of the factors. She need only establish one of the factors and the state of mind requirement, namely, that the police officer's action "shocked the conscience." Under this latter requirement, to establish a violation of substantive due process rights, a victim must show that "the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[24] Purposeful or intentional actions are most likely to be conscience shocking, while negligently inflicted harm is beneath the threshold of constitutional due process.[25] Recklessly inflicted harms are evaluated on a case-by-case basis, focusing on the context.[26] The Okin court provided a less stringent threshold for conscience shocking actions. Unlike some courts that require willful conduct by the police, the Okin court required only deliberate indifference. The court established that deliberate indifference shocks the conscience in domestic violence cases. In other words, the state of mind requirement in domestic violence cases is deliberate indifference.  Therefore, in comparison with other circuit courts' tests, the Okin test is more conducive to promoting justice for women who have suffered domestic violence at the hands of intimate partners.  In sum, explicit affirmative acts by police officers are relevant, but courts' analyses should not end there. The Okin court considered whether actions may implicitly communicate police

---

[24] Okin, 577 F.3d at 431.
[25] Id.

[26] Id.

sanction of violence. In some cases, repeated inaction by the police could suffice

to prove a claim under the state-created danger doctrine. The Okin factors truly

blur the purported distinctions between affirmative commissions and omissions.

***I would say my fact pattern that that have laid out falls squarely into the***

***"blurry" boundaries that Okin defines:  my batter didn't get to chat about***

***football with his buddies when I made complaints:  he got to watch as I was***

***led off in handcuffs from family court when I tried to get a restraining order***

***renewed against him.*** He got to watch detectives lead me from my brownstone

on 120th St. in handcuffs and boasted to the neighbors that I was on Rikers Island

when I didn't return.  He KNEW what was going on:  he coordinated with and

was informed by the police and DA's office about my arrest! My neighbors had to

break into my apartment through my back yard and feed my boxer and my

terrier dogs; my turtles Miss Fong and Mr. Wong; and my countless aquarium

fish that I used to own in my beautiful brownstone apartment on w 120th St.

while I waited on Rikers for someone, anyone, to bail me out.

**POINT IX:**  **tolling on all my allegations is still stayed due to the doctrine of continuing**

**violations:**  Even if my pleadings are inaccurate, even if I haven't named people in the right

places or referenced the correct case law or missed some tolling deadlines I ask Your

Honor to consider that –tolling on all my allegations is still stayed due to the doctrine of

continuing violations.  In Ledbetter [27] the Supreme Court reaffirmed a baseline principle

concerning the continuing violations doctrine:  In deciding whether the doctrine should

---

[27] LEDBETTER v. GOODYEAR TIRE & RUBBER CO. (No. 05-1074)
421 F. 3d 1169, affirmed.

apply, the initial inquiry should examine at minimum incorporating consideration of whether treating the claim as continuing in nature will promote equity or efficiency interests more effectively than the application of other accrual and tolling options would. The inquiry should also examine *if the defendant's misconduct places the plaintiff under his or her prolonged control*.

A.  The NYPD Defendant's, City Defendant's and DA Defendant's conduct has placed me under their prolonged control as the discriminatory behavior of denying me police services and exposing me to continued dangers not only enabled Mr. Powell to continue his conscription of abuse of me, it has followed me throughout this past decade.  It will not surprise Your Honor to learn that the NYPD still will not assist me.  There were two more incidents in 2019 where I was seeking help from the NYPD after being assaulted (once when someone tried to take my cell phone in a subway station and once when a cab driver slapped me because I wouldn't get out of his cab with my service dog).  In both situations the responding officers because of information they attained about me from NYPD databases took me into custody.  The data that is still in NYPD systems is based on discriminatory information informing police intelligence about me framed by actions and discriminatory decisions of NYPD Defendants and MDAO Defendants dating back ten years ago.  In one case Officer Serpico from NYPD TB3 literally said:  "I know her" and instead of my assailant being arrested I was taken to the psych ward to be examined, and released within minutes.  Two years ago my landlord forged my name on several documents he sent to DHCR trying to limit a rent-reduction request I had in housing court:  the NYPD did nothing.  Then, my landlord hired hired workers to threaten me with power tools to leave my apartment.  My landlord KNOWS the NYPD will not help me:  he reads and has access to

volumes of information about me.  Because I was labeled as a "fabricator" years ago by the NYPD and the MDAO's office I have continued to experience the fruits of their discriminatory behavior.  This discriminatory behavior is ongoing, it has not ceased, and has placed me under the prolonged control of the Defendants.

B.  Additionally the acts of seizing my phones for the past nine years has placed me under the prolonged control of the DA Defendants.  My Fourth Amendment rights to not undergo illegal search and seizure have been violated.  I have been under seizure by the MDAO's office because they have illegally and unconstitutionally continued to seize my property and prevented me from using the information on that property to restore myself to the status I enjoyed before my malicious prosecutions, false arrests, state created danger, and unlawful imprisonment.

**CONCLUSION:**  All the things in my life that made Kelly Price a person are gone now your honor;  the animals I owned when I lived on w 120th street all dead; the idea of love I though I understood shattered; the belongings all scattered between vulture neighbors and a storage unit that is constantly thisclose to being up for auction and my tiny SRO apartment in Washington Heights that is literally no larger than my prison cell on Rikers Island.  All the people that loved me when I lived in that apartment are gone from my life; my family; my friends.  All cast doubt on me and didn't believe the venerable Manhattan District Attorney's office could get it so wrong...I appear in front of you time and time again and try to resuscitate myself from my life as a completely different person now.  I want so desperately to restore my name and my reputation, to work as a journalist again, to be

forgiven and loved and embraced by my family and friends but I need justice in order to attain these things.  I believe I have made sufficient pleadings to parse this all together through the lens of Okin and Dwares and Pena and Hempell and Leatherman and I ask your honor to consider these pleadings as enough showing to allow me to name members of the Manhattan district attorney's office onto my complaint at the very least in their official capacities if not as individuals.  Also your Honor, I believe there are potentially new actions to consider as the withholding of my phones as I discuss in my 12/30/20-filing amount to new violations of my rights.

Kelly Price
Pro se
534 w 187th St., Apt. #7
New York, NY
10033
646.932.2625
gorgeous212@gmail.com

/s/ [Kelly Price].                             January 4, 2020

.