April 22, 2014
Elizabeth Walker

235 West 120th Street
Apt 2
New York, NY 10027
(917) 575 9600 (cell)

To Whom It May Concern:

I was one of Kelly Price's neighbors when she lived at 237 west 120th Street. I have lived at 235 west 120th Street for five years. I am an attorney and have been a member of the New York State Bar for over seven years.

During the course of our relationship as neighbors Kelly shared with me the trouble she was having obtaining police assistance from members of the 28th Precinct on multiple occasions when she had been attacked by people in our neighborhood, including her ex intimate partner, Raheem Powell. I did not witness the events or attacks Price described to me, but she would cry on my shoulder whenever was assaulted, often by women whom Kelly believed were associated with her ex, his alleged drug dealing associates, or childhood cronies. Kelly was particularly dismayed that the police refused to take her reports, follow up on assaults against her person, or regard her as a member of society needing protection in general. She told me that officers in the precinct told her that the district attorney's office had instructed them not to assist her. Candidly, I did not entirely believe that the police would refuse Kelly, and I suspected that it was likely she was omitting some dispositive reason why the police were reluctant to intervene on her behalf against her various alleged attackers.

On the evening of October 17, 2012, Kelly called me crying and asking for my help. I observed her distraught and injured after being assaulted in broad daylight on the corner of our block, at 120th Street and St. Nicholas Avenue, while she was en route to her home from the 125th Street subway at approximately 5:30 p.m. I observed that she was disheveled, her stockings were torn, and her knees and hands were bruised and bloodied. Kelly was nearly hysterical and I had to calm her down and give her medical assistance. Kelly related that a purported heroin dealer named Willy who was known to many residents in the neighborhood (he operated his business from a visible stoop on Saint Nicholas Avenue) had "jumped" her and hit her in the face, spit at her and pushed her onto the sidewalk while screaming insults at her. I do not recall what Kelly had said to him before or after the attack, but I do recall that she did not provoke or retaliate against him physically. I took pictures of Kelly and her wounds, and encouraged her to call 911 for assistance in reporting the crime. Kelly stated that she already had called the 28th Precinct and that a patrol car had been sent to the scene of the assault. Kelly said that when the officers arrived they refused to take her report and called her crazy. Kelly also stated that she had then walked to the precinct a block or so away for help and been rebuffed by the desk sergeant who Kelly said ridiculed and mocked her. Notwithstanding her story that she had sought police intervention earlier that day, I insisted that she call 911 again and report the chain of events. She complied.

Eventually another patrol car with Officers from the 28th precinct arrived in front of the brownstone we lived in.  Two police officers, whom Kelly has since reminded me were named PO Longo  (shield # 31565) and PO Walker, related to us that they were instructed by the station's Desk Sergeant not to take Kelly's reports.  PO Walker stated that the District Attorney's office had instructed the precinct not to respond to any of Kelly's calls.  I recall being genuinely shocked and outraged to hear this instruction, and further surprised that a young woman, like PO Walker, would be tasked by her superiors with being complicit in such a scheme that leaves domestic violence victims without recourse for protection.  At this juncture, I introduced myself as an officer of the court and member of the NY State Bar, and pressed the officers by reminding them of their legal and ethical responsibilities to provide complainants with police services. I recall that the officers responded more favorably to me than they did to Kelly, but I could not discern whether this was the case because I notified them that I am an attorney, or because I'm just someone other than Kelly Price.  PO Walker stated that she would take basic information about the incident, but she believed that once the precinct began to process the event that it most likely would be circular-filed in the trash bin.  PO Longo gave Kelly an incident ID slip and told her to follow up with the precinct in a few days, then both officers left.  I was then, and remain dumbfounded by what I witnessed transpire that evening.

As a single young woman living and working in NYC, it unsettled me that the police could be so cavalier about the safety of Kelly Price.  Kelly has since told me that the complaint number she was given months later when she inquired as to why no one had ever followed up with her about the incident was 2012-28-005194.  Kelly also informs me that the detective squad at the 28th Precinct closed her incident report without contacting her to identify the perpetrator of the attack or review the emergency room reports or follow-on orthopedic assessments describing Price's injuries resulting from the attack.

Please feel free to contact me with any questions.

Sincerely,

Elizabeth Walker