**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

October 30, 2019

**via email (letter only) & UPS Next Day**

Kelsie Docherty, Esq.
Cravath, Swain & Moore LLP
825 Eighth Avenue
New York, N.Y. 10019-7475

Re: Kelly Price *v. City of New York, et. al.*,
   15 cv 5871 (KPF)

Dear Ms. Docherty:

I am an Assistant District Attorney ("ADA") in the Special Litigation Bureau ("SLB") of the New York County District Attorney's Office ("DANY") and I represent this Office and its employees in civil discovery matters. On October 7, 2019, your office served DANY, a non-party, with a subpoena *duces tecum* returnable October 21, 2019, which commanded the production of nine categories of documents held by DANY that are related to Plaintiff, Kelly Price. I am the newly re-assigned attorney handling the compliance to the subpoena, as detailed herein.

*Demand:*

The subpoena *duces tecum* demands as follows:

Any and all records, files reports, photographs, phone surveillance records, videos and other documents held by DANY relating to Plaintiff Kelly Price, especially, but not limited to, her 2010 Desk Appearance Ticket issued on October 13, 2010 (Arrest # M10691069) and her complaints of domestic violence, trafficking and abuse against Mr. Raheem Andre Powell; any and all records, files, reports and documents or communications relating to the declination of prosecution for Plaintiff Kelly Price's 2010 Desk Appearance Ticket (Arrest # M10691069); native versions of the documents received from DANY and produced by the Defendants in this Case regarding arrest number M10691069 (DANY 00001-00002), attached as Exhibit 1, including metadata indicating the date they were created and last modified; any and all files, records, testimony, recordings, or other documents related to Mr. Raheem Andre Powell regarding his interactions with Plaintiff Kelly Price and/or the domestic violence complaints lodged by Plaintiff Kelly Price against Mr. Raheem Andre Powell; any and all non-privileged communications between DANY and the New York City Police Department, the New York City Mayor's Office, the New York State courts, or any other City or State agency, regarding or referring to, in whole or in part, Plaintiff Kelly Price; any and all documents or

communications related to directive or instructions regarding Plaintiff Kelly Price's present or future complaints, including any directive to investigate, not investigate or seek approval before investigating Plaintiff's complaints; any and all documents or communications related to meetings between Plaintiff Kelly Price and DANY or between representatives or agents of Plaintiff Kelly Price and DANY, including, but not limited to, the meeting on June 21, 2011; any and all documents or items Plaintiff Kelly Price or her representatives or agents provided to DANY on June 21, 2011, including physical documents and electronic devices, and any and all data or documents containing information downloaded from any such devices; all communications in your possession, custody or control between or among DANY and Plaintiff Kelly Price relating to this Case.[1]

*Procedural Review:*

On October 18, 2019, the ADA originally assigned to the subpoena, Susan Roque, phoned you to discuss her inability to locate any responsive documents that had not already been produced to your client during the course of her civil lawsuits against the City and various ADAs.[2] She did not believe DANY possessed any additional documents related to DANY's declination of prosecution of Plaintiff other that the documents attached to your subpoena, but would nevertheless endeavor to conduct a more thorough search. At the time of her conversation with you, you consented to extending the return date of the subpoena given the need to further the search for the records. At that time, ADA Roque brought to your attention that Plaintiff had unsuccessfully sued her and several of the ADAs at DANY. ADA Roque assured you that she would handle the matter as she would any other and that she had no bias against Plaintiff. She also explained that a re-assignment would delay the subpoena response given the limited availability of a substitute ADA at SLB. On October 21, 2019, you emailed ADA Roque to inform her that your client did not wish her to handle the subpoena and requested it be reassigned.

*Disclosures to Plaintiff:*

All of the documents being produced were located as a result of identifying Plaintiff's Declination of Prosecution (Arrest #M10691069) case and Plaintiff's three prior criminal prosecutions under docket numbers 2011NY070197, 2011NY032918 and 2011NY021627. I have not located any other docket number or arrest number that identifies a case file related to Plaintiff. The above case files are being provided, although sealed, because you are Plaintiff's counsel. DANY will provide the Law Department with duplicates of the records upon receipt of Plaintiff's consent. The only portion of the disclosure that has not been completed is your request for the native versions and the metadata related to Plaintiff's Declination of Prosecution. I have submitted a request to our IT unit and await their response, which I will provide to you as soon as I hear.

