# DAVID J BRODERICK LLC

70-20 AUSTIN STREET, SUITE 107, FOREST HILLS, NEW YORK 11375
PHONE: 718-830-0700                                                                                      FAX: 718-228-4271
EMAIL: BRODERICKLEGAL@GMAIL.COM

July 1, 2024

**Via ECF**

Hon. Katherine Polk Failla
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 618

        Re:    15-cv-05871 (KPF)
                   Kelly Price v. City of New York, et. al.

Dear Judge Failla:

      I write to you in response to your June 10, 2024 Order requesting (i) any findings from our review of the file produced by her previous counsel …that might alter the Court's conclusion as to the District Attorney's Office of New York County ['DANY Defendants"], as well as (ii) our intent to pursue a "deliberate indifference" theory as to the DANY Defendants and proposing next steps in this action."

      An amended complaint adding DANY and its employees back into this case must be granted for on June 27, 2024, I finally received a report [Exhibit 1] from Alfred Demirjian [Exhibit 2] the CEO/Technical Director of TechFusion, a forensic expert, who unequivocally stated that Ms. Price's phones were definitely accessed by professional forensic tools on June 28, 2011, which is contrary to the representations made Ms. Ante at the April 24, 2024, conference and other filings made throughout this litigation.  Mr. Demerijian states:

> This letter is to provide an explanation regarding the activity observed on the phone between June 11, 2011, and February 2020. Specifically, the focus is on the directory updates and alterations to the files and databases during this period…**The activity on the phone, including the directory updates and the parsing of recovered files, indicates that someone <u>with the necessary technical expertise and tools</u> accessed the phone to perform these forensic examinations**.
>
> It is crucial to note that without active service or regular user interaction, the phone would not autonomously update directories or alter files. The documented

>changes during the specified period, particularly the modifications on June 28, 2011, are consistent with procedures carried out by forensic professionals.
>(emphasis added).

It is plaintiff's position, that someone with the necessary technical expertise and tools accessed and then conspired to hide and hold hostage the exculpatory information on Ms. Price's phones from her so that they could protect DANY's confidential informant, wrongly prosecute Ms. Price for an additional 14 months, and continue her on the do not service list as a fabricator to this very day. Even if all of the above is not able to be proven, DANY is still liable for retaining the phones for the past nine years with deliberate indifference for the rights possessed by Ms. Price, *see, Baker v. McCollan,* 443 US 137 (1979) [Failure of law enforcement to take steps to confirm an arrestees innocence]; *Colon v. Coughlin,* 58 F.3d at 873; [setting forth the five ways in which the personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [citizens] by failing to act on information indicating that unconstitutional acts were occurring."]

In addition, after reviewing an extensive file transmitted by Cravath, I further believe a Court order allowing plaintiff to reassert her claims against the District Attorney's Office of New York County [DANY] is warranted for its violation of Ms. Price's civil rights under a theory of (a) Principal / Agent, (b) Master / Servant (employer / employee), and (c) deliberate indifference for the health and safety of Ms. Price whom they had a special duty to protect since they knew of their informant's propensity to inflict bodily harm upon her. Ms. Price asked for NYPD protection and DANY interfered so as to protect their confidential informant. DANY intentionally sacrificed the health and safety of Ms. Price so as to create and/or reinforce Mr. Raheem Powell's, Miss Price's abuser, street credibility so as to enhance DANY's ability to investigate drug crimes within the 28th pct which is beyond prosecutorial function as detailed below.

As this Court may recall, upon information and belief, Mr. Raheem Powell was and still is under contract with DANY to act as a confidential informant. In fact, last year DANY dropped 105 drug charges against Mr. Powell [See Exhibit 3 Webcrims readout of 105 Class C felony charges filed v Powell]. Nevertheless, in 2010 DANY offered Mr. Powell and he accepted (a) immunity from prosecution for all past, present, and future crimes and (b) the ability to keep all of his "ill gotten" gains in exchange for providing DANY with information about his drug dealing and prostitution competition in the 28th Pct and New York City at large.

