## Exhibit 9: Fact Pattern: timeline of events regarding Plaintiff Price's phones.

 **Plaintiff has made no less than fifteen documented (and as many undocumented ) requests for the return of her phones over a span of nine years.  Plaintiff did not surrender the phones to DANY and tell that office she wanted nothing to do with them as Susan Roque falsely testified under oath in September of 2021.  Plaintiff vigorously pursued the return of her property.  Also, even after the court sent its subpoena to DANY in 2019 that office kept refusing to return the phones despite direct requests for the return of the property.  Only after Plaintiff's former attorneys threatened to file a motion for contempt with the court for discovery non-compliance did the DANY relinquish the phones.**

On September 17, 2021 Susan Roque appeared before this court via videoconference and stated:

"When she [Plaintiff] turned over these phones, it was not at the request of our office. And as the recollection goes, it appeared that it was an unsolicited voluntary dropping of these phones on the lap of the ADA at the proffer. And, again, we have never received any kind of  information from Ms. Price, from Mr. Cartagena[sic] that would go against this belief that these phones were provided to our office by her indicating that they were her boyfriend's, and she wanted nothing to do with them."[1]

But the fact pattern and evidence supporting the true chronology of how the phones came to be in the possession of the DANY and the dozens of times Plaintiff requested, begged, demanded and beseeched DANY to return the phones to her is vastly different than the cursory mis-truths Roque attempted to sell the court in September of 2021 under oath. DANY did not "discover" the phones in a redwell file–Plaintiff's former attorney specified on the September 2019 discovery subpoena, endorsed by this court, that the phones turned over on June 21, 2011 needed to be returned.  Instead of providing the phones DANY defendants further delayed the return of the phones despite disclosing three separate packets of responsive documents until finally under threat of Plaintiff's former attorneys seeking a contempt order from the court did DANY finally returned the phones in February of 2020; six months and three discovery submissions after your honor's subpoena.  But again Susan Roque lied to the court when she testified falsely in September of 2021:

---

[1]  Price v City of New York et al; 15Cv-5871; docket # x; Remote Conference; New York, N.Y. September 17, 2021 10:15 a.m.

"We discovered two cell phones in the box. When I discovered those phones with Ms. Angelo, Ms. Angelo sent a letter to Cravath indicating that we had located two cell phones in the file, and the attorneys at Cravath had returned -- via letter they said these are -- this is our client's cell phones. Can we please get those phones? And now we're in 2020. So Ms. Angelo had conveyed to Cravath attorneys that as soon as we receive an affidavit from Ms. Price that swears  to the ownership of the phones, we will hand them over, because the phones were not in an envelope. They were loose in the file. So our bureau, Ms. Angelo and I, we had no way to know who owned those phones. So Ms. Price, through Cravath, provided the affidavit, and we turned over those phones to her, to her attorneys."[2]

 Roque's  testimony was deliberately misleading and  false.  The fact pattern of how the phones came to be in the custody of DANY, the multiple requests for the return of the phones to multiple members of DANY leadership (including to Roque herself!) and, the way the phones were eventually returned clearly establishes that various levels of management at the DANY were involved in creating and maintaining an illegal and unconstitutional policy of retaining property past the disposition of criminal proceedings sufficiently to establish violations of Plaintiff's Fourth, Fifth Eighth and Fourteenth amendment rights due to the deliberate indifference of the DANY defendants.  The following is a true timeline of the events that transpired:

**June 21, 2011**:  Plaintiff Price gave phones to ADA Kenya Wells and Deputy DA Larry Newman during a Queen for a Day hearing to examine threatening texts and videos as proof Miss Price was being trafficked under threat of physical violence and coercion.

**June 28, 2011** the Motorola phone was processed forensically.  [See Exhibit #2 TechFusion Affidavit].

 **July 24, 2012**: Charges against Miss Price were dropped on July 24, 2012.  The phones should have been returned at that time.  When Plaintiff inquired on July 25, 2012 ADA Kenya Wells refused. This was the first time Plaintiff requested the return of her phones.

**November 12, 2012**:  Plaintiff Price files complaint with  the NYC Department of Investigation requesting return of her phones  (Exhibit XXX)

**November 27, 2012:**  Plaintiff Price places numerous phone calls to various members of the DANY demanding her phones back.

---

[2] Price v City of New York et al; 15Cv-5871; Remote Conference; New York, N.Y. September 17, 2021 10:15 a.m.

**November 27, 2021:** DANY Police Investigator Lauren Liebhauser writes a request to the NY County criminal court requesting a warrant to examine phones for details of "ownership."

**Nov 28, 2012** Elyse Hirschorn of the NYC Dept of Investigations responded to Plaintiff: "We have received your e-mail dated November 20, 2012.  In that correspondence you requested material in the possession of this Department relating to record #12-19276, for which you were the complainant.  Your request is being treated as one made pursuant to the Freedom of Information Law.  We are conducting a search for materials responsive to your request and will contact you again within approximately one month" Exhibit XXX

**December 3, 2012**:  Elyse Hirschorn of the NYC Dept of Investigations responded: "your complaint was forwarded to the Office of the District Attorney for New York County for appropriate action.  You should, therefore, contact the Records Access Officer for that agency for material responsive to your request"

**June 13, 2013**, Plaintiff receives a call from Assistant chief District Attorney and Chiefnof DANY's Trial Bureau 7, Nintin Savur, who informs Plaintiff she will need to provide proof the phones are her property.  Plaintiff delivers phone receipts for both phones on a disc drive to DA's office.   Nothing ever happens.  No one responds to Plaintiff.  Savur never picks up his phone again despite Plaintiff's attempts to reach him.

