UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
KELLY PRICE,

Plaintiff,

-against

THE CITY OF NEW YORK, ROSE 15-CV-5871
PIERRE- LOUIS, in her individual and
official capacity, SELVENA BROOKS, in
her individual and official capacity,                     15cv-05871 (KPF)
INSPECTOR OLUFUNMILO F. OBE, in                       LETTER in RESPONSE to
her individual and official capacity,                       4/3/25 Conference
DETECTIVE LINDA SIMMONS, in her
individual and official capacity, OFFICER
JOHN STAINES, in his individual and
official capacity, OFFICER ISELAINE
WHEGUICHARDO HERMENE GILDO CRUZ,
in her individual and official capacity, LT.
NICHOLAS CORRADO, in his individual
and official capacity; LIEUTENANT
RAYMOND DEJESUS, in his individual
and official capacity; OFFICER EMMET, in
his individual and official capacity;
SERGEANT SHEVTIZ, in his individual
and official capacity; MTA OFFICER
STEPHEN MEARS, in his individual and
official capacity; MTA OFFICER ALISON
SCHMITT, in her individual and official
capacity
Defendants

Dear Judge Failla:

Firstly, I wish to apologize to your Honor. I believe in my former attorney's March 13, 2025 letter to the court portions (paragraph #2) of he text sent to his assistant were included that were not intended to be in the filing. He was on a plane about to take off and texting instructions wheels up to his assistant and to me to get the reply in. I believe in his haste he made a mistake but it is clear I need counsel with time and resources to devote to this case. I am thankful for the court's forgiveness.

Unfortunately, a number of things were left unsaid in our April 3, 2025 hearing that I wished to call attention to before the court made its request for an in-camera review of sealed arrest files of Powell and his mother. I see the order went in this morning already but I am compelled to draw the court's attention to the following and to request the court update its unsealing order(s).

**I. Firstly, for the court's consideration regarding the unsealing requests: there may be another arrest Powell's confidential informant paperwork is logged under.** According to the arrest log DANY attached as Exhibit D to its Jan 24, 2025 filing (Docket 236-5), Powell had an August 2010 arrest and prosecution, (2010NY060294), for a drug sale to an undercover detective, David Bailey of the Manhattan Floating Narcotics Squad that was closed. Any confidential informant agreement established in Powell's August 14, 2010 arrest and case (Arrest #M10672627 resulting in case #2010NY060294) would have very likely still been active when Plaintiff was being rebuffed by law enforcement and may also be the moving force for law enforcement's prejudice towards Plaintiff. Powell's contract could be included in either Plaintiff's sealed complaint resulting in Powell's 2/2/2011 arrest (NYPD Incident #2011-028-000409) or August 2010 arrest. Confidential Informant agreements are good for 120 days and must be renewed.

Each agreement that is made in exchange for leniency must be in writing and approved by the borough District Attorney's ECAB unit and attached to each Decline to Prosecute letter in each case file, sealed or not. Plaintiff has been informed of this information by the former Deputy Commissioner for Training at the NYPD and also the former Director of Training for the Nassau County Police Department who used to work on the Major Case Squad of the NYPD. The following is from the NYPD handbook and was provided to plaintiff by one of these contacts:

The New York City Police Department (NYPD) adheres to specific protocols when managing confidential informants (CIs) to ensure effective investigations while safeguarding the rights and safety of all parties involved. Key aspects of these guidelines include:
    1.    Authorization and Documentation:
    •    The deployment of undercover officers or CIs requires written approval from the Deputy Commissioner of the Intelligence Division. This authorization is initially granted for 120 days and can be extended in similar increments as necessary. Each extension request must detail the justification for continued use.
    2.    Detailed Role Specification:

- Before utilizing a CI, the NYPD mandates a clear, specific description of the informant's intended role within the investigation. This ensures that the informant's activities are aligned with investigative objectives and are properly supervised.