---

[1] All court filings in the above-captioned case and New York State Supreme Court Index # 101414/2013 (*Kelly Price v. City of New York, et al.*) are not being provided but the privileged documents related to the civil lawsuits will be catalogued in the privilege log.

[2] She explained that, apart from the court filings, the civil lawsuit case files consist of attorney work-product created to defend the lawsuits. Also, in August, 2014, Plaintiff received, pursuant to New York State's Freedom of Information Law (Public Officers Law), most, if not all, of the documents being provided pursuant to this subpoena.

Further, there is a sealed matter involving Plaintiff as the complaining witness. Access to those records are denied as you have provided no consent for the unsealing of that case file. *See C.P.L.§160.50* [3]

*<u>With respect to the records withheld, DANY objects to their disclosure</u>*

In accordance with Rule 45 of the Federal Rules of Civil Procedure and Rule 26.2(a) of the Local Rules of the Southern District of New York, DANY objects to the subpoena on several grounds.

The scope of the subpoena is overbroad. Blanket requests of this kind are plainly overbroad and impermissible. *Henry v. Morgan's Hotel Grp., Inc.*, 2016 U.S. Dist. LEXIS 8406, at *6-7 (S.D.N.Y. Jan. 25, 2016), citing *Gropper v. David Ellis Real Estate, L.P.*, 2014 U.S. Dist. LEXIS 16849, *11 (S.D.N.Y. Feb. 10, 2014) (finding that a "request for 'any and all' documents … is inherently overbroad"); *Badr v. Liberty Mutual Group, Inc.*, 2007 U.S. Dist. LEXIS 73437, at *7 (D. Conn. Sept. 28, 2007) (finding request for "any and all" documents "overly broad"). "By failing to limit its subpoena to certain categories of documents, Defendant is "merely trying to engage in a fishing expedition." *Id.* (quotation omitted).

<u>All</u> non-disclosed records are listed in the attached privilege log. (DANY Ex. A). Attorney work-product memoranda and legal research are some of the examples of withheld records. Courts have consistently held that disclosure of an attorney's mental processes - even if those thoughts have not been reduced to writing - generally cannot be compelled. *See, e.g., United States v. One Tract of Real Property*, 95 F.3d 422, 428 n.10 (6th Cir. 1996) (as to information not memorialized in tangible form, *Hickman* applies, not Rule 26(b)(3)); *In re Grand Jury Subpoena*, 220 F.R.D. at 141 (noting that Rule 26(b)(3), unlike *Hickman*, does not reach "intangible" work product); *U.S. Information Systems,* 2002 WL 31296430, at *5 (discussions in which counsel explored hiring forensic firm analyzed under *Hickman* ); *Alexander v. Federal Bureau of Investigation,* 192 F.R.D. 12, 17 (D.D.C. 2000) ("courts must look to the case law under *Hickman v. Taylor* and its progeny and not to Fed.R.Civ.P. 26(b)(3)" when evaluating intangible work product) (citation omitted).

Courts have uniformly affirmed the strong public policy underlying the work-product privilege, namely that "[i]n performing his various duties ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.... This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways - aptly though roughly termed ... as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in

---

[3] *C.P.L.*§160.50 authorizes that sealed records shall be available only to the accused and, in limited circumstances, to enumerated public law enforcement agencies. Accordingly, there is no statutory authority permitting disclosure of sealed records to your firm. *See, Journal Pub. Co. v. Office of the Special Prosecutor,* 131 Misc.2d 417 (Sup. Ct. N.Y. Cty. 1986). DANY cannot informally waive a former defendant's rights under *C.P.L.* §160.50 and DANY is not permitted to access the file without proper authorization from the court or with permission from the former defendant.

writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served." *In re Initial Public Offering Securities Litigation* 249 F.R.D. 457 S.D.N.Y., 2008, quoting *Hickman,* 329 U.S. at 510-511.  *Accord United States v. Adelman*, 134 F.3d 1194, 1196 (2d Cir.1998) (work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries" (*quoting Hickman,* 329 U.S. at 511, 67 S.Ct. 385)).