Mr. Powell became an informant for DANY when he agreed to submit a perjured affidavit on behalf of the NYPD who caused severe injuries to an individual who had been unlawfully held and beaten in a van for three days (the NYPD's "Shake and Bake" program). Mr. Powell came to be held in the van as the NYPD wanted to exact retribution for the high speed chase he caused them to engage in just prior to his capture. The NYPD used this incident to convert Powell to a

CI.  Powell also testified for DANY in the Grand Jury hearing of the Layne brothers and 137th st gang on February 10, 2011 as your honor well remembers from the motion submitted by Price already in this case in January of 2017 regarding the Omnibus motion members of the 137th st Gang who asked the Criminal Court judge presiding over their case for the Grand Jury minutes to be reviewed to ensure proper directions were made.   In his response to their Omnibus motion Hon. Judge McLaughlin made SPECIFIC instructions to DANY regarding this: *"This court reminds the prosecution of its continuing duty to disclose favorable evidence intis possession to the defense…This obligation covers evidence material to the impeachment of prosecution witnesses,* INCLUDING THE EXISTENCE OF ANY AGREEMENT MADE TO INDUCE A WITNESS'S TESTIMONY…*"* [Exhibit 4 Omnibus motion].  Powell was also a complaining witness for the DANY in an attempted murder case in which a member of the 137th street gang attempted to rob his drug distribution center on w 120th street in December of 2010.

Prior to his capture, Mr. Powell engaged in the trafficking of drugs (marijuana and cocaine) and young women from the Bronx and New York County to NJ Strip Clubs and after their performance to service the Johns (prostitution).  DANY knew of and continued to allow Mr. Powell to engage and  profit from these illegal and immoral activities.  Ms. Price would become caught up in DANY's and Powell's illicit operation as she was a young woman to be exploited by both for their gains.  However, when Ms. Price desired to leave the operation run by Powell and facilitated by DANY, Powell used his physical power and connections to DANY to beat the living daylights out of Ms. Price.  The officers of the 28th precinct who desired to help Price and arrest Powell were told to standdown by DANY.  Your honor is well familiar with the affirmation of NYPD Lt. Mark Larocca stating as such which has been filed many times on this docket..  In fact, DANY did inflict further harm to Ms. Price by illegally seizing her car because Powell used it in an operation that DANY was running.  We know this to be the case because Powell was arrested by the Special Narcotics Prosecutors office for drug crimes only to have their charges against Powell dropped.  However, while Powell, the perpetrator, was permitted to go free, DANY held Ms. Price's car for several months without explanation. [Exhibit 5 car seizure voucher]

Upon information and belief, I want to make it clear, DANY allowed, permitted, and/or authorized Mr. Powell to traffic young women, some believed to be underage, across State lines to engage in prostitution for Johns who waited at NJ Strip clubs. It is unfathomable that the State could allow such conduct to occur merely for political advancement within the DA's office.

Nevertheless, in October of 2010, Price complains to the 28th Precinct as Powell beat the living daylights out of her at the intersection of 118th Street and St. Nicholas Avenue.  There exists a Police Report documenting same [Exhibit 6]. The NYPD took a report and informed Ms. Price to come back the next day for the Report number.  Upon her return, Ms. Price was told that they (the officers) never seen anything like this but DANY would not allow them to investigate nor arrest Mr. Powell. In October of 2010, Lt. Laroacca informed Ms. Price that DANY told them to cease and desist any and all investigations generated by Ms. Price because she was a fabricator.  Your honor is well aware of the many complaints Miss Price made about Powell to the NYPD and DANY.  Ms Price was told to make reports to the DOI or OIG which was done.  DANY did not erect a thin blue and huge blue wall that Ms. Price could not climb.

Detective Bailey informed Ms. Price, "You have no idea what he [Powell] traded" for his immunity. The affidavits of Merilyn Benatos [Exhibit 7 Benatatos Affirmation] documents that the Pct. Commander Rodney Harrison stated that he had never seen anything like this in his career. DANY allowed, authorized, and permitted Mr. Powell to infringe on the civil rights of Ms. Price while acting under and with the power of the State behind him. Simply put, Powell was acting under the color of law when DANY permitted him to drug, traffic and beat Ms. Price.

### DANY CAN BE HELD LIABLE FOR THE ACTS OF POWELL

As the Court may be aware, the key factor in determining whether an informant can be considered an employee of the prosecution is the extent of control the prosecution exercises over the informant. If the informant is acting under the direction and control of the prosecution, as evidenced by agreements to act on behalf of the state and pursuant to its instructions, the informant can be considered an employee of the prosecution, see, [Schmitt v. True, 387 F.Supp.2d 622 (2005)](#) While Scmitt dealt with a jailed "commissioned informant" eliciting a statement from a prisoner could be considered a state actor and/or employee of the prosecution:

> In *Henry*, the Court concluded that the government was charged with deliberately eliciting testimony when it put a commissioned informant on Henry's scent and the informant then "stimulated conversation with Henry., *Henry*, 447 U.S. at 271-275. Here, the circumstances leading to the March 12, 1999 taping reflect that George knew that Sauer did not intend to be a passive listener. Rather, Sauer stated that he intended to guide and encourage Schmitt into making incriminating statements. Thus, George, and hence the Commonwealth, knew that Sauer intended to elicit incriminating information from Schmitt. In light of the foregoing facts and law, the Supreme Court of Virginia unreasonably applied then extant Supreme Court jurisprudence when it concluded that Sauer's conduct did not constitute deliberate elicitation.