**June 13, 2013** Plaintiff submits another complaint to NYC DOI that she still has not had her original complaint resolved.
**Sept of 2013** Plaintiff again requested the return of her phones via numerous complaints that her phones had not been returned to the DA's office; she was rebuffed.   ADA Wells informed Price he still would not return her phones.

**March 2014,** Plaintiff Files lawsuit in NYS court trying to get phones back among other actions.

**June 26, 2014,** Miss Price submitted a FOIL to the DA's office requesting the phone's RETURN and still did not receive her phones.

**July 3, 2014** ADA Christina Maloney denies all of Plaintiff's requests for phones and access to records

**July 9, 2014:** Plaintiff Files FOIL appeal to the FOIL Appeals Officer, Patricia Bailey, repeating assertion she wants her phones returned

**July 16, 2014:**  Susan Roque, Chief of the DANY Special Litigation Unit replies to Plaintiff's FOIL appeal and instructs ADA Maloney to make a "de novo" determination based on Plaintiff's appeal.

**July 16 2014:** Plaintiff challenges the validity of Roque's instruction to issue a "de novo" FOIL determination

**July 2014:**  NYS Court Justice Louis B York answers affirmatively to Plaintiff's request for an RJI for return of phones and other reliefs.

**August 2014**: Justice Louis B York slips into a coma where he lingers for months, unconscious, while his case log is in limbo.

**August 16, 2014**:  Maloney replies with a new determination still denying all access to phone records and ignoring Plaintiff's request for phones.

**November 2014.**  Hon Louis B York perishes while in a coma.  RIP

**On Feb 2, 2015** Miss Price contacted Jeffrey Schlanger, newly-appointed Chief of Staff of the District Attorney's office and made a formal complaint about her treatment by DANY including the confiscation of the phones.

**On Feb 12, 2015** Plaintiff discussed with her former criminal defense attorney, Steven Kartagener, how to get the phones returned.  They decide that Mr. Kartagener will send a letter to the MDAO reminding them the phones were promised to be returned by ADA Wells.

**On Thursday, February 26, 2015** at approximately 11:00 a.m. Plaintiff forwarded Susan Roque, Chief of the MDAO's Special Litigation Division's appeal response to MDAO Chief of Staff Jeffrey Schlanger complaining about not being able to get her phones back.

 Mr. Schlanger resigned within a year and instructed Plaintiff to follow up with his replacement.  Miss Price contacted the new Chief of Staff, Rothenberg, and he too took her complaints and resigned within a year and returned to Dechert.

**March 2015**: Price's NYS court case is dismissed after Hon. Judge York's RJI was reversed by Judge Kathryn Freed.

**July 2015**:  Miss Price filed in her original complaints to the Federal court that the DA's office had unlawfully kept her phones among other actions.

**2015-2019:**  Price continues to make demands for the return of phones to ADA Wells, ADA Maloney, Susan Roque, Patricia Bailey, Audrey Moore et al

**On October 7, 2019** Cravath Swain & Moore sent a subpoena to the MDAO's office endorsed by this court asking for "all phone records" specifically: "REQUEST NO. 8: Any and all documents or items Plaintiff Kelly Price or her representatives or agents provided to DANY on June 21, 2011, including physical documents and electronic devices, and any and all data or documents containing information downloaded from any such devices."

**October 30, 2019:** Regardless of the subpoena instructing the return of the electronic devices and all information derived from them, the MDAO's office replied to the subpoena on October 30, 2019 without mention of the phones or records from the phones.

**On December 9, 2019,** Plaintiff wrote to her former attoneys at Cravath asking them to question the DA's office about the phones and why they weren't included in Discovery subpoena reply by DANY on Oct 30, 2019.

**On February 3, 2020 Plaintiff's attorneys again send a letter requesting the cell phones be returned:** "Third, there are several documents Plaintiff believes DANY possesses that are responsive to the subpoena duces tecum but were not produced or described in the Privilege Log. Those documents include: (1) additional phone recordings and/or messages between Plaintiff and Raheem Powell; (2) cell phones belonging to Plaintiff or any information downloaded or copied from those cell phones."

**Finally on February 7, 2020:** DANY wrote Plaintiff's former attorneys that; "An item unintentionally not addressed in my letters are the cell phones related to the case. The phones were never forensically tested, but are still in the case file. You may send a messenger to pick them up at your convenience." At this point MDAO also requested verbally over the telephone that Plaintiff sign affidavits she is the owner of the phones

**On Feb 10, 2020** Plaintiff's attorneys respond to MDAO with the affidavits from Plaintiff avetting phones belong to her:

**Feb 11, 2020:**  Phones are returned to Plaintiff's former attorneys nine years after they were turned over to exonerate Plaintiff.

**Feb 19, 2020,** Plaintiff's former attorneys turn phones over to Alix Partners to examine.  Plaintiff never has custody of phones before Alix does a forensic examination..