3. Strict Prohibitions:

- CIs are expressly forbidden from engaging in activities aimed solely at disrupting lawful political exercises, instigating illegal acts, or participating in unauthorized investigative operations. Such restrictions are in place to maintain ethical standards and investigative integrity.

4. Confidentiality and Record-Keeping:

- The NYPD maintains confidential files for each informant, including true and assumed names, signatures, and, when possible, photographs or fingerprints. Access to these files is strictly limited to authorized personnel to protect informant identities and ensure operational security.

5. Periodic Reviews and Compliance:

- Regular evaluations are conducted to ensure adherence to established guidelines. These reviews assess the necessity of continuing an informant's involvement and verify compliance with all procedural requirements.

Additionally, Powell's mother's arrest on 11/17/2011 was given a desk appearance ticket: meaning it would be nullified if Gaines did not get rearrested within six months. However, she was re-arrested again within that six months she was meant to stay out of trouble in exchange for the charge dismissed. This second arrest and prosecution, that Plaintiff believes to be case # 2010NY092185, on a drug possession charge, which was also dismissed. Your Honor may wish to view both records. There is no explanation for the deference given to Powell and his family by law enforcement if he was not an informant or a complaining witness.

**II. DANY Discovery non-compliance.** Secondly, I have had a chance to review the privilege log provided by DANY on the evening of April 2 and am sorry to report that instead of providing the previously omitted factual portions of documents, author names, recipient names, and dates of documents requested in my March 28 letter DANY has created a brand new privilege log assigning new privilege log numbers to every document and changing the document descriptions completely in some entries. In at least two cases the dates of the documents have changed- one by a decade. Some documents have completely disappeared off the log, in others some descriptions were wholly erased and rewritten. This is unacceptable and will only make the task of holding DANY accountable for each of the many repeated and continued requests for discovery clarification on each log item more challenging.

3

Quizzically DANY has changed all the document descriptions asserting privilege because of "impending litigation to be filed by defendant" which are the entries I pointed out in my March 28, 2025 letter to Christina Ante (attached to my April 3 letter to the court) established DANY had a duty to preserve all materials regarding plaintiff. Log DANY00008 used to read:

"Email communication between the Chief Assistant District Attorney and three supervisory ADAs regarding Plaintiff and subsequent emails between the supervisors dated 5/3/2012 The subject relates to a discussion between ADAs regarding the litigation anticipated to be filed by plaintiff" n.b. the Chief Assistant District Attorney in May 2012 was Daniel Alonso.

However, in the new log the description reads

"Email communications between Chief Assistant District Attorney and three supervisory ADAs including Jeanine Launay, dated August 3, 2012, subject line "Kelly Price" regarding legal steps and analysis regarding plaintiff's DOI complaints. Privileges: attorney-work product, deliberative process, intra-agency privilege. (DANYPriv 000020)."

Not only has the subject description of the document been completely changed, the authors and recipients are still not disclosed and THE DATE ON THIS DOCUMENT HAS CHANGED FROM 5/2/2012 TO 8/3/2012. *These changes (not additions but wholly new descriptions) strongly indicate that instead of simply describing the privileged documents DANY is creating its subjects and descriptions through a lens of a prejudice intended to distort and obscure the conveyance of factual information in order to further a pattern of willful non disclosures to Plaintiff.*

To reinforce this point DANY privilege log #00023 which in the original 2019 log read "8 pages phone records not disclosed due to privacy concerns." However, in the new log the description has been updated to: " Phone records bearing Fax line "28th Det. Sqd." "Mar 24, 2011," listing incoming and outgoing phone calls and handwritten annotations obtained during course of criminal prosecution of criminal docket 2011NY021627.  Privileges: law enforcement, personal privacy." But still we don't know if there were fax cover sheets listing the names of sender and recipients, the numbers of the fax machines, who at the DAs office was faxing, the subjects of the communications, if there were photos and/or documents faxed in the fax communications and if the fax communications continued into further dates with multiple subjects, senders and/or receivers. Plaintiff's former attorneys at Cravath challenged this item three times and Mr. Broderick had

4

challenged it again yet I still don't have full clarification of details after four follow up demands for factual information about these fax communications.