Beyond simply protecting a lawyer's mental impressions, "[t]he work product doctrine serves to encourage vigorous investigation of disputed claims, unfettered by fear that the products of such efforts will be compromised and fall into an adversary's hands." *Feacher v. Intercont'l Hotels Group,* 2007 WL 3104329, *3 (N.D.N.Y. Oct. 22, 2007), citing *Adelman*, 134 F.3d at 1196; *See also Cornelius v. Consol. Rail Corp.*, 169 F.R.D. 250, 253 (N.D.N.Y. 1996) (while "matters revealing the thought processes of a party's representative" are afforded greater protection, material revealing "factual information obtained in anticipation of litigation" is also protected and the protection afforded to the latter "serves to prevent exploitation of the efforts of another party in preparing for litigation").

Not surprisingly, courts have found that opinion work product is entitled to special protection and requires a stronger showing of necessity to justify release, including the opinions of non-party prosecutors. *Abdell v City of New York,* 2006 U.S. Dist. LEXIS 66114, 2006 WL 2664313, at *4-6 (protection granted to non-party prosecutor's core work product); *Crosby v. City of New York*, 2010 U.S. Dist. LEXIS 63424, 269 F.R.D 267 (S.D.N.Y. June 22, 2010)(similar).  *See also Federal Election Comm'n v. Christian Coalition,* 178 F.R.D. 61, 87 (E.D. Va. 1998) (disclosure ordered of non-party "non-opinion" work product, but denied to non-party "opinion" work). In other words, when a requesting party seeks disclosure of an attorney's opinion work product they must demonstrate an extraordinary justification before the court will permit its release. *Id.* (*citing Strougo v. BEA Assocs.*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001), and *Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)). Similarly, for the release of "opinion" work-product, i.e., "work-product that shows 'mental impressions, conclusions, opinions, or legal theories of an attorney,'" *In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000) (quoting Fed. R. Civ. P. 26(b)(3)), the Second Circuit has held "that 'at a minimum such material is to be protected unless a highly persuasive showing [of need] is made.'" *Id.* (*quoting Adelman II,* 134 F.3d at 1204; citing *Upjohn*, 449 U.S. at 401-02) (emphasis added).

Furthermore, evidence regarding the basis or strategy of prosecutorial decisions or investigations is rarely subject to disclosure. *See, Startzell v. City of Philadelphia*, Civ. No. 05-05287, 2006 U.S. Dist. LEXIS 74579, 2006 WL 2945226 *2-*3 (E.D.Pa. Oct. 13, 2006) (finding that testimony regarding how "the D.A.'s Office works with the Department of Police to bring criminal charges" was subject to the deliberative process privilege); *Thompson v. Lynbrook Police Dep't*, 172 F.R.D. 23 (E.D.N.Y. 1997) (memoranda that referred to "the steps taken by the assistant district attorneys in completing their investigation, . . . and their recommendations to the file and to higher-ranking officials within the Office of the District Attorney on what, if any, action should be taken" were not discoverable under the deliberative process privilege.).  In other words, the deliberative process privilege protects from civil

discovery the mental processes and opinions of prosecutors. *See Cipolla v. County of Rensselaer*, 2001 WL 1223489, *3 (N.D.N.Y. 2001) (the deliberative process privilege covers the "opinions, thoughts, considerations and factors involved in the process of leading" a District Attorney's Office "to seek an indictment"); *Sullivan v. Stepanik*, 605 F. Supp. 258, 260 (N. D. Ill. 1985) (deliberative process privilege precluded Assistant State's Attorney's testimony "about his own mental processes or opinions"); *see also*, *National Council of La Raza v. Department of Justice*, 337 F. Supp. 2d 524, 531-32 (S.D.N.Y. 2004) (holding that the "[p]ersonal opinions" of government officials fall within the privilege).

*Conclusion*

Therefore, apart from the unresolved search for metadata and native versions of the declination of prosecution, and the items listed in the attached privilege log, DANY is providing all the documents in the case files related to Plaintiff's criminal prosecutions and declination of prosecution. The records include 248 pages of documents (disc), 2 pages of additional emails (same disc) and 2 additional CDs of phone audiotape recordings.

Should you believe that court action is necessary regarding this matter, it is expected that you will afford DANY with an appropriate notice of motion for an order to compel production as per Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure. I am, of course, available to discuss this matter with you again prior to any court intervention.

                                              Sincerely,

                                              /s/

                                              Lauren Angelo
                                              Assistant District Attorney
                                              (212) 335-4267

cc:  via email (letter only)
     Laura Ihenachor-Huffy
     Assistant Corporation Counsel