In the case before this Court, Powell was far more than a commissioned employee of DANY as they allowed and permitted him to profit from both drug and sex trafficking at Ms. Price's expense. He was DANY's employee.

The Presence of an Agreement between Powell and DANY is known and demonstrated by his continued ability to walk away from drug charges and other crimes including the beating of Ms. Price which DANY ran interference.

Ms. Price did not know how to plead the facts when she brought her pro se complaint. And, while Ms. Price, and rightly so, focused on her cell phone communications, the question becomes why has she been denied an opportunity to explore the text communications between DANY and Powell? Did they ever tell him to cease and desist from beating Price? What about the communications between DANY and the NYPD regarding the arrest of Price?

**DANY IS LIABLE TO MS. PRICE FOR ITS DELIBERATE INDIFFERENCE FOR THE VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS**

As the Court may be aware, DANY has a propensity and/or modus operandi of violating a charged person's 4th, 5th and 14th Amendment Rights by failing to return and/or timely return seized property never mind the alteration of that property while in its custody, i.e. Ms. Price's cell phones herein.

While DANY may like to argue that the retention of Ms. Price's phones was a singular incident such an argument is undermined by the settlement reached in *Enrnancion v. City of New York, et. Al.*, 16-CV-00156, SDNY wherein the government agencies agreed to start complying with the law that they were duty bound to follow in the first instance. The City and DANY coordinate their improper retention policies. DANY actually encourages the City of New York to declare seized property "investigatory" allowing it to be held indefinitely, i.e. Ms. Price's cell phones were held for 9 years without explanation, *see T.M. v. NYPD, et. al.* Supreme Court NY County 453060/2023.

The above is the tip of the proverbial iceberg demonstrating that DANY and the City have a policy of wrongful retention and misclassification of seized property. In the instant case, it is well known that Susan Roque, Director of the Special Litigation Unit at DANY, received Mr. Price's confiscated cell phones from ADA Kenya Wells and at no time were vouchered as evidence as testified to before this Court:

> Judge Failla: "For something like this case file, the way you're describing it, I just sort of imagine as a Redweld or a box of paper with no formalized recordation of access to it. But am I misunderstanding it? Is there something more formal?"
>
> Susan Roque: "They were not vouchered as evidence. They were not put in any voucher bag or -- they weren't formally logged as evidence. They were kept in the Redweld with the file."

Ms. Roque's testimony as well as the assertions made by Ms. Ante were proven to untrue by plaintiff's forensic expert, Mr. Demerijian who states:

> This letter is to provide an explanation regarding the activity observed on the phone between June 11, 2011, and February 2020. Specifically, the focus is on the directory updates and alterations to the files and databases during this period…**The activity on the phone, including the directory updates and the parsing of recovered files, indicates that someone <u>with the necessary technical expertise and tools</u> accessed the phone to perform these forensic examinations**.
>
> It is crucial to note that without active service or regular user interaction, the phone would not autonomously update directories or alter files. The documented changes during the specified period, particularly the modifications on June 28, 2011, are consistent with procedures carried out by forensic professionals. (emphasis added).

Miss Roque was not the only supervisor and employee of DANY who knew of the unconstitutional and illegal retention of her phones. Many other were notified by Price or other City agencies, such as the Department of Investigation, that she made complaints to. DANY's deliberate indifference is set forth in the timeline annexed hereto as Exhibit 9. The untrue statements that the information was not accessed is dealt with by Mr. Demerijian above also [see Exhibit 1Techfusion affirmation].

In light of the above, it is clear that DANY acted with deliberate indifference towards Ms. Price's constitutional rights by not taking "readily available steps" to confirm plaintiff Price's innonence in a timely manner and in fact withheld that evidence for nine years secreted away in an office – not a vouchered evidence bag or locker. While I am new to this case, I believe the question this Court has been grappling with for the past four years is: " Did the DANY know about the exculpatory information on the phones?" However, such knowledge is not a prerequisite to the filing of Civil Rights claim regarding the exculpatory evidence.

In *Baker v. McCollan*, 443 US 137 (1979) wherein the Supreme Court held that a failure of law enforcement officers to take readily available steps in a timely manner to establish a plaintiff's innonence was a violation of his Constitutional Rights by deliberate indifference, see also, see Williams v County of Sullivan, 157 FRD 6 [1994]; see also Cannon v Macon County, 1 F3d 1558 [1993]; Buenrostro v Collazo, 777 F Supp 128 [1991], affd 973 F2d 39 [1992]; Johnson v City of Chicago, 711 F Supp 1465 [1989]).