If the precinct and DANY were communicating via fax about plaintiff's complaints and DANY is not disclosing the complete dates, fax numbers, specific subjects and people involved in the faxes to obfuscate the significance of these communications case than this constitutes further deliberate and willful non disclosures. Plaintiff's 2019 subpoena clearly asks for these communications to be disclosed i.e.:  requests #s 1, 5 & 6.

In addition to this factual back and side-stepping, DANY still has not provided the requested information regarding names, dates and factual portions of documents requested. I will be asking Christina Ante to provide me with an updated privilege log using the original log numbers with the requested information but I anticipate it will take more than two weeks to resolve these issues because of the deficiencies described above with the latest privilege log alterations. I do not know when DANY will be able to provide me this information or be able to provide information about other missing documents we know exist or existed at some point.  After being asked by Cravath three times and Mr. Broderick twice to clarify the same materials, produce documents we have evidence existed at one point and present factual portions of the work product withholdings I am not optimistic about the results.  There are some subpoena requests that I will endeavor to resubmit but this will only clarify about 20% of the outstanding discovery issues: the remaining are non compliance with standing subpoena requests.

**III. Finally, I respectfully submit to the court that DANY's Ante's statements during our April 3, 2025 hearing that ADA Maloney's August 14, 2014 FOIL response citing "instances" (plural) of Plaintiff's complaints regarding Raheem Powell are derived from language in Plaintiff's original FOIL are not accurate.** Plaintiff has already turned in the original FOIL request many times in these proceedings, the latest attached to her August 23, 2024 proposed 6th amended complaint as exhibit # 21 (docket # 225).  Plaintiff doesn't mention her complaints regarding Powell in the FOIL request At ALL. The language is not "mimicked" it is wholly DANY's language and therefore indicative that in 2014 DANY had records of plaintiffs complaints (in the plural,) regarding Powell.  I am puzzled why Ms Ante would claim this language originated with Plaintiff during our April 3, 2025 hearing when it is not true and easily fact checked.  I must admit I myself was uncertain.  As this point partially spurred Plaintiff's concerns and claims about spoliation I believe this further detail will help clarify the courts understanding of these matters.

5

In one circumstance Plaintiff made an allegation that Powell violated the terms of a temporary order of protection and tried to confront her on October, 25, 2011. Plaintiff called the police and made a complaint at the 28th precinct. Neighbors witnessed the confrontation and were available to testify. Yet again the police did not come so the plaintiff made the complaint at the precinct. The next day plaintiff called the precinct to get an incident ID number for the complaint and was told there was not one nor would there ever be. Plaintiff explained this to her advocates and they sent an legal assistant to the precinct with Price a few weeks later after many phone calls back and forth between The Crime Victims Treatment Center, Connect NYC and the 28th precinct who eventually took the complaint (Exhibit # Connect NYC database notes for advocacy of Kelly Price 2011-2013) along with the names and numbers of witnesses. Still, neighbors who should have been contacted by police were not and nothing was ever done.

Lt Larocca and Quinn Emmanuel Attorney Elizabeth Walker's s affidavits establish that each time a complaint was made by Plaintiff would be conveyed to the DA's office for approval prior to police investigation. The October and December complaints about the same incident were a full eight and nine months after Powell's arrest on February 2, 2011, was sealed and could not possibly be part of the sealed file. These are the records I have been repeatedly told, and DANY has repeatedly admitted in its own filings to the court, do not exist. This is spoliation. Because of this and a 101 other discovery issues I am not optimistic that continuing discovery without a special discovery master to oversee DANY's production and validate its non-disclosures will be productive. I will endeavor to reach full and fair disclosures however I have a strong belief that I will be asking the court to revisit spoliation.