In the instant, Ms. Roque's and other DANY supervisor conduct falls in line with liability under *Colon v. Coughlin*, 58 F.3d 873 as their participation establishes both policy and custom by engaging in, condoning, and failing to correct civil rights violations in the chain of custody of evidence. In Colon, the Court held:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [citizens] by failing to act on information indicating that unconstitutional acts were occurring. [*Colon v. Coughlin,* 58 F.3d at 873] (setting forth the five ways in which "personal involvement of a supervisory defendant may be shown by evidence") *accord, e.g., Wright v. Smith,* 21 F.3d at 501; *Jackson v. Johnson,* 15 F. Supp. 2d at 365; *Watson v. McGinnis,* 964 F. Supp. at 130; *Wright v. Nunez,* 950 F. Supp. at 611; *Lloyde v. Lord,* 94 Civ. 484, 1997 WL 123996 at *1 (S.D.N.Y. March 19, 1997) (Wood, D.J.); *McCray v. Kralik,* 1996 WL 378273 at *3; *Zamakshari v. Dvoskin,* 899 F. Supp. at 1109.

And, bringing the Court full circle back to DANY's liability for the physical harm suffered by Ms. Price at the hands of DANY's agent, Raheem Powell, is the Seventh Circuit's decision

in Sandra T.E. v. Grindle, [599 F.3d 583 (7th Cir. 2010] wherein it held that School liable for a State actors delieberate indifference for the health and safety of a student through concealment:

> **[w]hen a state actor's deliberate indifference deprives someone of his or her protected liberty interest in bodily integrity, that actor violates the Constitution, regardless of whether the actor is a supervisor or subordinate, and the actor may be held liable for the resulting harm."**

In the instant case, DANY's conduct went beyond mere concealment to one of active obstruction of justice by not only directing the NYPD not to help Ms. Price who was being beaten and trafficked by Mr. Powell but to withholding exculpatory evidence of the crimes she was falsely accused of committing. During the time Ms. Price had 324 criminal charges pending against her by DANY (that could have placed her behind bars for over 1600 years), DANY allowed and permitted Mr. Powell to traffic her and keep the ill gotten proceeds. It is clear that anyone who had viewed the vidoes on plaintiff's phone on the SIM card that was easily removed from the phone ( the forensic logs proving the same videos were retrieved on 6/28/2011) that Plaintiff was being coerced.

Lisa Hillisalassie, now the Director of Victim Services at DANY, was fully aware of Ms. Price's untenable coerced conduct at the hands of Powell and DANY as she was Ms. Price's therapist at the Crime Victims Treatment Center at St. Luke's Roosevelt Hospital at the time Powell blackmailed Plaintiff to prostituting and giving him the proceeds in exchange for his lack of participation in her prosecution. The DANY defendants who knew of the exculpatory materials on the phone that directly prove Powell was trafficking Plaintiff Price were well aware as well.

## DANY'S FAILURE TO COMPLY WITH THE OCTOBER 21, 2019, COURT ORDERED SUBPOENA

It has taken this Solo Practitioner months to go through the discovery provided. In doing so, I have discovered that DANY is in defiance of this Court's so ordered subpoena. Request No. 4 states:

> "REQUEST NO. 4: Any and all files, records, testimony, recordings, or other documents related to Mr. Raheem Andre Powell regarding his interactions with Plaintiff Kelly Price and/or the domestic violence complaints lodged by Plaintiff Kelly Price against Mr. Raheem Andre Powell." [Exhibit 10 DANY Rul 45 Subpoena signed by Hon Judge K Polk Failla 10/21/19]

DANY's response is

we identified a sealed matter wherein plaintiff was the complaining witness. Those records are not available without an unsealing consent signed by Raheem Powell. Once you obtain the consent, I can order the file to review for disclosure." {Exhibit 11 2020.02.07 Letter to Kelsey Docherty re 15 cv 5871 for Kelly Price follow up from DANY].

DANY DID NOT file any objection with Court or ask for relief from the Court's order. It simply defied the authority of this Federal Court. I could not get away with such conduct. Moreover, Ms. Price IS the complaining witness. Under what theory is she not entitled to the complaints she filed against Mr. Powell? It is simply bizarre. I could not believe the statement when I read it on June 20, 2024. Again, I want to prosecute this case, but DANY's stonewalling and defiance of a Court ordered subpoena only prolongs this litigation.

The City of New York owes discovery as well and I will be sending out a letter within the next two weeks as I just got through gigabytes worth of data. In all honesty with the Court, it took my highspeed internet connection over 6 hours to download.

      I would like to thank the Court for its consideration.
                      Sincerely,

                      /s David Broderick

                      David Broderick